THEODORE J. BOUTROUS, JR. (SBN 132099)
tboutrous@gibsondunn.com
RICHARD J. DOREN (SBN 124666)
rdoren@gibsondunn.com
DANIEL G. SWANSON (SBN 116556)
dswanson@gibsondunn.com
MELISSA PHAN (SBN 266880)
mphan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

CYNTHIA E. RICHMAN (D.C. Bar No. 492089; appearance *pro hac vice*)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

VERONICA S. LEWIS (TX Bar No. 24000092; *pro hac vice* pending)
vlewis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-6912
Telephone: 214.698.3320
Facsimile: 214.571.2936

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DONALD R. CAMERON, a California resident; PURE SWEAT BASKETBALL, INC., an Illinois corporation; and BARRY SERMONS, a Georgia resident, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 4:19-cv-03074-YGR<br>RELATED CASE NO. 4:11-cv-06714-YGR<br>(*Pepper v. Apple*)<br><br>**DEFENDANT APPLE INC.'S ANSWER TO PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>The Honorable Yvonne Gonzalez Rogers<br><br>CASE NO. 4:19-cv-03074-YGR |

## **ANSWER TO PLAINTIFFS' COMPLAINT**

Pursuant to Rules 7 and 8 of the Federal Rules of Civil Procedure, Defendant Apple Inc. ("Apple"), by and through its undersigned counsel, hereby answers and asserts defenses to the claims and allegations made by plaintiffs Donald R. Cameron, Pure Sweat Basketball, Inc., and Barry Sermons ("Plaintiffs") in the Consolidated Class Action Complaint ("Complaint").

Over a decade after Apple launched the revolutionary App Store, app developers Donald R. Cameron, Pure Sweat Basketball, Inc., and Barry Sermons filed this lawsuit claiming that "from the outset," Apple attained monopoly power in a purported U.S. market for "iOS app and in-app-product distribution services." Compl. ¶ 2. But as the Complaint itself makes clear, the conduct that Plaintiffs strain to portray as anticompetitive has revolutionized the way consumers find, purchase, and install software applications, and the way developers sell those software applications to consumers. In so doing, Apple's model of app distribution has provided innumerable benefits to both consumers and the developer plaintiffs.

Prior to Apple's introduction of the App Store, software applications were bought and sold through retailers such as Best Buy or CompUSA. Selection was limited to the (relatively small) choices the retailer had in stock and prices were steep. Developers faced significant hurdles to getting their software onto physical media like CD-ROMs and onto store shelves. Contrary to Plaintiffs' assertion that Apple's conduct "depresse[s] output of paid app and in-app transactions," it is because of platforms like the App Store that any developer who has a great idea can invent a new app and distribute it worldwide from home, exponentially expanding consumer choice by putting access to over a million available apps at consumers' fingertips. Indeed, the opening of the App Store sparked "a gold rush of developers making apps," ("A Short History of Objective-C," *Medium*, Apr. 24, 2017, *cited at* Compl. ¶ 59 n.53) with every developer able to "offer its iOS apps or in-app products to millions of consumers." Compl. ¶ 47. In addition to vastly expanding developers' access to consumers, through the innovative App Store, app developers like Plaintiffs now claim 70% of revenues associated with sales of their apps on the App Store, as opposed to the 30% they would receive with the traditional retail model. In fact, "app developers have made a

1

collective $120 billion in sales from the App Store." ("Developer's [*sic*] $34 Billion Earnings from Apple's App Store Rose 28% in 2018," *Fortune*, Jan. 28, 2019, *cited at* Compl. ¶ 27 n.25). And this is only a drop in the bucket considering those figures do not reflect revenues on which Apple claims *no* commission, including ad revenue or sales by large app-based physical services and retailers that are able to reach customers through the App Store, like Uber, Lyft, Airbnb, and Amazon.

Contrary to Plaintiffs' claims of Apple's anticompetitive motives, the App Store was "'designed to provide customers with apps that work seamlessly with their device's capabilities.'" Compl. ¶ 2 n.3. This required a process, well known by now, to "ensure the safety and device-compatibility of apps." *Id.* ¶ 2. To achieve this, iOS developers who use Apple's software to develop their iOS apps must submit those apps for pre-distribution review by Apple. Apple is uniquely situated to ensure compatibility with its own devices and to protect its own consumers from malicious malware or bugs that would degrade the consumer experience. Apple also holds iOS apps to a "high standard" for privacy and content, including prohibiting intrusive apps, apps that "put[] children at risk," and "any app that features pornographic material, discriminatory references, torture and abuse, or anything else in exceptionally bad taste." ("App Store—Overview," *cited at* Compl. ¶ 5 n.8). This too is achieved by pre-distribution review by Apple. Apple devotes enormous effort to this review process, using "a combination of automated resources and hundreds of human experts" covering "81 languages across three time zones." *Id.* Apple reviews 100,000 apps a week, a level of activity that Plaintiffs themselves rightly label as "astounding." Compl. ¶ 5 n.8. Review is rigorous, with a 40% rejection rate. *Id.* The safety, security, privacy, and seamless integration ensured by Apple's pre-distribution review process is an integral part of Apple's DNA, a vital driver of consumer trust, and a key differentiating factor behind the business success of Apple mobile devices and iOS apps. In short, exercising discretion over the distribution of iOS apps by authorized developers through the App Store ensures that iOS users can have faith that their apps meet Apple's high standards of user experience and responsibility—which benefits consumers and developers alike.

