THEODORE J. BOUTROUS JR., SBN 132099
tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

VERONICA S. MOYÉ (Texas Bar No. 24000092; *pro hac vice*)
vlewis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

MARK A. PERRY, SBN 212532
mperry@gibsondunn.com
CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

ETHAN D. DETTMER, SBN 196046
edettmer@gibsondunn.com
ELI M. LAZARUS, SBN 284082
elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

DONALD R. CAMERON, *et al.*,

Plaintiffs

v.

APPLE INC.,

Defendant.

Case No. 4:19-cv-03074-YGR

**DEFENDANT APPLE INC.'S MOTION FOR SANCTIONS**

Hon. Thomas S. Hixson

Date: February 11, 2021
Time: 10:00 AM
Location: San Francisco Courthouse
450 Golden Gate Avenue
Courtroom G, 15th Floor


REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 11, 2021 at 10:00 AM, or as soon thereafter as the matter may be heard before the Honorable Thomas S. Hixson, in Courtroom G, Defendant Apple Inc. will, and hereby does, move this Court, pursuant to Rule 37(b)(2) and 16(f) of the Federal Rules of Civil Procedure, for an order sanctioning Developer Plaintiffs' Counsel, Benjamin Siegel, for violation of the Protective Order governing this action.

At a public hearing on December 15, 2020, Mr. Siegel recited information derived from transactional data produced by Apple and designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Counsel for Apple contacted Mr. Siegel after the hearing and requested that he provide the basis for his statement, and Mr. Siegel refused, instead citing public sources that he claimed independently supported the statement. Apple subsequently moved for an order sealing those lines of the transcript of the December 15 hearing that reflected this information. Based on this disregard for the confidentiality of sensitive documents ordered to be kept confidential by this Court, Apple moves for an order (a) prohibiting Mr. Siegel from viewing documents designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in the future, and (b) awarding Apple its expenses and attorneys' fees in bringing and litigating this motion, as well as the administrative motion to seal the transcript.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Ethan Dettmer and attached exhibits, the other documents on file in this action, any oral argument of counsel at the hearing on the Motion, and any matters of which the Court may take judicial notice.

Dated: January 7, 2021

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Veronica S. Moyé*
Veronica S. Moyé

Attorneys for Defendant APPLE INC.


REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iv

INTRODUCTION ........ 1

BACKGROUND ........ 2

A. The Protective Order ........ 2

B. Mr. Siegel's Violation of the Protective Order ........ 3

DISCUSSION ........ 5

A. Mr. Siegel Violated The Protective Order ........ 5

B. Precluding Mr. Siegel From Viewing Highly Confidential Documents Is An Appropriate Sanction ........ 8

C. Fees And Expenses Should Be Awarded ........ 10

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

## Cases

*Am. Unites for Kids v. Lyon*, No. 15-CV-2124, 2015 WL 94112099 (C.D. Cal. Dec. 21, 2015) .......... 7

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) .......... 5

*Life Techs. Corp. v. Biosearch Techs., Inc.*, No. 12-CV-852, 2012 WL 1600393 (N.D. Cal. May 7, 2012) .......... 5

*Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541 (N.D. Cal. 2009) .......... 5

*Penk v. Or. State Bd. of Higher Educ.*, 816 F.2d 458 (9th Cir. 1987) .......... 5

*Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-CV-4238, 2020 WL 7398791 (N.D. Cal. Dec. 17, 2020) .......... 10

*United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906 (9th Cir. 1986) .......... 5

*Visto Corp. v. Seven Networks, Inc.*, No. 03-CV-333, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006) .......... 7, 9

*Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932 (9th Cir. 1993) .......... 5

*Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585 (9th Cir. 1983) .......... 5, 8

