UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DONALD R. CAMERON, *et al.*, | Case No. 4:19-cv-03074-YGR-TSH |
| Plaintiffs, | **JOINT DISCOVERY LETTER BRIEF REGARDING MOTION FOR SANCTIONS** |
| v. | |
| APPLE INC., | |
| Defendant. | |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

Pursuant to the Court's direction (12/30/20 Hr'g Tr. at 34:10–12), the parties in the above-captioned action respectfully submit this joint letter brief regarding Apple's proposed motion for sanctions.

Counsel for plaintiffs ("Developer Plaintiffs") and Apple Inc. ("Apple," together with Developer Plaintiffs, the "Parties")) have met and conferred telephonically and exchanged correspondence in a good-faith effort to resolve the outstanding dispute.  The Parties have been unable to reach agreement and therefore submit this joint letter.  The Parties can make additional exhibits available to the Court upon request.

Respectfully submitted,

| | |
|---|---|
| HAGENS BERMAN SOBOL SHAPIRO LLP | GIBSON DUNN & CRUTCHER LLP |
| /s/ *Benjamin J. Siegel* | /s/ *Veronica S. Moyé* |
| Benjamin J. Siegel | Veronica S. Moyé |
| *Counsel for Developer Plaintiffs* | *Counsel for Apple Inc.* |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**Apple's Position:**   In a hearing before Magistrate Judge Hixson on December 15, 2020, Ben Siegel, counsel for Developer Plaintiffs, violated the Protective Order previously entered by the Court by disclosing information designated by Apple in discovery as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  Apple seeks sanctions—pursuant to Federal Rules of Civil Procedure 16 and 37, and the Court's inherent authority—in the form of an order that (1) Mr. Siegel be precluded from viewing or handling materials designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," and (2) Apple be reimbursed for its reasonable attorneys' fees in filing and litigating this motion.

   **A.   Background of the Dispute**.  The parties stipulated to, and the Court entered, a Protective Order governing the exchange of discovery in these related cases.  *See* Dkt. 85 ("Protective Order").  A party that produces confidential materials may designate those materials HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY ("HC-AEO"). *Id.* § 2.8. Information designated as HC-AEO may not be disclosed by the receiving party except to certain defined and select individuals.  *See id.* § 7.3.  Information designated as HC-AEO may not be disclosed to the general public.  If a receiving party disagrees with a producing party's designation of materials as confidential, it may object by providing written notice to the producing party, and if the ensuing meet-and-confer is unsuccessful, it may seek relief from the Court.  *See id.* § 6.2.

   On December 15, 2020, the Court held a hearing via Zoom to address certain discovery issues regarding document production and deposition limits.  One issue discussed was the production of certain transactional data consisting of "records of sales of apps, of downloads of free apps, in-app purchases, [and] subscriptions." 12/15/2020 Hr'g Tr. at 72:21–22.  A sample of that transactional data was produced to Developer Plaintiffs in September 2020, and was designated by Apple as HC-AEO.  While urging the Court to order Apple to provide additional data fields in the transactional data, Mr. Siegel divulged information from that transactional data, including the commission rates that (based on his interpretation of the data) Apple charged specific business partners in the past.  *See id.* at 79:19–21.

   On December 20, 2020, Apple sent Mr. Siegel a letter requesting that he identify by December 21 the basis for his assertions regarding the commission rates.  Ex. D.  Mr. Siegel responded on December 23, but did not disclose the basis for his statement; instead, he cited press articles on somewhat related subjects (but which did not contain the information disclosed in open court). Ex. E.  Apple responded the next day by filing an administrative motion to seal the relevant portion of the transcript, which Plaintiffs did not oppose and which the Court granted on December 30, 2020.  *See* Dkt. 216.  Apple also replied to Mr. Siegel's letter on December 24, pointing out that his statement at the December 15 hearing had clearly been made in reliance on the confidential information Apple had provided and explaining that Apple would take appropriate steps to protect its rights if Mr. Siegel did not acknowledge and address his violation to the Court. Ex. F.  Neither Mr. Siegel nor his co-counsel has done so, including at the hearing on December 30.

   **B.   The Court Should Order An Appropriate Sanction.**  "Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order . . . ."  *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. 12-CV-852, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012).  "A court *need not find bad faith* before imposing sanctions for violations of Rule 37."  *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009) (emphasis added).  A court may also issue sanctions under Rule

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

16 where "a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). And courts retain the inherent authority to sanction parties or counsel before them where there is "willful disobedience of a court order" or there is "bad faith or conduct tantamount to bad faith." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (quotation marks omitted). Rule 37 provides also that "the court *must order* the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Mr. Siegel violated the Protective Order. He disclosed materials designated as HC-AEO to individuals—namely, members of the general public who viewed the Zoom proceedings—not authorized to receive those materials under the Protective Order. Mr. Siegel's statement was plainly made on the basis of his viewing of the confidential transactional data—he preceded his unauthorized disclosure by noting that his "experts have looked in the sample data," and had seen "many examples" of varying commission rates. Hr'g Tr. at 79:13–18. Developer Plaintiffs now insist that Section 3 of the Protective Order gives them cover for Mr. Siegel's disclosure of HC-AEO materials because, they say, the materials were already public. Protective Order § 3. Even if the premise of this argument were correct—and it is not—Section 3 merely makes clear that information cannot properly be deemed confidential by a producing party if it is already available in the public domain. But that does not mean a receiving party is entitled to unilaterally make a determination of whether confidential information is public and then disclose such information in open court. If Mr. Siegel believed that the transactional data—or some subset thereof—should not have been designated HC-AEO because it was already publicly available, his recourse was through the procedure for challenging confidentiality designations. Protective Order §§ 6.2–6.3. That procedure makes clear that "all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge." *Id.* § 6.3. The Protective Order contemplates no "self-help" if an attorney disagrees with a confidentiality designation.

Moreover, the sources Mr. Siegel cites do not support his argument that this information is not confidential. Two of the sources relate to ███████████████████████████████. Developer Plaintiffs' urge that these ███████████████████████████████████████████████████████ ████████████████████████ That is precisely the point— ████████████████████████████████████████████████████. The third discusses only business partners discussed by Mr. Siegel at the hearing, and does not even clearly support his statement. It is clear that Mr. Siegel found these sources only *after* counsel for Apple advised him of his breach in an after-the-fact attempt to justify his actions. Developer Plaintiffs' non-opposition to Apple's motion to seal the transcript further belies any claim that the information was public—Developer Plaintiffs could have opposed the motion at that time.

Because Mr. Siegel violated the Protective Order—and has refused even now to acknowledge his breach—the Court should issue an appropriate sanction. Apple submits that Mr. Siegel should be prohibited from viewing information designated as HC-AEO. This relief is no more onerous than necessary to address the unauthorized dissemination of Apple's sensitive business information, and it will provide important "deterrent value." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Developer Plaintiffs argue that Apple has suffered no prejudice.  But as the Court recognized at the hearing on December 30, if an attorney discusses HC-AEO materials on the record, "the hearing is public," and "[s]o even sealing the transcript isn't a good enough remedy." 12/30/2020 Hr'g Tr. at 34:16–17.  That is particularly true where, as here, members of the public tuning into the proceedings have already been streaming or reposting the proceedings in violation of the Court's orders.  *See, e.g.*, https://www.youtube.com/watch?v=jqZluTDv4-Q; *see also* 10/19/2020 Hr'g Tr. at 45:1–13.  And, contrary to Developer Plaintiffs' claim, the requested sanction will work little to no prejudice on the Developer Plaintiffs, who have many counsel at their disposal to view and litigate any HC-AEO materials.  Other courts have awarded similar sanctions in similar circumstances.  *See Life Techs.*, 2012 WL 1600393, at *11; *Visto Corp. v. Seven Networks, Inc.*, No. 03-CV-333, 2006 WL 3741891, at *8 (E.D. Tex. Dec. 19, 2006).

Apple further requests, pursuant to Rule 37, that it be awarded its reasonable fees and expenses in bringing and litigating this motion, as well as the administrative motions to seal filed on December 24 and concurrently with this filing. Because Mr. Siegel is the individual responsible for the breach, the fees should be assessed against him and his firm, and not against the Developer Plaintiffs.  *See Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19 CV 4238, 2020 WL 7398791, at *5 (N.D. Cal. Dec. 17, 2020) (quotation marks omitted).  Developer Plaintiffs' argument that these fees are self-inflicted fails—the motion to seal was made necessary by Mr. Siegel's actions, who expressed his view after the hearing that the materials were not confidential.  The claim that they would have sealed the transcript had Apple asked is again belied by their repeated insistence that the information is *not* confidential.

Apple takes protective orders entered by this Court seriously.  It is a large company with numerous business relationships and proprietary trade secrets, and it is a frequent litigant in this Court.  Protective orders like the one entered here are necessary to give Apple confidence that litigation against it will not be used as a backdoor means of obtaining and misusing this sensitive information—including by the many competitors it faces in the marketplace.  A serious, but proportionate, sanction is appropriate here to ensure that the Court's orders are followed.  Plaintiffs' counsel who are privileged to access HC-AEO material have an obligation to protect it.  Where they breach that obligation—as Mr. Siegel did—they should lose their privileges.[1]

---

[1]  The importance of sending a strong message here is highlighted by the fact that in the hearing on December 30, 2020, counsel for Epic disclosed confidential information in violation of the Protective Order.  After conferring, Epic filed an administrative motion to seal that portion of the transcript.  Dkt. 227.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**Developer Plaintiffs' Position:**  Apple's request for sanctions is baseless. The information Mr. Siegel purportedly "divulged" is already in the public domain and the Protective Order does not extend to information already public. *See* ECF No. 85 ¶ 3. Apple cannot make public facts confidential by designating them so. And even if the Protective Order had been violated, Apple cannot justify the sanctions it seeks. Apple has suffered no prejudice and all of its "costs" are self-inflicted because Plaintiffs have never opposed sealing the December 15, 2020 transcript. Rather than request that Plaintiffs file the sealing motion, as Apple requested of Epic in analogous circumstances (*see* Ex. G), Apple sent letters impugning Mr. Siegel and then filed the motion itself with 29 minutes' notice. Respectfully, Apple's motion for sanctions should be denied.

### A.   Apple Has Not Identified Any Violation of the Protective Order.

In a section titled "Scope," the Protective Order (ECF No. 85 ¶ 3 (emphasis added)) explicitly excludes from its coverage any "information" available in the public domain, stating:

> [T]he protections conferred by this Stipulation and Order *do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order*, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.

Here, everything Mr. Siegel conveyed is already public and thus excluded from the Protective Order's scope. Addressing exceptions to Apple's 30 percent commission policy, Mr. Siegel stated: ████████████████████████████████████████████████████ 12/15/2020 Hr'g Tr. at 72:19-21.  ████ have already been reported by several outlets.[2] Apple asserts two of the public reports concern ████████████████████, but that is not so.  The articles address █████████ ███████████████████████████████████████████████████████████████ This is reinforced by a third article, which reports ██████████████████████ ████████████████████████████████████████████████████████████

---

[2] *See, e.g.*, ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Apple contends that even if ██████████████ were public, Plaintiffs were required to have documents discussing their existence de-designated before the underlying facts could be mentioned. That is not how the Protective Order works. If a fact is public, it is not subject to the Protective Order and there is nothing to de-designate. This is evident from the plain terms of ¶ 3, which completely exclude public information from all "protections conferred by this Stipulation." ECF No. 85 ¶ 3. It could not be otherwise. Public information does not become "highly confidential" just because it also happens to be included in documents so designated.

### B.     Apple Has Not Identified Any Basis for Sanctions.

Even if Apple had shown a violation of the Protective Order, sanctions would not be warranted, much less the draconian sanctions Apple seeks. "Rule 37 sanctions are appropriate in extreme circumstances where violations are due to willfulness, bad faith, or fault of the party." *Adams v. Albertson*, 2012 WL 1636064, at *1 (N.D. Cal. May 9, 2012). "Under its inherent powers, a court may impose sanctions where a party has willfully disobeyed a court order, or where the party has acted in bad faith, vexatiously, or for oppressive reasons." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015) (internal quotation marks omitted).

Here, Apple has not shown anything approaching these standards. At most, it has shown an honest dispute as to the confidentiality of the information at issue. And the dispute could have been resolved expeditiously, without any need for motion practice, had Apple simply notified Plaintiffs that it believed the information was protected and requested that Plaintiffs move to have it sealed. Those are the steps one would expect Apple to take if it were motivated by a concern for the information's confidentiality. Indeed, that is precisely what Apple did with respect to Epic's disclosures at the December 30, 2020 Hearing. *See* Ex. G. And like Epic, Plaintiffs would have had no objection to initiating a motion to seal, as Plaintiffs' non-opposition to Apple's sealing motion attests. *See* ECF No. 213 at 1 (recognizing that Apple takes a "different view" as to the information's confidentiality and stating non-opposition to sealing).

But Apple pursued a more circuitous path here, seemingly in an effort to ensnare counsel in controversy. Specifically, *five days after* the December 15, 2020 hearing—during which Apple counsel never suggested nonpublic information had been disclosed—Apple sent Mr. Siegel a cryptic letter requesting the "source" of the ████████████ information he had conveyed. *See* Ex. D. The letter did not state that the information was confidential or request that Plaintiffs take steps to seal it. Plaintiffs responded by noting that the information was public while asking Apple to clarify its position. *See* Ex. E. The next day at 6:32 pm, Apple sent a letter stating for the first time that it believed the information was confidential and that it intended to file a motion to redact the hearing transcript. The letter did not request that Plaintiffs initiate the motion. *See* Ex. F. Plainly, the motion had already been prepared, given that it was filed just 29 minutes later. In short, all of Apple's requested briefing "costs" were self-inflicted by its own tactics. *See* Fed. R. Civ. P. 37(b)(2)(C) (fees not recoverable if award would be "unjust").

Particularly unfounded is Apple's request for an order barring Mr. Siegel from viewing or handling materials designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Given Apple's designation of so many of its documents and data as HC-AEO, the requested sanction would be tantamount to disqualification, and would work to the detriment of the

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Developer Plaintiffs and the putative class. The disproportionality of this requested sanction is illustrated by *In re Apple Device Performance Litig.*, 2019 WL 2491937 (N.D. Cal. June 14, 2019). There, an attorney quoted directly from documents designated confidential at a hearing, and then again at the sanctions hearing, characterizing the dispute as "silliness." *Id.* at *1-2. Yet, the district court held that Apple's request that the attorney be barred from accessing CONFIDENTIAL or HC-AEO information "would be too severe a sanction." *Id.* at *1, *3. While Apple argues that courts have awarded "similar sanctions in similar circumstances," the cases it identifies stand in stark contrast to the facts here. *See Life Techs. Corp. v. Biosearch Techs., Inc.*, 2012 WL 1600393, at *11 (N.D. Cal. May 7, 2012) (disclosure of "2,963 pages of AEO, proprietary scientific laboratory notebooks to the CEO of a rival company"); *Visto Corp. v. Seven Networks, Inc.*, 2006 WL 3741891, at *6-8 (E.D. Tex. Dec. 19, 2006) (attorneys' conduct involved repeated violations of a patent prosecution bar, as well as willful obstructionist conduct).

Sanctions would be particularly inappropriate here because Apple has shown no prejudice arising from anything conveyed at the December 15 hearing. The relevant portion of the transcript is now sealed, and Apple has not identified any public reports subsequent to the hearing mentioning ██████████████████. *See In re Rubin*, 769 F.2d 611, 618 (9th Cir. 1985) (holding that "degree to which a party is prejudiced" is an "important factor" in sanction inquiry).

None of this is to dispute Apple's legitimate confidentiality interest in various materials it has and will produce in this litigation. Plaintiffs take their obligations under the Protective Order seriously and, though no violation occurred here, they are committed to exercising the utmost caution in complying with its requirements, as they have demonstrated through adherence to sealing protocols throughout this litigation.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED