**UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC., | Case No. 4:20-cv-05640-YGR-TSH |
|       Plaintiff, Counter-defendant, | Case No. 4:11-cv-06714-YGR-TSH |
|    v. | Case No. 4:19-cv-03074-YGR-TSH |
| APPLE INC., | |
|       Defendant, Counterclaimant. | JOINT DISCOVERY LETTER BRIEF REGARDING APPLE'S SUBPOENA TO NON-PARTY VALVE CORPORATION |
| IN RE APPLE IPHONE ANTITRUST LITIGATION, | |
| DONALD R. CAMERON, *et al.*, | |
|       Plaintiffs, | |
|    v. | |
| APPLE INC, | |
|       Defendant. | |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

Apple Inc. ("Apple") and non-party Valve Corporation ("Valve") respectfully submit this joint letter brief regarding Apple's subpoena requesting the production of documents by Valve.

Counsel for Apple and Valve ("the Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve outstanding disputes. The Parties have been unable to reach an agreement and therefore submit this joint letter pursuant to Judge Hixson's standing order and Local Rule 37.

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: /s/ *Michelle Lowery*
    Michelle Lowery
    *Attorneys for Defendant Apple Inc.*

FOX ROTHSCHILD LLP

By: /s/ *Gavin Skok*
    Gavin Skok (*pro hac vice to be submitted*)
    Jaemin Chang
    *Attorneys for Non-Party Valve Corporation*

I.  **Apple's Position:**

   a.  **Relevant Background**

As the Court's preliminary injunction ruling makes clear, Epic's various mobile and non-mobile distribution options are central to disputed issues of market definition and market power. *See* Case No. 20-cv-05640-YGR, Dkt. 118 at 18 (observing that Fortnite's "multiplatform nature" suggests other (or all) digital distribution channels "may be economic substitutes"). Valve's digital distribution service, Steam, is the dominant digital game distributor on the PC platform and is a direct competitor to the Epic Game Store. *See* Nick Statt, *Epic vs. Steam: The Console War Reimagined on the PC*, The Verge (Apr. 16, 2019), https://bit.ly/3oM9uhT. Epic, like other game developers, could distribute Fortnite on Apple's App Store, the Epic Games Store, Valve's Steam, or through various other digital distribution channels. As a result, in November, Apple served Valve with a document subpoena seeking documents relating to Steam. *See* Ex. 1.

Apple and Valve have engaged in several meet and confers, but Valve has refused to produce information responsive to Requests 2 and 32. Valve admits that the information requested exists in some undisclosed, readily accessible format, but generically claims it won't produce the information because it is confidential or too burdensome to gather *in the manner Apple requested*. Separately, Valve provided a small production of documents (the "Volume 5 Production") which are so heavily redacted that Apple cannot discern what information they might contain and thus are non-responsive and unusable in their current form.[1] Apple respectfully requests that the Court order Valve to: (1) produce information responsive to Requests 2 and 32; and (2) provide unredacted copies of the Volume 5 Production.

   b.  **Request 2**

Apple's Request 2 is very narrow. It simply requests documents *sufficient to show* Valve's: (a) total yearly sales of apps and in-app products; (b) annual advertising revenues from Steam; (c) annual sales of external products attributable to Steam; (d) annual revenues from Steam; and (e) annual earnings (whether gross or net) from Steam. Apple has gone as far as requesting this information in any readily accessible format, but Valve refuses to produce it.

Request 2 is crucial for calculating the total size of the market for Epic's available digital distribution channels, which this Court already has found highly relevant to this case. *See* Case No. 4:19-cv-03074-YGR-TSH, Dkt. 125 at 14 (stating that one issue Apple must prove is "the strength of competition for consumers and app developers" among digital distribution platforms). Valve's Steam undoubtedly is a digital distribution platform that competes to distribute games like Fortnite, and its total yearly sales, advertising, and revenue information, uniquely in Valve's possession, are directly relevant to establishing the strength of competition for consumers and app developers for Steam.

Indeed, recognizing the highly relevant nature of Apple's Request, this Court previously ordered third-party Samsung to produce almost identical information. *See Id*. at 14 (ordering third-party Samsung to produce information relating to "revenue from apps, in-app products, and in-app

---

[1] Apple can provide *in camera* copies of the Volume 5 Production to the Court upon request.

advertising"). As this Court recognized with respect to Samsung, this information is "relevant to showing the extent of competition" among digital distribution platforms available to distribute Fortnite, including the Apple App Store. *Id.* at 15. Valve recognizes that Apple has argued that the relevant market includes video games available through any channel, but did not, at the preliminary injunction phase, have the evidence to prove that. That is precisely what Apple is trying to prove now and the information requested from Valve is central to that pursuit. *See* Case No. 20-cv-05640-YGR, Dkt. 118 at 17 n.19.

Apple has a substantial need for this information as it is uniquely obtainable from Valve. As the Court previously held, a party establishes substantial need where information is relevant and not reasonably obtainable elsewhere. Apple can only obtain information related to Valve's app revenue, in-app purchases, and advertising from Valve itself. *See* Case No. 4:19-cv-03074-YGR-TSH, Dkt. 125 at 6 ("[S]ubstantial need' and 'undue hardship' requirements met where documents were relevant and [party] could not reasonably obtain them elsewhere."; *id.* at 21 ("The Court finds these documents are relevant, and since Apple is only able to obtain them from either Samsung or Google, it has shown a substantial need.").

Valve's assertion that multiple databases are needed to extract the information Apple requests is a distraction. Valve has admitted to Apple's counsel that the information requested exists in the normal course of business, but Valve simply refuses to produce it in any of the formats Apple suggested, yet also refuses to provide any information whatsoever as to the form in which the information exists and is readily accessible. Nor is Valve's complaint that the information is competitively sensitive a basis for withholding relevant and readily accessible high-level historic sales and revenue information.[2] Request 2 solely seeks information relating to Valve's historical performance and since "the information sought by this Request does not detail future plans or involve strategic assessments . . . there is no substantial risk of competitive or economic harm" to Valve. *Id.* at 17.

### c. Request 32

Request 32 asks for documents *sufficient to show*: (a) the name of each App on Steam; (b) the date range when the App was available on Steam; and (c) the price of the App and any in-app product available on Steam. This is basic information relating to the identity and availability of games over time on Steam, is necessary to determine the scope and breadth of the digital distribution marketplace, and is "relevant to showing competition" between these platforms. Case No. 4:19-cv-03074-YGR-TSH, Dkt. 125 at 17.

Like the information sought in Request 2, the information sought in Request 32 is historical, and does not involve any "future plans or strategic assessments" and thus does not raise risk of any competitive harm. *Id.* at 14. Further, Request 32 seeks information that is uniquely obtainable from Valve. Apple has therefore demonstrated substantial need for Request 32, because the

---

[2] The Court has already held that the Protective Order in *Pepper* and *Cameron*—which is substantively identical to the Protective Order in *Epic*, *see* (Case No. 20-cv-05640-YGR) (Dkt. 112)—is "sufficient" to protect the confidentiality of third-party Samsung's competitively sensitive documents. *See* (Case No. 11-cv-06714-YGR) (Dkt. 242 at 22 n.4). The same result is warranted here.

information is both relevant and not reasonably obtainable elsewhere. *Id.* at 6, 21

### d. **Redactions from the Volume 5 Production**

Valve made its Volume 5 Production with substantial redactions that cover any information that looks to be potentially responsive. When asked to provide unredacted copies, Valve stated that doing so would be burdensome and intrusive, but did not explain why. There is no apparent burden to unredacting these documents; in fact, redacting them in the first place created a greater burden. The redacted information, which undoubtedly is responsive given that Valve produced it, appears to relate to Apple's requests for commissions. Further, producing it cannot be unduly burdensome given that it already has been produced. This information should be unredacted and, if competitive sensitivity is the real issue, then the information is protected by the protective order in this matter.

### II. **Valve's Position:**

Valve is a privately held company with approximately 350 employees that develops PC video games. Valve does not make or sell phones, tablets, or video games for mobile devices, or otherwise compete in the mobile market. Valve also operates Steam, an online platform that lets users purchase and play PC games on their laptops and desktops. Steam users cannot buy or use mobile apps on Steam. Over 30,000+ PC games are available on Steam, over 99% of which were made by third parties other than Valve. Most of these games can also be bought elsewhere, including from developers directly, from brick and mortar retail, or on other PC game platforms. Third party developers that offer their games on Steam control all pricing and content. Valve collects the purchase price from Steam users and remits the proceeds to the third party developer net of a revenue share to Valve. Fortnite is not available on Steam, and Epic has publicly and unequivocally stated it will not offer Fortnite on Steam unless Valve changes its business model.

In response to Apple's 46 documents requests, Valve already produced documents regarding its revenue share, competition with Epic, Steam distribution contracts, and other documents. Apple was not satisfied and demands—without offering to cover Valve's costs, which would be significant—that Valve (i) recreate six years' worth of PC game and item sales for hundreds of third party video games, then (ii) produce a massive amount of confidential information about these games and Valve's revenues. Valve objected. *See* Ex. 2.

Apple wrongly claims those requests are narrow. They are not. Apple gave Valve a list of 436 video games it says are available on the Epic Game Store and Steam, and (a) demanded Valve identify, from 2015 to the present, every version and all digital content or items for each of these games on Steam, then (b) provide exhaustive information about all of them, including:
- The dates on sale, plus every price and price change, from 2015 to the present (RFP 32);
- Gross revenues for each game version and item, broken down individually (RFP 2); and
- All of Valve's revenues related to these versions, content and items (RFP 2).

### A. Apple's Overbroad Demands Impose Too Heavy A Burden On A Non-Party

Apple's demands would impose an extraordinary burden on Valve to query, process and combine a massive amount of to create the documents Apple seeks—*materials that Valve does*

*not create or keep in the ordinary course of business*—and with little or no value, as Valve does not compete in the mobile app market at issue. Specifically, Apple's demands would require:

- Identifying all versions and items on Steam since 2015 for all 436 games on Apple's list would require Valve to review and query years of sales listing data. Apple could use public information on Steam to complete this task itself, but wants Valve to do it;
- Determining the sales prices for each game version and item at specific times would require Valve to query at least two separate databases—one that stores base prices and another that keeps discount information—then merge that data;
- Valve would need to pull unit sales information from a third database and payment rules from yet another database, then collate that information as well;
- For any game or item sold as part of a package (as many are), Valve would need to query yet another source for the allocation rules used to allocate that specific package price among its components, then apply those rules to other queried data;
- Return information must also be queried and the compiled data adjusted for returns; then
- Valve would need to query and separate out revenue share information to determine its revenues related to each sale.

That is an overwhelming amount of work—and it is for only a single version or item. Apple's demands would require Valve to repeat this process thousands of times. The fact that underlying data exists somewhere spread across multiple databases, which each could conceivably be queried to identify one data point, then all data points from each database processed, compiled, error tested and aggregated to create from scratch a data report that is never created or kept in the ordinary course of business does not mean the information sought is "reasonably accessible," as Apple wrongly asserts. Similarly, that Apple narrowed its requests from all 30,000+ games on Steam over ten years, to 436 games over six years does not eliminate the burden or make the requests reasonable—it simply makes an impossible task slightly less impossible.

Apple argues it is fair to make Valve do all this work and incur this disruption because Samsung—a public company that competes in the mobile app market—produced something similar. Public companies like Samsung must keep detailed financial and operational information. Valve is a privately held company with no outside shareholders or lenders, and not subject to public regulatory reporting and auditing requirements. Valve does not in the ordinary course of business keep the information Apple seeks for a simple reason: Valve doesn't need it.

      B.      <u>Apple Has Not Shown Substantial Need For The Information It Demands</u>.

Apple's RFPs 2 and 32 seek proprietary and highly confidential information, so Apple must establish substantial need for the information that cannot be otherwise met without undue hardship. Fed. R. Civ. P. 45(d)(3). Apple has not made that showing.

First, Apple argues the information it demands is necessary to calculate market size and definition. False. Apple, Google and Samsung compete with each other in the mobile app market. Valve does not compete in that market. The Court already recognized the relevant market must include the product at issue. (Case No. 20-cv-05640-YGR) (Dkt. 118 at 12) (citation omitted). Apple argues the relevant market could be so broad as to include any video game available through any channel, but gives no evidence this might actually be true. Indeed,

the Court noted there is "little evidence" iOS users owned multiple devices and changed from one to another in response to price changes. *Id.* at 17 n.19.

Second, Apple's latest market definition argument is contradicted by its prior ones. When opposing a preliminary injunction, Apple argued the relevant market included "competing platforms on which Fortnite is distributed and monetized." (Case No. 20-cv-05640-YGR) (Dkt. 118 at 16). Later, in seeking to compel Samsung, this Court noted that "Apple firmly takes the view that in the *Epic* case, the relevant market is Epic alone." *Id.* (Dkt. 296 at 4). Valve is not in either of these markets—Valve is not Epic, and Fortnite is not available on Steam.

Third, Apple argues Valve's sales information might help define the relevant market, yet Apple seeks information only about a subset of games sold on both Steam and the Epic Games Store. This does not show market size or definition —it just shows which of two market participants sell more copies of particular PC games. This Court rejected Apple's similar attempt to compel Epic sales information from Samsung, holding that documents focused on Epic are "unlikely to be important evidence of competition in a market or the effect of Apple's policies on any sort of market" and that "if the market is any bigger than this one company, the relevant discovery would have to be about the general availability of other ways to distribute apps . . . and in general what kinds of commission structures or policies apply." *Id.* (Dkt. 296 at 4-5). Valve already produced information to Apple about Valve's revenue share, and other ways to distribute mobile apps and games are readily knowable to Apple and its economists without discovery from Valve.

Apple claims the information it demands is uniquely obtainable from Valve, yet much of what Apple seeks is sales and pricing information for third party games. That information belongs to the third party developers of those games, not Valve. But instead of seeking it from those developers—and being required to establish substantial need to obtain their information—Apple takes a shortcut by subpoenaing Valve. *See U.S. v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 160 (D. Del. 1999) (noting "[t]he risk of injury to the owner of confidential information is presumably greater where the owner was never in a position to accept or reject the risk of disclosure of confidential information"). Valve properly declined to provide third parties' confidential information (sales and pricing data) to Apple and redacted it from its Volume 5 production.

That Valve's own highly confidential sales and revenue information is available only from Valve is not a substitute for showing relevant and a substantial need. Valve has chosen to stay private in part to avoid the burden of the public company disclosure and reporting requirements that companies like Samsung or Google are subject to. Valve does not disclose its sales and revenue information and projections, and Valve derives a significant value and edge from the confidentiality of such information, including by keeping it out of the hands of companies like Epic who also sell PC games. Accordingly, Valve redacted such information from its Volume 5 production and declined to produce it in response to Apple's demands.

Somehow, in a dispute over mobile apps, a maker of PC games that does not compete in the mobile market or sell "apps" is being portrayed as a key figure. It's not. The extensive and highly confidential information Apple demands about a subset of the PC games available on Steam does not show the size or parameters of the relevant market and would be massively burdensome to pull together. Apple's demands for further production should be rejected.

| | |
|---|---|
| McDERMOTT WILL & EMERY LLP | FOX ROTHSCHILD LLP |
| DATED: February 18, 2021 | DATED: February 18, 2021 |
| By: /s/ *Michelle Lowery*<br>Michelle Lowery<br>*Attorneys for Defendant Apple Inc.* | By: /s/ *Gavin Skok*<br>Gavin Skok (*pro hac vice to be submitted*)<br>Jaemin Chang<br>*Attorneys for Non-Party Valve Corporation* |

McDERMOTT WILL & EMERY LLP
MICHELLE LOWERY
mslowery@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

PETER JOHN SACRIPANTI
psacripanti@mwe.com
JOHN J. CALANDRA
jcalandra@mwe.com
NICOLE L. CASTLE
ncastle@mwe.com
340 Madison Avenue
New York, NY 10173-1922
Telephone: +1 212 547 5400
Facsimile: +1 212 547 5444

FOX ROTHSCHILD LLP
GAVIN W. SKOK
gskok@foxrothschild.com
1001 Fourth Ave., Suite 4500
Seattle, WA 98154-1065
Telephone: +1 206 624 3600
Facsimile: +1 206 389 1708

JAEMIN CHANG
jchang@foxrothschild.com
345 California St., Suite 2200
San Francisco, CA 94104-2670
Telephone: +1 415 364 5540
Facsimile: +1 415 391 4436

**E-FILING ATTESTATION**

      I, Michelle Lowery, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

      By:    /s/ *Michelle Lowery*

           Michelle Lowery