1  LAUREN A. MOSKOWITZ (*pro hac vice*)
   lmoskowitz@cravath.com
2  **CRAVATH, SWAINE & MOORE LLP**
   825 Eighth Avenue
3  New York, New York 10019
   Telephone: (212) 474-1000
4  Facsimile: (212) 474-3700

5  PAUL J. RIEHLE (SBN 115199)
   paul.riehle@faegredrinker.com
6  **FAEGRE DRINKER BIDDLE & REATH LLP**
   Four Embarcadero Center, 27th Floor
7  San Francisco, CA 94111
   Telephone: (415) 591-7500
8  Facsimile: (415) 591-7510

9  *Attorneys for Plaintiff, Counter-defendant*
10 *Epic Games, Inc.*

11 [Additional counsel on signature page]

12             **UNITED STATES DISTRICT COURT**

13        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14                   **OAKLAND DIVISION**

15

16 EPIC GAMES, INC.,                          Case No. 4:20-cv-05640-YGR-TSH

17           *Plaintiff, Counter-defendant,*  Case No. 4:11-cv-06714-YGR-TSH

18               v.                           Case No. 4:19-cv-03074-YGR-TSH

   APPLE INC.,
19
           *Defendant, Counterclaimant.*
20
                                             **UNSEALED EXHIBIT TO JOINT**
21 IN RE APPLE IPHONE ANTITRUST              **DISCOVERY LETTER BRIEF**
   LITIGATION                                **REGARDING CUE AND FEDERIGHI**
22                                           **DEPOSITIONS**

23 DONALD R. CAMERON, *et al.*,

24                         *Plaintiffs,*

25               v.                           Judge:  Hon. Magistrate Thomas S. Hixson

   APPLE INC.,
26
                           *Defendant.*
27

28
   ─────────────────────────────────────────
              UNSEALED EXHIBIT TO JOINT DISCOVERY LETTER
            BRIEF REGARDING CUE AND FEDERIGHI DEPOSITIONS
   Case Nos. 4:20-cv-05640-YGR-TSH, 4:11-cv-06714-YGR-TSH, 4:19-cv-03074-YGR-TSH

1        Pursuant to the Court's Order re: Motion to Seal (*Epic*, ECF No. 343), Epic Games, Inc.

2  hereby files the attached Exhibit 1 to the Joint Discovery Letter Brief Regarding Cue and

3  Federighi Depositions (*Epic*, ECF No. 261) in the public record.

4

5  DATE:  March 1, 2021            **CRAVATH, SWAINE & MOORE LLP**

6                            */s/ Lauren A. Moskowitz*

7                              Lauren A. Moskowitz

8                      **FAEGRE DRINKER BIDDLE & REATH LLP**
PAUL J. RIEHLE (SBN 115199)

9                      Four Embarcadero Center, 27th Floor
San Francisco, CA 94111

10                   Telephone: (415) 591-7500
Facsimile: (415) 591-7510

11                   paul.riehle@faegredrinker.com

12                      **CRAVATH, SWAINE & MOORE LLP**
CHRISTINE A. VARNEY (*pro hac vice*)

13                   KATHERINE B. FORREST (*pro hac vice*)
GARY A. BORNSTEIN (*pro hac vice*)

14                   YONATAN EVEN (*pro hac vice*)
LAUREN A. MOSKOWITZ (*pro hac vice*)

15                   M. BRENT BYARS (*pro hac vice*)
825 Eighth Avenue

16                   New York, New York 10019
Telephone: (212) 474-1000

17                   Facsimile: (212) 474-3700
cvarney@cravath.com

18                   kforrest@cravath.com

19                   gbornstein@cravath.com
yeven@cravath.com

20                   lmoskowitz@cravath.com
mbyars@cravath.com

21

22                      *Attorneys for Plaintiff, Counter-defendant*
*Epic Games, Inc.*

23

24

25

26

27

28

Exhibit 1

1    THEODORE J. BOUTROUS JR., SBN 132099        MARK A. PERRY, SBN 212532
          tboutrous@gibsondunn.com                    mperry@gibsondunn.com
2    RICHARD J. DOREN, SBN 124666                 CYNTHIA E. RICHMAN (*pro hac vice*)
          rdoren@gibsondunn.com                        crichman@gibsondunn.com
3    DANIEL G. SWANSON, SBN 116556                GIBSON, DUNN & CRUTCHER LLP
          dswanson@gibsondunn.com                  1050 Connecticut Avenue, N.W.
4    JAY P. SRINIVASAN, SBN 181471                Washington, DC 20036
          jsrinivasan@gibsondunn.com               Telephone:    202.955.8500
5    GIBSON, DUNN & CRUTCHER LLP                   Facsimile: 202.467.0539
     333 South Grand Avenue
6    Los Angeles, CA  90071                        **Attorneys for Defendant and Counterclaimant**
     Telephone: 213.229.7000                       **APPLE INC.**
7    Facsimile: 213.229.7520

8    VERONICA S. LEWIS (*pro hac vice*)
          vlewis@gibsondunn.com
9    GIBSON, DUNN & CRUTCHER LLP
     2100 McKinney Avenue, Suite 1100
10   Dallas, TX 75201
     Telephone: 214.698.3100
11   Facsimile: 214.571.2900

12

13                          UNITED STATES DISTRICT COURT

14                        NORTHERN DISTRICT OF CALIFORNIA

15                                 OAKLAND DIVISION

16

17

18   EPIC GAMES, INC.,                             CASE NO. 4:20-CV-05640-YGR

                    Plaintiff,                     **DEFENDANT AND COUNTERCLAIMANT**
19                                                 **APPLE, INC.'S OBJECTIONS AND**
                                                   **RESPONSES TO PLAINTIFF AND**
20         v.                                      **COUNTER-DEFENDANT EPIC GAMES,**
                                                   **INC.'S FIRST SET OF**
21   APPLE INC.,                                   **INTERROGATORIES**

                    Defendant.
22

23

24

25

26

27

28

1
2
3
4
5
6

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Federal Rules"), Rule 33 of the Civil Local Rules of the United States District Court for the Northern District of California ("Local Rules"), and all applicable rules and orders of this Court, Defendant and Counterclaimant Apple Inc. ("Apple" or "Defendant"), by and through undersigned counsel, hereby serves its Objections and Responses to Plaintiff and Counter-Defendant Epic Games, Inc.'s ("Epic" or "Plaintiff") First Set of Interrogatories ("Interrogatories"), dated November 11, 2020.

7

## PRELIMINARY STATEMENT

8
9
10
11
12
13
14
15
16

Apple responds generally that its investigation of facts relevant to this litigation is ongoing. The following responses are made to the best of Apple's present knowledge, information, and belief. Further investigation may reveal additional facts or information that could lead to additions to, changes in, and/or variations from the responses herein. Without in any way obligating itself to do so, Apple expressly reserves the right to supplement, amend, correct, clarify, or modify its responses as further information becomes available. Apple also reserves the right to use or rely on, at any time, documents, evidence, and other matters in addition to the documents and information produced in response to the Interrogatories, whether or not such documents, evidence, or other matters are newly discovered or are now in existence but have not yet been located.

17
18
19
20
21
22
23

In each and every Specific Response and Objection, Apple incorporates by reference each and every General Objection, Objection to Definition, and Objection to Instruction. Apple also incorporates by reference each and every Objection to Definition into each and every Objection to Instruction, and vice versa. A Specific Response may repeat a General Objection, Objection to Definition, and/or Objection to Instruction for emphasis or for some other reason. However, the omission of any General Objection, Objection to Definition, and/or Objection to Instruction in any Specific Response is not intended to be, nor should it be construed as, a waiver of any such Objections.

24

## GENERAL OBJECTIONS

25
26
27

1.      Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they seek to impose obligations that exceed the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules, all applicable rules and orders of this Court, and any

28

Gibson, Dunn & Crutcher LLP

agreements between the parties.  Apple will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2.      Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they:  (i) seek information that is not relevant to any party's claims or defenses in the action; (ii) impose a burden disproportionate to the needs of the case; (iii) are unreasonably cumulative or duplicative; (iv) seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive; or (v) seek information beyond the scope of permissible discovery.

3.      Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they are vague, ambiguous, overbroad, unduly burdensome, and/or fail to state with reasonable particularity the type of information sought therein.  Apple further objects to the Interrogatories, including the Instructions and Definitions, to the extent that they seek "all" information concerning the subject matters referenced therein.

4.      Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they seek information contained in documents Apple has produced or expects to produce in response to Plaintiff's Requests for Production.  Pursuant to Rule 33(d) of the Federal Rules, Apple refers Plaintiff to the information contained in those documents.  Any statement herein that the information sought by a specific Interrogatory is contained in documents that are expected to be produced to Plaintiff shall not be construed as a representation regarding the existence or non-existence of specific documents in Apple's possession, custody, or control and reflects the intention of Apple, subject to its objections, to provide responses to Plaintiff's Requests for Production.

5.      Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they purport to seek discovery more appropriately obtained by means other than these Interrogatories.

6.      Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they seek information protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection.  Specific objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a specific objection should not be interpreted as evidence that Apple does not object

Gibson, Dunn &
Crutcher LLP

to an Interrogatory on the basis of an applicable privilege.  The inadvertent disclosure of any information subject to such privilege or protection is not intended to relinquish any privilege or protection and shall not be deemed to be a waiver of any applicable privilege or protection.

7.     Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they seek confidential commercial, business, financial, or competitively sensitive information, trade secrets, or any other proprietary information to Apple, its respective employees, and its clients.  Without waiving any objection herein, Apple will only provide confidential or sensitive information in accordance with the Stipulated Protective Order entered in this litigation, as well as the ESI Protocol entered in this litigation, and such other procedures as the parties or Court may establish to protect sensitive or confidential information.

8.     Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they contain characterizations, definitions, arguments, or assumptions.  Nothing contained in or absent from Apple's responses or objections shall constitute, or be deemed as, an admission, concession, or agreement that Plaintiff's characterizations, definitions, arguments, or assumptions are correct or accurate.  The failure to object to any of the defined terms that are listed in the "Definitions" section of the Interrogatory, but that are not used by Plaintiff in the Interrogatory therein, shall not be construed as a waiver of any objections to the definition of the defined term.

9.     Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they lack foundation, or incorporate allegations and assertions that are disputed or erroneous. By responding and objecting to any Interrogatory, Apple does not admit the correctness of such assertions.

10.     Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they seek information (i) not within the possession, custody, or control of Apple; (ii) as readily available to Plaintiff as to Apple; (iii) already in Plaintiff's possession; (iv) already produced by or requested from other parties or nonparties in this action; or (v) that is public, on the grounds that such Interrogatories are unduly burdensome.

11.     Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they seek discovery from any parent, subsidiary, or affiliate of Apple.  Such parents,

subsidiaries, or affiliates are not within Apple's control, and to the extent that an Interrogatory seeks such disclosure, it is improper, burdensome, and oppressive.  Apple is responding only on behalf of itself and not on behalf of any parent, affiliate, or subsidiary.

12.     Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they seek identification of persons employed by or working at the direction of third parties.

13.     Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they call for information that is subject to a confidentiality agreement, or other restrictions, or to a protective order or other court order entered in another action or proceeding, which prevent disclosure in this action.  Apple's disclosure of such information is subject to Apple's compliance with any notice and/or contractual obligations to third parties in advance of disclosure.

14.     Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent that they purport to impose an obligation to conduct anything beyond a reasonable and diligent search of readily accessible files (including electronic files) where responsive information reasonably would be expected to be found.  Any interrogatories that seek to require Apple to go beyond such a search are overbroad and unduly burdensome.

15.     Apple objects to the Interrogatories, including the Definitions and Instructions, to the extent they rely on terms that are not defined and could be understood to have multiple meanings.

16.     To the extent that Plaintiff has requested or will seek the same information from third parties, Apple objects to the Interrogatories as duplicative, cumulative, and as seeking information that is obtainable from other sources that are more convenient, less burdensome, or less expensive.

17.     Apple objects to the Interrogatories on the grounds that they are impermissibly compound.  *See* Fed. R. Civ. P. 33(a)(1) (stating a party may serve "no more than 25 written interrogatories, *including all discrete subparts*"); *see also* Advisory Committee Note to 1993 Amendment to Rule 33(a)(1) (noting "purpose of this revis[ed] [twenty-five-interrogatory limit] is to reduce the frequency and increase the efficiency of interrogatory practice," further noting "the device can [otherwise] be costly and may be used as a means of harassment").  Numerous of the Interrogatories contain many discrete subparts.  Apple further objects to the Interrogatories on the related grounds that they each impermissibly introduce separate and distinct lines of inquiry that are not logically and

factually subsumed within and necessarily related to the Interrogatory's primary question.  *See Hasan v. Johnson*, 2012 WL 569370, at *5 (E.D. Cal. Feb. 21, 2012); *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217–18 (C.D. Cal. 2009).

18.     Apple objects to the Interrogatories on the grounds that they violate Federal Rule of Civil Procedure 33(b)(1)(B) because answering them would require Apple to furnish information that is not available to it and/or cannot be given without undue labor and expense.  Under Rule 33, a responding party "must furnish information that is *available to it* and that can be given *without undue labor and expense*."  Wright & Miller, Fed. Prac. & Proc. § 2174 (3d ed.) (emphasis added); *see also* Fed. R. Civ. P. 33(b)(1)(B).  Parties are "not required to conduct extensive research in order to answer an interrogatory," *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013), and "interrogatories that require a party to undertake extensive investigations, research, or compilations or evaluations of data for the opposing party"—as some of the Interrogatories undoubtedly do—"are in many circumstances," as here, "improper."  Wright & Miller, *supra*, § 2174.

19.     Apple's willingness to provide any document or information in response to an Interrogatory shall not be interpreted as an admission that such document or information exists, that it is relevant to a claim or defense in this action, or that it is admissible for any purpose.  Apple does not waive its right to object to the admissibility of any document or information produced by any party on any ground.

20.     Apple responds to the Interrogatories, including the Definitions and Instructions, without waiving or intending to waive, but rather preserving and intending to preserve, its right to object to any other discovery requests.

## OBJECTIONS TO DEFINITIONS

1.     Apple objects to the definitions of "and," "or," and "and/or" on the grounds that they are vague, ambiguous, overly broad, and unduly burdensome.  In responding to the Interrogatories, Apple will construe these terms in accordance with the requirements of the Federal Rules, the Local Rules, and all applicable rules and court orders.

2.     Apple objects to the definition of "any" on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  In responding to the Interrogatories, Apple will construe this

Gibson, Dunn &
Crutcher LLP

term in accordance with the requirements of the Federal Rules, the Local Rules, and all applicable rules and court orders.

3.    Apple objects to the definition of "App" on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  In responding to the Interrogatories, Apple will construe this term in accordance with the requirements of the Federal Rules, the Local Rules, and all applicable rules and court orders.

4.    Apple objects to the definitions of "Apple," "You," and "Your" on the grounds that they are vague, ambiguous, overly broad, and unduly burdensome to the extent the terms are meant to include "all predecessors, successors, subsidiaries, divisions, parents, and/or affiliates thereof, past or present, and all past or present officers, directors, affiliates, agents, employees, consultants and representatives thereof, and any other person acting on behalf of any of the foregoing entities" over which Apple exercises no control, and to the extent that Plaintiff purports to use these terms to impose obligations that go beyond the requirements of the Federal Rules and Local Rules.  Apple further objects to the definitions of "Apple," "You," and "Your" to the extent that the reference to "all past or present officers, directors, affiliates, agents, employees, consultants and representatives thereof, and any other person acting on behalf of any of the foregoing entities" purports to demand information or documents subject to the attorney-client privilege, the work product doctrine, or any other privilege or protection.  In responding to the Interrogatories, Apple will construe these terms to mean Apple Inc., and limit its responses accordingly.

5.    Apple objects to the definition of "Concerning" on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  In responding to the Interrogatories, Apple will construe this term in accordance with the requirements of the Federal Rules, the Local Rules, and all applicable rules and court orders.

6.    Apple objects to the definition of "Developer" on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  In responding to the Interrogatories, Apple will construe this term in accordance with the requirements of the Federal Rules, the Local Rules, and all applicable rules and court orders.

Gibson, Dunn &
Crutcher LLP

7.      Apple objects to the definition of "Epic" on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  In responding to the Interrogatories, Apple will construe this term in accordance with the requirements of the Federal Rules, the Local Rules, and all applicable rules and court orders.

8.      Apple objects to the definition of "IAP" on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  In responding to the Interrogatories, Apple will construe this term in accordance with the requirements of the Federal Rules, the Local Rules, and all applicable rules and court orders.

9.      Apple objects to the definition of "Identify" on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  In responding to the Interrogatories, Apple will construe this term in accordance with the requirements of the Federal Rules, the Local Rules, and all applicable rules and court orders.

10.      Apple objects to the definition of "Software Store" on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  In responding to the Interrogatories, Apple will construe this term in accordance with the requirements of the Federal Rules, the Local Rules, and all applicable rules and court orders.

11.      Apple objects to the definition of "State the Factual Basis" on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome in purporting to require Apple to "state with particularity each and every fact that You contend supports that response, contention, allegation, claim, defense, or statement, Including the basis and source of Your knowledge of each fact."  "'Each and every fact' interrogatories pose problems for a responding party and a reviewing court.  Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories." *Tubbs v. Sacramento Cty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008) (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)).

## OBJECTIONS TO INSTRUCTIONS

1.      Apple objects to Instruction No. 1 stating that "[t]he timeframe for the Interrogatories is unlimited unless specifically stated otherwise" on the ground that such a "[t]imeframe" is overbroad,

unduly burdensome, calls for information that is not related to the claims or defenses in this action, and imposes a burden on Apple disproportionate to the needs of this case.

2.      Apple objects to Instruction No. 2 regarding the "worldwide" "geographic scope" of the Interrogatories to the extent that the Interrogatories seek documents and information related to consumers located outside of the United States or their transactions, or transactions, conduct, or activity taking place outside of the United States or involving trade or commerce with foreign nations, because such it is overly broad, unduly burdensome, not relevant to the claims or defenses in this action, or otherwise outside the proper scope of discovery in accordance with the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a.

**SPECIFIC OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 1:**

State the Factual Basis for Apple's Second Defense, Legitimate Business Justifications ("Apple alleges that, without admitting any liability whatsoever, at all times its conduct was reasonable and that its actions were undertaken in good faith to advance legitimate business interests and had the effect of promoting, encouraging, and increasing competition."). (Defendant Apple Inc.'s Answer, Defenses, and Counterclaims (ECF No. 66) at 36.)

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 1:**

Apple restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response.  Apple further objects to this Interrogatory on the following grounds:

Apple objects to this Interrogatory because the definition of "State the Factual Basis" is impermissibly vague, ambiguous, overly broad, and unduly burdensome in purporting to require Apple to "state with particularity each and every fact that You contend supports that response, contention, allegation, claim, defense, or statement, Including the basis and source of Your knowledge of each fact."  "'Each and every fact' interrogatories pose problems for a responding party and a reviewing court.  Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories." *Tubbs v. Sacramento Cty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008) (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)).  Apple further objects to this

9

Interrogatory because it calls for a legal conclusion.  Apple further objects to this Interrogatory because it is premature, both because discovery in this case is ongoing and because Legitimate Business Justifications is an affirmative defense that is implicated only after Epic bears its burden to prove the *per se* violations of the Sherman Act and/or California Cartwright Act that it purported to allege in its Complaint.  Apple further objects to this Interrogatory to the extent that it improperly attempts to shift the burden of proof to Apple before Epic makes such a showing.   Apple further objects to this Interrogatory to the extent that it purports to require Apple to state the facts underlying its affirmative defenses before knowing the facts upon which Epic bases the claims to which such affirmative defenses apply.  Apple's responses below assume that Epic's claims under the Sherman Act and/or California Cartwright Act will be based only on the facts currently alleged in the Complaint.  Apple disputes both that Epic will be able to prove the facts alleged in the Complaint and also that such facts, even if true, are sufficient to prove an actionable claim under the Sherman Act and/or California Cartwright Act. For the purposes of responding to this Interrogatory only, however, Apple will assume Epic is able to meet its burden to prove a violation of the Sherman Act and/or California Cartwright Act based on the facts alleged in the Complaint.

Subject to, limited by, and without waiving its objections, Apple responds as follows:

With respect to Counts 6 and 9 in Epic's Complaint (Sherman Act § 1 [Tying the App Store in the iOS App Distribution Market to In-App Purchase in the iOS In-App Payment Processing Market] and California Cartwright Act [Tying the App Store in the iOS App Distribution Market to In-App Purchase in the iOS In-App Payment Processing Market]), which allege that "Apple expressly conditions the use of its App Store on the use of its In-App Purchase to the exclusion of alternative solutions in a *per se* unlawful tying arrangement," Complaint ¶ 237, and that Apple has "engaged in a *per se* illegal tying arrangement," *id.* ¶ 278, the factual basis for Apple's affirmative defense of Legitimate Business Justifications is outlined, in part, in Apple's Opposition to Epic's Motion for a Preliminary Injunction (ECF No. 73) ("PI Opposition Brief") and the declarations cited therein, including the sworn expert testimony of Richard Schmalensee, Ph.D., as well as the sworn testimony of Philip W. Schiller.  *See, e.g.*, Declaration of Richard Schmalensee, Ph.D. ("Schmalensee Decl.")

Gibson, Dunn & Crutcher LLP

1   (ECF No. 78) at ¶¶ 46–64; Declaration of Philip W. Schiller ("Schiller Decl.") (ECF No. 74) at ¶¶ 32–

2   45.  Each of these declarants could and would testify as to their own sworn testimony.

3   **INTERROGATORY NO. 2:**

4        State the Factual Basis for Apple's statement that "For years, Epic took advantage of everything

5   Apple's App Store has to offer.  It availed itself of the tools, technology, software, marketing

6   opportunities, and worldwide customer reach that Apple provided", Including by Identifying all such

7   "tools, technology, software, marketing opportunities, and worldwide customer reach"; Apple's

8   reasons for providing to Epic such "tools, technology, software, marketing opportunities, and

9   worldwide customer reach"; and the revenue, costs, expenses, and profits to Apple from providing to

10   Epic each such "tool[], technology, software, marketing opportunit[y], and worldwide customer reach".

11   (Defendant Apple Inc.'s Opposition to Epic Games, Inc.'s Motion for a Temporary Restraining Order

12   and Order to Show Cause Why a Preliminary Injunction Should Not Issue (ECF No. 36) at 1.)

13   **OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 2:**

14        Apple restates and incorporates its Preliminary Statement, General Objections, Objections to

15   Definitions, and Objections to Instructions as though fully set forth in this Response.  Apple further

16   objects to this Interrogatory on the following grounds:

17        Apple objects to this Interrogatory because the definition of "State the Factual Basis" is

18   impermissibly vague, ambiguous, overly broad, and unduly burdensome in purporting to require Apple

19   to "state with particularity each and every fact that You contend supports that response, contention,

20   allegation, claim, defense, or statement, Including the basis and source of Your knowledge of each

21   fact."  "'Each and every fact' interrogatories pose problems for a responding party and a reviewing

22   court.  Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to

23   interrogatories."  *Tubbs v. Sacramento Cty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008)

24   (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)).   Apple further objects to this

25   Interrogatory because it calls for a legal conclusion.  Apple further objects to this Interrogatory because

26   it is premature, given that discovery in this case is ongoing.  Apple further objects to this Interrogatory

27   because it is compound as it contains numerous discrete subparts that introduce separate and distinct

28   lines of inquiry that are not logically and factually subsumed within and necessarily related to the

Gibson, Dunn &
Crutcher LLP

primary question. *See Hasan v. Johnson*, 2012 WL 569370, at *5 (E.D. Cal. Feb. 21, 2012); *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217–18 (C.D. Cal. 2009). Due to the compound nature of the interrogatories as drafted, Apple objects to this Interrogatory on the ground that it is excessive as Plaintiff has exceeded the 25-written-interrogatory limit per party pursuant to Fed. R. Civ. P. 33(a)(1). Apple further objects to this Interrogatory on the grounds that it violates Federal Rule of Civil Procedure 33(b)(1)(B) because answering it would require Apple to furnish information that is not available to it and/or cannot be given without undue labor and expense. Under Rule 33, a responding party "must furnish information that is *available to it* and that can be given *without undue labor and expense*." Wright & Miller, Fed. Prac. & Proc. § 2174 (3d ed.) (emphasis added); *see also* Fed. R. Civ. P. 33(b)(1)(B). Parties are "not required to conduct extensive research in order to answer an interrogatory," *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013), and "interrogatories that require a party to undertake extensive investigations, research, or compilations or evaluations of data for the opposing party," Wright & Miller, *supra*, § 2174—as this Interrogatory undoubtedly does, including by requesting "the revenue, costs, expenses, and profits to Apple from providing to Epic each such 'tool[], technology, software, marketing opportunit[y], and worldwide customer reach'"—"are in many circumstances," as here, "improper." Wright & Miller, *supra*, § 2174. Apple further objects to this Interrogatory to the extent that it is overbroad and seeks information that is neither relevant to the subject matter of this litigation nor proportional to the needs of the case. Apple further objects to this Interrogatory because it seeks Apple's protected trade secrets and other sensitive, proprietary information that would pose security and business risks to Apple and risks to Apple users' security and privacy if disclosed. Thus, the burden of fully responding would outweigh the utility of this information.

Subject to, limited by, and without waiving its objections, Apple responds as follows:

Apple has provided Epic with an array of benefits, including tools, technology, software, marketing opportunities, facilitation of transactions through the safe and secure App Store, and yet another channel for distribution of Epic software to iPhone customers.

In addition, Apple supports developers, including Epic, in a variety of ways, investing billions in tools, software, and technology that encourage innovation, make it as easy as possible for

developers to bring their ideas to life on the iPhone, and bring more apps to its users.  In particular, for a nominal $99 fee for membership in the Apple Developer Program, Apple provides developers like Epic with an assortment of tools, resources, and support to create and deliver software to customers around the world.  As a member of the App Developer Program, Epic has gained full access to a comprehensive set of tools to configure app services, manage its development teams, and submit new apps and updates, including the following:[1] Xcode; App Store Connect (including TestFlight); Transporter; Certificates, Identifiers & Profiles; CloudKit Dashboard; Create ML; MapKit JS Dashboard; Reality Composer; Reality Converter; Snapshots Studio (beta); SF Symbols; Classroom and Schoolwork; Metal; and more.  For example, Epic and other developers have access to 150,000 iOS Application Programming Interfaces (APIs), technical tools that simplify and accelerate the development process, across Apple's iOS.  This is an exponential increase over the number of APIs available to developers in the past.  These tools, technology, and software are protected by copyrights, patents, and other intellectual property (IP) protections and subject to license agreements for their use.  Apple makes them available to developers who seek to contribute to the safe and reliable platform that Apple created.

As a member of the App Developer Program, Epic has also been able to download and install beta versions of operating systems—including iOS beta, iPadOS beta, macOS beta, watchOS beta, and tvOS beta—so its apps will be ready for the latest public releases.  Epic has been afforded the opportunity to build its apps with a comprehensive set of services and capabilities that allowed it to deliver advanced features to its users and build intuitive, multi-faceted experiences that are genuinely seamless.  Among the services and capabilities made available to Epic are the following: AirPlay; AirPrint; App Clips; Apple Pay; ARKit; Business Chat; CarPlay; CloudKit; Core ML; Face ID and Touch ID; FairPlay Streaming; GameKit; Handoff; HealthKit; HomeKit; In-App Purchase and Subscriptions; Mac Catalyst; MapKit; MusicKit; Network Extensions; PassKit; Push Notifications;

---

[1] Apple also offers many app development resources—including its Xcode development software—completely free of charge, regardless of membership in the Developer Program.  *See* Xcode 12, https://developer.apple.com/xcode/.

SiriKit and Shortcuts; Sign in with Apple; ResearchKit and CareKit; System Extensions and DriverKit; Widgets; and more.

*Fortnite* alone has used more than 400 of Apple's unique API frameworks, five different versions of Apple's SDK, and six unique Xcode builds.  Over the past two years, Epic has received as much or more of these benefits and support services from Apple as any other developer on the App Store.  In particular, Epic has made great use of Apple-provided tools like TestFlight, VOIP, Stickers, iCloud document storage, ARKit, Messages Extension, ReplayKit, and Push Notifications.

With respect to distribution, Epic has also been able to take advantage of Apple Business Manager and Apple School Manager; Ad Hoc (which allows a limited number of users to install Epic's apps directly on their Apple devices for testing and internal distribution); and Developer ID (which allows Epic to distribute its Mac apps, plug-ins, and installer packages outside of the Mac App Store by signing them with a Developer ID certificate and having them notarized by Apple).

Epic has also been able to take advantage of Developer Events (through which developers can learn how to take their apps to the next level with technical details and guidance from Apple experts at events for program members); Technical Support (*e.g.*, developers can request code-level support from technical support engineers who can help troubleshoot their app's code or provide solutions that will fast-track their development); Developer Forums (through which developers can ask questions and respond to posts on developing for Apple platforms with Apple engineers and other developers); and Membership Support (*e.g.*, developers can get help by phone or email on account management, tools, and distribution, at no cost).  Specifically, in the two years since *Fortnite* was first launched on the App Store in March 2018, *Fortnite* has been reviewed more than 200 times by Apple's app reviewers, and has had Apple push more than 140 unique updates to Apple's customers.  Apple's App Store team frequently provided all-hands-on-deck treatment to address Epic's asks, which often involved short-turnaround support requests, which Apple consistently accommodated.  This ultimately led Apple to bring a business development colleague stationed abroad onto the Epic relationship team, so that Apple could provide Epic with 24-hour coverage.

Following *Fortnite*'s first year on the App Store, Apple continued to work vigorously to meet Epic's frequent and labor-intensive demands.  For example, in 2019 alone, Apple expedited app

14

review in response to almost all of Epic's more than 80 rush requests, even though developers are typically required to make such expedited requests only in extenuating circumstances. Apple similarly expedited *Fortnite* updates across App Store storefronts on several occasions when Epic proclaimed that its particular launch timing was critical in order to ensure seamless and simultaneous cross-play across different platforms, like iOS and those related to game-consoles like Xbox and PlayStation.

In addition to providing engineering, technical, and hardware-related support, Apple has also provided Epic with a significant amount of marketing and promotion support for *Fortnite*—again, as much as Apple has provided to any other game in recent history. For example, Apple has provided both paid and organic marketing for *Fortnite* on iOS, including through Apple's App Store mailing lists. From March 15, 2018 through August 14, 2020, Apple paid for advertising on various media channels that drove almost a half-million *Fortnite* transactions at a channel level (*i.e.*, transactions that occurred within 24 hours of an ad-click directing users to the App Store, where they then downloaded the *Fortnite* game for the first time). In addition, Apple advertising drove more than 100,000 additional *Fortnite* (non-first-time) re-downloads during that same period. In the 11 months preceding the removal of *Fortnite* from the App Store on August 13, 2020, Apple spent approximately one million dollars on paid media promotions of *Fortnite*. And through its mailing lists, Apple has sent over 500 million marketing communications about *Fortnite* to end users.

Apple has also published many social media posts promoting *Fortnite* on Apple's own Twitter and Facebook accounts—a form of support that Epic has frequently pressed Apple to provide, given Epic's heavy use of social media to promote its products and build its community. To promote concerts taking place in *Fortnite*, Apple has featured the app on the App Store and in Apple Music, and placed billboards in New York's Times Square and LA Live to promote an in-app *Fortnite* concert with DJ Marshmello. Apple responded to repeated requests by Epic to permit *Fortnite* to "take over" the App Store, featuring the app prominently on the App Store's most sought-after and frequented spaces. In fact, no other game has ever been featured as prominently on the App Store at any time either before or since. Such placement on the App Store substantially drives growth in a particular app's user base because the individuals that frequent these App Store "tabs" are a self-

15

selecting pool of curious iOS users who are open to browsing and downloading new games or reengaging with a favorite game. In addition, Apple has run numerous large editorial features for multiple Epic apps in the App Store every few weeks—for example, art placement at the top of the App Store "Games" tab, as well as other "major beats" features and a host of smaller ones. In fact, between the day that it launched in March 2018 and its removal in August 2020, the *Fortnite* app was almost always featured on some portion of the App Store in one of its 175 storefronts worldwide.

Apple has also consistently provided consultations to Epic to help the company improve its own marketing, especially its performance marketing. For example, Apple has connected Epic's *Fortnite* team with Apple personnel in the UAE, Latin America, South Korea, and other regions to provide market intelligence and feature opportunities in those regions to support Epic's expansion efforts. And while all developers to some degree take advantage of the support and guidance that Apple provides, again, Epic has demanded a much greater degree of support from Apple. For example, Apple has held weekly telephone check-ins with Epic representatives to stay abreast of issues and coordinate efforts—a much higher degree of contact than Apple has with other game developers. And when Epic launched a new *Fortnite* version or announced new features, Apple provided Epic with feedback on, among other things, gameplay design, marketing, monetization, and best practices with Apple's technology.

In addition Apple acknowledges and supports the thriving ecosystem of third-party tools and services that developers use to build apps, including Unreal Engine, a game-development software platform on which Epic bases many of its own games, like *Fortnite*, and that it licenses to other developers to use as the software platform for their apps. In fact, Apple has gone above and beyond to support and strengthen Unreal Engine's capabilities on iOS and Mac.

By participating in Apple's Developer Program and agreeing to Apple's rigorous quality, reliability, safety, security, and privacy standards and app review procedures, Epic gained access to another channel for reaching customers. More than 130 million people have downloaded *Fortnite* on the iPhone, and Epic has earned more than $550 million through iOS alone.

Gibson, Dunn & Crutcher LLP

In addition to the above response, Apple has produced to Epic a number of documents from the agreed custodians that relate to the tools, technology, software, marketing opportunities, and worldwide customer reach that Apple provided.

**INTERROGATORY NO. 3:**

State the Factual Basis for Apple's statements that the iOS App Store, Apple's IAP, or Apple's StoreKit APIs are "integrated" into each other, the "iOS infrastructure" or the "App Store software platform". (Joint Case Management Statement (ECF No. 120) at 5; Defendant Apple Inc.'s Opposition to Epic Games, Inc.'s Motion for a Preliminary Injunction (ECF No. 73) at 19-21.)

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 3:**

Apple restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response.  Apple further objects to this Interrogatory on the following grounds:

Apple objects to this Interrogatory because the definition of "State the Factual Basis" is impermissibly vague, ambiguous, overly broad, and unduly burdensome in purporting to require Apple to "state with particularity each and every fact that You contend supports that response, contention, allegation, claim, defense, or statement, Including the basis and source of Your knowledge of each fact."  "'Each and every fact' interrogatories pose problems for a responding party and a reviewing court.  Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories."  *Tubbs v. Sacramento Cty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008) (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)).  Apple further objects to this Interrogatory because it is impermissibly vague and ambiguous, including as to the undefined term "integrated," which prevents Apple from responding in any meaningful way and without accepting Plaintiff's improper characterizations.  Apple further objects to this Interrogatory because it calls for a legal conclusion.  Apple further objects to this Interrogatory because it is premature, given that discovery in this case is ongoing.  Apple further objects to this Interrogatory because it is compound as it contains numerous discrete subparts that introduce separate and distinct lines of inquiry that are not logically and factually subsumed within and necessarily related to the primary question.  *See Hasan v. Johnson*, 2012 WL 569370, at *5 (E.D. Cal. Feb. 21, 2012); *Superior*

17

*Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217–18 (C.D. Cal. 2009).  Due to the compound nature of the interrogatories as drafted, Apple objects to this Interrogatory because it is excessive as Plaintiff has exceeded the 25-written-interrogatory limit per party pursuant to Fed. R. Civ. P. 33(a)(1).  Apple further objects to this Interrogatory to the extent that it is overbroad and seeks information that is neither relevant to the subject matter of this litigation nor proportional to the needs of the case.  Apple further objects to this Interrogatory because it seeks Apple's protected trade secrets and other sensitive, proprietary information that would pose security and business risks to Apple and risks to Apple users' security and privacy if disclosed.  Thus, the burden of fully responding would outweigh the utility of this information.

Subject to, limited by, and without waiving its objections, Apple responds as follows:

The factual basis for the cited statements regarding "integration," including in Apple's PI Opposition Brief at 19–21, are cited in Apple's PI Opposition Brief and include the declarations cited therein, including the sworn testimony of Philip W. Schiller, as well as the sworn expert testimony of Richard Schmalensee, Ph.D. and Lorin M. Hitt, Ph.D.  *See, e.g.*, PI Opposition Brief at 21 (noting "Apple's integration of its StoreKit APIs into the App Store software platform (and indeed, the integration of the App Store with the iPhone) . . . offers numerous benefits to consumers and developers") (citing Schiller Decl. at ¶¶ 34–36; Schmalensee Decl. at ¶¶ 31, 34–37); *see also* PI Opposition Brief at 19 (noting "IAP is part of an integrated service delivered in the form of a single transaction, not a separate product" and Apple's "commission is the return on Apple's investment in the App Store and the full suite of IP, tools, and services Apple offers to developers") (citing Schmalensee Decl. at ¶¶ 29, 44–45, 57; Schiller Decl. at ¶ 7; Declaration of Lorin M. Hitt, Ph.D. ("Hitt Decl.") (ECF No. 77) at ¶ 75).  Each of these declarants could and would testify as to their own sworn testimony.

Moreover, with respect to "integrat[ion]," the Court noted in its order granting in part and denying in part Plaintiff's Motion for Preliminary Injunction that "the IAP system appears to be integrated with the App Store and, historically, to have never been a separate product."  ECF No. 118 at 23; *see also id.* ("Based upon the current record, the Court concludes that Epic Games has not yet

1  shown that the IAP system is a separate and distinct service from iOS app distribution sufficient to

2  constitute a 'tie' under antitrust law.").

3  **INTERROGATORY NO. 4:**

4      State the Factual Basis for Mike Schmid's statements that "Epic consistently threatened to

5  release the game update on other platforms first, leaving the App Store behind, if Apple could not

6  accommodate their requests", and "[o]n a variety of occasions, Epic personnel have told me that if

7  Apple did not comply with its demands, Epic would simply terminate its relationship with Apple and

8  remove its games off of the iOS platform. Epic has repeatedly told me that it could do this because

9  Apple is the 'smallest piece of the pie' when it came to *Fortnite* revenue. On several occasions, Epic

10  personnel have told me that Apple represents just seven percent of Epic's revenue", Including which

11  Epic employees made which statements, when each statement was communicated, and by which

12  medium each statement was communicated. (Declaration of Mike Schmid in Support of PI

13  Opposition Brief ("Schmid Decl.") (ECF No. 79) at ¶¶ 8, 18.)

14  **OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 4:**

15      Apple restates and incorporates its Preliminary Statement, General Objections, Objections to

16  Definitions, and Objections to Instructions as though fully set forth in this Response.  Apple further

17  objects to this Interrogatory on the following grounds:

18      Apple objects to this Interrogatory because the definition of "State the Factual Basis" is

19  impermissibly vague, ambiguous, overly broad, and unduly burdensome in purporting to require

20  Apple to "state with particularity each and every fact that You contend supports that response,

21  contention, allegation, claim, defense, or statement, Including the basis and source of Your

22  knowledge of each fact."  "'Each and every fact' interrogatories pose problems for a responding party

23  and a reviewing court.  Parties are not tasked with laying out every jot and tittle of their evidentiary

24  case in response to interrogatories."  *Tubbs v. Sacramento Cty. Jail*, 2008 WL 863974, at *1 (E.D.

25  Cal. Mar. 28, 2008) (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)).  Apple further

26  objects to this Interrogatory because the information it seeks is not the proper subject of an

27  interrogatory and is more properly suited to a deposition of Mike Schmid, the individual who has

28  sworn to have personal knowledge of the information related thereto.  *See, e.g.*, *Whittington v. City of*

19

1    *Cuero, Texas*, 2007 WL 737484, at \*3 (S.D. Tex. Mar. 5, 2007) (sustaining objection to interrogatory

2    on ground that it was "unusual, burdensome and more properly accomplished by the taking of

3    depositions"); *Smith v. Guthrie*, 2005 WL 8164952, at \*2 (N.D. Fla. Nov. 8, 2005) (recognizing

4    interrogatory seeking descriptions of conversations between defendant and plaintiff "may be more

5    appropriate as a deposition question").  Apple further objects to this Interrogatory because it is

6    compound as it contains numerous discrete subparts that introduce separate and distinct lines of

7    inquiry that are not logically and factually subsumed within and necessarily related to the primary

8    question.  *See Hasan v. Johnson*, 2012 WL 569370, at \*5 (E.D. Cal. Feb. 21, 2012); *Superior*

9    *Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217–18 (C.D. Cal. 2009).  Due to the compound

10   nature of the interrogatories as drafted, Apple objects to this Interrogatory because it is excessive as

11   Plaintiff has exceeded the 25-written-interrogatory limit per party pursuant to Fed. R. Civ. P.

12   33(a)(1).

13           Subject to, limited by, and without waiving its objections, Apple responds as follows:

14           As is made clear in the sworn Declaration of Mike Schmid in Support of Apple's PI Opposition

15   Brief (ECF No. 79), the factual basis for Mr. Schmid's testimony is Mr. Schmid's "personal knowledge

16   of the matters stated [t]herein," including his "personal knowledge and experience concerning Apple's

17   App Store team and Worldwide Developer Relations ('WWDR' or 'Developer Relations') team, and

18   the many tools, services, and benefits that Apple provides developers," which includes his efforts

19   "work[ing] particularly closely with Epic Games, Inc. and its affiliates (collectively, 'Epic' or 'Epic

20   Games')."  ECF No. 79 at ¶¶ 1–2.  As Mr. Schmid stated, "if called upon to do so, [he] could and would

21   competently testify [t]hereto."  *Id.* at ¶ 1.

22   **INTERROGATORY NO. 5:**

23           State the Factual Basis for Mike Schmid's statement that "Epic has repeatedly leveraged the

24   global phenomenon that was *Fortnite* to coerce platforms to change their rules. For example, in

25   September 2018, Epic quietly updated *Fortnite* to enable cross-platform play between PlayStation and

26   Xbox. This was explicitly against PlayStation's rules and Epic pushed PlayStation into a difficult

27   situation with its own user base, where it was forced to make a significant change on Epic's terms, not

28   its own. Epic's strategy of coercing platforms for its own gain, under the guise of being 'pro-gamer,'

1    is something Epic continues to do." (Declaration of Mike Schmid in Support of Defendant Apple Inc.'s

2    Opposition to Plaintiff's Motion for a Preliminary Injunction (ECF No. 79) at ¶ 19.)

3    **OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 5:**

4         Apple restates and incorporates its Preliminary Statement, General Objections, Objections to

5    Definitions, and Objections to Instructions as though fully set forth in this Response.  Apple further

6    objects to this Interrogatory on the following grounds:

7         Apple objects to this Interrogatory because the definition of "State the Factual Basis" is

8    impermissibly vague, ambiguous, overly broad, and unduly burdensome in purporting to require Apple

9    to "state with particularity each and every fact that You contend supports that response, contention,

10   allegation, claim, defense, or statement, Including the basis and source of Your knowledge of each

11   fact."  "'Each and every fact' interrogatories pose problems for a responding party and a reviewing

12   court.  Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to

13   interrogatories."  *Tubbs v. Sacramento Cty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008)

14   (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)).   Apple further objects to this

15   Interrogatory because the information it seeks is not the proper subject of an interrogatory and is more

16   properly suited to a deposition of Mike Schmid, the individual who has sworn to have personal

17   knowledge of the information related thereto.  *See, e.g.*, *Whittington v. City of Cuero, Texas*, 2007 WL

18   737484, at *3 (S.D. Tex. Mar. 5, 2007) (sustaining objection to interrogatory on ground that it was

19   "unusual, burdensome and more properly accomplished by the taking of depositions"); *Smith v.

20   Guthrie*, 2005 WL 8164952, at *2 (N.D. Fla. Nov. 8, 2005) (recognizing interrogatory seeking

21   descriptions of conversations between defendant and plaintiff "may be more appropriate as a deposition

22   question").

23        Subject to, limited by, and without waiving its objections, Apple responds as follows:

24        As is made clear in the sworn Declaration of Mike Schmid in Support of Apple's PI Opposition

25   Brief (ECF No. 79), the factual basis for Mr. Schmid's testimony is Mr. Schmid's "personal knowledge

26   of the matters stated [t]herein," including his "personal knowledge and experience concerning Apple's

27   App Store team and Worldwide Developer Relations ('WWDR' or 'Developer Relations') team, and

28   the many tools, services, and benefits that Apple provides developers," which includes his efforts

Gibson, Dunn &
Crutcher LLP

"work[ing] particularly closely with Epic Games, Inc. and its affiliates (collectively, 'Epic' or 'Epic Games')." ECF No. 79 at ¶¶ 1–2. As Mr. Schmid stated, "if called upon to do so, [he] could and would competently testify [t]hereto." *Id.* at ¶ 1.

**INTERROGATORY NO. 6:**

Identify all methods, processes, and/or protocols through which Apple contends that the iOS App Store "ensure[s] reliability, safety, security, and privacy" of iOS devices differently and/or better than methods, processes, and/or protocols that could be taken by a non-Apple Developer or Software Store, and State the Factual Basis for Apple's contention. (Defendant Apple Inc.'s Opposition to Epic Games, Inc.'s Motion for a Preliminary Injunction (ECF No. 73) at 7.)

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 6:**

Apple restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response. Apple further objects to this Interrogatory on the following grounds:

Apple objects to this Interrogatory because the definition of "State the Factual Basis" is impermissibly vague, ambiguous, overly broad, and unduly burdensome in purporting to require Apple to "state with particularity each and every fact that You contend supports that response, contention, allegation, claim, defense, or statement, Including the basis and source of Your knowledge of each fact." "'Each and every fact' interrogatories pose problems for a responding party and a reviewing court. Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories." *Tubbs v. Sacramento Cty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008) (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)). Apple further objects to this Interrogatory because it is premature, given that discovery in this case is ongoing. Apple further objects to this Interrogatory because it is compound as it contains numerous discrete subparts that introduce separate and distinct lines of inquiry that are not logically and factually subsumed within and necessarily related to the primary question. *See Hasan v. Johnson*, 2012 WL 569370, at *5 (E.D. Cal. Feb. 21, 2012); *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217–18 (C.D. Cal. 2009). Due to the compound nature of the interrogatories as drafted, Apple objects to this Interrogatory because it is excessive as Plaintiff has exceeded the 25-written-interrogatory limit per party pursuant to Fed. R.

1   Civ. P. 33(a)(1).  Apple further objects to this Interrogatory to the extent that it is overbroad and seeks

2   information that is neither relevant to the subject matter of this litigation nor proportional to the needs

3   of the case.  Apple further objects to this Interrogatory because it seeks Apple's protected trade secrets

4   and other sensitive, proprietary information that would pose security and business risks to Apple and

5   risks to Apple users' security and privacy if disclosed.  Thus, the burden of fully responding would

6   outweigh the utility of this information.  Apple further objects to this Interrogatory because it is

7   impermissibly vague and ambiguous, including as to the following undefined terms or phrases:

8   "methods, processes, and/or protocols," "differently," and "better," which prevent Apple from

9   responding in any meaningful way and without accepting Plaintiff's improper characterizations.

10         Subject to, limited by, and without waiving its objections, Apple responds as follows:

11         Apple has built a reputation for quality products that also protect user security and privacy,

12  both through the creation of high-quality devices, like the iPhone, that contain built-in privacy

13  features and software, and through operation of the App Store, which is designed to ensure that apps

14  meet Apple's standards, add value to users, and safeguard users' privacy and security.  The high level

15  of security, privacy, and quality is a reason that people choose Apple products.

16         Among other consumer protections embedded in the App Store platform, and consistent with

17  Apple's overall philosophy of putting the user experience first, the App Store employs a human-led

18  app review process, described more fully in Apple's Response to Interrogatory No. 8, which ensures

19  that apps meet Apple's rigorous standards for reliability, quality, safety, security, and privacy before

20  they can be distributed to Apple's customers.  This process includes steps designed to uphold Apple's

21  standards, including confirmation that the app is free from known malware, use of signatures and

22  encryption to ensure safe distribution via the App Store, verification of the digital signatures upon

23  download to confirm that the app has not been tampered with or altered in any way, and revocation of

24  signing certificates for developer accounts determined to be malicious.  Most importantly, however,

25  Apple has a real-life person download and open every app to review it for compliance with Apple's

26  rigorous App Store Review Guidelines ("Guidelines").  As a result of these measures, consumers can

27  trust that what they intend to download, whether that be an app or in-app content, is what they will

28  receive.

Gibson, Dunn &
Crutcher LLP

Apple's guarantee that all iOS apps available to end users are reviewed for compliance with the Guidelines ensures a level of safety and trust far greater than on competing platforms—including, notably, Google's Android.[2]  Unlike Apple, Google initially (and for many years thereafter) did not conduct any screening of apps distributed through its app marketplace.  In 2015, Google eventually began reviewing apps before publication in its Google Play Store after several significant privacy and security breaches.[3]  And since then, Google has only moved closer to Apple's model of upfront review and curation.  In 2018, for instance, Google began notifying users when they are installing apps that are rarely installed in the Android ecosystem.[4]  And last year, Google announced plans to take more time to review apps from developers that "don't yet have a track record with us" so that Google can "do more thorough checks before approving apps to go live in the store."[5]  These changes are an implicit acknowledgement that Apple's more controlled approach to app distribution provides greater protection for consumers.

Still, in part because Google relies primarily on algorithm-based review processes and has resisted the degree of human review that Apple has always employed, Google has continued to grapple with serious security and privacy breaches even with additional vetting and controls.[6]  Just last month, for instance, researchers discovered more than 20 fake Minecraft apps on Google Play that, once downloaded, start delivering a constant stream of unwanted ads.[7]  Security reports

---

[2]  Internet Security Threat Report, Symantec, at 11 (Apr. 2016) ("Apple is well-known for its stringent screening processes, which is why the number of malicious iOS apps is so much smaller than for Android."), https://docs.broadcom.com/doc/istr-21-2016-en.

[3]  *See* Creating Better User Experiences on Google Play (March 17, 2015), https://android-developers.googleblog.com/2015/03/creating-better-user-experiences-on.html

[4]  *See* Google Play Protect in 2018: New Updates to Keep Android Users Secure (Feb. 26, 2019), https://security.googleblog.com/2019/02/google-play-protect-in-2018-new-updates.html.

[5]  *See* Improving the Update Process with Your Feedback (Apr. 15, 2019), https://android-developers.googleblog.com/2019/04/improving-update-process-with-your.html

[6]  *See, e.g.*, Andy Greenberg, *How Spies Snuck Malware Into the Google Play Store—Again and Again*, Wired (April 28, 2020), https://www.wired.com/story/phantomlance-googleplay-malware-apt32/; Tim Fisher, *Is Google Play Safe?*, Lifewire (March 6, 2020), https://www.lifewire.com/is-google-play-safe-153675.

[7]  *See Over 20 Malicious Minecraft Android Apps Found on Google Play*, PC Mag (Nov. 24, 2020), https://www.pcmag.com/news/over-20-malicious-minecraft-android-apps-found-on-google-

24

frequently show that there is far more malicious software on Android and other more permissive platforms than on iOS.  In 2018, Android accounted for 47.15% and Windows/PC accounted for 35.82% of malware infections; by contrast, the iPhone platform accounted for just 0.85%.[8]  Similarly, a 2013 U.S. Department of Homeland Security study found that 79% of mobile device malware attacks were for the Android platform, and only 0.7% for iOS.[9]  And Android app stores—including Google Play—have a significantly higher number of harmful apps than the App Store.[10]

## INTERROGATORY NO. 7:

Identify all synergies and other benefits that Apple contends result from having the iOS App Store be the only Software Store on iOS and all synergies and other benefits that Apple contends would be unachievable if there were other Software Stores on iOS, and State the Factual Basis for Apple's contentions.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 7:

Apple restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response.  Apple further objects to this Interrogatory on the following grounds:

Apple objects to this Interrogatory because it is impermissibly vague, and ambiguous, including as to the undefined terms "synergies and other benefits" and "unachievable," which prevent Apple from responding in any meaningful way and without accepting Plaintiff's improper characterizations.  Apple further objects to this Interrogatory because it improperly seeks a response that is the province of expert testimony well in advance of the parties' deadline for disclosing expert reports.  Apple further objects to this Interrogatory because it is compound as it contains at least two discrete subparts that introduce separate and distinct lines of inquiry that are not logically and factually subsumed within and

play#:~:text=As%20Graham%20Cluley%20reports%2C%20security,criminals%20to%20take%20 0advantage%20of.

[8]  *See* Nokia Threat Intelligence Report – 2019, Nokia, https://pages.nokia.com/T003B6-Threat-Intelligence-Report-2019.html.

[9]  *See* Roll Call Release, U.S. Dep't of Homeland Security & Federal Bureau of Investigation (July 23, 2013), https://info.publicintelligence.net/DHS-FBI-AndroidThreats.pdf.

[10]  *See* 2019 Mobile App Threat Landscape Report, RiskIQ (2019), https://www.riskiq.com/research/2019-mobile-threat-landscape-report/.

necessarily related to the primary question.  *See Hasan v. Johnson*, 2012 WL 569370, at *5 (E.D. Cal. Feb. 21, 2012); *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217–18 (C.D. Cal. 2009).  Due to the compound nature of the interrogatories as drafted, Apple objects to this Interrogatory because it is excessive as Plaintiff has exceeded the 25-written-interrogatory limit per party pursuant to Fed. R. Civ. P. 33(a)(1).  Apple further objects to this Interrogatory to the extent that it is overbroad and seeks information that is neither relevant to the subject matter of this litigation nor proportional to the needs of the case.  Apple further objects to this Interrogatory because it calls for a legal conclusion.

**INTERROGATORY NO. 8:**

Identify all the steps You take to review an App before approving it for distribution on the iOS App Store and macOS App Store, including (i) all automated or mechanized steps, (ii) all steps taken by human reviewers, and (iii) all tools utilized by Apple in the review process, Including in each case steps and tools that are used only in certain circumstances, and how those steps and tools have changed since the iOS App Store and macOS App Store were launched through today.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 8:**

Apple restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response.  Apple further objects to this Interrogatory on the following grounds:

Apple objects to this Interrogatory because the definition of "State the Factual Basis" is impermissibly vague, ambiguous, overly broad, and unduly burdensome in purporting to require Apple to "state with particularity each and every fact that You contend supports that response, contention, allegation, claim, defense, or statement, Including the basis and source of Your knowledge of each fact."  "'Each and every fact' interrogatories pose problems for a responding party and a reviewing court.  Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories."  *Tubbs v. Sacramento Cty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008) (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)).  Apple further objects to this Interrogatory because it is premature, given that discovery in this case is ongoing.  Apple further objects to this Interrogatory because it is compound as it contains numerous discrete subparts that introduce separate and distinct lines of inquiry that are not logically and factually subsumed within and

1    necessarily related to the primary question.  *See Hasan v. Johnson*, 2012 WL 569370, at *5 (E.D. Cal.

2    Feb. 21, 2012); *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217–18 (C.D. Cal. 2009).  Due

3    to the compound nature of the interrogatories as drafted, Apple objects to this Interrogatory because it

4    is excessive as Plaintiff has exceeded the 25-written-interrogatory limit per party pursuant to Fed. R.

5    Civ. P. 33(a)(1).  Apple further objects to this Interrogatory to the extent that it is overbroad and seeks

6    information that is neither relevant to the subject matter of this litigation nor proportional to the needs

7    of the case.  Apple further objects to this Interrogatory because it seeks Apple's protected trade secrets

8    and other sensitive, proprietary information that would pose security and business risks to Apple and

9    risks to Apple users' security and privacy if disclosed.  Thus, the burden of fully responding would

10    outweigh the utility of this information.  Apple further objects to this Interrogatory because it is

11    impermissibly vague and ambiguous, including as to the following undefined terms or phrases:

12    "automated or mechanized steps," "steps taken by human reviewers," and "tools utilized by Apple in

13    the review process," which prevent Apple from responding in any meaningful way and without

14    accepting Plaintiff's improper characterizations.

15        Subject to, limited by, and without waiving its objections, Apple responds as follows:

16        The foundation of the App Store is that consumers can safely and easily download apps for

17    their iPhones and iPads that perform as promised, do not jeopardize the security, stability, or

18    reliability of their devices, and offer the privacy protections that consumers have come to expect from

19    Apple.  Toward that end, Apple undertakes a rigorous, human-led review process for every app

20    (including apps that Apple itself offers on the App Store)—with reviewers representing 81 languages

21    vetting on average 100,000 submissions per week—to ensure that each app functions as intended and

22    complies with Apple's stringent requirements on security and protection of customer privacy, among

23    other things.  The app review process is guided by a series of agreements and guidelines governing

24    Apple's relationship with developers.

25        Specifically, to participate in Apple's Developer Program, gain access to Apple's extensive

26    library of app development software, and receive the distribution, marketing, and other services that

27    Apple provides through the App Store, a developer must enter into certain contracts with Apple—

28    most notably (1) the Developer Agreement ("Developer Agreement") and (2) the Developer Program

27

License Agreement ("License Agreement").  In order to distribute apps on the App Store, a developer must also join the Apple Developer Program by executing a License Agreement and paying a $99 annual program fee.  The License Agreement governs distribution of apps through the App Store and provides access to the full suite of developer tools, software, and other intellectual property for app creation that Apple maintains for the Developer Program.  Distribution of free apps through the App Store is governed by Schedule 1 to the License Agreement.  Distribution of paid apps or apps offering in-app purchases through the App Store requires execution of an additional Schedule 2 to the License Agreement.  In addition, the App Store Guidelines provide the rules and requirements relating to Apple's review of apps for possible publication on the App Store, and are incorporated by reference throughout the License Agreement.  All developers on the App Store have agreed to abide by the terms of the Guidelines.  The provisions in the above-referenced documents describe Apple's app review process.

Apple's human-led app review process involves uniformly applying the Guidelines, as well as related provisions in the Developer Agreement and License Agreement, to all developers.  The process is designed to uphold Apple's standards, including by confirming that the app is free from known malware, using signatures and encryption to ensure safe distribution via the App Store, verifying of digital signatures upon download to confirm that the app has not been tampered with or altered in any way, and revoking of signing certificates for developer accounts determined to be malicious.

In addition to the above response, Apple has produced to Epic an extensive number of documents from the agreed custodians reflecting Apple's app review process.

**INTERROGATORY NO. 9:**

State whether You contend that Uber and other Apps that do not pay Apple a commission for IAP are free-riding on Apple's investment in iOS and/or the iOS App Store, and/or are subsidized by Apps using IAP, and State the Factual Basis for Your position.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 9:**

Apple restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response.  Apple further objects to this Interrogatory on the following grounds:

28

Apple objects to this Interrogatory because it is impermissibly vague and ambiguous, including as to the undefined term "subsidized," which prevents Apple from responding in any meaningful way and without accepting Plaintiff's improper characterizations. Apple further objects to this Interrogatory because it improperly seeks a response that is the province of expert testimony well in advance of the parties' deadline for disclosing expert reports. Apple further objects to this Interrogatory because it is compound as it contains at least two discrete subparts that introduce separate and distinct lines of inquiry that are not logically and factually subsumed within and necessarily related to the primary question. *See Hasan v. Johnson*, 2012 WL 569370, at *5 (E.D. Cal. Feb. 21, 2012); *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217–18 (C.D. Cal. 2009). Due to the compound nature of the interrogatories as drafted, Apple objects to this Interrogatory because it is excessive as Plaintiff has exceeded the 25-written-interrogatory limit per party pursuant to Fed. R. Civ. P. 33(a)(1). Apple further objects to this Interrogatory to the extent that it is overbroad and seeks information that is neither relevant to the subject matter of this litigation nor proportional to the needs of the case. Apple further objects to this Interrogatory because it calls for a legal conclusion.

Subject to, limited by, and without waiving its objections, Apple responds as follows:

Apple makes no such contention as to Uber and contends rather that developers, like Epic, who circumvent their obligations under the License Agreement and other relevant agreements to pay Apple a commission are free-riding on Apple's investments. *See* Schmalensee Decl. at ¶¶ 55–64.

**INTERROGATORY NO. 10:**

Identify how "Apple estimates costs allocated to the App Store" and "Apple's 'methodology' for generating App Store-specific financial information", Including any methodology (Including any apportionment and/or allocation methods) by which Apple generates iOS App Store-specific and/or macOS App Store-specific profit and loss and gross margin information. (Apple's 11/11/20 Draft Joint Letter Brief Regarding Apple's Production of Cost and Expense Documents and Data, at 2 & n.5.)

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 10:**

Apple objects to this Interrogatory because it is vague and ambiguous in its use of the undefined phrase "Apple's 'methodology' for generating App Store-specific financial information," which Apple

29

previously used in reference to an ill-defined demand from class plaintiffs in the related App Store antitrust cases. *See* Apple's 11/10/2020 Draft Joint Letter Brief Regarding Apple's Production of Cost and Expense Documents and Data (the Interrogatory erroneously lists the date of this document as 11/11/20), at n.5. Apple further objects to this Interrogatory because it is overbroad and unduly burdensome in its demand for all ways in which Apple might estimate costs allocated to the App Store or generate App Store-specific financial information. Apple further objects to this interrogatory to the extent that the requested information is available in documents that Apple has produced in response to requests from Epic and class plaintiffs in the related App Store antitrust litigation. Apple further objects to this Interrogatory because it violates Federal Rule of Civil Procedure 33(b)(1)(B) in that answering it would require Apple to furnish information that is not available to it and/or cannot be given without undue labor and expense. Under Rule 33, a responding party "must furnish information that is *available to it* and that can be given *without undue labor and expense*." Wright & Miller, Fed. Prac. & Proc. § 2174 (3d ed.) (emphasis added); *see also* Fed. R. Civ. P. 33(b)(1)(B). Parties are "not required to conduct extensive research in order to answer an interrogatory," *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013), and "interrogatories that require a party to undertake extensive investigations, research, or compilations or evaluations of data for the opposing party"—as this Interrogatory undoubtedly does—"are in many circumstances," as here, "improper." Wright & Miller, *supra*, § 2174. Apple further objects to this Interrogatory on the grounds that it improperly seeks a response that is the province of expert testimony well in advance of the parties' deadline for disclosing expert reports. *See* ABA Section of Antitrust Law, Antitrust Law Developments (8th ed. 2017), at 288.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Apple responds as follows:

Apple does not, in the ordinary course of its business, maintain profit and loss ledgers for the App Store, and the devices and platforms in Apple's ecosystem are characterized by substantial joint costs, not all of which are allocated for accounting purposes or otherwise. However, from time to time, Apple's Finance Department creates profit and loss reports for services of which the App Store is a part. These reports are compiled using certain assumptions about certain corporate costs in order to

1   allocate portions of them to iTunes.  Further, such reports and data may be used by others within Apple

2   to create estimates for certain limited purposes from time to time that pertain to the App Store.

3   **INTERROGATORY NO. 11:**

4          Identify all persons involved, as well as their respective roles, in drafting, developing, revising,

5   and/or permitting modifications of, exceptions to, or exemptions from the provisions now appearing in

6   Section 3.2(g), Section 3.3.2(b) or Section 3.3.3 of the Apple Developer Program License Agreement,

7   or Section 3.1.1 (first bulleted paragraph), Section 3.1.3 (including subparts) or Section 3.2.2(i) of

8   Apple's App Store Review Guidelines (or in any provisions similar to any of the foregoing in effect at

9   the relevant time).

10  **OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 11:**

11         Apple restates and incorporates its Preliminary Statement, General Objections, Objections to

12  Definitions, and Objections to Instructions as though fully set forth in this Response.  Apple further

13  objects to this Interrogatory on the following grounds:

14         Apple objects to this Interrogatory because it is impermissibly vague and ambiguous,

15  including as to the following undefined terms or phrases: "drafting," "developing," "revising," and

16  "permitting modifications of, exceptions to, or exemptions from," which prevent Apple from

17  responding in any meaningful way and without accepting Plaintiff's improper characterizations.

18  Apple further objects to this Interrogatory because it is compound as it contains numerous discrete

19  subparts that introduce separate and distinct lines of inquiry that are not logically and factually

20  subsumed within and necessarily related to the primary question.  *See Hasan v. Johnson*, 2012 WL

21  569370, at *5 (E.D. Cal. Feb. 21, 2012); *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215,

22  217–18 (C.D. Cal. 2009).  Due to the compound nature of the interrogatories as drafted, Apple

23  objects to this Interrogatory because it is excessive as Plaintiff has exceeded the 25-written-

24  interrogatory limit per party pursuant to Fed. R. Civ. P. 33(a)(1).  Apple further objects to this

25  Interrogatory because it is overbroad and seeks information that is neither relevant to the subject

26  matter of this litigation nor proportional to the needs of the case.  Apple further objects to this

27  Interrogatory because it calls for a legal conclusion.

28

Gibson, Dunn &
Crutcher LLP

Subject to, limited by, and without waiving its objections, Apple responds as follows: Apple has not permitted any modifications, exceptions to, or exemptions from the provisions identified in this Interrogatory.

**INTERROGATORY NO. 12:**

Identify all Developers, Including their respective App(s), who have requested a modification of, an exception to, and/or an exemption from the provisions now appearing in Section 3.2(g), Section 3.3.2(b) or Section 3.3.3 of the Apple Developer Program License Agreement, or Section 3.1.1 (first bulleted paragraph), Section 3.1.3 (including subparts) or Section 3.2.2(i) of Apple's App Store Review Guidelines (or in any provisions similar to any of the foregoing in effect at the time such request was made); for whom Apple has decided to create, adopt or modify, and/or allow an exception to or an exemption from, the provisions now appearing in Section 3.2(g), Section 3.3.2(b) or Section 3.3.3 of the Apple Developer Program License Agreement, or Section 3.1.1 (first bulleted paragraph), Section 3.1.3 (including subparts) or Section 3.2.2(i) of Apple's App Store Review Guidelines (or in any provisions similar to any of the foregoing in effect at the time such decision was made); and/or who are associated with any Apple Developer Program accounts terminated as a result of the Developer's introduction or proposed or threatened introduction of a non-IAP payment method into the Developer's App(s), Including the "over 2,000 accounts [terminated] for introducing a non-IAP payment method" (Defendant Apple Inc.'s Opposition to Epic Games, Inc.'s Motion for a Preliminary Injunction (ECF No. 73) at 8).

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 12:**

Apple restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response. Apple further objects to this Interrogatory on the following grounds:

Apple objects to this Interrogatory because it is impermissibly vague and ambiguous, including as to the following undefined terms or phrases: "modification of, an exception to, and/or an exemption from," and "create, adopt or modify, and/or allow an exception to or an exemption from," which prevent Apple from responding in any meaningful way and without accepting Plaintiff's improper characterizations. Apple further objects to this Interrogatory because it seeks information

32

(1) in which individuals/entities have a legitimate expectation or right of privacy or confidentiality under California law, and any other constitutional, statutory, or common law right of privacy, or (2) that is otherwise protected by federal and state constitutional, statutory, and/or common law rights of privacy of individuals or persons who are not parties to this lawsuit.  Apple further objects to this Interrogatory because it is compound as it contains numerous discrete subparts that introduce separate and distinct lines of inquiry that are not logically and factually subsumed within and necessarily related to the primary question.  *See Hasan v. Johnson*, 2012 WL 569370, at *5 (E.D. Cal. Feb. 21, 2012); *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217–18 (C.D. Cal. 2009).  Due to the compound nature of the interrogatories as drafted, Apple objects to this Interrogatory on the ground that it is excessive as Plaintiff has exceeded the 25-written-interrogatory limit per party pursuant to Fed. R. Civ. P. 33(a)(1).  Apple further objects to this Interrogatory because it violates Federal Rule of Civil Procedure 33(b)(1)(B), because answering it would require Apple to furnish information that is not available to it and/or cannot be given without undue labor and expense.  Under Rule 33, a responding party "must furnish information that is *available to it* and that can be given *without undue labor and expense*."  Wright & Miller, Fed. Prac. & Proc. § 2174 (3d ed.) (emphasis added); *see also* Fed. R. Civ. P. 33(b)(1)(B).  Parties are "not required to conduct extensive research in order to answer an interrogatory," *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013), and "interrogatories that require a party to undertake extensive investigations, research, or compilations or evaluations of data for the opposing party"—as this Interrogatory undoubtedly does—"are in many circumstances," as here, "improper."  Wright & Miller, *supra*, § 2174.  Apple further objects to this Interrogatory to the extent that it is overbroad and seeks information that is neither relevant to the subject matter of this litigation nor proportional to the needs of the case.

Subject to, limited by, and without waiving its objections, Apple responds as follows:  Apple is willing to meet and confer with Plaintiff regarding this Interrogatory.

**INTERROGATORY NO. 13:**

Identify the Apple employee whose communication with the Developer of the Dash App was recorded and subsequently made publicly available. (Dash and Apple: My Side of the Story, https://blog.kapeli.com/dash-and-apple-my-side-of-the-story.)

1    **OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 13:**

2           Apple restates and incorporates its Preliminary Statement, General Objections, Objections to

3    Definitions, and Objections to Instructions as though fully set forth in this Response.  Apple further

4    objects to this Interrogatory on the following grounds:

5           Apple objects to this Interrogatory because it seeks information that is not relevant to the

6    subject matter of this litigation.  Apple further objects to this Interrogatory to the extent it seeks

7    information related to individuals or entities that are not relevant to the allegations in the Complaint.

8

9    Dated:  December 11, 2020                              GIBSON, DUNN & CRUTCHER LLP

10

11                                          By:      /s/  Jay P. Srinivasan
                                                     Theodore J. Boutrous Jr.

12                                                   Richard J. Doren
                                                     Daniel G. Swanson

13                                                   Mark A. Perry
                                                     Veronica S. Lewis

14                                                   Cynthia E. Richman
                                                     Jay P. Srinivasan

15                                                   Attorneys for Defendant APPLE INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S OBJECTIONS AND RESPONSES TO EPIC'S FIRST SET OF INTERROGATORIES
CASE NO. 4:20-CV-05640-YGR

1

## CERTIFICATE OF SERVICE

2

I, Betty X. Yang, hereby certify that I am a citizen of the United States, over the age of

3

eighteen, and not a party to this action.  I hereby certify that on December 11, 2020, I delivered the

4

foregoing DEFENDANT APPLE INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF EPIC

5

GAMES, INC.'S FIRST SET OF INTERROGATORIES, via electronic mail, pursuant to an

6

agreement among the parties for electronic service, to the following counsel in this action and the

7

related actions:

8
9
10
11
12
13
14
15
16
17
18
19
20

PAUL R. RIEHLE
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE &**
**REATH LLP**

CHRISTINE A. VARNEY
cvarney@cravath.com
KATHERINE B. FORREST
kforrest@cravath.com
GARY A. BORNSTEIN
gbornstein@cravath.com
YONATAN EVEN
yeven@cravath.com
LAUREN A. MOSKOWITZ
lmoskowitz@cravath.com
M. BRENT BYARS
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**

*Counsel to Epic Games, Inc.*

STEVE W. BERMAN
steve@hbsslaw.com
ROBERT F. LOPEZ
robl@hbsslaw.com
SHANA E. SCARLETT
shanas@hbsslaw.com
BENJAMIN J. SIEGEL
bens@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**

*Interim Class Counsel for the Developer Plaintiffs*

MARK C. RIFKIN
rifkin@whafh.com
RACHELE R. BYRD
byrd@whafh.com
MATTHEW M. GUINEY
guiney@whafh.com
BRITTANY N. DEJONG
dejong@whafh.com
**WOLF HALDENSTEIN ADLER FREEMAN**
**& HERZ LLP**

*Interim Class Counsel for the Consumer Plaintiffs*

21

I declare under penalty of perjury under the laws of the United States of America that the

22

foregoing is true and correct.  Executed this 11th day of December, 2020, at Dallas, Texas.

23
24

  */s/ Betty X. Yang*
Betty X. Yang

25
26
27
28

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S OBJECTIONS AND RESPONSES TO EPIC'S FIRST SET OF INTERROGATORIES
CASE NO. 4:20-CV-05640-YGR