1
2
3
4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    DONALD R. CAMERON, et al.,              Case No.  19-cv-03074-YGR   (TSH)

8                       Plaintiffs,

9           v.                               **ORDER RE: MOTION FOR
                                             SANCTIONS**
10   APPLE INC.,                             Re: Dkt. No. 230

11                      Defendant.

12

13          Apple filed a motion for sanctions concerning the public disclosure of some of its allegedly

14   confidential information by Benjamin Siegel, one of the counsel for the Developer Plaintiffs in

15   this action.  ECF No. 230.  Plaintiffs filed an opposition, ECF No. 253, and Apple filed a reply.

16   ECF No. 270.  The Court heard oral argument on March 4, 2021, and now issues the following

17   order.

18                          I.      BACKGROUND

19   **A.      The Protective Order**

20          On January 9, 2020, the Court entered the parties' stipulated Protective Order.  ECF No.

21   85.  It sets forth different categories of confidential materials, including "CONFIDENTIAL" and

22   "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  *Id*. §§ 2.2, 2.8.  A party that

23   receives information designated by the producing party as HC-AEO may disclose it only to the

24   people specified in section 7.3.  Subject to certain exceptions, people receiving and viewing

25   information designated as HC-AEO must sign an "Acknowledgement and Agreement to Be

26   Bound," *id*. § 7.3, which requires the signatory to agree to comply with and be bound by all of the

27   terms of the Protective Order, *id*. Ex. A.

28          The Protective Order gives the parties the opportunity to contest the designation of

United States District Court
Northern District of California

1    information as HC-AEO.  *Id*. § 6.  It also includes a provision governing the "Unauthorized

2    Disclosure of Protected Material."  *Id*. § 11.  That provision requires a receiving party that has

3    disclosed confidential information in violation of the Protective Order to "immediately": (a) notify

4    the producing party in writing, (b) use its best efforts to retrieve all unauthorized copies of the

5    confidential material, (c) inform the person to whom the unauthorized disclosures were made of

6    the terms of the Protective Order, and (d) request that such persons execute the

7    "Acknowledgement and Agreement to Be Bound."  *Id*.

8    **B.      The Alleged Violation of the Protective Order**

9            On December 15, 2020, the Court held a public hearing via Zoom webinar concerning

10   discovery matters.  During the hearing, the Court asked the parties to address a dispute regarding

11   the production of certain transactional data.  ECF No. 198, 12/15 Tr. at 71:15-24.  This

12   transactional data consisted of "records of sales of apps, of downloads of free apps, in-app

13   purchases, subscriptions."  *Id*. at 72:21-22.  Apple initially produced a one-hundred-thousand

14   transaction sample of this data, *id*. at 72:8-12, and later a one-hundred-million transaction sample,

15   *id*. at 73:9-12.  This larger sample of transactional data was produced to Class Plaintiffs in

16   September 2020 "[p]ursuant to the Parties' January 9, 2020 Stipulated Protective Order," and was

17   expressly designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY under the

18   same Stipulated Protective Order."  ECF No. 230-4.  One outstanding dispute between the parties,

19   however, was whether Apple must produce a particular field in the data titled "proceeds reason,"

20   which, according to Siegel "indicates both which 15 percent commissions are pursuant to Apple's

21   standard policies and which are negotiated pursuant to individual negotiated agreements."  12/15

22   Tr. at 79:7–10.  After outlining his belief as to the general utility of the data, Siegel provided

23   specific examples of commission rates paid by particular business partners of Apple's:  "There

24   was also a 15 percent exception, it appears, for NetFlix and HBO that predated Apple's adoption[]

25   of its year-old subscription policy."  *Id*. at 79:19-21.  This is the information that Apple contends

26   should not have been disclosed.

27           On December 20, 2020, counsel for Apple sent Siegel a letter requesting that by noon on

28   December 21 he identify the source for the information supporting his assertions in court about the

United States District Court
Northern District of California

2

commission rates for NetFlix and HBO. ECF No. 229-7. Siegel responded on December 23, declining to answer the question and stating that he was puzzled by the request, given his belief the information had been reported in the press. ECF No. 229-8. Apple responded the next day in two ways. First, Apple filed an administrative motion to seal the relevant portion of the transcript, ECF No. 211, which the Court granted, ECF No. 216. Second, Apple sent Siegel another letter, objecting that he had not responded to Apple's inquiry and setting forth Apple's position that he had violated the Protective Order. ECF No. 229-9.

The parties initially briefed the sanctions motion in a joint letter, ECF No. 223, but the Court ordered them to refile it as a motion under Civil Local Rule 7. ECF No. 226 (citing Civil Local Rule 37-4(a)).[1]

## II.   DISCUSSION

### A.   Legal Standard

"Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order . . . ." *Life Techs. Corp. v. Biosearch Techs., Inc.*, 2012 WL 1600393, *8 (N.D. Cal. May 7, 2012). "Sanctions are permissible under Rule 37 when a party fails to comply with a court order, regardless of the reasons." *Id.*; *see also Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958) ("For purpose of subdivision (b)(2) of Rule 37, we think that a party 'refuses to obey' simply by failing to comply with an order. . . . [T]he willfulness or good faith of [a party], can hardly affect the fact of noncompliance and [is] relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply."). "A court need not find bad faith before imposing sanctions for violations of Rule 37." *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009) (citation omitted). A court may also issue sanctions under Rule 16 where "a party or its attorney . . . fails to obey a

---

[1] Judge Gonzalez Rogers has referred discovery matters to the undersigned magistrate judge. ECF No. 132. Because the alleged violation of the Protective Order occurred in front of the undersigned during a discovery hearing, and the request for sanctions relates to the allegedly improper disclosure of materials produced in discovery, the undersigned believes this motion falls within the scope of the discovery reference.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C).

2      Rule 37 "authorizes a district court to impose a wide range of sanctions if a party fails to

3  comply with a discovery order." *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th

4  Cir. 1986). "The district court's authority to issue the sanctions is subject to certain limitations:

5  (1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at

6  issue in the order." *Id*. A district court considering sanctions may also "consider the deterrent

7  value of an order of dismissal on future litigants as well as on the parties." *Wyle v. R.J. Reynolds*

8  *Indus., Inc*., 709 F.2d 585, 589 (9th Cir. 1983). Rule 37 provides also that "the court must order

9  the disobedient party, the attorney advising that party, or both to pay the reasonable expenses,

10  including attorney's fees, caused by the failure, unless the failure was substantially justified or

11  other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

12  **B.      Whether Siegel Violated the Protective Order**

13      There is no doubt that Siegel disclosed information that he learned from Apple's HC-AEO

14  document production. On page 79 of the transcript of the December 15 hearing, he stated in the

15  paragraph at lines 13-18 what the Developer Plaintiffs and their experts had seen in the sample

16  data that Apple produced to them, and in the very next sentence at lines 19-21 he provided the

17  information at issue concerning NetFlix and HBO. And in the paragraph after that he talked about

18  the undue burden that would be placed on the Plaintiffs and their experts if they did not receive the

19  "proceeds reason" field in the full data set based on what they had seen in the sample Apple

20  provided. This entire discussion is based on information Siegel obtained from the HC-AEO data

21  Apple produced.

22      Plaintiffs' opposition brief makes no argument denying that the source of Siegel's

23  information in the disclosure he made was Apple's HC-AEO data production. Rather, they argue

24  that the disclosed information is not confidential at all but has instead been publicly reported by

25  numerous sources. As a legal matter, Plaintiffs are right that if this information had been publicly

26  disclosed already, then it would be of no moment that Apple designated it as HC-AEO in its

27  document production. Protective Order § 3 ("[T]he protections conferred by this Stipulation and

28  Order do not cover the following information: (a) any information that is in the public domain at

4

the time of disclosure to a Receiving Party or becomes part of the public domain after its

disclosure to a Receiving Party as a result of publication not involving a violation of this Order . .

.").

   Plaintiffs' efforts to show the existence of such a public disclosure are in exhibits B and C-

G to the Siegel Declaration at ECF No. 253-4.  The Court need only address exhibit B.  It is

testimony by Apple's CEO Tim Cook before the House Judiciary Committee.  At the hearing,

Apple represented that Cook provided this testimony in July, 2020.  He said at page 8:

> The suggestion that Apple granted unique terms to the Amazon Prime
> Video app that allows it to pay a lower commission is false. Apple
> does not play favorites in this manner. That would be counter to our
> goal of attracting the highest-quality developers **to the App Store**.
>
> The negotiations with Amazon, and a number of other video-
> streaming providers, were difficult and challenging on a number of
> levels. Apple ultimately developed a set of standard terms for
> Amazon, **and every other video-streaming service that met the
> criteria**, **to launch their service** on Apple TV **and iOS**. The Video
> Partner Program allows third-party premium video apps to integrate
> with a variety of Apple services and features that enhance the
> consumer experience of watching premium subscription video
> entertainment on Apple TV and tvOS, **and across their other
> devices**. Today, **there are over 130 apps that participate in this
> program. The reduced 15% commission is available to all
> developers offering premium video content** on the same terms as
> Amazon Prime Video, with the same qualification criteria. (bold
> added)

   In light of Cook's testimony, it is hard to see how Siegel disclosed anything confidential

when he revealed that there was a 15 percent commission for NetFlix and HBO.  Cook's

testimony stated that Apple had standard terms for "every other video-streaming service that met

the criteria" "to launch their service on . . . iOS."  He stated that as of July 2020, "there are over

130 apps that participate in this program" and that "[t]he reduced 15% commission is available to

all developers offering premium video content . . ."  His testimony was not limited to Apple TV

but included "iOS" and he stated that the program "allows third-party premium video apps to

integrate with a variety of Apple services and features that enhance the consumer experience of

watching premium subscription video entertainment . . . across their other devices."  An average

reader would understand this description probably included the NetFlix and HBO apps on the App

Store.  Yes, it's true that Cook did not say the words "NetFlix" or "HBO," but they are two of the

largest and best known video-streaming services, they do offer their apps through Apple's App Store, and if *130* video-streaming apps participate in this program, surely NetFlix and HBO are among them.  Moreover, we must use common sense.  Cook was trying to rebut the accusation that Apple cut Amazon a favorable deal by explaining that Apple offers the 15% commission to video-streaming services *generally*, and he was telling this *to Congress*.  Far from a secret, the fact that Apple charges this *entire category* of services the same 15% commission it charges Amazon is something Apple wanted the world to know.  Once that sweeping pronouncement was made, the fact that two apps within that category pay the 15% commission is not confidential because the 15% commission is not specific to them.

Nonetheless, Apple expresses procedural outrage that Siegel made a disclosure of information he learned from Apple's HC-AEO document production, and then when Apple called him on that, Plaintiffs made an after-the-fact mad dash on the internet to try to find something – anything – that had already disclosed the information.  That does appear to be what happened here (Plaintiffs do not deny this), and proceeding in that fashion was not appropriate.  Indeed, as Apple correctly points out, Plaintiffs did not initially find Cook's testimony when they responded on December 23, 2020, claiming the information was already public.  Rather, they cited a grab bag of media articles that did not clearly disclose the information.  ECF No. 229-8 n.1.  At some point between December 23 and the day they filed their opposition to the sanctions motion, Plaintiffs finally stumbled onto Cook's testimony, which does technically save Siegel from a Protective Order violation.  However, the belated discovery of this testimony underscores that proceeding in this way was reckless.  Plaintiffs should have moved to de-designate under the Protective Order or at least given Apple notice of the planned disclosure and offered to meet and confer about it.  Publicly disclosing information he learned from Apple's HC-AEO document production and then afterwards figuring out whether it had been publicly disclosed previously elsewhere shows disregard for the Protective Order and Apple's justified confidentiality concerns, and the Court admonishes Siegel for proceeding in this fashion.

However, at the end of the day, Siegel did not technically violate the Protective Order because he did not reveal anything confidential.  And it's not like this information was just a little

United States District Court
Northern District of California

United States District Court
Northern District of California

bit public:  Apple's own CEO had already announced it to the halls of Congress.

### III.   CONCLUSION

The Court admonishes Siegel as stated above.  The remainder of Apple's motion is denied.[2]

**IT IS SO ORDERED.**

Dated: March 4, 2021

THOMAS S. HIXSON
United States Magistrate Judge

---

[2] Having concluded that Siegel did not reveal confidential information, the Court files this order in the public record without redaction.  Relatedly, in ECF No. 295 the Court ordered the March 4, 2021 hearing sealed to enable the parties to discuss Apple's allegedly confidential information without fear of further public disclosure or running into another sanctions motion.  The conclusion of that order directed Apple to order a copy of the transcript and then move to seal the specific portions of the transcript that refer to confidential information.  Now that the Court has determined that the allegedly confidential information was actually public, the Court is skeptical that anything discussed during the March 4 hearing was confidential.  The Court therefore vacates its instruction to Apple to file a motion to seal any portion of the transcript.  To be clear:  Apple is permitted to file a motion to seal any portion of the transcript if it believes such a motion is justified.  The Court is merely removing its command that Apple do so.