**REDACTED VERSION OF DOCUMENT SOUGHT TO BE PARTIALLY SEALED**

**Pages 1 - 21**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Thomas S. Hixson, Magistrate Judge

DONALD R. CAMERON, et al.,        )
                                  )
        Plaintiffs,               )
                                  )
  VS.                             )     **NO. C 19-03074 YGR (TSH)**
                                  )
APPLE, INC.,                      )
                                  )
        Defendant.                )
_____      )

San Francisco, California
Thursday, March 4, 2021

**TRANSCRIPT OF ZOOM WEBINAR SEALED PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiffs:
                HAGENS BERMAN SOBOL SHAPIRO LLP
                1301 2nd Avenue - Suite 2000
                Seattle, Washington  98101
        BY:     **STEVE W. BERMAN, ATTORNEY AT LAW**

                HAGENS BERMAN SOBOL SHAPIRO LLP
                715 Hearst Avenue - Suite 202
                Berkeley, California  94710
        BY:     **BEN M. HARRINGTON, ATTORNEY AT LAW**
                **BENJAMIN J SIEGEL, ATTORNEY AT LAW**

For Defendant:
                GIBSON, DUNN & CRUTCHER LLP
                333 South Grand Avenue
                Los Angeles, California  90017
        BY:     **JAY P. SRINIVASAN, ATTORNEY AT LAW**


Reported By:        Marla F. Knox, RPR, CRR, RMR
                    Official Reporter

1   **Thursday - March 4, 2021**                          **10:00 a.m.**

2                    **P R O C E E D I N G S**

3                           ---000---

4        **THE CLERK:**  Good morning, everyone.

5     We are here in civil action 19-3074, Cameron, et al.

6   versus Apple, Inc.

7        The Honorable Thomas S. Hixson presiding.

8        Counsel, please state your appearances.  Let's start with

9   Plaintiffs' Counsel.

10       **MR. BERMAN:**  Good morning, Your Honor, Steve Berman of

11   Hagens Berman on behalf of the Plaintiffs.

12       **THE COURT:**  Good morning.

13       **MR. HARRINGTON:**  Good morning, Your Honor, Ben

14   Harrington of Hagens Berman on behalf of developer Plaintiffs.

15       **THE COURT:**  Good morning.

16       **MR. SIEGEL:**  Good morning, Your Honor, Ben Siegel on

17   behalf of developer Plaintiffs.

18       **THE COURT:**  Good morning.

19       **MR. SRINIVASAN:**  Good morning, Your Honor, this is Jay

20   Srinivasan of Gibson Dunn on behalf of Apple.

21     We have some folks from my law firm as well as lawyers

22   from Apple on.  They were not intending to appear, but those

23   are the names that you see.

24       **THE COURT:**  Okay, good morning.  And thank you for the

25   explanation.

1      First, I have a minor question.  Exhibit B to the Siegel

2  declaration is testimony by Tim Cook, Apple's CEO, before the

3  House Judiciary Committee.

4      I took a look at the Committee's website, and it seems to

5  me that that testimony is dated September 14th, 2020.

6      Let me start by asking Apple:  Do you have any reason to

7  think it's -- the date is different from that?

8      **MR. SRINIVASAN:**  Your Honor, I haven't checked the

9  date of his testimony.  I know he testified in that timeframe.

10     So, as I sit here, I don't have any reason to doubt it;

11  but hopefully I will be able to confirm it by the end of this

12  hearing.

13     **THE COURT:**  All right.  Let me ask Plaintiffs:  Do you

14  think there is a different date of that testimony?

15     **MR. HARRINGTON:**  I believe, that's correct,

16  Your Honor.  I have actually looked at that in preparation for

17  the hearing because the testimony as printed out isn't dated.

18  But I believe it was in September.

19     I don't have the specific date in September, but I believe

20  it was in September of 2020.

21     **THE COURT:**  Okay.  Then let me give the parties my

22  tentative ruling.

23     It seems to me that in Mr. Cook's testimony, he was trying

24  to rebut an accusation that Apple cut Amazon a sweetheart deal.

25  And in the course of that he described a general practice or

1    policy that Apple had for video streaming apps; that they would

2    all be eligible for a 15 percent commission rather than a

3    30 percent, assuming they satisfied certain requirements of the

4    program.  And he didn't go into detail about those -- what

5    those requirements were.

6         But his testimony was not limited to Apple TV.  It was

7    clearly referenced an app store and IOS and broadly referenced

8    devices.

9         And he said that 130 apps as of that date -- video

10   streaming apps -- had qualified for the program.  He did not

11   speak the words "Netflix" or "HBO."  But those are two very

12   well-known video streaming apps.  They are certainly

13   competitors of Amazon's.

14        And if 130 video streaming apps had already qualified for

15   the 15 percent commission, I think most people would assume

16   that Netflix and HBO were among them.

17        And I guess the more important point is that the thrust of

18   his testimony was that the 15 percent commission was generally

19   available for video streaming apps, and he was announcing that

20   publicly to rebut this accusation that Amazon got a sweetheart

21   deal.

22        In light of that testimony, I have very -- I find it very

23   difficult to see why there is anything confidential about the

24   15 percent commission being charged to Netflix or HBO.

25        It seems to me like Mr. Cook's testimony really made

1   the -- made it clear that Apple wants the world to know that it

2   was charging companies like that this 15 percent commission.

3       So, Apple, since my tentative is adverse to you, why don't

4   you go ahead and address it, please.

5           MR. SRINIVASAN:  Sure, Your Honor, and I will come

6   right to your question.

7       I mean, we do have broader, you know, concerns about the

8   protective order that I would like to discuss particularly in a

9   situation where Plaintiffs refer to this as an honest

10  disagreement.

11      I think things like an honest disagreement should not be,

12  shoot first and ask questions later; but we will come back to

13  that.

14  ███████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████     ███████████████

17  ██████████████████████████████████████████████████████

18  ███████████████████████████

19  █████████████████████████████████████████████

20  ████████████████████████████████████████████

21  ███████████████████

22  ████████████████████████████████████████████████

23  ██████████████████████████████████████████████████████

24  ████████████████████████████

25  ██████████████████████████████████████████

1 ██████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████

4      And, in fact, what the articles that Mr. Siegel referred

5 to -- of course, Your Honor, they never referred to Mr. Cook's

6 testimony back when we asked them what he was describing when

7 he was reading this material into the record -- they cited a

8 bunch of articles from -- well, two articles from 2015 and one

9 from 2019.

10      What those articles talked about was that -- and this is

11 why the Video Partner Program ended up coming to bear -- was

12 that there was a 15 percent commission -- by the way, one thing

13 I would like to actually, before I get into the details of

14 this, everything that -- in these articles was reported as

15 rumor.

16      And I think you understand that because that's why you are

17 referring to Mr. Cook's testimony as opposed to what these

18 articles said because none of that was confirmed by Apple.

19      The rumor at the time, back in 2015, was there is this

20 tension because some of these streaming services -- HBO,

21 Netflix among them and a handful of others -- were receiving 15

22 percent -- were rumored to be receiving 15 percent when a

23 subscription came in through Apple TV; but that the 30 percent

24 commission was holding for the app store.

25      And that -- so that these particular service providers

1    were grousing, rumored -- rumored to be grousing that:  Why are

2    we paying 15 percent for certain subscribers on Apple TV and

3    for the same service we are paying 30 percent.

4        And eventually the Video Partner Program that Mr. Cook

5    announced came to bear where all of those services -- 130 or

6    140 of them now -- received, as part of a -- not an exception

7    but as part of another program that was adopted, all received

8    15 percent from year one.

9        That's all in the record.  We agree with you.  Mr. Cook

10   confirmed what has been public for four years about the Video

11   Partner Program.

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████

17   ██████████████████████████████████████

18   ████████████   ████████████████████   ██████████████████

19   ██████████████████████████████████████████

20   ██████████████████████████████████████████

21   ██████████████████████████

22   █████████████████████████████████████████████████████

23   ██████████████████   In fact, they just talk about the

24   tension between Apple TV and the app store.

25        And what Mr. Cook later described is the actual program.

1   ████████████████████████████████████████

2   ██████████████████████████████████████████

3   ████████████████████████████

4        **THE COURT:**  It is not clear to me -- the reference in

5   the transcript to Netflix and HBO is just really brief.

6        ████████    ████████████████████

7   ████████████████████████████████████████████

8   ██████████████████████

9        ████████████████████████████████

10  ████████████████████████████████████████         Not

11  saying how that happened to be the case;  ████████████

12  ████████████████████.  It was just something he was

13  seeing in the data.

14       And he is not saying it predated the VPP.  He is saying it

15  predated the subscription -- the year-old subscription policy.

16       **MR. SRINIVASAN:**  In that specific sentence, the way

17  you parsed it, I understand what you are saying, Your Honor.

18       ████████████████████████████████

19  ██████████████████████████████████████

20  ████████████████████████████████████████████

21  ██████████████████████████████████████

22  ████████████████████████████████████

23  ██████████████████████████████████████████

24  ████████████    ████████████████████

25       And then he goes on to say:  We have seen many examples in

1    just the data -- like 140 examples -- with a one-time IAP

2    charge of 15 percent.

3    ███████████████████████      █████████████████████████

4    ███████████████████████

5    ███████████████████████████████████████████

6    ████████████████████   ███████████████████████████████

7    ██████████████████████████████████████

8    █████████████████████████████████████████

9    ████████████████████████████████████████████████

10   █████████████████   ███████████████████████████████

11   ████████████████████████████████████████████

12   ████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████

14   ████████

15         And, in fact, I think it is telling that he doesn't come

16   back to us and say:  Wait a minute.  Mr. Cook just said this

17   three months ago.  And that's what I was referring to.  He

18   doesn't say that.

19         In fact, they go back and they point to these old articles

20   from 2015 talking about that discrepancy between what HBO is

21   paying on the two platforms.

22   ███████████████████████████████████████████

23   ██████████████████████████████████████████

24   That's the only way we think that you can reconcile all of

25   this.

1   I guess we do -- and, you know, if you can just indulge me

2   for a second, Your Honor -- I mean, we -- our position here is

3   a very delicate one because this implicates, again, third

4   parties as well.

5       You know, we -- as you said in the *Valve* hearing last

6   week, I mean, there is sensitive material in this case, lots of

7   sensitive material in this case being disclosed by not just

8   Apple, who is a Defendant.  We are not here voluntarily.  And

9   we are here bearing at the risk of Plaintiffs complying with

10  the protective order.

11      We tell our employees -- so they will cooperate and fully

12  be involved in discovery confidently -- that all of this will

13  be safeguarded.  There won't be any close calls; that the way

14  lawyers work are -- we all agree.  We are very careful.  We

15  check with each other.

16      By the way, that has been happening in this case quite a

17  bit.  Every one of these discovery letters that we send before

18  you -- at least mostly led by the Epic lawyers -- they will

19  send us the entire letter, and they say:  Look, we don't want

20  to take any chances.  You tell us what should be sealed.  We

21  have often just submitted it initially under seal, and then

22  gone through individual redactions.

23      That's how it should work.  That's the way it has worked

24  with other Plaintiffs' Counsel.  Epic, of course, has the same

25  concern about their material.

1    And so our view is -- and Plaintiffs themselves say this
2  is an honest disagreement that we should have met and conferred
3  about.
4        Well, that's exactly what we are saying.  We could have
5  hashed this out.  We could have said to Mr. Siegel:  Why don't
6  you just refer to Mr. Tim Cook's testimony if that's the point
7  you want to make because this isn't public.
8        We could have had this discussion we are having now with
9  them.  And we don't think the way to approach discovery in this
10  case is to -- again, as I said -- shoot first and ask questions
11  later.
12        I'm happy to answer more of these questions, Your Honor;
13  but we think that there is no way to reconcile what Mr. Siegel
14  said with what was there publicly.
15        And at least I think you will agree that our
16  interpretation is at least a reasonable one.  It is hard to
17  know how the public will take this information when it is
18  described in this somewhat convoluted way.
19        We think there is only one way -- it jumped out at us as
20  something that clearly is not in the public record.  So that's
21  our concern here.
22        And the last thing I will just say before -- I apologize
23  for keeping the floor -- is that I think the problem for us if
24  it had just been the statement and then we contacted Mr. Siegel
25  and he said:  You know what, yes, I was reading from the

1  transactional data.  Yes, it was marked HC -- highly

2  confidential, Attorneys Eyes Only -- but here is why I made

3  this honest mistake.

4       That's not what we got back from Plaintiffs.  We got sort

5  of a coy response.  We then realized they weren't going to file

6  a motion to seal.  They weren't going to work with us.

7       By the way, that was a very different experience we had

8  with Epic.  You may recall, the Epic lawyer said something at a

9  hearing and we immediately worked it out with them.  That's not

10 what we got.

11      We kind of got a very -- a very kind of -- a brushoff.

12 And that concerns us even as much as the issue itself.

13      It is one thing to make a mistake.  It is another thing to

14 double down and, you know, basically say:  We did absolutely

15 nothing wrong.  We don't know why you are making a big deal out

16 of it.

17      And it is a very big deal for us.  I mean, I respect what

18 you are saying; but -- your interpretation of it, but we

19 interpret it very differently.

20      And more than anything my clients don't understand why a

21 close call was handled in this way, and they are worried that

22 future close calls will be handled exactly the same way.

23      You know, the next one you may not find there to be as

24 much ambiguity, as we don't in this case.  And, again, we will

25 be left with no remedy as these are public hearings.

1    **THE COURT:**  Right.  Well, there is one thing that I

2    see in Apple's way, which is I think what happened is

3    Mr. Siegel was careless at the hearing.  Mentioned something

4    that he learned solely from highly confidential materials that

5    Apple produced.

6        You sent him that letter, and then he went on Google to

7    find something, anything he could, on the Internet that would

8    have publicly disclosed this information.

9        Ultimately, I think he succeeded in Mr. Cook's testimony;

10   but that's not how people are supposed to do things.

11       I do agree that they shot first and then tried to back it

12   up later.  And that's not the correct way to proceed.  They

13   should have met and conferred with Apple first or moved to

14   de-designate first.  They shouldn't have just said it and then

15   done some mad dash on the Internet to see if they could find

16   something that had previously disclosed it.

17       So I do share your procedural indignation of that and your

18   concern that if this is how they are going to behave, what

19   about the next time when they go search the Internet and they

20   can't find that it is publicly disclosed?  And your information

21   has been improperly disclosed.  They shouldn't -- and it wasn't

22   public.  So that does concern me.

23       But I do think that once Mr. Cook has given this testimony

24   to Congress, I really can't find that they violated the

25   protective order.

1       I don't like the way the Plaintiffs proceeded.  I don't

2  think they should have proceeded in this fashion, but it looks

3  like this information really was -- was public.

4       But let me turn this to Plaintiffs.  You can see that I

5  don't like how this happened procedurally.  I think you

6  should -- if you learn something from Apple's discovery, from

7  their documents that are confidential, you can't just blurt it

8  out in a public hearing.  You need to meet and confer with them

9  first or move to de-designate first.

10      And I think what happened is you spoke the information

11  first, and then afterwards tried to find a public disclosure.

12  And I'm not going to sanction you for doing that because you

13  did find the public disclosure.

14      But this -- at least this is how it looks to me, and I'm

15  not happy about that.  Why don't you speak to that and the

16  confidentiality issue.

17          **MR. HARRINGTON:**  Thank you, Your Honor.

18      I will address your points about the procedure first.  I

19  just want to emphasize as an initial matter that, you know,

20  there has been no history of violations of the protective order

21  by developer Plaintiffs, and we have abided by our obligations

22  to file materials under seal throughout the case.  And we take

23  the protective order very seriously.

24      The way this particular dispute arose was -- to use

25  Mr. Srinivasan's word -- a little coy.  Because after the

 1   hearing, we received a letter from Apple that said basically,

 2   what are your sources, which stands in stark contrast to how

 3   Apple proceeded with Epic when this happened.

 4        When this happened with Epic, you know, Apple said:  Hey,

 5   Epic, we think you disclosed confidential information.  Will

 6   you seal the transcript?  Epic said:  Yes, because they, like

 7   us, had no objection to doing so.

 8        And that was the end it of.  You know --

 9        **THE COURT:**  Epic's lawyers stopped herself

10   mid-sentence when she realized that she said something that she

11   shouldn't have.

12        There was no pretending or evading.  She realized the

13   problem, and she stopped herself right then.  There was no

14   reason for Apple to think that they would not be cooperative.

15        **MR. HARRINGTON:**  That's true, Your Honor.  I don't

16   think we were uncooperative either, you know.

17        But I take your point that the correct procedure is to air

18   these issues prior to hearings, and we will certainly do that

19   going forward in the case.

20        This was, you know -- to the extent, you know, we didn't

21   comply with the procedures that Your Honor has outlined, it

22   wasn't in bad faith; and we will do everything within our

23   powers to abide by the protective order going forward.

24        You know, as to the confidentiality issue, you know, we,

25   of course, agree that all of this was made public by Mr. Cook.

1     There is also Apple's website, which is Exhibit G to our

2   papers, which outlines this program and the 15 percent

3   commissions that video developers are entitled to under the

4   program.  That also identifies HBO as a participant in the

5   program.  So there is that as well.

6   ████████████████████████████████████

7   ██████████████████████████████████████

8   ███████████████████████

9     First, I don't think that's a fair reading of his

10  statement on the record.  As Your Honor pointed out, Mr. Siegel

11  was really distinguishing between commissions that arise --

12  15 percent discount commissions that arise under the

13  subscription program to any other reason that might exist for

14  those commissions.

15  ███████████████████████████████████

16  ████████████████  ██████████████████

17  ██████████████████████

18  ████████████████████████████████████

19  ██████████████████████████████████

20  ████████████

21  ███████████████████████████

22  █████████████████████████████████

23  ████████████████████████████

24  ████████████████

25  ███████████████████████████████

```
1    ██████████████████████████████████████████████
2    ██████████████████████████████████████████
3    █████████████████████████████████████████
4    ████████████████████████████████████    And
```

5    that can't be.

6        And it is certainly not a violation of a protective order

7    to disclose what Apple is saying, you know, is just not actual

8    information.  It is not confidential information.  It is just

9    these agreements don't even exist.

10        So yes, I mean, we just don't see there being anything

11    non-public that Mr. Siegel disclosed.  But we take,

12    Your Honor's points to heart about the process that should be

13    followed going forward.

14        **THE COURT:**  All right.  Thank you, Counsel.  And

15    Apple, your reply.

16        **MR. SRINIVASAN:**  Yeah, I just have a few points in

17    response to Mr. Harrington.

18        Just on the issue of the letter, the difference -- and I

19    think -- I don't want to spend too much time on it -- but one

20    point is:  The reason we sent them a letter was because in part

21    the statement was vague or it wasn't as clear as when

22    Ms. Moskowitz made her utterance and stop, as you said.

23        So there was nothing coy about our letter; and, in fact,

24    we ask --

25        **THE COURT:**  Your letter wasn't coy.  I mean, anyone

 1   reading that letter is going to know exactly what your concern

 2   was.

 3           **MR. SRINIVASAN:**  Right.  And the response wasn't to

 4   Mr. Cook's testimony, which by the way, I understand, was in

 5   July of 2020 but doesn't change I don't think --

 6           **THE COURT:**  Oh, it was in July?

 7           **MR. SRINIVASAN:**  Yeah.

 8           **THE COURT:**  Okay.

 9           **MR. SRINIVASAN:**  Doesn't materially change your

10   reasoning at all.

11       But they don't -- they don't cite to Mr. Cook's testimony.

12   ████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████

14   ████████████████████████████████████████████

15        █████████████████████████████████████████████

16   ███████████████████████████████████████████

17   ████████████

18       And so -- but, you know, I understand that that ship has

19   sailed, but it is interesting that that is how they responded.

20   The material about Mr. Cook and the VPP program only came in

21   the context of the briefing a month or so later.  So this was

22   just further backfilling for what was truly a violation.

23       And I think that's where I just want to close on which is:

24   There is no dispute that the materials are marked highly

25   confidential AEO.  There is no dispute that Mr. Siegel looked

1    at them and repeated what was in them as opposed to referencing

2    these other public materials.

3        I think Your Honor has said that there was a violation of

4    the protective order through his use of it.

5        He -- you know, maybe he -- the fact that he found other

6    sources later goes to remedy, but it certainly was a violation.

7    And we think there should be some consequence to it.  Maybe it

8    is just a warning.  But we do -- we do want to make sure that

9    Plaintiffs' Counsel don't repeat this.

10       I don't know -- again, we tried to fashion the most

11   limited remedy we could, but we think there should be at least

12   a finding that there was a violation because it is a serious

13   issue; and at least some warning that next time they go through

14   Section 6.

15       Because the other thing they are standing on here is they

16   are not required to use Section 6, which is to approach us and

17   to talk about any issues they have with something that is more

18   highly confidential AEO and for us to work that out.

19       We certainly don't want to go through this again where

20   they decide to do self-help.

21       And the last thing I will say is even the case that they

22   cite, the inadvertence -- bad faith is not necessary.

23   Inadvertence is enough, all of these things -- without finding

24   bad faith, the fact is there was a violation.  And, you know, I

25   think there should be some acknowledgment of that.

**SEALED PROCEEDINGS**

1    And we defer to Your Honor on, you know, the degree of a

2    remedy.  But it does seem like there was a violation here.

3         **THE COURT:**  All right.  I hope -- Mr. Harrington, I'm

4    glad to hear that you have heard my comments about how the

5    Plaintiffs need to behave better going forward.

6         It is not okay to repeat something in the public record

7    that you learned from Apple's confidential document production

8    and then afterwards try to find a source where it was

9    previously disclosed publicly.

10        That's not -- you got lucky here because you did find one,

11   but that was luck; and that is not respectful of the protective

12   order or Apple's important confidentiality interests.

13        So don't do anything like this again.  If you want to

14   raise something that is confidential -- that you have learned

15   from Apple's confidential documents, then meet and confer with

16   them ahead of time or move to de-designate.

17        Don't surprise them like this.  And you certainly don't

18   want to be in a position again where you say something that you

19   learn from their documents, and then you have to run onto the

20   Internet to see if you can find anywhere where it was

21   previously disclosed.  Because next time you may not get lucky,

22   and then that would be a violation of the protective order.

23        So I hope the Plaintiffs take this advice seriously to

24   heart and please don't proceed in this way again.

25        And with that, I'm going to take the matter under

SEALED PROCEEDINGS

1   submission.  And I will issue a written order later today.

2   Thank you.

3          **MR. SRINIVASAN:**  Thank you, Your Honor.

4          **MR. HARRINGTON:**  Thank you, Your Honor.

5               (Proceedings adjourned at 10:24 a.m.)

6                         ---oOo---

1
2
3                    <u>CERTIFICATE OF REPORTER</u>

4          We certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Thursday, March 4, 2021

8
9
10
11    _____

12              Marla F. Knox, RPR, CRR, RMR
                  U.S. Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25