# UNITED STATES DISTRICT COURT
# IN THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., | Case No. 4:20-cv-05640-YGR-TSH |
| *Plaintiff, Counter-defendant,* | |
| v. | |
| APPLE INC., | |
| *Defendant, Counterclaimant.* | |
| IN RE APPLE IPHONE ANTITRUST LITIGATION, | Case No. 4:11-cv-06714-YGR-TSH |
| DONALD R. CAMERON, *et al.*, | |
| *Plaintiffs,* | Case No. 4:19-cv-03074-YGR-TSH |
| v. | |
| APPLE INC, | **JOINT DISCOVERY LETTER BRIEF REGARDING APPLE'S SUBPOENAS TO NON-PARTY FACEBOOK, INC.** |
| *Defendant.* | |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

    Apple Inc. ("Apple") and non-party Facebook Inc. ("Facebook") respectfully submit this joint letter brief regarding Apple's subpoenas requesting the production of documents by Facebook.

    Counsel for Apple and Facebook have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve outstanding disputes. Apple and Facebook have been unable to reach an agreement and therefore submit this joint letter pursuant to Your Honor's standing order and Local Rule 37.

Respectfully submitted,

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | MUNGER, TOLLES & OLSON LLP |
| By: *s/ Karen Hoffman Lent*<br>Karen Hoffman Lent<br>karen.lent@skadden.com<br>*Counsel for Apple Inc.* | By: */s/ Emily C. Curran-Huberty*<br>EMILY C. CURRAN-HUBERTY<br>emily.curran-huberty@mto.com<br>*Attorneys for Non Party Facebook, Inc* |

I. **Apple's Position**

Apple seeks a limited set of documents necessary for a fair cross examination of Vivek Sharma (Facebook's VP of Gaming), whom Epic recently included in its witness list even though it did not depose him or include him in its Rule 26(a) disclosures. According to Epic, Mr. Sharma is expected to testify about "App distribution; Apple restrictions on iOS app distribution; App Store review process; interactions with Apple." Dkt. 376, at 9. As further detailed below, Apple has narrowed its requests pursuant to two subpoenas it previously served on Facebook for documents related to these topics, as well as for documents related to Facebook's anti-Apple bias. These requests are targeted to seek material that is highly relevant to Mr. Sharma's anticipated testimony while not imposing an undue burden on Facebook.

    A    Relevant Background

Apple served two subpoenas on Facebook in connection with this litigation. On December 9, 2020, Apple served a subpoena requesting documents concerning, among other things, the distribution of Facebook's apps, along with how Apple's app store approval process has purportedly impacted Facebook. *See* Ex. B.

A few weeks later, Facebook began a public campaign against Apple because of a software update that would require affirmative consent before a developer could track an iPhone or iPad user's movements across apps the developer does not own. Notwithstanding positive reviews from privacy advocates, Facebook publicly opposed this enhancement under the guise that it was "speaking up for small businesses." News Release (Dec. 16, 2020), *at* https://about.fb.com/news/2020/12/speaking-up-for-small-businesses/. Facebook wrote that it "is committed to providing relevant information in the Epic Games litigation regarding how Apple's policies have adversely impacted Facebook and the people and businesses who use our services." *Id.* Given Facebook's stated intent to help Epic, Apple issued a second subpoena requesting documents concerning Facebook's communications with developers about litigation against Apple and the privacy policies Facebook linked to Epic's claims. *See* Ex. C.

Apple and Facebook met and conferred multiple times to narrow the scope of these subpoenas. *See* Ex. A. Nevertheless, Facebook refused to produce documents pursuant to multiple requests in the first subpoena, and refused to produce any documents responsive to the second subpoena. Because Epic did not depose or list in its Rule 26(a) disclosures any Facebook employee and because Facebook repeatedly objected to more than a minimal production given its third party status, Apple agreed that so long as no Facebook employee testified at trial, it would not seek additional document productions. *See id.* (emails from E. Kreiner on Feb. 4, 10).

On March 12, Epic first disclosed that it intends to call Mr. Sharma to testify at trial. *See* Dkt. 376. Apple promptly notified Facebook it was renewing its demand for documents responsive to the second subpoena and requested information about Facebook's search of Mr. Sharma's files. *See* Ex. A (email from E. Kreiner on Mar. 17). Facebook subsequently refused to produce documents pursuant to the second subpoena or to provide any information about prior searches of Mr. Sharma's files. *See id.* (email from E. Curran-Huberty on Mar. 22).

Notwithstanding Facebook's stonewalling, on March 24, Apple offered a compromise: that Facebook apply a limited set of search terms to Mr. Sharma's files and produce documents in the resulting set related to (i) distribution of Facebook's apps; (ii) Facebook's experience with the app review process; (iii) the privacy and security of Facebook Gaming; (iv) Facebook's anti-Apple campaign; and (v) Epic's claims ("Categories (i)-(v)"). *See id.* (email from E. Kreiner on Mar. 24). Apple cabined its requests for documents outside of Mr. Sharma's files to those

concerning communications with other developers about legal claims against Apple. *See id.*

Despite Facebook's knowledge of the time constraints in this action, it stalled for five days purportedly because "there is unavoidable technical processing time baked in to" investigating the burden of production, and finally admitted on March 29 it did not intend to produce more documents. *Id.* (emails from E. Curran-Huberty on Mar. 27, 29). And despite its multi-day "investigation" of the proposed terms, Facebook did not propose less onerous terms.

Apple seeks an order from this Court that Facebook comply with Apple's compromise proposal so that Apple has a fair opportunity to cross examine the newly-disclosed trial witness.

> B    The Requested Documents Are Necessary for a Fair Cross
> Examination and Production Would Not Pose an Undue Burden

A "court determining the propriety of a third-party subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Cameron v. Apple Inc.*, No. 19-cv-3074, Dkt. 125 ("Disc. Order"), at 5. These factors all tilt heavily in favor of this Court ordering Facebook to comply with Apple's proposal.

The documents sought in Apple's compromise proposal are highly relevant and necessary to provide Apple with a fair opportunity to cross examine Mr. Sharma. Indeed, Facebook itself now highlights the inadequacy of the prior productions from Mr. Sharma's files by noting that he was involved in little over 200 of the documents they produced, but that Apple-specific search terms hit on more than 17,000 of his documents. Relevant here, Categories (i) and (ii) concern the specific topics about which Epic purportedly intends to call Mr. Sharma to testify. Documents responsive to Category (iii) are needed to assess Epic's assertion that Apple's app review process can be replicated or that certain app store guidelines are pretextual—i.e., that other means of distributing apps or games guarantee the same level of privacy and security for iPhone users. These documents also relate to Apple's rejection of the Facebook Gaming app, about which Mr. Sharma presumably will testify. Moreover, given Facebook's public campaign against Apple and apparent cooperation with Epic, documents responsive to Categories (iv) and (v) are necessary to assess Mr. Sharma's and Facebook's motivation and bias. Finally, because Apple can obtain the documents in the above categories only from Facebook, it has a substantial need for these documents. Disc. Order 21 (holding "documents are relevant, and since Apple is only able to obtain them from either Samsung or Google, it has shown a substantial need.").[1]

Facebook has likewise failed to demonstrate any undue burden. *First*, Facebook decided that Mr. Sharma will voluntarily testify at trial without being subpoenaed or deposed. Having made this choice, Facebook (a company with $86 billion in annual revenue) cannot oppose targeted discovery of Mr. Sharma's documents on the basis of some unidentified cost. *Second*, as detailed above, the compromise proposal seeks only documents that are highly relevant to key facts at issue in this litigation, the specific topics about which Epic intends to elicit Mr. Sharma's testimony, and Mr. Sharma's bias. *Third*, Apple has narrowly tailored these requests to the topics Epic listed for Mr. Sharma's testimony and to documents that go to bias, and for all documents other than those in Category (iv), seeks documents solely from Mr. Sharma's files. *Fourth*, to the extent Facebook contends Apple's compromise is unduly burdensome because of Apple's proposed search terms, Facebook should have put forth its own search term proposal.

---

[1] This substantial need also defeats any assertion by Facebook that the documents are protected from disclosure because they contain confidential commercial information. *See* Disc. Order 6.

### C      The Renewed Requests Are Timely

While negotiating compliance with the first and second subpoenas, Apple repeatedly informed Facebook that it would seek additional productions if a Facebook employee were to testify at trial.  *See* Ex. A (emails from E. Kreiner on Feb. 4, 10).  Epic's failure to identify Mr. Sharma in its Rule 26(a) disclosures and Epic's apparent comfort in having Mr. Sharma testify without first deposing him cannot turn Apple's accommodation into a shield to prevent Apple from obtaining the documents required for a fair opportunity to cross examine Mr. Sharma.  *See U.S. ex rel. Higgins v. Bos. Sci. Corp.*, 2020 WL 968218, at 14 (D. Minn. Feb. 28, 2020) (after discovery deadline, requiring production of "every responsive document that hits on the parties' ESI search terms" for individual not included in initial disclosures); *Apple iPod iTunes Antitrust Litig.*, No. 05-cv-37, Dkts. 858, 866 (postponing trial to permit written discovery and deposition from previously undisclosed witness).[2]  Nor is there any unfairness to Facebook in permitting the requested discovery at this point in the litigation given that Facebook remained silent during the discovery period when Apple repeatedly reserved its rights should a Facebook employee testify, only to have Mr. Sharma voluntarily appear on Epic's witness list a short while later.  Rewarding Facebook's and Epic's conduct would promote a scorched earth approach to discovery from third parties that are even tangentially related to a litigation.

---

[2] Facebook also contends the proposal is untimely because the subpoenas contain no requests for documents concerning the safety and privacy of Facebook's apps.  This assertion is incorrect.  *See, e.g.*, Ex. C RFP 4 (requesting "All DOCUMENTS reflecting complaints CONCERNING the security of" Facebook's apps); *id.* RFP 2 (requesting all documents concerning studies or analyses about how Apple's privacy enhancements would impact Facebook's business).

## II.     FACEBOOK, INC.'S POSITION

Apple's demand for documents covering seven broad topics using a search that would require review of tens of thousands of documents is an untimely, unfair, and unjustified request to redo fact discovery, not a "compromise." Facebook already produced over 1600 documents, including more than 200 involving its Vice President of Gaming, Vivek Sharma. If Apple believed that production was insufficient in any way, it had every opportunity to move to compel within 7 days of the close of discovery as required by the Court's Rules. Apple chose not to, making this motion untimely. Instead, claiming surprise by Epic's disclosure of Mr. Sharma as a trial witness—even though *Epic's complaint quoted him by name*—Apple now demands that Facebook review and produce an enormous number of additional documents.

The Court should deny Apple's improper request. The timing of Epic's witness disclosures has no bearing on whether Apple's motion to compel *Facebook* is timely or whether *Facebook* adequately responded to Apple's subpoenas. Facebook responded or specifically objected to all of Apple's subpoena requests, and Apple has not identified any deficiency in Facebook's production or any specific objection that it asks the Court to overrule. Apple also seeks brand new discovery and documents related to an irrelevant public dispute between Apple and Facebook over policies not challenged in this case. Apple will be able to depose Mr. Sharma using Facebook's production. But Apple's dispute with Epic about its disclosures should not result in Facebook having to begin document collection, review, and production anew.

### A.     Relevant Background

Epic's complaint alleges that "Apple unequivocally refused to allow Facebook to distribute its competing game store on the App Store." *Epic Games v. Apple Inc.*, No. 4:20-cv-05640, ECF No.1 ¶ 92 (Aug. 13, 2020). The complaint quotes Mr. Sharma as saying that Apple's conduct creates "shared pain across the games industry, which ultimately hurts players and developers and severely hamstrings innovation on mobile for other types of formats like cloud gaming." *Id.* Mr. Sharma is the *only* third-party executive quoted in Epic's complaint. Despite this, Apple never sought to depose him or request his documents, beyond those already included in Facebook's production.

In less than six weeks after Apple served two subpoenas over the December holidays, Facebook had more than two dozen reviewers review tens of thousands of documents from 15 custodians. Facebook ultimately produced over 1600 documents responsive to Apple's first subpoena, which largely sought "documents sufficient to show." Facebook objected to Apple's second subpoena seeking documents about Facebook's public statements about certain other Apple policies that Epic does not challenge here, and supposed communications with Epic or other third parties about litigation against Apple. Facebook and Apple met and conferred several times, but Apple never asked to negotiate any search terms or custodians or moved to compel.

Facebook understands that Epic disclosed Mr. Sharma as a trial witness on March 12. On March 17, Apple demanded that Facebook produce additional documents in response to both of its subpoenas, for which the deadline to move to compel had long expired. Facebook met and conferred with Apple two days later, on March 19. On March 22, while maintaining its objections, Facebook stated that it would be open to a "targeted, appropriately limited subpoena" for documents "necessary" for Apple to examine Mr. Sharma. Ex. A (Mar. 22 email from E. Curran-Huberty). Apple responded by demanding that Facebook produce seven categories of documents from Mr. Sharma's files containing search terms as generic as "iOS" and "app store." Ex. A (Mar.

24 email from E. Kreiner). Facebook investigated the burden associated with such a search, which unsurprisingly required several days, and found that Apple's terms hit upon more than 17,000 documents. Once attachments to those documents are included, Facebook estimates that complying with Apple's demand would require Facebook to review upwards of 70,000 documents.

### B.  Apple's Motion to Compel is Untimely

Under Local Rule 37-3, "no motions to compel fact discovery may be filed more than 7 days after the fact discovery cut-off" of February 15. *Gomo v. NetApp, Inc.*, No. 17-CV-02990-BLF, 2018 WL 6002322, at *1 (N.D. Cal. Nov. 15, 2018) (denying motion to compel filed after Local Rule deadline); *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2013 WL 5442269, at *5 (N.D. Cal. Sept. 30, 2013) (same). Apple cannot show good cause for missing that February 22 deadline even though it timely moved to compel discovery from other third parties. And Apple had every reason to expect testimony from Mr. Sharma given that Epic's complaint quotes him regarding Apples enforcement, against Facebook, of the very policies Epic challenges here. *See, e.g.*, *Frye v. Escambia Cty. Bd. of Educ.*, No. 08-00340-WS-N, 2010 WL 1904465, at *2 (S.D. Ala. May 7, 2010) (declining to strike disclosures where moving party should have known about witness referenced in complaint). In any event, Apple cites no case ordering a third party to produce documents because a party disclosed that third party's employee as a witness after the discovery cutoff. Facebook did not control Epic's disclosures and should not have to review tens of thousands more documents because Apple has a dispute with Epic regarding its disclosures.

### C.  Facebook's Responses to Apple's First Subpoena Were Sufficient

In response to Apple's first subpoena, Facebook produced more than 1600 documents, including over 200 sent to or from Mr. Sharma or located in his files. Apple does not ask the Court to overrule any specific objection by Facebook. Nor does Apple identify any specific deficiency in Facebook's production, or even explain what additional documents it expects to find or how it would use any such documents in its defense. The Court should deny the motion for those reasons alone. Facebook should not be compelled to review tens of thousands more documents because Apple wants to go fishing for some theoretical additional cross material.

Setting aside that Apple is moving to compel, out of time, without identifying any specific deficiency in Facebook's prior responses, Apple's demands fail on their own terms. Apple never previously asked for all documents regarding "the security of Facebook Gaming"—including any "data breaches"—and Facebook Gaming's "privacy protections." And Apple has no substantial need for confidential documents regarding privacy and security of a third party's products. *See In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *5 (N.D. Cal. Oct. 9, 2020) (quashing subpoena for Samsung documents regarding "security, safety, and use of personal information").

As to documents regarding "Apple's app review process and/or app store guidelines," including "the rejection of any Facebook app" and "Facebook's communications with Apple," Facebook produced many documents on these subjects. Apple did not and does not identify anything that it believes is missing. To the extent Apple requests that Facebook redo its search and production to capture *every* document from Mr. Sharma on those issues, its request is impermissibly overbroad.

As to documents regarding "the distribution of Facebook's apps," Facebook produced many such documents, but objected to Apple's requests for analyses of competition between iOS and other platforms and related confidential information for which Apple has no substantial need. Indeed, this Court already quashed a subpoena to Samsung for documents regarding "competition between

app marketplaces" for lack of substantial need given that Apple has access to "already-existing market intelligence" and its "own competitive intelligence." *Id.* at *7-8. It should do the same here.

### D. Apple's Second Subpoena is Improper

Apple's second subpoena, focused on policies Apple announced last year that restrict the use of data for personalizing advertising, has nothing to do with this case and is intended to harass Facebook for its public and widely reported statements regarding these policies. Epic does not challenge these policies, so Facebook's public statements about those policies (*Speaking Up for Small Businesses*, https://about.fb.com/news/2020/12/speaking-up-for-small-businesses/, *supra*) are not relevant here. Apple claims Facebook's statements go to "bias," but Apple's letter brief effectively concedes it does not need internal documents to make that argument, because Facebook's statements are public. *See Pinehaven Plantation Props., LLC v. Mountcastle Family LLC*, No. 1:12-CV-62 WLS, 2013 WL 6734117, at *2 (M.D. Ga. Dec. 19, 2013) (denying motion to compel documents from non-party trial witness where party could try to impeach through other means); *In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 87 (D.D.C. 2010) (quashing third-party subpoena for information on alleged bias reflected in public statements).

Apple's second subpoena also fished broadly for supposed documents or communications by Facebook or its counsel with Epic or any other developer in the world about "any pending or future litigation related to APPLE'S policies concerning iOS, iOS APPS, and/or the iOS APP STORE." To the extent such material even exists, Apple cannot explain how Facebook's communications about other litigations are relevant to this case. Nor can it explain how communications between Facebook and other third-party developers about this case bears on its merits. And if Apple wanted Facebook's communications with Epic about this case, Apple should have sought them from Epic. The Court should deny Apple's untimely, improper post-discovery demand for documents.

Dated: April 2, 2021         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    Karen Hoffman Lent
    Evan R. Kreiner

Respectfully submitted,

By:         *s/ Karen Hoffman Lent*
    Karen Hoffman Lent
    *Attorneys for Apple Inc.*


Dated: April 2, 2021         MUNGER, TOLLES & OLSON LLP
    Rosemarie T. Ring
    Justin P. Raphael
    Emily C. Curran-Huberty

By:         */s/ Emily C. Curran-Huberty*
    Emily C. Curran-Huberty
    *Attorneys for Non Party Facebook, Inc.*

**E-Filing Attestation**

      I, Karen Lent, am the ECF User whose ID and password are being used to file this document. In compliance with Local Civil Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*s/ Karen Hoffman Lent*
Karen Hoffman Lent
