**UNITED STATES DISTRICT COURT**
**IN THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| DONALD R. CAMERON, *et al.*,<br><br>                Plaintiffs,<br>   v.<br><br>APPLE INC.,<br><br>                Defendant. | Case No. 4:19-cv-03074-YGR-TSH<br><br>JOINT DISCOVERY LETTER BRIEF REGARDING APPLE'S REQUESTS FOR THE PRODUCTION OF CERTAIN DOCUMENTS |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

Apple Inc. ("Apple") and Plaintiffs in 4:19-cv-03074-YGR (Developer Action) (referred to herein as "Plaintiffs") respectfully submit this joint letter brief regarding Apple's Requests for the Production of Documents (the "Requests") served on Plaintiffs. (*See* Exs. 1-2.)

Counsel for Apple and Plaintiffs ("the Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve outstanding disputes. The Parties have been unable to reach an agreement and therefore submit this joint letter pursuant to Judge Hixson's standing order and Local Rule 37.

Respectfully submitted,

| MCDERMOTT WILL & EMERY LLP | HAGENS BERMAN SOBOL SHAPIRO LLP | SPERLING & SLATER, P.C. |
|---|---|---|
| By: */s/ Nicole L. Castle* <br>     Nicole L. Castle <br> *Attorneys for Defendant Apple Inc.* | By: *Robert F. Lopez* <br>     Robert F. Lopez <br> *Interim Class Counsel* | By: *Eamon P. Kelly* <br>     Eamon P. Kelly <br> *Plaintiffs' Executive Committee* |

I. **Apple's Position:**

   a. **Relevant Background**

On May 10, 2021, Apple sent correspondence to Plaintiffs requesting certain documents responsive to Requests that were not included in Plaintiffs' productions to date (the "Documents"). (Ex. 3.) Apple sent this request during the *Epic* trial after Judge Gonzalez Rogers underscored the relevance of evidence concerning Plaintiffs' coordination with Epic Games, Inc. ("Epic") and other developers. Specifically, the Documents are responsive to Request Nos. 122-124 which seek communications between Plaintiffs (including Plaintiffs' counsel) and any app developer (including any members of the Coalition for App Fairness (the "Coalition") and/or any app developer's counsel) regarding the subject matter of the above-referenced litigation and/or matters relating to app marketplaces, commission rates and distribution fees. (*See* Exs. 1-2 (Requests 122-124).) Contrary to Plaintiffs' incorrect assertions, the Requests *do* call for documents generated after Apple propounded them in October 2019. *See Gamevice, Inc. v. Nintendo Co.*, No. 18-CV-01942-RS (TSH), 2019 WL 5565942, at *2 (N.D. Cal. Oct. 29, 2019) (Mag. J. Hixson) (holding that "to the present day" does not "have to mean the day the discovery request was served. It could mean a floating reference to the present . . . .").

Over the past several months, Apple and Plaintiffs have engaged in a series of emails, letters and meet and confers to try to reach agreement. During these discussions, Apple agreed to limit the Documents to communications (reserving all rights) that (a) are between Plaintiffs (and/or their counsel) and the following app developers (and/or their counsel): Epic, Microsoft Corp. ("Microsoft"), the Coalition, any member of the Coalition[1], or Neuro-Fin Inc. d/b/a SmartStops ("SmartStops"), and (b) are regarding the subject matter of the litigations, Apple, app marketplaces, commission rates, and/or distribution fees. Apple further agreed that Plaintiffs would not have to log communications between Epic and Plaintiffs (and/or their counsel) that occurred after Epic filed suit against Apple (*i.e.*, August 13, 2020) *and* relate solely to the purpose of coordinating discovery.

   b. **Parties' Agreement as to Production of the Documents**

As a result of Apple's compromise as to the scope of the Documents, the Parties have reached agreement as to certain categories of documents. Specifically, Plaintiffs' counsel has agreed to produce communications with SmartStops (or others, including lawyers, expressly acting on its behalf), the Coalition (or others, including lawyers, expressly acting on its behalf), or any member of the Coalition (or others, including lawyers, expressly acting on any such member's behalf) that are related to the subject matter of the litigations, including Apple, app marketplaces, commission rates, and/or distribution fees and which occurred anytime from June 2018 to the present.[2] To the extent that Plaintiffs determine any responsive documents located in this manner are privileged or protected, Plaintiffs have agreed to provide a log sufficient to identify them. The Parties have agreed, pursuant to Plaintiffs' request, that any logs produced with respect to the

---

[1] Apple has directed Plaintiffs to the Coalition's website for a list of members. The conditional agreement reached by the Parties is for members identified thereon as of August 10, 2021.
[2] Apple has agreed, pursuant to Plaintiffs' request, that this production will not be construed to constitute subject-matter waiver of privilege on the part of Plaintiffs or their counsel.

matters addressed herein will be designated and treated as Highly Confidential - Attorneys' Eyes Only material, pursuant to the protective order in this matter.  (*Cameron* ECF No. 85.)

Plaintiffs have also agreed to search for *pre*-August 13, 2020 communications with Epic (or others expressly acting on its behalf) and produce any such communications or to the extent Plaintiffs claim any documents are privileged, to log them.  However, Apple agreed to carve out of this search pre-August 13, 2020 communications with Epic (or others known to be acting on its behalf) related to Epic's response to the document subpoena Plaintiffs served on Epic in this action.

### c. Parties' Dispute Over Production and Logging of the Documents

The Parties, however, have been unable to reach agreement as to: (1) the scope of the search for post-August 13, 2020 communications with Epic; and (2) the production of communications with Microsoft.

First, Apple respectfully requests that Plaintiffs be required to search for and produce (or log to the extent they claim privileged) communications with Epic from August 13, 2020 to the present.  However, in an effort to reduce the burden of these searches, Apple is willing to agree that Plaintiffs do not need to log post-August 13, 2020 communications with Epic related to the purpose of coordinating discovery and the topics required to be coordinated under the Coordination Order.

As Apple has articulated to Plaintiffs since May, these documents concern Plaintiffs' and Epic's non-Discovery coordination which is highly relevant, as the Court highlighted during Judge Gonzalez Rogers' questioning of Tim Sweeney, Epic's CEO in *Epic Games, Inc. v. Apple Inc*., Case No. 4:20-cv-05640-YGR (N.D. Cal.) (Trial Tr. (May 3, 2021) at 155:13-25 ("The Court: Mr. Sweeney, at this time before you did this, did you contact the lawyers who had already sued Apple on this same topic, the lawyers who were representing a class of developers? Did you contact them?  The Witness: I don't know if that -- if counsel contacted them or not. I didn't -- I wasn't involved in any contact.").  Here, we have the unusual situation where a member of a putative class, opted-out of the putative class, and coordinated with class counsel to have their case go to trial first.  Apple is entitled to discovery relating to this coordination and whether (and to what extent) Epic, a large developer, believed they had divergent interests from the class.  Moreover, one of the disputed issues at class certification[3] is whether all developers are identically situated and Epic's opt-out of Plaintiff's lawsuit suggests that at least some developers are differently situated.  In addition, the Documents may shed light on divergence of interests between large developers (like Epic) and small developers (the vast majority of the putative class).

Plaintiffs refuse to produce (or log to the extent they claim a privilege) these communications for several reasons.  According to Plaintiffs, virtually *any* post-August 13, 2020 communications between Plaintiffs and Epic fall into this "discovery coordination" category and they refuse to produce or log these materials.  For example, Plaintiffs' contend that communications discussing expert reports or trial strategy would fall into the "discovery coordination" bucket.  This is not consistent with the Court's order to coordinate discovery which

---

[3] Although Apple will be submitting its opposition to class certification on August 10, 2021, issues regarding class certification remain relevant.

was limited to matters related to discovery, such as discovery requests, productions, discovery disputes, third-party discovery and depositions.

In a further attempt to escape their obligation to log these relevant communications, Plaintiffs point to a provision in the current ESI protocol that states: "Privileged communications concerning the litigation that include trial counsel attorney names in the To, From or CC fields that post-date the filing of the consumer complaint on December 29, 2011, need not be included on the privilege log." (*Cameron* ECF No. 136.) This provision was put in place to avoid the time, burden and expense of logging post-complaint privileged communication between counsel *and their clients* that comes into existence during the pendency of the litigation. This provision was not intended to allow Plaintiffs to hide its communications with third parties. Even if Plaintiffs plan to stand on their privilege claims, then all communications subject to a claim of privilege (other than post-filing communications between Plaintiffs' counsel and their clients) must be entered on a privilege log so that Apple may assess and, if appropriate, challenge such claims. Plaintiffs cannot use the coordination order and ESI order, which were both entered to lessen the burden and expense on the Parties, as a shield to avoid producing and logging the relevant documents.

Second, Plaintiffs have refused to produce any Documents whatsoever related to Microsoft. Plaintiffs have given no reason why Microsoft should be treated differently than any other app developers. These documents are relevant for the same reasons as Plaintiffs' communications with the other developers that they have agreed to produce are, *i.e.*, these communications will discuss the harm or benefits the developers perceive from the App Store and the policies at issue in the litigations. Plaintiffs' assertion that Microsoft is an absent class member is irrelevant. Discovery of absent class members is permitted if "the class member has inserted herself into the litigation." *See McKinney-Drobnis v. Massage Envy Franchising, LLC*, 2017 WL 4798048, at *3 (N.D. Cal. Oct. 24, 2017). Like SmartStops, Microsoft repeatedly inserted itself in the these litigations by submitting declarations as well as providing deposition and trial testimony. Moreover, Plaintiffs' communications with Microsoft may contain information concerning Microsoft's decision to adopt the principles promoted by the Coalition and Microsoft's decision to cut its commission rate from 30% to 12%, both of which are topics relevant to the merits of this case. Finally, Apple is actively seeking these documents and communications from non-party Microsoft, but given the burden that this imposes on a non-party, Apple is making every effort to get this information from Plaintiffs.

## II.     Plaintiffs' Position:

Apple began in May 2021 to seek certain material from Plaintiffs and their counsel—if it exists—in supposed response to three requests for production it propounded in October 2019, to which Plaintiffs responded and objected in November 2019. As Apple indicates, the Parties have reached a partial compromise. For the following reasons, however, Plaintiffs respectfully submit that the Court should order no further action on the part of Plaintiffs or their counsel.

*First*, Apple has never been able to articulate the relevance of the documents requested to the claims and defenses of any Party.  But even if there were minimal relevance, the discovery is not proportional. *See* Fed. R. Civ. P. 26(b)(1). Plaintiffs explain in greater detail below.

*Second*, Apple is attempting to seek further production from 2019 requests for production to which it explicitly attached a time-scope of 2007 to November 2019.  (Apple's Nov. 15, 2019 First RFPs to D. Cameron, Inst. No. 12 ("Unless otherwise stated, the time period for which the Requests seek DOCUMENTS is 2007 to the present.").) There is no basis to require Plaintiffs to search for, and produce or log, any potentially responsive documents that came into existence after November 15, 2019. *See, e.g.*, *Finjan, Inc. v. Bitdefender Inc.*, 2019 WL 3564443, at *2 (N.D. Cal. Aug. 6, 2019). Any such documents would not be responsive because Apple's RFPs do not call for them. Moreover, this is not a situation where, for example, Plaintiffs stated they would produce documents outside the time-scope of the requests and then sought not to follow through.  *See id.*

*Third*, among Plaintiffs' objections to Apple RFP Nos. 122-24 were general and specific objections based on the attorney-client privilege and work-product and trial-preparation doctrines. As addressed further below, these objections, and the principles behind them, should be sustained.

*Fourth*, the ESI protocol expressly states that Plaintiffs need not log any privileged documents that are the subject of Apple's requests. (*Cameron* ECF No. 136 ("Privileged communications concerning the litigation that include trial counsel attorney names in the To, From or CC fields that post-date the filing of the consumer complaint on December 29, 2011, need not be included on the privilege log.").) Had Apple wanted different coverage, it could have sought it. The Parties were aware of Epic's involvement in this matter when negotiating the protocol. Further, Apple should bear in mind its view that Plaintiffs and Epic were *required* to cooperate per the coordination order in this matter. (*Cameron* ECF No. 80.) Add to that coordination the compressed schedule in *Epic Games v. Apple*, and surely Apple could well anticipate, as did Plaintiffs, that there would be *many* communications between Plaintiffs' counsel and Epic counsel, as there were. Apple offers no good basis for deviating from the plain language of the ESI protocol.

*Regarding Epic.* Leaving aside questions involving the attorney-client privilege and work-product protections—which Plaintiffs have repeatedly advised Apple they intend to observe fully—Apple has never persuasively articulated the relevance of the documents it currently seeks. *See* Fed. R. Civ. P. 26(b)(1). Now, for the first time, Apple makes the flat assertion that Epic "coordinated with class counsel to have their case go to trial first." In addition to having no relevance to any claim or defense, Apple's assertion of coordination is utterly groundless. There is no good-faith basis for making it, and Apple has articulated none. Furthermore, Apple has had ample opportunity to explore this topic with Epic itself, including in the *Epic Games* case.

As for the suggestion that Epic's motivations for filing an individual suit somehow entailed considerations with respect to the developer class case, Apple quotes a brief May 2021 colloquy between the Court and Epic's CEO at the *Epic Games* trial. But the Court's question was about whether Epic's counsel contacted developer plaintiffs' counsel *before* filing suit, and the documents in dispute here are email communications between Epic and developer counsel *after* Epic already initiated its lawsuit, such that they are irrelevant to the Court's inquiry. Moreover, if Apple had follow-up or related questions to Mr. Sweeney as to Epic's beliefs or motivations, it could have raised them then. Similarly, Apple could have asked Mr. Sweeney any such questions at his deposition, or it could have asked them of other Epic representatives it deposed. It also could have pursued this matter fully via written discovery to Epic. Further, Apple had ample time and opportunity to do all of this—Epic announced *in the summer of 2020* that it intended to opt out of the putative developer class. (*Epic Games* TRO Hearing Tr., Aug. 24, 2020 ("MS. FORREST: . . . . We are not planning on seeking any monetary damages in the *Cameron* case. We are planning on opting out of that case.").)

But really, given Apple's final proposed findings of fact and conclusions of law in *Epic Games*, it certainly appears that it has explored this entire topic amply. (*See, e.g.*, *Epic Games* ECF No. 779-1, ¶¶ 13, 272.1 (from proposed findings of fact regarding Epic's "Project Liberty"); *see also id.* ¶ 86 (from Apple's proposed conclusions of law).) In fact, Apple specifically asserts that the idea for Epic's Project Liberty, which led to the filing of Epic's suit in August 2020, was developed "throughout" 2019. (*Id.* ¶ 272.1.) If so, Epic's motivations to opt out of *Cameron* have nothing to do with the considerations that Apple floats. After all, *Cameron* was filed mid-way through 2019, in June of that year. Accordingly, Apple itself has asserted to the Court, as a proposed finding of fact, that Epic simply "ignored" the proposed class and proceeded on its own with its injunctive-relief-only case. (Apple's Final Proposed Findings of Fact ¶ 270 ("The result was 'Project Liberty,' Epic's effort to challenge the software distribution and supposed payment monopolies of Apple and Google. Trial Tr. 152:9–53:4 (Sweeney); DX-3774.002. Epic knew at the time that there was a separate class actions 'on behalf of all developers against Apple,' *but* '*ignored that and went forward on [its] own*.' Trial Tr. 155:13–25 (Sweeney).") (emphasis added).)

For whatever reason, Apple is contriving to burden Plaintiffs with discovery requests that seek nothing of any evidentiary importance to the developer class case. Requiring Plaintiffs' counsel at the interim-lead and Executive Committee firms to search emails and to log privileged or protected documents, even if the instant requests were marginally proper (which they are not), would be unduly burdensome. Plaintiffs' counsel should not have to review many hundreds, if not many thousands, of emails with Epic counsel for no good reason. *Epic Games* was a separate matter, and Plaintiffs were *required* to cooperate with Epic given the administrative relation of the cases and the discovery coordination order. Again, Apple demanded as much.

Furthermore, the common-interest privilege clearly applies to the requested communications with Epic after August 13, 2020, when it filed *Epic Games*, if not before. The privilege applies where (1) a communication is made by separate parties in the course of a matter of common legal interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived. *See, e.g.*, *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 2019 WL 144589, at *7 (N.D. Cal. Jan. 9, 2019). ("Although parties can memorialize a common interest agreement in writing, 'no written agreement is required' for the common interest privilege to

apply, since an agreement 'may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who . . . have common interests in litigation.'" *Id*. (alteration in original) (quoting *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012)). Several courts have specifically held that the common interest privilege "applies to cooperating plaintiffs." *See, e.g.*, *Amphastar Pharm., Inc. v. Aventis Pharma SA*, 2013 WL 12136805, at *5 (C.D. Cal. Aug. 9, 2013). Apple provides the examples of potential discussions about expert reports or trial strategy to argue that they would fall outside of the discovery coordination order. But to the extent such communications exist, discussions about trial strategy and expert reports—conducted among these separate plaintiffs suing common-defendant Apple— are the stuff of the common-interest privilege. Indeed, consumer plaintiffs were also required to coordinate, and they, too would need a say as to the production or logging of any communications in which they were involved, generating yet more burden. Apple's request is ill-conceived and without justification, and it should be denied.

*Regarding Microsoft*. As for Microsoft, for the reasons stated above, Apple's requests are outside the time-scope of its 2019 RFPs and call for documents that are not relevant to either side's claims or defenses. Apple is fishing, and it offers mere speculation as supposed rationale. Also, Microsoft has given no indication that it intends to opt out of the putative developer class (in contrast to Apple's point about Epic). Therefore, Apple's requests also would cause unjustified burden to Plaintiffs. Further, Apple's request, if granted, would circumvent the rule that discovery from absent class members is disfavored, *see, e.g.*, *Cornn v. United Parcel Service, Inc.*, 2006 WL 2642540 (N.D. Cal. Sept. 14, 2006), at *2 and n.2. Apple points to no way in which Microsoft has "inserted itself into" the developer class case, which is discrete from, and not consolidated with, Epic's individual case. What is more, Apple already has asked Microsoft for communications with developers (including their counsel) by way of a November 6, 2020 document subpoena, and Apple does not indicate why its requests to Plaintiffs and their counsel are not cumulative. Given all of this, the Court should deny Apple's request, which is even farther removed from the request for materials pertaining to the Coalition, of which Microsoft is not a member. Finally, there would be no basis for logging any privileged or protected materials, if any exist, per the referenced logging term of the ESI protocol. (Cameron ECF No. 136.)