1 THEODORE J. BOUTROUS JR., SBN 132099
   tboutrous@gibsondunn.com
2 RICHARD J. DOREN, SBN 124666
   rdoren@gibsondunn.com
3 DANIEL G. SWANSON, SBN 116556
   dswanson@gibsondunn.com
4 JAY P. SRINIVASAN, SBN 181471
   jsrinivasan@gibsondunn.com
5 GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue Los Angeles, CA 90071
6 Telephone: 213.229.7000
Facsimile: 213.229.7520
7
VERONICA S. MOYÉ (Texas Bar No.
8 24000092; pro hac vice)
   vmoye@gibsondunn.com
9 GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
10 Dallas, TX 75201
Telephone: 214.698.3100
11 Facsimile: 214.571.2900

MARK A. PERRY, SBN 212532
   mperry@gibsondunn.com
CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
   crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
   Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

ETHAN D. DETTMER, SBN 196046
   edettmer@gibsondunn.com
RACHEL S. BRASS, SBN 219301
   rbrass@gibsondunn.com
CAELI A. HIGNEY, SBN 268644
   chigney@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant APPLE INC.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re Apple iPhone Antitrust Litigation | Case No. 4:11-cv-06714-YGR |
| Donald R. Cameron, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>Apple Inc.,<br><br>    Defendant. | Case No. 4:19-cv-03074-YGR<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFFS TO SUBMIT TRIAL PLAN; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>The Honorable Yvonne Gonzalez Rogers<br><br>Date:    Nov. 16, 2021<br>Time:   10:00 a.m.<br>Courtroom: 1, 4th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 16, 2021 at 10:00 a.m. before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1 of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant Apple Inc. will and hereby does move this Court to compel the named plaintiffs in *In re Apple iPhone Antitrust Litigation*, 4:11-cv-06714 (N.D. Cal.), and *Cameron v. Apple Inc.*, No. 4:19-cv-03074 (N.D. Cal.), to submit a joint trial plan.  Apple respectfully submits that in light of the Supreme Court's decision in *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), and the subsequent attempt by both sets of proposed class representatives to seek overlapping relief, a trial plan is necessary in these cases to inform Apple, this Court, and the absent would-be class members how the causes of action asserted in the two actions could fairly and efficiently be tried to judgment.

This motion is based on this Notice of Motion and Motion, the concurrently filed Memorandum of Points and Authorities, the pleadings and papers on file, and any argument received by the Court.

GIBSON, DUNN & CRUTCHER LLP

By: */s/         Mark A. Perry*

Theodore J. Boutrous Jr.
Richard J. Doren
Daniel G. Swanson
Mark A. Perry
Veronica S. Moyé
Cynthia E. Richman
Jay P. Srinivasan
Ethan D. Dettmer
Rachel S. Brass
Caeli A. Higney

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................. 2

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ......................................................................................................................... 6

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................................................. 9

*In re Apple Antitrust Litig.*,
    2013 WL 6253147 (N.D. Cal. Dec. 2, 2013) ........................................................................... 2

*Apple Inc. v. Pepper*,
    139 S. Ct. 1514 (2019) ............................................................................................. 1, 2, 3, 4, 11

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) .................................................................................................................. 9

*Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*,
    705 F.2d 712 (4th Cir. 1983) .................................................................................................. 10

*Badella v. Deniro Mkt'g LLC*,
    2011 WL 5358400 (N.D. Cal. Nov. 4, 2011) ........................................................................ 6, 8

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986) ................................................................................................................ 10

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005) .................................................................................................... 6

*Duran v. U.S. Bank N.A.*,
    59 Cal. 4th 1 (2014) .................................................................................................................. 5

*Espenscheid v. DirectSat USA, LLC*,
    705 F.3d 770 (7th Cir. 2013) .................................................................................................... 5

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
    392 U.S. 481 (1968) .................................................................................................................. 2

*Hohider v. United Parcel Serv., Inc.*,
    574 F.3d 169 (3d Cir. 2009) ..................................................................................................... 5

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) .................................................................................................................. 2

*Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*,
    453 F.3d 179 (3d Cir. 2006) ..................................................................................................... 5

*Keegan v. Am. Honda Motor Co., Inc.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ............................................................................................. 6

*Marlo v. United Parcel Serv., Inc.*,
  251 F.R.D. 476 (C.D. Cal. 2008) .................................................................................................6

*In re N. Dist. of Cal. "Dalkon Shield" IUD Prods. Liability Litig.*,
  526 F. Supp. 887 (N.D. Cal. 1981) ..............................................................................................9

*O'Connor v. Uber Techs., Inc.*,
  2015 WL 5138097 (N.D. Cal. Sept. 1, 2015) ..............................................................................6

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ....................................................................................................................9

*In re Paxil Litig.*,
  212 F.R.D. 539 (C.D. Cal. 2003) ................................................................................................6

*In re Rhone-Poulenc Rorer, Inc.*,
  51 F.3d 1293 (7th Cir. 1995) ................................................................................................9, 10

*Ross v. RBS Citizens, N.A.*,
  667 F.3d 900 (7th Cir. 2012) ......................................................................................................5

*Sanchez v. Martinez*,
  54 Cal. App. 5th 535 (2020) .....................................................................................................10

*Sweet v. Pfizer*,
  232 F.R.D. 360 (C.D. Cal. 2005) ................................................................................................6

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ......................................................................................................5

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ..................................................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................................................................9

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ....................................................................................................5

**STATUTES**

28 U.S.C. § 2072(b) .........................................................................................................................9

**RULES**

Fed. R. Civ. P. 23 .............................................................................................................................5

**OTHER AUTHORITIES**

Manual for Complex Litigation (Fourth) § 22.756 ..........................................................................9

# INTRODUCTION

In *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), all nine Justices recognized that Apple should not be subjected to duplicative liability for the conduct at issue in these cases. The five-Justice majority explained that parallel litigation by consumers and developers could proceed if (and only if) they sought non-overlapping damages. The majority even laid out a path for them to follow: Developers could seek "lost profits" under a monopsony theory while consumers could continue to seek "the difference between the price they paid and the competitive price" under a monopoly theory. The four-Justice dissent explained the consequences of failing to follow the majority's roadmap, including the likely necessity of joinder. *No* Justice suggested that consumers and developers could seek or obtain duplicative relief, or refuse to coordinate with one another.

Unfortunately, the named plaintiffs in these two cases failed to adhere to the course laid out in *Pepper*. Rather than pursuing non-overlapping damages, both sets of plaintiffs now seek to recover the identical "overcharge" that Apple allegedly received by virtue of its 30% commission. Developer Plaintiffs seek 100% of any alleged overcharge while Consumer Plaintiffs seek 82% of that *same* overcharge, meaning that they collectively are asking this Court to order Apple to pay **182%** of the supposed "damages"—before trebling under the Sherman Act.

As Consumer Plaintiffs' expert admitted, the two plaintiff groups made no effort to coordinate with one another notwithstanding the Supreme Court's decision in *Pepper*: "***If these cases were consolidated, for example, and . . . the plaintiffs on both ends decided to work out jointly, how any damages were to be divided, I don't have an opinion on how that would work out***." McFadden Dep. (Perry Decl. Ex. A) 239:22-240:1. But any certification order in these cases "must define the class and the class claims, issues, or defenses," Fed. R. Civ. P. 23(c)(1)(B), including whether and how the cases could fairly be tried to judgment before a jury (or juries). Plaintiffs should be required to address these issues *before* the Court rules on their respective motions for class certification. Apple respectfully submits that the Court cannot, and should not, certify any class or subclass without requiring plaintiffs to submit a workable trial plan (although it could deny certification without requiring such a plan, or because of the absence of such a plan). Accordingly, plaintiffs should be ordered to submit a joint trial plan.

## RELEVANT BACKGROUND

Consumer Plaintiffs filed this action in 2011, and their operative complaint alleges that they have been "forced to pay supracompetitive prices for apps." *In re Apple Antitrust Litig.*, No. 4:11-cv-06714-YGR, Dkt. 229 Ex. A ¶ 81 (N.D. Cal. Sept. 17, 2020). Their expert, Professor Daniel McFadden, acknowledges the need to allocate Apple's alleged overcharge as damages between the two plaintiff groups—he "estimate[s] that 81.8 percent of the excessive App Store commission from the Games category was borne by the Consumer Class, while the other 18.2 percent was borne by app developers." *In re Apple*, Dkt. 442-11 ¶ 235. He estimates a substantially similar allocation for the Entertainment and Music categories (*id.* ¶ 238), although he ignores all the other categories of apps on the App Store.

In *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), the Supreme Court held that a federal antitrust defendant may not rely on a "pass on" defense. Later, in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Court held that "indirect purchasers" could not rely on an offensive "pass on" theory because "potential plaintiffs at each level in the distribution chain" could "assert conflicting claims to a common fund the amount of the alleged overcharge by contending that the entire overcharge was absorbed at that particular level in the chain." *Id.* at 737.

In 2013, this Court concluded that Consumer Plaintiffs were "indirect purchasers" under *Illinois Brick* and thus dismissed their complaint for lack of standing. *In re Apple Antitrust Litig.*, 2013 WL 6253147 (N.D. Cal. Dec. 2, 2013). A five-Justice majority of the Supreme Court disagreed, holding that Consumer Plaintiffs are "direct purchasers" and thus have antitrust standing. *Pepper*, 139 S. Ct. at 1519. The majority did "not assess the merits of the plaintiffs' antitrust claims against Apple" or "consider any other defenses Apple might have." *Id.*

The *Pepper* majority recognized that "Apple's alleged anticompetitive conduct may leave Apple subject to multiple suits by different plaintiffs" because "[a] retailer who is both a monopolist and a monopsonist may be liable to different classes of plaintiffs—both to downstream consumers and to upstream suppliers—when the retailer's unlawful conduct affects both the downstream and upstream markets." *Id.* at 1525. According to the majority:

> Here, some downstream iPhone consumers have sued Apple on a **monopoly** theory. And it could be that some upstream app developers will also sue Apple on a **monopsony** theory. **In this instance, the two suits would rely on fundamentally different theories of harm and would not assert dueling claims to a "common fund," as that term was used in Illinois Brick. The consumers seek damages based on the difference between the price they paid and the competitive price. The app developers would seek lost profits that they could have earned in a competitive retail market.** *Illinois Brick* does not bar either category of suit.

*Id.* (emphasis added). At the same time, the majority recognized the possibility that Consumer Plaintiffs' damages would be zero if Apple's "conduct has not caused the consumer to pay a higher-than-competitive price" because, for example, "consumers would pay the same retail price regardless of whether Apple's commission was 10 percent or 30 percent." *Id.* at 1523.

Justice Gorsuch—joined by Chief Justice Roberts and Justices Thomas and Alito—dissented, writing that consumers were indirect purchasers asserting the type of pass-on theory that *Illinois Brick* prohibits. As relevant here, Justice Gorsuch wrote:

> Plaintiffs' claims will also necessitate "massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge," including both consumers and app developers. *Illinois Brick*, 431 U.S. at 737. If, as plaintiffs contend, Apple's 30% commission is a monopolistic overcharge, then the app developers have a claim against Apple to recover whatever portion of the commission they did not pass on to consumers. Before today, *Hanover Shoe* would have prevented Apple from reducing its liability to the developers by arguing that they had passed on the overcharge to consumers. **But the Court's holding that *Illinois Brick* doesn't govern this situation surely must mean *Hanover Shoe* doesn't either. So courts will have to divvy up the commissions Apple collected between the developers and the consumers. To do that, they'll have to figure out which party bore what portion of the overcharge in every purchase. And if the developers bring suit separately from the consumers, Apple might be at risk of duplicative damages awards totaling more than the full amount it collected in commissions. To avoid that possibility, it may turn out that the developers are necessary parties who will have to be joined in the plaintiffs' lawsuit.** *See* Fed. Rule Civ. Proc. 19(a)(1)(B); *Illinois Brick*, 431 U.S. at 739 (explaining that "[t]hese absent potential claimants would seem to fit the classic definition of 'necessary parties,' for purposes of compulsory joinder").
>
> The Court denies that allowing both consumers and developers to sue over the same allegedly unlawful commission will "result in 'conflicting claims to a common fund'" as *Illinois Brick* feared. *Ante*, at 1527. **But Apple charged only one commission on each sale. So even assuming for argument's sake that the 30% commission was entirely illegal, Apple can only be required to pay out in damages, at most, the full amount it received in commissions.** To their credit, even plaintiffs have conceded as much, acknowledging that because "there is only one 30% markup," any claim by the

developers against Apple would necessarily be seeking "a piece of the same 30% pie." Brief in Opposition 12.

*Id.* at 1529 & n.3 (Gorsuch, J., dissenting).

Both the majority and the dissent in *Pepper*, therefore, anticipated that to the extent Consumer and Developer Plaintiffs both sued for damages, they would use different (and non-overlapping) measures. The majority proceeded from the assumption that Apple would not be exposed to duplicative liability because the Developer Plaintiffs would pursue a monopsony theory and "would seek lost profits" rather than "the difference between the price they paid and the competitive price," which the Consumer Plaintiffs already were seeking. 139 S. Ct. at 1525. And Justice Gorsuch's dissent explained that if Developer Plaintiffs filed their own lawsuit seeking overlapping relief with the Consumer Plaintiffs, joinder under Rule 19 might be required to prevent duplicative liability. *Id.* at 1529 & n.3.

Shortly after *Pepper* was decided, the Developer Plaintiffs sued Apple. *See Cameron v. Apple Inc.*, No. 4:19-cv-03074 (N.D. Cal.). Despite the *Pepper* majority's express expectation, Developer Plaintiffs do *not* now rely on a monopsony theory and do *not* seek lost profits. Instead, their requested relief overlaps and competes with the Consumer Plaintiffs' requested relief—something Consumer Plaintiffs' expert acknowledges. *In re Apple*, Dkt. 442-11 ¶ 235. Developer Plaintiffs' expert, Dr. Nicholas Economides, opines that Developer Plaintiffs' "damages are equal to the difference between actual commission rates paid and but-for commission rates." *Cameron*, Dkt. 332-1 ¶ 75. However, unlike Consumer Plaintiffs, Developer Plaintiffs do not acknowledge the need to allocate any overcharges between themselves and Consumer Plaintiffs. Developer Plaintiffs now take the position that the pass-through rate is 0%, so that they can keep the entire alleged overcharge. (In contrast, Epic's expert opined that the pass-through rate was 50%. *See Epic Games, Inc. v. Apple Inc.*, No. 20-CV-05640, Dkt. 777-3 ¶ 187 (N.D. Cal. May 28, 2021).)

On June 1, 2021, both Consumer and Developer Plaintiffs moved for class certification in their separate lawsuits. *In re Apple*, Dkt. 441; *Cameron*, Dkt. 332. Notwithstanding the clear directives of *Pepper*, neither plaintiff group grappled with the overlap in their requested relief or sought to join the other in their respective lawsuit. Moreover, and even though the *Epic* trial showed that further

proceedings will be highly complex, neither Consumer Plaintiffs nor Developer Plaintiffs submitted a trial plan. Apple respectfully submits that they should be ordered to rectify that deficiency.

## LEGAL STANDARD

Rule 23 requires that, if the Court certifies a class, its certification order "*must* define the class and the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(1)(B) (emphasis added). Inherent in that requirement is consideration of how a trial on those "claims, issues, or defenses" would be conducted, including assurance that such a classwide adjudication will not abrogate substantive or procedural rights of any party. *See Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 186 (3d Cir. 2006) (class certification order must provide a "full and clear articulation of the litigation's contours at the time of class certification"). Indeed, Rule 23(c)(1)(B) was added to reflect the practice of "[a]n increasing number of courts requir[ing] a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof." Fed. R. Civ. P. 23 Advisory Committee's note (2003). As many courts have recognized, requiring a "specific plan for litigating the case" is "a reasonable request." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013); *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 905 (7th Cir. 2012) ("The justification for a clear trial plan applies with equal force to subsection (c)(1)(B)" because "there is a critical need to define the class, claims, issues, and defenses so the parties can adequately prepare for trial"), *vacated on other grounds*, 133 S. Ct. 1722 (2013).

The Ninth Circuit repeatedly has considered plaintiffs' production (or non-production) of a workable trial plan when evaluating the appropriateness of class certification. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (affirming order denying class certification because "there was no manageable trial plan adequate to deal with individualized issues"); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (district court abused its discretion by certifying class without any "showing by Plaintiffs of how the class trial could be conducted"). Other appellate courts have done the same. *See Wachtel*, 453 F.3d at 186 n.7; *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 202 (3d Cir. 2009); *Espenscheid*, 705 F.3d at 775; *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 n.20 (11th Cir. 2009); *Duran v. U.S. Bank N.A.*, 59 Cal. 4th 1, 31-32 (2014) ("the

court should consider *at the certification stage* whether a trial plan has been developed to address" certain potential complexities arising in a classwide trial) (emphasis in original).

Although a trial plan might not be required in all cases, *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005), district courts in this Circuit have ordered trial plans where warranted. *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 552 (C.D. Cal. 2012) (ordering plaintiffs to "articulate[] a workable trial plan"); *Sweet v. Pfizer*, 232 F.R.D. 360, 370 (C.D. Cal. 2005) (plaintiffs "fail[ed] to comply with the federal rules" by not filing "information regarding a trial plan"); *cf. O'Connor v. Uber Techs., Inc.*, 2015 WL 5138097, at *15 n.13 (N.D. Cal. Sept. 1, 2015), *rev'd on other grounds*, 904 F.3d 1087 (9th Cir. 2018). Moreover, district courts in this Circuit have denied certification for failure to submit a trial plan. *See, e.g.*, *Badella v. Deniro Mkt'g LLC*, 2011 WL 5358400, at *1 (N.D. Cal. Nov. 4, 2011); *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008) (decertifying a class and finding that a party has a "responsibilit[y] to articulate a clear trial plan when requested"); *In re Paxil Litig.*, 212 F.R.D. 539, 544 (C.D. Cal. 2003) (plaintiffs "failed to demonstrate that a manageable trial plan exist[ed] that would make a class action lawsuit feasible").

## ARGUMENT

Both sets of named plaintiffs have failed, or refused, to abide by the Supreme Court's ruling in *Pepper*. They chose not to seek non-overlapping damages, and they have not even tried to coordinate with one another or requested joinder. Rather, they seek to recover the same alleged overcharges for the same alleged conduct while advancing fundamentally contradictory estimates of developer pass-through (with different experts now estimating 0%, 50%, and 82%) without acknowledging that their approaches, if allowed to proceed, would unconstitutionally subject Apple to duplicative damages. They have put this Court (and the absent would-be class members) in an untenable position by seeking certification of claims that cannot be tried consistent with the procedural and substantive protections to which Apple is statutorily and constitutionally entitled. Accordingly, Consumer Plaintiffs and Developer Plaintiffs should be compelled to file a joint trial plan *before* the Court rules on the certification motions.

It cannot be disputed that the two plaintiff groups seek overlapping damage awards. They both posit that Apple's commission was supracompetitive, and resulted in an "overcharge" in app pricing;

but they disagree on whether or not this supposed overcharge was passed through to consumers. According to Consumer Plaintiffs' expert, developers would pass through 82% of any overcharge to consumers. *In re Apple*, Dkt. 442-11 ¶ 235. Developer Plaintiffs' expert, on the other hand, opines that the pass-through rate is 0%. *Cameron*, Dkt. 332-1 ¶ 75. These pass-through figures ignore or mask the variability among apps, developers, and consumers—pass-through is a highly individualized issue that cannot be proved with common evidence, and neither plaintiff group has even attempted to do so. Moreover, even taking plaintiffs' pass-through estimates on their own terms, they *cannot both be correct*, and neither squares with the 50% assumption advanced by Epic's expert. Yet Apple is being sued for *billions* of dollars based on such wildly diverging assumptions; and worse, Apple could be subject to duplicative damages, particularly if the two trials are conducted consecutively rather than simultaneously. *See* Oct. 7, 2019 Hearing Tr. (Perry Decl. Ex. D) 32:11-23 (indicating that trials would be consecutive).

Given the clarity of the *Pepper* decision, the Court should have expected that the experienced and well-represented plaintiff groups would have acknowledged the problems presented by their decision to seek duplicative damages, and at least attempted to offer a solution. But they didn't. This point was highlighted during the deposition of Professor McFadden:

> **Q.** If a particular methodology for ascertaining the incidence of the alleged excessive commission were to overstate damages to one group, whether developers or consumers, it would necessarily result in understating damages for the other group, would it not?
>
> **A.** If one had a consolidated legal case in which both developers and consumers were in the same case and the judge were making this determination, I would anticipate the answer would be yes. If, as the in the real world, developer actions and consumer actions are separate and perhaps not necessarily subject to the same legal precedents and – who knows how it would work out. ***That's a mare's nest for lawyers to entertain themselves with***.

McFadden Dep. (Perry Decl. Ex. A) 234:7-235:1 (emphasis added). As the proponents of class certification, it was (and remains) the obligation of Consumer Plaintiffs and Developer Plaintiffs to resolve these issues *before* any classes are certified.

To be sure, the two plaintiff groups can be expected to argue that they are not seeking overlapping damages because their respective experts have constructed "but-for worlds" that contain

different factual assumptions. For example, Developer Plaintiffs apparently contend that Apple's price tiers would remain the same in the but-for world (*see* Elhauge Dep. (Perry Decl. Ex. B) 247:1-15), while Consumer Plaintiffs contend that price tiers would be different in the but-for world (*see In re Apple*, Dkt. 442-11 ¶ 162 (McFadden Report)). But that magnifies the problem, rather than ameliorating it; if they are each allowed to construct their own but-for worlds, presumably using assumptions that maximize recovery for their respective constituencies, the possibility of duplicative recovery only increases. Apple gets it coming and going, while neither plaintiff group is forced to coordinate with the other. Nor is it any answer to say (as Developer Plaintiffs might) that seeking 100% of the alleged overcharge is "conservative" because a lost profits measure would be even higher. *See Cameron*, Dkt. 332-1 ¶ 63 (Economides Report). Developer Plaintiffs have all but abandoned their monopsony theory (*see Cameron*, Dkt. 332 at 17 n.8; Economides Dep. (Perry Decl. Ex. C) 71:13-17; Elhauge Dep. (Perry Decl. Ex. B) 169:25-171:14) and have not even attempted to prove lost profits or any other damages measure based on that theory. Economides Dep. (Perry Decl. Ex. C) 75:18-20 ("I haven't done that, based on alternative theories of harm"). Instead, they chose—notwithstanding *Pepper*—to seek the same overcharge as Consumer Plaintiffs. Both plaintiff groups have to confront the consequences of these decisions. They can't just forge ahead and seek 182% of the alleged overcharge, yet that is exactly the situation facing Apple (and the Court) today. A mare's nest indeed.

  For the benefit of Apple, the Court, and members of both putative classes, Consumer and Developer Plaintiffs should have submitted (and should now be compelled to submit) a joint trial plan that confronts these issues head-on. Right now, the two classes collectively ask this Court to order Apple to pay 182% (before trebling) of the alleged overcharge. Yet neither class certification motion even attempts to explain how that request can be reconciled with the Rules Enabling Act, the Due Process Clause, or the Seventh Amendment. *See Badella*, 2011 WL 5358400, at \*13 (denying class certification and finding plaintiff's "lack of any suggestions, much less a plan, as to how the Court should manage this large proposed nationwide class action" to be "troubling," especially in light of "issues of damages" that were "not addressed by Plaintiffs"). The Court has to consider these constraints before certifying any class, but plaintiffs have offered no meaningful assistance. A joint trial plan from plaintiffs is clearly called for in these circumstances.

Rules Enabling Act. A trial plan would assist the Court in evaluating, as it must, whether class certification would abide by "the [Rules Enabling] Act's mandate that [use of Rule 23] 'shall not abridge, enlarge or modify any substantive right.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997), and 28 U.S.C. § 2072(b)). Before certifying a class, a court must ensure that the proposed class action could be tried to verdict consistent with Rule 23, the Sherman Act, and the Constitution. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351-52 (2001). Without understanding the relationship between the relief sought by each plaintiff group, for example, the Court cannot determine whether either proposed class action could be tried to judgment before a jury (or juries) without interfering with rights of Apple (and the absent putative class members) under the Due Process Clause and the Seventh Amendment. If the Developer Plaintiffs go first and recover 100% of any alleged overcharge, what's left for the Consumer Plaintiffs? And if the Consumer Plaintiffs go first and recover 82% of any alleged overcharge, would Developer Plaintiffs be able to recover more than 18%? Both Apple and the putative class members need to know the answers to these questions before any class could be certified. *See, e.g.*, *Ortiz*, 527 U.S. at 848 ("due process require[s] that [absent class] members 'receive notice plus an opportunity to be heard and participate in the litigation'"); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1302-03 (7th Cir. 1995) (directing a district court to decertify a class where proposed method of trying the case would violate the reexamination clause of the Seventh Amendment); Manual for Complex Litigation (Fourth) § 22.756 ("A trial on general liability can impose unfair burdens on parties forced to litigate issues out of context."). Given the failure of both plaintiff groups to engage with these issues, the Rules Enabling Act precludes certification.

Due Process Clause. Under the Due Process Clause, civil defendants have "a right to be protected against double recoveries . . . because overlapping damage awards violate that sense of 'fundamental fairness' which lies at the heart of constitutional due process." *In re N. Dist. of Cal. "Dalkon Shield" IUD Prods. Liability Litig.,* 526 F. Supp. 887, 899 (N.D. Cal. 1981), *rev'd on other grounds,* 693 F.2d 847 (9th Cir. 1982), *cert. denied,* 459 U.S. 1171 (1983); *see also Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545 n.52 (1983) (citing a federal "policy against duplicative recoveries" and refusing to allow a representative union to sue

because the claimed damages might duplicate those of other potential plaintiffs); *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 111 n.6 (1986) (relying on the federal policy against multiple damage recoveries in determining whether a party is a proper plaintiff under Clayton Act); *Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 716 n.4 (4th Cir. 1983) (suggesting that plaintiffs cannot recover "overlapping and, therefore, probably inconsistent" remedies); *Sanchez v. Martinez*, 54 Cal. App. 5th 535, 546 (2020) ("Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited."). It would violate Apple's due process rights to order it to pay twice for the same alleged conduct under the Sherman Act. At minimum, plaintiffs should be required to submit a joint trial plan explaining whether and how Apple would be protected against duplicative damages.

Seventh Amendment. Similarly, absent an adequate joint trial plan, Apple's Seventh Amendment rights would be jeopardized. For example, if both sets of Plaintiffs plan to submit evidence to separate juries about their entitlement to a particular amount of any overcharge, that would appear to violate Apple's Seventh Amendment rights. *See In re Rhone-Poulenc Rorer*, 51 F.3d at 1302-03. And if Plaintiffs seek to present competing evidence to the *same* jury, how would that happen? Would Plaintiffs support an instruction to the jury that Apple cannot be subjected to duplicative liability for any alleged overcharge? Or will one group accede to the other's estimate regarding pass-through rates? While they could try to prove that the rate is 82% or 0%, how could they possibly prove that it is both? Will they choose the 50% rate advanced in *Epic*, even though no expert endorsed that rate at the certification stage? Did they even try to coordinate to come up with the "right" estimate, or are they both just seeking to maximize recovery at Apple's expense? With billions of dollars at stake, these questions are not academic; and the answers are fundamental to the Rule 23 inquiry, including whether a class-based trial (or trials) are manageable. Yet, plaintiffs and their experts do not seem to have considered them—or, if they have, they certainly have not shared their thinking with Apple or the Court, as required for a class to be certified.

All nine Supreme Court Justices in *Pepper* warned the class plaintiffs not to seek overlapping damages and thus open Apple to duplicative liability. Although the named plaintiffs in both cases have had years (and the benefit of the *Epic* trial) to plan their legal strategy, they ignored the Supreme Court's

warning and now seek certification of two classes seeking duplicative damages. As a result, they should be required to explain how their claims could be tried to a jury (or juries) in a way that protects Apple's procedural and substantive rights. Even if a trial plan might not be required at the certification stage in every case, Apple respectfully submits that in light of *these* cases' complexities and plaintiffs' failure to heed the *Pepper* decision, this Court would abuse its discretion if it did not compel plaintiffs to submit a joint trial plan and permit Apple to respond to it before certifying any class or subclass. Of course, the Court could deny certification without taking that extra step—or even based on plaintiffs' failure to submit a trial plan.

*    *    *

Apple is making this request for the benefit of the Court and the absent persons and entities who would be class members as well as to protect its own rights. As Justice Gorsuch's dissent recognized, "it may turn out that the developers are necessary parties who will have to be joined in the [consumer] plaintiffs' lawsuit" against Apple under Rule 19. *Pepper*, 139 S. Ct. at 1529. The *Pepper* majority did not disagree with this point; to the contrary, it made clear that separate, parallel litigation could proceed only if the two groups of plaintiffs sought different types of damages. Plaintiffs did not follow the path marked by the *Pepper* majority; yet at the same time, Consumer Plaintiffs have not sought to join Developer Plaintiffs to their action, or *vice versa*. They were on clear notice of this problem and have had plenty of time to act. They have therefore made a conscious decision *not* to pursue joinder, and must live with the consequences of that decision. Although the Rule 19 problem is not yet ripe, Apple reserves the right to seek all available relief, including dismissal, if any class is certified.

## CONCLUSION

The Court should compel both Consumer Plaintiffs and Developer Plaintiffs to submit a joint trial plan to which Apple may respond.

| | |
|---|---|
| DATED: August 10, 2021 | GIBSON, DUNN & CRUTCHER LLP |
| | By: /s/     Mark A. Perry |
| | Theodore J. Boutrous Jr.<br>Richard J. Doren<br>Daniel G. Swanson<br>Mark A. Perry<br>Veronica S. Moyé<br>Cynthia E. Richman<br>Jay P. Srinivasan<br>Ethan D. Dettmer<br>Rachel S. Brass<br>Caeli A Higney |
| | *Attorneys for Defendant Apple Inc.* |

12
APPLE'S MOTION TO COMPEL PLAINTIFFS TO SUBMIT TRIAL PLAN
Nos. 4:11-cv-06714-YGR; 4:19-cv-03074-YGR