2

1    As part of its App Store model, Apple also invests enormous resources in maintaining and

2  improving the platform that makes developers' apps available to consumers.  Apple provides the

3  platform by which users download and update their apps.  It also maintains a secure payment

4  system that allows users to have faith in in-app transactions.  Apple licenses numerous innovative

5  and invaluable development tools to developers such as Plaintiffs, to assist in app development,

6  without regard to whether developers pay a commission to Apple.  For example, Apple has

7  developed a powerful and intuitive programming language for iOS called Swift—and provides a

8  free app called Swift Playgrounds, which is an educational tool on Swift for prospective

9  developers.   Indeed, iOS apps—including Plaintiff Cameron's app—are "usually written in

10  Apple's Swift programming language," (Compl. ¶¶ 14, 59), which is "interactive and fun . . . and

11  . . . includes modern features developers love."  (*Id.* ¶ 59 n.52).  After Apple acquired Burstly in

12  February 2014, it created Test Flight—a platform that makes beta testing apps simple—available

13  to authorized app developers at no extra cost.  Meanwhile, Apple's innovations in its iOS operating

14  system continue to open up new avenues for app development.  For instance, Apple provides

15  authorized iOS developers such as Plaintiffs with ARKit—a tool that allows developers to harness

16  the augmented reality capabilities Apple has built into iOS in order to integrate human movement

17  into their apps.  Again, this is offered for no additional cost to all authorized app developers, which

18  include individuals working out of their homes and small startups, as well as some of the biggest

19  corporations such as Google, Facebook, and Microsoft, to the benefit of both consumers and

20  developers.

21    Plaintiffs challenge Apple's commission as too high and its design decisions as misguided

22  (including its price points, its curation of the App Store, and—as noted—its requirement that iOS

23  apps developed using Apple's software be submitted for review and distribution through the App

24  Store).  Apart from the fact that Plaintiffs knowingly accepted this business model in their

25  agreements with Apple, and have greatly benefitted from the market expansion wrought by

26  Apple's innovative design, none of these accusations amounts to anticompetitive or exclusionary

27  conduct.  And Plaintiffs' own Complaint belies its assertion that Apple has charged "a supra-

28

3

competitive commission."  The commission defrays the costs not only for maintaining and improving a system for the development and distribution of paid apps, but also of free apps (including ad-supported apps)—which constitute 84% of apps available on the App Store and from which Apple receives no compensation whatsoever.  Indeed, Plaintiffs admit that "[t]he consumer apps marketplace . . . resoundingly favors low-priced or free apps."  Compl. ¶ 4.  Furthermore, although Plaintiffs complain that Apple charges supracompetitive prices, they only identify a *decrease* in Apple's commission since the App Store's inception more than 11 years ago.

Apple is not a monopolist of any relevant market.  Competition both inside and outside the App Store is fierce at every level: for devices, platforms, and individual apps.  Apple competes against some of the largest companies in the world.  The number of apps in the App Store has grown from zero to over a million since the App Store's opening.  Plaintiffs claim that Apple faces no competition for app distribution but their Complaint repeatedly references alternative app retail platforms—such as Google Play.  There is no plausible claim to actual or theoretical exclusivity.  The vast majority of apps available through the App Store—including those offered by Plaintiffs—can be found on such competing platforms.  App developers routinely "multi-home" across competing platforms because "it is profitable from any point of view," ("How to Convert an Android App to an iOS App (and Vice Versa)," *Upwork*, *cited at* Compl. ¶ 46 n.45).  In addition, iPhone consumers can readily access web applications on their iPhone through a web browser of their choosing.  App developers are free to develop and distribute web applications for use on Apple devices via Apple's Safari web browser, and Apple does not receive a commission on any of those sales, nor insist that developers follow its App Store guidelines.  Given the strong competition Apple faces at every level it is perhaps unsurprising that Plaintiffs are unable to allege that Apple foreclosed *any* competition.

Plaintiffs' Complaint is fatally flawed both as a matter of undisputed fact and law.  The Complaint does not describe any recognizable theory of monopolization.  Plaintiffs do not deny that app developers benefit from Apple's intellectual property, its massive investment in the App Store, and its "astounding" efforts to curate the App Store to ensure the safety, security, privacy,

4

and seamless integration of the apps available on the App Store.  Simply put, the App Store has revolutionized the marketplace in a manner that has greatly benefitted consumers and the app developers that Plaintiffs purport to bring this action on behalf of.

### RESPONSE TO INDIVIDUAL PARAGRAPHS

Numbered paragraphs below correspond to the like-numbered paragraphs in the Complaint.  Except as specifically admitted, Apple denies the allegations in the Complaint. Plaintiffs' Complaint contains 113 footnotes.  Any allegations contained therein do not comply with Federal Rule of Civil Procedure 10(b), providing that allegations be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  *See, e.g.*, *Bernath v. YouTube LLC*, 2017 WL 1050070, at *2 (M.D. Fla. Mar. 20, 2017) ("Plaintiff also alleges facts in various and lengthy footnotes that will not be considered as they are not properly stated in numbered paragraphs pursuant to Fed. R. Civ. P. 10(b)."); *Holmes v. Gates*, 2010 WL 956412, at *1 n.1 (M.D.P.A. Mar. 11, 2010) ("[T]he use of . . . footnotes run counter to the pleading requirements set forth by Federal Rule of Civil Procedure 10(b).").  No response is therefore required to the Complaint's footnotes.  In any event, except as expressly admitted, Apple denies any and all allegations contained in footnotes 1 through 113.

### INTRODUCTION

1.      Apple admits that the iPhone runs on Apple's iOS operating system.  Apple further admits that Plaintiffs have developer accounts with Apple.  Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of Paragraph 1 and, on that basis, denies them.  Apple denies the remaining allegations in Paragraph 1.

2.      Apple denies the allegations in Paragraph 2.

3.      To the extent that the allegations in Paragraph 3 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any responsive pleading is required, Apple admits that it offers eligible developers the opportunity to enroll in the Apple Developer Program at a small cost of $99 per membership year.  Membership provides advanced capabilities and offers instant access to hundreds of millions of consumers around the world.

5

The Apple Developer Program, pursuant to agreed license terms, provides developers with beta software, advanced app capabilities, extensive beta testing tools, and app analytics. These tools allow app developers to take advantage of the latest innovative Apple technologies so their apps will seamlessly integrate with the latest advances in iOS and the latest iPhones. Apple admits that it charges developers a 30% commission on paid applications, specific in-app purchases, and initial-year subscriptions sold through the App Store. The commission on subscriptions drops to 15% after one year. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 3.

4.      Apple denies the allegations in Paragraph 4.

5.      Apple admits that there are over a million apps available through the App Store, and that it represented as much to the U.S. Supreme Court in a related case in August 2018. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 5.

6.      To the extent that the allegations in Paragraph 6 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any responsive pleading is required, Apple denies the allegations in Paragraph 6.

7.      Apple admits that Paragraph 7 sets forth the relief that Plaintiffs purport to seek. To the extent a response is required, Apple denies that Plaintiffs are entitled to any such relief and denies any remaining allegations in Paragraph 7.

## JURISDICTION

8.      To the extent that the allegations in Paragraph 8 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple admits that Plaintiffs purport to plead jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Except to the extent expressly admitted, Apple denies the allegations in Paragraph 8.

9.      To the extent that the allegations in Paragraph 9 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple admits that Plaintiffs purport to plead federal question jurisdiction. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 9.

**VENUE**

10.     Apple admits that, taking Plaintiffs' venue-related allegations to be true, venue in this District is proper pursuant to 28 U.S.C. § 1391.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 10.

11.     Apple avers that its Apple Developer Agreement and Apple Developer Program License Agreements attached as Exhibits A and B to the Complaint speak for themselves.  Apple denies the remaining allegations in Paragraph 11.

12.     Apple admits that its principal place of business is in the Northern District of California and further admits that Phil Schiller has an office at Apple's executive offices in Cupertino, California.  Apple admits that it has marketed, advertised, and sold devices within this judicial district.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 12.

**PARTIES**

13.     Apple admits that Plaintiff Cameron is a party to an Apple Developer Agreement and Apple Developer Program License Agreement with Apple, and that pursuant to his enrollment in the Apple Developer Program, Plaintiff Cameron has paid Apple's Developer Program annual fee.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 13, and specifically denies that Mr. Cameron has paid Apple's mandatory $99 annual developer fee since July 2015.

14.     Apple admits the allegations in Paragraph 14.

15.     Apple admits that Plaintiff Cameron has priced his app at $2.99.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 15.

16.     Apple denies the allegations in Paragraph 16.

17.     Apple denies the allegations in Paragraph 17.

18.     Apple admits that Plaintiff Pure Sweat Basketball is an Illinois corporation that purports to maintain its principal place of business in Crystal Lake, Illinois.  Apple admits that Plaintiff Pure Sweat Basketball identifies itself as the developer of the Pure Sweat Basketball

Workout App.  Apple further admits that Plaintiff Pure Sweat Basketball is a party to an Apple Developer Agreement and Apple Developer Program License Agreement with Apple, and that pursuant to his enrollment in the Apple Developer Program, Plaintiff Pure Sweat Basketball has paid Apple's Developer Program annual fee.  Apple admits that Pure Sweat Basketball has charged $4.99 monthly for its digital subscription product, or $49.99 annually.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 18, and specifically denies that Pure Sweat Basketball's last distributions of its app through the App Store, and sales of subscriptions at non-zero prices through the app, occurred in September 2019.

19.     Apple denies the allegations in Paragraph 19.

20.     Apple denies the allegations in Paragraph 20.

21.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, third, and fourth sentences of Paragraph 21 and, on that basis, denies them.  Apple denies any remaining allegations in Paragraph 21.

22.     Apple admits the allegations in Paragraph 22.

23.     Apple denies the allegations in Paragraph 23.

## **RELEVANT FACTS**

24.     Apple denies the allegations in Paragraph 24.

25.     Apple denies the allegations in Paragraph 25.

26.     Apple admits that it opened the App Store in July 2008.  Apple admits that in March 2008 it released a software development kit to enable independent software developers to design applications for use on the iPhone.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 26.

27.     Apple admits that Americans own tens of millions of iPhones, iPads, and iPod touch devices which run iOS apps, some of which offer in-app products.  Apple admits that it has earned billions of dollars of revenue from its distribution and sale of innovative products, including iOS apps and related digital products.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 27.

28.     Apple admits that the iOS operating system is a unique and innovative operating system.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 28.

29.     Apple denies that the App Store is exclusive or anticompetitive and denies the remaining allegations in this paragraph.

30.     Apple denies the allegations in Paragraph 30.

31.     Apple admits that it charges developers a 30% commission on paid applications licensed through the App Store.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 31.

32.     Apple denies the allegations in Paragraph 32.

33.     Apple admits that it offers eligible developers the opportunity to enroll in the Apple Developer Program at a cost of $99 per membership year.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 33.

34.     Apple admits that Google Inc. owns and operates an app marketplace called Google Play.  Apple denies the remaining allegations in Paragraph 34.

35.     Apple denies the allegations in Paragraph 35.

36.     Apple admits that app developers who want to sell their apps in the App Store can do so by entering into an Apple Developer Agreement and an Apple Developer Program License Agreement.  Apple avers that the terms of these agreements speak for themselves.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 36.

37.     Apple admits that applications for iOS Products developed using the Apple Software licensed under the Apple Developer Agreement and the Apple Developer Program License Agreement may be distributed to consumers only if approved by Apple (in its sole discretion) for distribution via the App Store.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 37.

38.     Apple denies the allegations in Paragraph 38 and specifically denies that it "sharply limit[s]" app developers' pricing discretion.

39.     Apple admits that it analogized the App Store to a mall in a related case.  The brief from which the Complaint selectively excerpts speaks for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 39.

40.     Apple admits that Paragraph 40 selectively excerpts from the cited brief, which speaks for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 40.

41.     Apple denies the allegations in Paragraph 41.

42.     Apple denies the allegations in Paragraph 42.

43.     Apple denies the allegations in Paragraph 43 and specifically denies that IAP is simply a "payment processing system."

44.     To the extent that the allegations in Paragraph 44 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 44.

45.     Apple admits that the iOS operating system is a unique and innovative operating system.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 45.

46.     Apple specifically denies that "Google's distribution services are meaningless to developers who program apps… for iOS devices."  Apple avers that all three named plaintiffs sell their apps through other app marketplaces, including Google Play.  Apple denies the remaining allegations in Paragraph 46.

47.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 regarding the commission charged at the Google Play app marketplace, and, on that basis, denies them.  Apple denies the remaining allegations in Paragraph 47.

48.     Apple denies the allegations in Paragraph 48.

49.     Apple admits that Paragraph 49 selectively excerpts from the cited European Commission press release, which speaks for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 49.

50.     Apple admits that Paragraph 50 selectively excerpts from the cited European Commission press release, which speaks for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 50.

51.     To the extent that the allegations in Paragraph 51 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 51.

52.     Apple denies the allegations in Paragraph 52.

53.     Apple denies the allegations in Paragraph 53.  Apple is uniquely situated to ensure the safety of its own devices—including from bad apps and malware—to protect its own customers.

54.     To the extent that the allegations in Paragraph 54 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any responsive pleading is required, Apple denies the allegations in Paragraph 54.

55.     Apple denies the allegations in Paragraph 55.

56.     To the extent that the allegations in Paragraph 56 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 56.

57.     Apple denies the allegations in Paragraph 57.

58.     Apple denies the allegations in Paragraph 58.

59.     Apple admits that iOS apps are usually written in Apple's Swift programming language, and that prior to Swift's release in 2014, most iOS apps were written in the Objective-C programming language.  Apple further admits that Paragraph 59 selectively quotes from an "Android Developer" web page, which speaks for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 59.

60.     Apple denies the allegations in Paragraph 60.

61.     Apple denies the allegations in Paragraph 61.

62.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 regarding the commission charged at the Google Play app marketplace, and, on that basis, denies them.  Apple denies the remaining allegations in Paragraph 62.

63.     Apple denies the allegations in Paragraph 63.

64.     Apple admits that Paragraph 64 selectively quotes the cited European Commission press release, which speaks for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 64.

65.     Apple denies the allegations in Paragraph 63.  Apple's App Store has transformed the experience of buying and selling apps for consumers and developers alike.  It has exponentially expanded consumer choice, putting access to millions of applications and services at consumers' fingertips.  At the same time, the App Store model provides developers with instant access to millions of consumers around the world.  As a result, competition has increased at every level: for devices, platforms, and individual apps.

66.     Apple denies the allegations in Paragraph 66.

67.     Apple admits that the App Store has region-specific pricing structures.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 67.

68.     Apple denies the allegations in Paragraph 68.

69.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 regarding the structure of Amazon Underground, and, on that basis, denies them.  Apple denies the remaining allegations in Paragraph 69.

70.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 regarding the purported rationale for Amazon's business decisions, and, on that basis, denies them.  Apple admits that Paragraph 70 selectively quotes from a pocketgamer.biz article, which speaks for itself.  Apple denies the remaining allegations in Paragraph 70.

12

71.     Apple admits that Paragraph 71 selectively quotes from analysis on technology.ihs.com, which speaks for itself.  Except to the extent expressly admitted, Apple denies any remaining allegations in Paragraph 71.

72.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 regarding the Amazon Coins program, and, on that basis, denies them.  Apple denies the remaining allegations in Paragraph 72.

73.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 and, on that basis, denies the same.

74.     Apple denies the allegations in Paragraph 74.

75.     Apple denies that its behavior is anticompetitive or diminishes choice.  Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 regarding Amazon Underground and, on that basis, denies them.  Apple denies the remaining allegations in Paragraph 75.

76.     Apple denies the allegations in Paragraph 76.

77.     Apple denies the allegations in Paragraph 77.

78.     Apple denies the allegations in Paragraph 78.

79.     Apple denies the allegations in Paragraph 79.

80.     Apple admits that Paragraph 80 cites an August 29, 2018 article from The Register, which speaks for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 80.

81.     Apple admits that Paragraph 81 selectively cites alleged quotes of Epic's CEO Tim Sweeney—as reported in various articles—which speak for themselves.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 81.

82.     Apple admits that Paragraph 82 selectively quotes an August 29, 2018 article from The Register, which speaks for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 82.

13

83.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 regarding Epic's "12% transaction fee," and, on that basis, denies them.  Apple denies the remaining allegations in Paragraph 83.

84.     Apple admits that Paragraph 84 selectively cites alleged quotes of Epic's CEO Tim Sweeney—as reported in a December 4, 2018 mcvuk.com article—which speaks for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 84.

85.     Apple denies the allegations in Paragraph 85.

86.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 regarding Google's Chrome Web Store, and, on that basis, denies them.  Apple denies the remaining allegations in Paragraph 86.

87.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87, and, on that basis, denies them.

88.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88, and, on that basis, denies them.

89.     Apple admits that Paragraph 89 selectively quotes the Microsoft App Developer Agreement v.8.4, which speaks for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 89.

90.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 that "[t]here is no indication that Microsoft will not earn a reasonable profit on covered transactions," on that basis, denies them.  Apple denies the remaining allegations in Paragraph 90.

91.     Apple denies the allegations in Paragraph 91.

92.     Apple denies the allegations in Paragraph 92.

93.     Apple denies the allegations in Paragraph 93.

94.     Apple admits that there are over a million apps available through the App Store. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 94.

95.     Apple denies the allegations in Paragraph 95.

14

1    96.    Apple denies the allegations in Paragraph 96.

2    97.    Apple admits that it has previously argued that app developers are direct purchasers

3    of distribution services from Apple.  Except to the extent expressly admitted, Apple denies the

4    allegations in Paragraph 97.

5    98.    Apple admits that Paragraph 98 selectively quotes the cited brief, which speaks for

6    itself.  Apple also admits that it reviews iOS apps for malware and similar issues.  Except to the

7    extent expressly admitted, Apple denies the allegations in Paragraph 98.

8    99.    Apple admits that Paragraph 99 selectively quotes the cited brief, which speaks for

9    itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 99.

10   100.   Apple admits that Paragraph 100 selectively quotes the cited brief, which speaks

11   for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 100.

12   101.   Apple admits that Paragraph 101 selectively quotes the cited brief, which speaks

13   for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 101.

14   102.   Apple admits that Paragraph 102 selectively quotes the cited briefs, which speak

15   for themselves.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph

16   102.

17   103.   Apple admits that Paragraph 103 selectively quotes the cited brief, which speaks

18   for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 103.

19   104.   Apple admits that Paragraph 104 quotes *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1525

20   (2019), which speaks for itself. Except to the extent expressly admitted, Apple denies the

21   allegations in Paragraph 104.

22   **INTERSTATE TRADE AND COMMERCE**

23   105.   To the extent that the allegations in Paragraph 105 are legal conclusions and

24   characterizations, no responsive pleading is required.  Insofar as any response is required, Apple

25   admits that it sells its distribution services to developers across state lines.  Apple denies the

26   remaining allegations in Paragraph 105.

27

28

15

1

**RELEVANT MARKET**

2      106.    To the extent that the allegations in Paragraph 106 are legal conclusions and

3   characterizations, no responsive pleading is required.  Insofar as any response is required, Apple

4   denies the allegations in Paragraph 106.

5      107.    Apple denies the allegations in Paragraph 107.

6      108.    Apple denies the allegations in Paragraph 108.

7      109.    Apple denies the allegations in Paragraph 109.

8      110.    Apple admits that it has previously argued that it sells app distribution services to

9   iOS app developers.  Except to the extent expressly admitted, Apple denies the allegations in

10   Paragraph 110.

11      111.    Apple denies the allegations in Paragraph 111.

12

**CLASS ALLEGATIONS**

13      112.    Apple admits that Plaintiffs purport to bring this action as a putative class action

14   pursuant to Fed. R. Civ. P. 23(b)(1), (2), and (3).  Apple denies the remaining allegations in

15   Paragraph 112, and denies the existence of an alleged class.

16      113.    Apple admits that Plaintiffs purport to bring this action as a putative class action on

17   behalf of themselves and others alleged to be similarly situated, and that Plaintiffs propose to act

18   as representatives of the purported class.  Apple denies the remaining allegations in Paragraph 113,

19   and denies the existence of an alleged class as described in this paragraph.

20      114.    Apple admits that Plaintiffs purport to bring this action as a putative class action on

21   behalf of themselves and others alleged to be similarly situated, and that Plaintiffs propose to act

22   as representatives of the purported class.  Apple denies the remaining allegations in Paragraph 114,

23   and denies the existence of an alleged class as described in this paragraph.

24      115.    Apple denies the existence of the alleged classes and denies the allegations in

25   Paragraph 115.

26      116.    Apple denies the existence of the alleged class and thus denies the allegations in

27   Paragraph 116 and its subparts.

28

16

117.    Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 117.

118.    Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 118.

119.    Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 119.

120.    Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 120.

121.    To the extent that the allegations in Paragraph 121 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 121.

## APPLICABILITY OF CALIFORNIA LAW

122.    Apple avers that its Apple Developer Program License Agreement attached as Exhibit B to the Complaint speaks for itself.  Except to the extent expressly admitted, Apple denies the allegations in Paragraph 122.

123.    Apple denies the allegations in Paragraph 123.

## CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE SHERMAN ACT –**
**MONOPOLIZATION/MONOPSONIZATION**
**(15 U.S.C. § 2)**

124.    Apple reasserts and hereby incorporates by reference its responses to Paragraphs 1 through 123, as though fully set forth herein.

125.    Apple admits that Plaintiffs purport to bring this federal law claim on their own behalf and on behalf of each member of the alleged class.  Apple denies the remaining allegations in Paragraph 125, and denies the existence of the alleged class.

126.    Apple denies the allegations in Paragraph 126.

127.    Apple denies the allegations in Paragraph 127.

128.    Apple denies the allegations in Paragraph 128.

17

129.   To the extent that the allegations in Paragraph 129 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 129.

130.   Apple denies the allegations in Paragraph 130.

131.   Apple denies the allegations in Paragraph 131.

132.   Apple denies the allegations in Paragraph 132.

133.   Apple denies the allegations in Paragraph 133.

134.   Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 134 and, on that basis, denies them.  Apple admits that the second sentence of Paragraph 134 sets forth the relief that Plaintiffs purport to seek.  Apple denies that Plaintiffs are entitled to any such relief and denies the remaining allegations in Paragraph 134.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE SHERMAN ACT – ATTEMPTED**
**MONOPOLIZATION/MONOPSONIZATION**
**(15 U.S.C. § 2)**

135.   Apple reasserts and hereby incorporates by reference its responses to Paragraphs 1 through 134, as though fully set forth herein.

136.   Apple admits that Plaintiffs purport to bring this federal law claim on their own behalf and on behalf of each member of the alleged class.  Apple denies the remaining allegations in Paragraph 136, and denies the existence of the alleged class.

137.   Apple denies the allegations in Paragraph 137.

138.   Apple denies the allegations in Paragraph 138.

139.   Apple denies the allegations in Paragraph 139.

140.   Apple denies the allegations in Paragraph 140.

141.   Apple denies the allegations in Paragraph 141.

142.   Apple denies the allegations in Paragraph 142.

143.   Apple denies the allegations in Paragraph 143.

144.   Apple denies the allegations in Paragraph 144.

18

1    145.    Apple denies the allegations in Paragraph 145.

2    146.    Apple lacks knowledge or information sufficient to form a belief as to the truth of

3    the allegations in the first sentence of Paragraph 146 and, on that basis, denies them.  Apple admits

4    that the second sentence of Paragraph 146 sets forth the relief that Plaintiffs purport to seek.  Apple

5    denies that Plaintiffs are entitled to any such relief and denies the remaining allegations in

6    Paragraph 146.

7
8
### THIRD CAUSE OF ACTION
### VIOLATION OF THE UNFAIR COMPETITION ACT
### (CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*)

9    147.    Apple reasserts and hereby incorporates by reference its responses to Paragraphs 1

10   through 146, as though fully set forth herein.

11   148.    Apple admits that Plaintiffs purport to bring this claim on their own behalf and on

12   behalf of each member of the alleged classes.  Apple denies the remaining allegations in Paragraph

13   148, and denies the existence of the alleged classes.

14   149.    To the extent that the allegations in Paragraph 149 are legal conclusions and

15   characterizations, no responsive pleading is required.  Insofar as any response is required, Apple

16   avers that Cal. Bus. & Prof. Code §§ 17200 *et seq.* speaks for itself, and denies the allegations in

17   Paragraph 149.

18   150.    Apple denies the allegations in Paragraph 150.

19   151.    Apple avers that its Apple Developer Agreement attached as Exhibit A to the

20   Complaint speaks for itself.  Apple denies the remaining allegations in Paragraph 151.

21   152.    To the extent that the allegations in Paragraph 152 are legal conclusions and

22   characterizations, no responsive pleading is required.  Insofar as any response is required, Apple

23   lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

24   Paragraph 152 and, on that basis, denies them.

25   153.    Apple denies the allegations in Paragraph 153.

26   154.    Apple denies the allegations in Paragraph 154.

27   155.    Apple denies the allegations in Paragraph 154.

28

1   156.   Apple denies the allegations in Paragraph 156 and its subparts.

2   157.   Apple denies the allegations in Paragraph 157.

3   158.   Apple admits that Paragraph 158 sets forth the relief that Plaintiffs purport to seek.

4   Apple denies that Plaintiffs are entitled to any such relief and denies the remaining allegations in

5   Paragraph 158.

6   159.   Apple lacks knowledge or information sufficient to form a belief as to the truth of

7   the allegations in the first sentence of Paragraph 159 and, on that basis, denies them.  Apple admits

8   that the second sentence of Paragraph 159 sets forth the relief that Plaintiffs purport to seek.  Apple

9   denies that Plaintiffs are entitled to any such relief and denies the remaining allegations in

10  Paragraph 159.

11

12  The remainder of the Complaint consists of Plaintiffs' prayer for relief to which no

13  response is required.  To the extent a response is required, Apple denies that Plaintiffs are entitled

    to the relief sought in the Complaint or to any relief whatsoever.

14
                              **AFFIRMATIVE DEFENSES**
15
    Pursuant to Federal Rule of Civil Procedure 8(c), Apple, without waiver, limitation, or
16
    prejudice, hereby asserts the following affirmative defenses:
17

18                          **First Affirmative Defense**

19                      **(Failure to State a Cause of Action)**

20  The Complaint and the purported causes of action contained therein fail, in whole or in

21  part, to state a claim for which relief can be granted.

22                          **Second Affirmative Defense**

23                     **(Legitimate Business Justifications)**

24  Apple alleges that, without admitting any liability whatsoever, at all times its conduct was

25  reasonable and that its actions were undertaken in good faith to advance legitimate business

26  interests and had the effect of promoting, encouraging, and increasing competition.

27

28
                                    20

1

**Third Affirmative Defense**

2

**(No Injury or Damages)**

3      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have sustained no injury

4  in fact or antitrust injury or damages proximately caused by an act or omission by Apple.

5

**Fourth Affirmative Defense**

6

**(No Entitlement to Injunctive Relief)**

7      Plaintiffs are not entitled to injunctive relief because any alleged injury to Plaintiffs is not

8  immediate or irreparable and Plaintiffs have an adequate remedy at law.

9

**Fifth Affirmative Defense**

10

**(Causation)**

11      Plaintiffs' claims are barred, in whole or in part, because of a lack of causation, including

12  without limitation because any injuries or damages that may have been suffered were caused solely

13  or proximately by the intervening and superseding acts and omissions of others over whom Apple

14  has no power, authority, or control.

15

**Sixth Affirmative Defense**

16

**(Foreign Trade Antitrust Improvements Act)**

17      Plaintiffs' claims are barred, in whole or in part, by the Foreign Trade Antitrust

18  Improvements Act, 15 U.S.C. § 6a, insofar as Plaintiffs make claims or seek damages for

19  transactions or alleged conduct involving trade or commerce with foreign nations outside U.S.

20  jurisdiction.

21

**Seventh Affirmative Defense**

22

**(Ratification/Agreement/Acquiescence/Consent)**

23      Plaintiffs' claims are barred, in whole or in part, because of ratification, agreement,

24  acquiescence, authorization or consent to Apple's alleged conduct.

25

**Eighth Affirmative Defense**

26

**(Statute of Limitations)**

27      Plaintiffs' claims are barred in whole or in part by the statute of limitations applicable to

28

their respective claims.

## Ninth Affirmative Defense

### (Lack of Standing)

Plaintiffs' claims are barred, in whole or in part, insofar as Plaintiffs lack standing to assert any or all of the claims alleged in the Complaint individually, in a representative capacity, or on behalf of the general public.

## Tenth Affirmative Defense

### (Failure to Join an Indispensable Party)

Plaintiffs have failed to join all parties necessary for a just adjudication of their purported claims.

## Eleventh Affirmative Defense

### (Duplicative Recovery/Unjust Enrichment)

The claims of the Plaintiffs and the alleged classes are barred in whole or in part to the extent that they seek or would recover damages or other relief that would duplicate in whole or part damages or relief sought or awarded in this action or in any other action consolidated therewith or related thereto, or would result in unjust enrichment to Plaintiffs.

## Twelfth Affirmative Defense

### (Excessive Fines)

Plaintiffs' claims are barred, in whole or in part, because they seek to impose an excessive fine within the meaning of the Excessive Fines and Penalties Clause of the Eighth Amendment to the United States Constitution.

## Thirteenth Affirmative Defense

### (Due Process)

Plaintiffs' California state law claims are barred, in whole or in part, by the Due Process Clause of the United States Constitution, insofar as Plaintiffs make claims based on alleged conduct occurring outside the state of California.

1

**Fourteenth Affirmative Defense**

2

**(Improper Class Action)**

3      Plaintiffs' claims, and those of the purported classes, are barred in whole or in part, because

4  the action is not properly maintainable as a class action as alleged by Plaintiffs.

5

**Fifteenth Affirmative Defense**

6

**(Undamaged Class Members)**

7      To the extent Plaintiffs and the alleged classes seek relief on behalf of purported class

8  members who have not suffered any damages, the Complaint and each of its claims for relief

9  therein violate Defendant's rights to due process under the United States Constitution.

10

**Sixteenth Affirmative Defense**

11

**(Limitation of Liability)**

12      Plaintiffs are parties to one or more agreements with Apple that bar their claims, in whole

13  or in part, because of applicable limitation of liability provisions contained therein.

14

**Seventeenth Affirmative Defense**

15

**(Indemnity)**

16      Plaintiffs are parties to one or more agreements in which they have agreed to indemnify

17  Apple for any and all claims, losses, liabilities, damages, taxes, expenses, and costs arising from

18  or related to Plaintiffs' claims in the Complaint.

19

**Eighteenth Affirmative Defense**

20

**(Mitigation of Damages)**

21      Plaintiffs' claims are barred, in whole or in part, by their failure to mitigate damages, if

22  any.

23

**Nineteenth Affirmative Defense**

24

**(Protected Rights – Noerr-Pennington)**

25      Plaintiffs' claims are barred, in whole or in part, insofar as they challenge the exercise of

26  rights protected by the First Amendment of the United States Constitution and by the *Noerr-*

27  *Pennington* doctrine.

28

23

1

**Twentieth Affirmative Defense**

2

**(Protected Rights – Intellectual Property & Other Statutes)**

3       Plaintiffs' claims are barred, in whole or in part, insofar as Plaintiffs make claims or seek

4    remedies that conflict with Apple's rights under intellectual property law or other statutes.

5

**Twenty-First Affirmative Defense**

6

**(Protected Rights – Contract)**

7       Plaintiffs' claims are barred, in whole or in part, insofar as Plaintiffs make claims or seek

8    remedies that conflict with, are barred by, or waived by the terms of Plaintiffs' agreements with

9    Apple.

10

**Twenty-Second Affirmative Defense**

11

**(Right To Jury Trial)**

12       As a matter of constitutional right and substantive due process, Defendant would be entitled

13    to contest by jury trial its liability for damages to any particular individual plaintiffs, even if the

14    representative(s) of the putative classes prevail on their claims.

15

**Twenty-Third Affirmative Defense**

16

**(Laches/Waiver/Estoppel)**

17       Plaintiffs' claims are barred, in whole or in part, by the doctrines of laches, waiver and/or

18    estoppel.

19

**Twenty-Fourth Affirmative Defense**

20

**(Unenforceability/Illegality)**

21       Plaintiffs' claims are barred, in whole or in part, by the doctrine of unenforceability and/or

22    illegality, including without limitation unenforceability as against public policy.

23

**Twenty-Fifth Affirmative Defense**

24

**(No Entitlement to Interest, Attorney's Fees or Costs)**

25       Plaintiffs are not entitled to interest, attorney's fees, or costs in connection with this action.

26

27

28

24

1

**Additional Affirmative Defenses**

2          Apple presently has insufficient knowledge or information to determine whether it may

3   have additional, as yet unstated, affirmative defenses.  Apple has not knowingly and intentionally

4   waived any applicable affirmative defenses and reserves the right to assert additional affirmative

5   defenses as they become known to it through discovery in this matter.  Apple reserves the right to

6   amend this Answer to add, delete, or modify defenses based upon legal theories that may be or

7   will be divulged through clarification of Plaintiffs' Complaint, through discovery, or through

8   further legal analysis of Plaintiffs' position in this litigation.

9

10

11   Dated:  November 11, 2019                    Respectfully submitted,

12                                               GIBSON, DUNN & CRUTCHER LLP

13

14
                                                By    /s/  Cynthia E. Richman
15                                                     Theodore J. Boutrous, Jr.
                                                       Richard J. Doren
16                                                     Daniel G. Swanson
                                                       Cynthia E. Richman
17                                                     Melissa Phan

18                                                     Attorneys for Defendant APPLE INC.

19

20

21

22

23

24

25

26

27

28