## Rules

Fed. R. Civ. P. 16(f)(1) .......... 5

Fed. R. Civ. P. 37(b)(2)(C) .......... 5, 10

## Other Authorities

[REDACTED] .......... 6

[REDACTED] .......... 6

[REDACTED] ........................................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In a hearing before Magistrate Judge Hixson on December 15, 2020, Ben Siegel, counsel for the developer plaintiffs in *Cameron v. Apple Inc.*, violated the Court-ordered Protective Order and disclosed information designated by Apple in discovery as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." In a letter exchange following the hearing, Apple first requested that Mr. Siegel provide the factual basis for his statement. Mr. Siegel did not do so. Following receipt of Mr. Siegel's nonresponsive letter, Apple promptly moved to seal the relevant portion of the transcript and requested that Mr. Siegel support the motion to seal and advise the Court of his error in the hearing before Magistrate Judge Hixson on December 29. Although Mr. Siegel did not oppose the motion to seal, he has continued to refuse to acknowledge the violation and take responsibility for his actions. Apple therefore is forced to seek relief from the Court to enforce the protective order.

Apple takes protective orders entered by this Court seriously. It is a large company with numerous business relationships and proprietary trade secrets, and it is a frequent litigant in this Court. Protective orders like the one entered here are necessary to give Apple confidence that litigation against it will not be used as a backdoor means of obtaining and misusing this sensitive information. But those orders have effect only to the extent they are meaningfully enforced.

Mr. Siegel violated the Protective Order, and refuses to acknowledge that fact. There are consequences for violation of a Court order. Apple submits that the most appropriate recourse here is that Mr. Siegel be precluded from viewing materials designated by Apple as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in the future. That sanction is proportional to the misconduct—Mr. Siegel has shown an inability to comply with the requirements of the Protective Order and a refusal to even acknowledge a clear violation of that order, and it is therefore appropriate that he be prevented from violating the Protective Order again. Because of the public nature of the proceedings—including that they are broadcast over Zoom and can be recorded by interested members of the public—there is no true remedy for Mr. Siegel's breach, but a measured sanction will protect Apple's confidential information going forward.

Such a targeted sanction will not prejudice the Developer Plaintiffs. Plaintiffs have sought and

received broad and extensive discovery, including data on issues only loosely related to the claims in this case, making the risk to Apple all the greater. Mr. Siegel is only one of numerous attorneys representing the Developer Plaintiffs in this action. Any factual issues requiring the discussion and analysis of highly confidential documents can be handled by any one of Mr. Siegel's colleagues, without interfering with Developer Plaintiffs' ability to present an effective case.

Apple therefore respectfully requests that (1) Mr. Siegel be precluded from viewing or handling materials designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," and (2) Apple be reimbursed for its reasonable attorneys' fees in filing and litigating this motion.

## BACKGROUND

### A. The Protective Order

On January 9, 2020, after negotiation and compromise by the parties, the Court approved and entered the parties' stipulated Protective Order governing the exchange of discovery in these related cases. *See* Dettmer Decl. Ex. A ("Protective Order"); *see also* Dkt. 85. The Protective Order sets forth several categories of confidential materials, including "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" ("HC-AEO"). *Id.* § 2.2, 2.8. Information designated by the producing party as HC-AEO is subject to strict protective measures. Specifically, when a party receives information designated by the producing party as HC-AEO, the receiving party may disclose that information only to a select and limited group of individuals, including outside counsel of record, certain designated in-house counsel, and experts. *See id.* § 7.3. All persons receiving and viewing information designated as HC-AEO—except the Court and its staff—must sign an "Acknowledgement and Agreement to Be Bound," *id.*, which requires the signatory to agree to comply with and be bound by all of the terms of the Protective Order, *id.* at Ex. A. There is no provision in the Protective Order permitting recipients of information designated as HC-AEO to disclose such information in open court without prior authorization—in other words, "the general public" is not among the groups of people who are permitted to view information designated as HC-AEO.

The Protective Order does, however, give parties the opportunity to contest the designation of information as HC-AEO. Protective Order § 6. The party challenging a confidentiality designation must "initiate the dispute resolution process by providing written notice of each designation it is

challenging and describing the basis for each challenge." *Id.* § 6.2. The parties then must confer and attempt to resolve the conflict. *Id.* If the parties do not reach an agreement, they may bring the dispute before Magistrate Judge Hixson for resolution. *Id.* § 6.3.

The Protective Order also includes a provision governing the "Unauthorized Disclosure of Protected Material." Protective Order § 1 (emphasis and capitalization omitted). That provision requires a receiving party that has disclosed confidential information in violation of the Protective Order to "immediately": (a) notify the producing party in writing, (b) use its best efforts to retrieve all unauthorized copies of the confidential material, (c) inform the person to whom the unauthorized disclosures were made of the terms of the Protective Order, and (d) request that such persons execute the "Acknowledgement and Agreement to Be Bound." *Id.*

**B. Mr. Siegel's Violation of the Protective Order**

On December 15, 2020, Magistrate Judge Hixson held a hearing via Zoom to address certain discovery issues regarding document production and deposition limits. During the hearing, Magistrate Judge Hixson asked the parties to address a dispute regarding the production of certain transactional data. *See* Dettmer Decl. Ex. B, at 71:15–24 ("Dec. 15 Hr'g Tr."). This transactional data consists of "records of sales of apps, of downloads of free apps, in-app purchases, subscriptions." *Id.* at 72:21–22. Apple initially produced a one-hundred-thousand transaction sample of this data, *id.* at 72:8–12, and later a one-hundred-*million* transaction sample, *id.* at 73:9–12. This larger sample of transactional data was produced to Class Plaintiffs in September 2020 "[p]ursuant to the Parties' January 9, 2020 Stipulated Protective Order," and was expressly designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY under the same Stipulated Protective Order." Dettmer Decl. Ex. C.

One outstanding dispute between the parties, however, was whether Apple must produce a particular field in the data titled "proceeds reason," which, according to Mr. Siegel "indicates both which 15 percent commissions are pursuant to Apple's standard policies and which are negotiated pursuant to individual negotiated agreements." Dec. 15 Hr'g Tr. at 79:7–10. After outlining his belief as to the general utility of the data, however, Mr. Siegel went further, providing specific examples—according to his interpretation of the data—of *specific* commission rates paid by *specific* business partners of Apple during *specific* periods of time. *Id.* at 79:19–21. Mr. Siegel had obtained that


REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

information from the transactional data produced by Apple and designated as HC-AEO, and his prefatory comment indicated that information was the source of his statement.

On December 20, 2020, counsel for Apple sent Mr. Siegel a letter requesting that he provide by noon on December 21 the basis for his assertions in court regarding the commission rates for the particular business partners. *See* Dettmer Decl. Ex. D. Mr. Siegel responded three days later, on December 23, but did not disclose the basis for his statement. *See* Dettmer Decl. Ex. E. Instead, he said he was "puzzled" by the request, and reported his (inaccurate) belief that the confidential information had "been reported in the press." *Id.* The subtext of Mr. Siegel's letter was plain—he understood that he had disclosed HC-AEO information, and sought to minimize the seriousness of his breach by purporting to cite sources indicating the information was already public.

Apple responded the next day in two ways. First, Apple filed an administrative motion to seal the relevant portion of the transcript. Dkt. 211. Second, counsel for Apple sent Mr. Siegel a second letter, objecting that he had not responded to Apple's inquiry and pointing out that his statement before the Court was clearly in the context of disclosing details from the transactional data. *See* Dettmer Decl. Ex. F. Counsel for Apple advised that it was moving to seal the relevant portion of the transcript, and explained that if Mr. Siegel did not file a statement in support of that motion by December 29 and explain the violation to Magistrate Judge Hixson on the same day, then Apple would take appropriate action to protect its rights. *Id.* at 3.

On December 29, 2020, Plaintiffs filed a statement in response to Apple's administrative motion to seal, saying that although "Plaintiffs believe the factual information [noted by Apple] has been publicly reported," Plaintiffs "do not oppose redaction" of the transcript or "the other sealing requests made by Apple on page 2 of its Administrative Motion." Dkt. 213, at 2. The Court granted the motion on December 30, 2020. Dkt. 216.

At a hearing on December 30, 2020, the Court instructed Apple that any motion for sanctions should be brought before it (and not Judge Gonzalez Rogers). *See* 12/30/2020 Hr'g Tr. at 34:10–12. The parties met and conferred on January 4, but did not reach agreement. Dettmer Decl. ¶ 34. They thereafter filed a joint letter brief, *see* Dkt. 223, and the Court directed Apple to file its motion for sanctions as a separate motion pursuant to Local Civil Rule 7, *see* Dkt. 226.

## DISCUSSION

"Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order . . . ." *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. 12-CV-852, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012) (citation omitted); *see also Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934–35 (9th Cir. 1993) ("Rule 37(b)(2) should provide comprehensively for enforcement of all [discovery] orders, including Rule 26(c) protective orders." (quotation marks omitted)). "A court need not find bad faith before imposing sanctions for violations of Rule 37." *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009) (citation omitted); *see also Penk v. Or. State Bd. of Higher Educ.*, 816 F.2d 458, 466 (9th Cir. 1987). A court may also issue sanctions under Rule 16 where "a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). And courts retain the inherent authority to sanction parties or counsel before them where there is "willful disobedience of a court order" or there is "bad faith or conduct tantamount to bad faith." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (quotation marks omitted).

Rule 37 "authorizes a district court to impose a wide range of sanctions if a party fails to comply with a discovery order." *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986). Whatever sanction selected, however, (1) must be "just," and (2) must "specifically relate to the particular claim at issue in the order." *Id.* A district court considering sanctions may also "consider the deterrent value of an order of dismissal on future litigants as well as on the parties." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). Rule 37 provides also that "the court *must order* the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

### A. Mr. Siegel Violated The Protective Order

There is no serious question that Mr. Siegel violated the terms of the Protective Order. He disclosed materials designated as HC-AEO to individuals—namely, any member of the general public who tuned into the Zoom proceedings—not authorized to receive those materials under the Protective Order. That is as clear a violation of the Protective Order as one can imagine.

Yet in the face of such an unambiguous breach, Mr. Siegel doubled down, insisting that the information he cited has already been reported in the press. *See* Dettmer Decl. Ex. E. That belated attempt to justify his misconduct fails.

*First*, the sources Mr. Siegel cites do not support his argument. [redacted] It is obvious that Mr. Siegel hunted these sources down *after* counsel for Apple contacted him and demanded an explanation for his statement—as described below, the transcript makes clear that he was discussing his and his experts' interpretation of the transactional data that was produced pursuant to the protective order.

*Second*, it is irrelevant whether the same or similar information was available through public channels. Mr. Siegel's statement was plainly made on the basis of his viewing of the confidential transactional data:

> With proceeds reasons, if you know that the 15 percent is pursuant to that variable, then it's because of the descriptions issue. Our experts have looked in the sample data, and we've seen many examples in just the data, like 140 examples where—with a one-time IAP charge of 15 percent, for example to purchase a basketball game.

Dec. 15 Hr'g Tr. at 79:13–18. He then proceeded to discuss that very same data, disclosing details about Apple's business relationships. *Id.* at 79:19–21. Mr. Siegel therefore disclosed information designated by Apple as HC-AEO in violation of the Protective Order.

If Mr. Siegel believed that the materials should not have been designated HC-AEO because they were already publicly available, his recourse was through the Protective Order. The Protective

Gibson, Dunn & Crutcher LLP

Order sets forth a procedure for challenging confidentiality designations, directing the challenging party to provide "written notice of each designation it is challenging and describing the basis for each challenge," Protective Order § 6.2, meet and confer with the opposing party, *id.*, and then, if no agreement is reached, to seek resolution from Magistrate Judge Hixson, *id.* § 6.3. The Protective Order contemplates no measure of "self-help" for attorneys dissatisfied with the designations of the opposing party, and numerous cases have recognized the impropriety of such efforts. *See Am. Unites for Kids v. Lyon*, No. 15-CV-2124, 2015 WL 94112099, at *9 (C.D. Cal. Dec. 21, 2015) ("[The party's] resort to 'self-help' subverts the Court's orders and the orderly administration of justice."); *Visto Corp. v. Seven Networks, Inc.*, No. 03-CV-333, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006) ("[A] lawyer operating under the terms of a Protective Order issued by this court has no right to resort to self-help when he or she views the provisions of that order to be burdensome or onerous."). Whatever Mr. Siegel's view about Apple's designation of the transactional data as HC-AEO, he is not entitled to freely disclose confidential information unless and until he follows the procedures in the Protective Order for de-designation.

Section 3 of the Protective Order does not aid Mr. Siegel. That section provides that "the protections conferred by this Stipulation and Order do not cover . . . any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order." Protective Order § 3. Section 3 does not apply on its own terms because, as noted above, the information disclosed was not in the public domain. Moreover, Section 3 merely makes clear that information cannot properly be deemed confidential by a producing party if it is already in public domain. That uncontroversial and commonsense limitation does not empower the receiving party to disclose confidential information in open court and then seek to excuse that breach by seeking out public sources after the fact. Mr. Siegel's conduct in this respect proves the point—by his interpretation, apparently the only way to determine whether confidential information has been made public is to disclose it in court and require the opposing party to seek sanctions. Only then will the confidentiality of the information be litigated. That is not a tenable or sensical reading of the Protective Order; rather, it is an attempt to deflect responsibility for the breach.

**B. Precluding Mr. Siegel From Viewing Highly Confidential Documents Is An Appropriate Sanction**

Because Mr. Siegel violated the Protective Order, the only question is what response is appropriate. Apple seeks only a measured and proportionate penalty—Mr. Siegel, one of several attorneys representing the Developer Plaintiffs in these actions, should no longer have access to materials designated by Apple as HC-AEO. He has demonstrated an inability to abide by the restrictions of the Protective Order, and it is ultimately Apple that is forced to pay the price for that transgression. And even after being advised of his violation, Mr. Siegel has refused to acknowledge his breach.

In truth, there is no sanction that can adequately "remedy" the unlawful disclosure here. This Court recognized as much in the hearing on December 30, noting that if an attorney discusses HC-AEO materials on the record, "the hearing is public," and "[s]o even sealing the transcript isn't a good enough remedy." 12/30/2020 Hr'g Tr. at 34:16–17. Indeed, the Court's proceedings are not only public, but broadcast over the internet via Zoom. While the Court has restricted members of the public from streaming or recording hearings, that has not stopped some individuals from rebroadcasting the Court proceedings. *See, e.g.*, https://www.youtube.com/watch?v=jqZluTDv4-Q; *see also* 10/19/2020 Hr'g Tr. at 45:1–13. But even while Mr. Siegel's breach cannot truly be remedied, precluding him from viewing HC-AEO documents will help protect against future violations of the Protective Order, and is no more onerous than necessary.

The requested sanction is appropriate also because it will provide important "deterrent value." *Wyle*, 709 F.2d at 589. These related cases implicate many sensitive and confidential documents. They also involve many attorneys from several different firms. Although much document production has already been completed, there will be additional discovery and merits hearings—including class certification argument and, potentially, a trial on the merits—at which counsel may wish to cite or quote confidential materials. A serious, but proportionate, sanction against Mr. Siegel will demonstrate to *all* attorneys the importance of adhering to the restrictions in the Protective Order without unduly burdening the Developer Plaintiffs or obstructing the administration of justice.

Similar sanctions were awarded in *Life Technologies*. 2012 WL 1600393. There, the receiving party's attorney forwarded documents designated by the producing party as "Outside Attorneys' Eyes

Only" to the CEO of his client. *Id.* at *1. The CEO thereafter disseminated copies of those documents to other parties and non-parties. *Id.* Upon realizing the error, the receiving party's attorney immediately instructed the client's CEO to cease use of the documents and destroy all copies of the documents. *Id.* The CEO did so and instructed those individuals to whom he had disseminated the materials to do the same. *Id.* at *2. After the issue was disclosed to the producing party, the producing party moved for sanctions, seeking, among other things, to preclude the receiving party's attorney from further access to confidential documents. *Id.* at *3–5. The district court granted the relief, explaining that "[b]arring [the attorney] from further access to AEO documents in this case is warranted under these circumstances." *Id.* at *11.

Likewise, in *Visto Corp.*, the court prohibited two attorneys from viewing confidential documents where one attorney had used confidential materials in the prosecution of a related patent, and the other had shared the documents with the client after redacting the information she believed to be confidential. 2006 WL 3741891, at *8. With respect to the second attorney who had attempted to redact the confidential information, the district court acknowledged that the attorney had "operated in good faith," but nonetheless held that "a lawyer operating under the terms of a Protective Order issued by this court has no right to resort to self-help when he or she views the provisions of that order to be burdensome or onerous." *Id.*

The circumstances here are even more worthy of sanctions. Unlike in *Life Technologies* and *Visto Corp.*, where the unauthorized recipients of the confidential materials could be readily identified and the materials returned, Mr. Siegel's disclosure in open court makes it impossible to determine who is now privy to the sensitive business information about Apple's partners that Mr. Siegel divulged. Nor can Apple have any assurance—through, for example, an execution of the Acknowledgment and Agreement to Be Bound—that any parties now in possession of HC-AEO information will not themselves further disclose the information to *additional* third parties. Apple's confidential information (and the confidential information of its business partners) is now in the ether, outside the control of Apple, Developer Plaintiffs, or the Court. Because of Mr. Siegel's actions, the cat is not only out of the bag, but has purchased a ticket and is on its way to the train station.

It bears repeating that the violation here was not technical or nuanced—Mr. Siegel recited

information that came directly from documents designated by Apple as HC-AEO. Mr. Siegel was surely aware that the information was designated as HC-AEO, because counsel for Apple explicitly said so in the transmittal email *addressed to Mr. Siegel*. *See* Dettmer Decl. Ex. B. Counsel for Apple even referenced the Protective Order specifically for the avoidance of any doubt as to the effect of that designation. *See id.* If such deliberate measures are insufficient to prevent Mr. Siegel—whether on purpose or inadvertently—from disclosing HC-AEO information, it is not clear what measures short of those proposed by Apple would suffice. Even now, Mr. Siegel refuses to acknowledge his breach of the Protective Order.

The confidentiality of Apple's information is of utmost importance to the company, and that is doubly so where the information implicates the operations of Apple's business partners, who expect Apple to keep the terms of their relationship in confidence. Mr. Siegel's actions have undermined the force of the Court's Protective Order. To restore the effectiveness of the order, counsel must be on notice that their actions have consequences. Precluding Mr. Siegel from viewing HC-AEO materials will help protect against future violations and send a measured and appropriate message.

**C. Fees And Expenses Should Be Awarded**

Rule 37 provides that instead of or in addition to other sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). When choosing which entity—the party or the attorney—to sanction, courts should "follow an approach designed to solve the management problem. If the fault lies with the attorneys, that is where the impact of sanction should be lodged." *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-CV-4238, 2020 WL 7398791, at *5 (N.D. Cal. Dec. 17, 2020) (quotation marks omitted).

Mr. Siegel is plainly the individual responsible for the breach of the Protective Order. Any award of attorneys' fees should therefore be issued against Mr. Siegel and his firm, and not deducted out of any award or settlement the Developer Plaintiffs may obtain in this suit. Moreover, there is no credible claim that Mr. Siegel's violation of the Protective was "substantially justified"—as set forth above, even if the confidential information disclosed by Apple had in fact been reported in the press,

Mr. Siegel's conduct still was in clear breach of the Protective Order. Any claim otherwise is merely after-the-fact rationalization.

Because Apple seeks fees in connection with the litigation of this sanctions motion, as well as for the administrative motion to seal and relating correspondence, Apple requests that if the Court orders an award of attorneys' fees, Apple be given an opportunity at that time to submit a supplemental filing setting forth its reasonable expenses, supported by appropriate declarations.

**CONCLUSION**

For the foregoing reasons, Apple respectfully requests that the Court enter an order: (1) prohibiting Mr. Siegel from viewing documents designated by Apple as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," and (2) directing Mr. Siegel's firm to pay for Apple's expenses in preparing and litigating this motion, as well as the administrative motion to seal the transcript.

Respectfully submitted,

Dated: January 7, 2021

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Veronica S. Moyé*
Veronica S. Moyé

Attorneys for Defendant APPLE INC.



REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED