# ATTACHMENT E

Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
Ted Wojcik (*pro hac vice*)
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com
tedw@hbsslaw.com

Shana E. Scarlett (SBN 217895)
Benjamin J. Siegel (SBN 256260)
Ben M. Harrington (SBN 313877)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com
bens@hbsslaw.com
benh@hbsslaw.com

*Interim Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DONALD R. CAMERON, et al., | No. 4:19-cv-03074-YGR<br>No. 4:19-cv-03796-YGR |
| Plaintiffs, | |
| v. | EXHIBITS 1, 5-6, 10-15, AND 17-20 TO DECLARATION OF STEVE W. BERMAN IN SUPPORT OF DEVELOPER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |
| APPLE INC. | |
| Defendant. | Judge:    Hon. Yvonne Gonzalez Rogers |

# EXHIBIT 1
# SUBMITTED
# UNDER SEAL



[Carson]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

## Agenda



## Program Overview



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10170221

## Program Impact and Risks



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10170222

**Key Details**



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10170223

**Technical Overview**



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10170224

## PR and Developer Communications



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



GA Communications

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Project Timeline**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10170227



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10170228

# EXHIBIT 5
# SUBMITTED
# UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1          UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                  OAKLAND DIVISION

4

5    _____

                                    )

6                                   )

     IN RE APPLE iPHONE TRUST       ) CIVIL ACTION NO.

7    LITIGATION                     ) 4:11-cv-06715YGR

                                    )

8    _____)

9

10

11      ** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY **

12              REMOTE PROCEEDINGS OF

13     VIDEOTAPED DEPOSITION OF PHILLIP B. SHOEMAKER

14              TUESDAY, JANUARY 12, 2021

15

16

17

18

19

20

21

22   REPORTED BY:  REAGAN EVANS, RPR, RMR, CRR, CCRR,

23              CLR, CRC, CA CSR NO. 8176

24

25

Page 146

1   and rolled it out in September, I believe.

2        Q    Okay.

3             And was it first rolled out only to paid

4   apps; is that right?

5        A    I don't recall that.

6        Q    Okay.

7             In 2009, 2010, have you been involved in

8   discussions around Apple's policies concerning

9   in-app purchases?

10       A    Yes, I was.

11       Q    Who else was involved in these discussions?

12       A    Typically it would be the people that

13  attend the Executive Review Board, but then there

14  were more specific ones regarding how we would

15  implement that, how we would look for it.  And I

16  would work with Ron Okamoto and CK Haun on those

17  issues.

18       Q    And "those issues," you mean sort of

19  execution review-type issues?

20       A    Yeah.  Figuring out how we review for them,

21  how we know what people are going to do.  How we

22  verify content that hasn't even shipped yet, like

23  "Time" magazine in a year.

24             They put all this stuff in early.  And how

25  am I supposed to review if that content is

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 147

```
 1    appropriate a year before it gets submitted; right.
 2    Concepts like that.
 3         Q    Before Apple announced IAP API, was there
 4    any internal discussion about allowing developers to
 5    use third-party mechanisms for in-app purchases?
 6         A    I don't recall.  I was -- I came literally
 7    right before IAP.  So all our conversations were
 8    focused around IAP.
 9         Q    Okay.
10              Was there any discussion of allowing
11    out-of-app purchases, for example, by pointing to
12    purchases in another platform?
13         A    Not that I recall before we shipped IAP.
14    Once we shipped IAP, yes, we had those conversations
15    and decided they weren't -- it wasn't appropriate.
16         Q    Was there any discussion of requiring API
17    also for goods consumed outside the app?
18         A    Yes.  We had many conversations about apps
19    or content consumed outside the app.
20         Q    Was there ever any discussion about whether
21    Apple could just charge 30 percent for any
22    transaction on an app, whether it's an in-app
23    purchase or just any purchase?
24         A    Yeah.  We had numerous conversations trying
25    to figure out if we wanted to -- or should allow
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 148

1    in-app purchase to be used for non digital content,

2    physical goods, things like that.  We had

3    conversations about that.

4        Q   And what was the reason that Apple decided

5    to focus on digital content as opposed to other

6    things for IAP?

7        A   Well, getting to the thought of what about

8    Amazon, should Amazon be using an in-app purchase to

9    purchase physical goods, Apple could never verify if

10   that physical good was delivered.

11           And, therefore, when you buy a $10,000 item

12   off of Amazon, people would call Apple and say,

13   where's my good?  And we would have no ability to

14   help that.

15           With digital goods, we could tell if

16   someone made the purchase, if the content was

17   ultimately delivered to the user.  There's a lot of

18   things we can do to verify it, but things outside of

19   our control, like physical goods or physical

20   services, we figured that in-app purchase was not

21   appropriate for those.

22       Q   When you say "we," who is the we that

23   decided that?

24       A   The Executive Review Board, for the most

25   part.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 149

1        Q    Was Mr. Jobs involved in that?

2        A    He was not in the meetings.

3        Q    What's your understanding of the reason why

4    Apple decided that digital goods should only be

5    purchased with IAP?

6        A    I don't know.  I don't know.  It was a

7    decision made above my pay grade.  I was just mainly

8    enforcing it.

9        Q    Do you have any understanding if the

10   decision was driven by commercial reasons?

11       A    I don't know.

12       Q    Have you ever heard anybody voice concerns

13   about the security of other in-app purchase APIs?

14       A    I have not.

15       Q    Based on your understanding, is IAP, in

16   fact, safer than, for instance, PayPal?

17       A    I believe it is, but I don't have any data

18   to back that up.  It just feels like it would be

19   more secure.

20       Q    And why do you think it feels more secure?

21       A    Because when you use in-app purchase,

22   you're using services that are built in on the phone

23   versus a third-party library that may or may not

24   have malware in it.  Right.

25            People can use infected libraries to give

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 150

1    you third-party functionality.  And then your

2    password and user name are out there.

3             Whereas, I know if it's using the built-in

4    services of the iPhone, people can't be tracking

5    that information.  They can't be capturing it.

6        Q    Okay.

7             Have you ever heard of a major breach of

8    PayPal, for instance?

9        A    Not at the time.

10       Q    All right.

11            Was there any discussion of charging a

12   different rate for in-app purchases than the 30

13   percent Apple charged for paid apps?

14       A    Not that I'm aware of.

15       Q    Was there any discussion of 30 percent of

16   in-app purchases reflecting a very material change

17   in the economic model of app development from 30

18   percent of the initial sale to 30 percent of all app

19   revenue in perpetuity?

20       A    No, I never heard any discussions around

21   that.

22       Q    Has the functionality of IAP involved

23   during your time at Apple in any material way?

24       A    It evolved in a variety of ways, including

25   things like extra protections in place so people

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 326

1    STATE OF CALIFORNIA    )

2    COUNTY OF LOS ANGELES )    ss.

3

4        I, Reagan Evans, RPR, RMR, CRR, CCRR, CLR, CRC,

5    CSR No. 8176, in and for the State of California, do

6    hereby certify:

7        That prior to being examined, the witness named

8    in the foregoing deposition was by me duly sworn to

9    testify to the truth, the whole truth, and nothing

10   but the truth;

11       That said remote deposition was taken down by me

12   in shorthand at the time and place therein named and

13   thereafter reduced to typewriting under my

14   direction, and the same is a true, correct, and

15   complete transcript of said proceedings;

16       That if the foregoing pertains to the original

17   transcript of a deposition in a federal case, before

18   completion of the proceedings, review of the

19   transcript { } was { } was not required.

20       I further certify that I am not interested in

21   the event of the action.

22       Witness my hand this 13th day of January, 2021.

23

24                                _____

                                  Certified Shorthand Reporter

25                                for the State of California

# EXHIBIT 6 SUBMITTED UNDER SEAL

**Subject:** Re: App Store analysis

**From:** Phil Schiller ████████████

**Received(Date):** Wed, 09 Sep 2020 19:35:59 -0700

**Cc:** Eddy Cue ████████████, Matt Fischer ████████████ ,Eric Gray ████████

**To:** Carson Oliver ████████████>, Doug Vetter ████████████

**Date:** Wed, 09 Sep 2020 19:35:59 -0700

Privileged and Confidential

Thank you

This is very helpful

On Sep 9, 2020, at 7:04 PM, Carson Oliver ████████████ wrote:



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_09689924



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_09689927



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_09689929



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_09689935



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_09689937



On Aug 18, 2020, at 3:53 PM, Philip Schiller ███████████ wrot

Privileged and Confidential
Attorney Work Product

How is the analysis going on the App Store idea that was suggested?
When do we think we can see the results of what it means based on 2019

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_09689938

# EXHIBIT 10
# SUBMITTED
# UNDER SEAL

Page 1

```
 1               UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                     OAKLAND DIVISION
 4   IN RE APPLE iPHONE ANTITRUST  )
     LITIGATION                    )
 5                                 )
                                   )
 6                                 )
     DONALD R. CAMERON, et al.,    )
 7                                 )
              Plaintiffs,          )
 8                                 )
          v.                       ) Case No.
 9                                 ) 4:11-cv- 06715-YGR
     APPLE, INC.,                  )
10                                 )
              Defendant.           )
11                                 )
                                   )
12                                 )
     Plaintiff, Counter-defendant, )
13                                 )
          v.                       )
14                                 )
     APPLE, INC.,                  )
15                                 )
     Defendant, Counterclaimant.   )
16                                 )
17
                   *** HIGHLY CONFIDENTIAL***
18
                   *** ATTORNEYS' EYES ONLY ***
19
20                 REMOTE VIDEO RECORDED
21             VIDEOCONFERENCE DEPOSITION OF
22                       ERIC GRAY
23
     DATE TAKEN:  FEBRUARY 12, 2021
24   REPORTED BY:  RENEE HARRIS, CSR, CCR, RPR
     JOB NO. 4453978
25   PAGES:  1 - 236
```

Page 212

1   markets that you wanted to include in the group of

2   emerging markets?

3       A.   It was long enough ago that -- that I'm

4   certain I'm missing steps.

5           But -- but at a minimum, we would have

6   talked to the international teams, to the extent

7   we had teams in those locations.  We at least had

8   teams responsible for those locations, both in

9   business management and developer relations.

10          We would have looked at the relative

11  spending per kind of household spending, GDP type

12  of metrics.

13          Those two I recall.

14      Q.   Okay.  Price elasticity, was that one of

15  the things you look at when picking various

16  countries?

17          MR. SRINIVASAN:  Objection to form.

18          THE WITNESS:  My recollection was we

19      discussed elasticity, but that was a concern,

20      not -- not a reason to do it.

21   BY MR. GUINEY:

22      Q.   Okay.  Are you familiar with the term

23  "magic price points"?

24      A.   As it relates to Apple, yes.

25      Q.   More specifically, as it relates to Apple

Page 213

1   and the App Store?
2        A.   Yes, it's an internal term that we use to
3   refer to our rounding conventions.
4        Q.   What do you mean when you say your
5   "rounding conventions"?
6        A.   In the United States, 99 cents is our
7   rounding convention.  So, therefore, magic price
8   points are price points that end in 99 cents.
9        Q.   And why are they called "magic price
10  points"?  Is there something magic about them?
11       A.   I don't know who decided to call them
12  that.  There is nothing -- my interpret of
13  "magic," there is nothing magical, as defined by
14  Webster's, about them.
15       Q.   Understood.
16            Does it refer to only prices that end in
17  99 cents, or is that equally true with respect to
18  prices that end in, let's say, 49 cents?
19            MR. SRINIVASAN:  Objection.  Form.
20            You can answer.
21            THE WITNESS:  Yeah, I -- I think I'm not
22        understanding your question.
23   BY MR. GUINEY:
24        Q.   Sorry.  Does the term "magic price
25   points" only refer to price points that end in 99?

Page 214

1      A.   In the context of the U.S. App Store,
2   there were -- the only magic price points end in
3   99.
4      Q.   Okay.  At some point, do you recall that
5   Apple changed its book pricing options and added
6   49 cent price points as price options?  Do you
7   recall that?
8           MR. SRINIVASAN:  Objection.  Form.
9           THE WITNESS:  I don't recall if that was
10      a change or at the start of the iBooks Store.
11      We started with price points at 49 and 99.  I
12      don't recall which.
13   BY MR. GUINEY:
14      Q.   Okay.  Were you -- at any time, do you
15   recall if you were involved in iBook pricing
16   options?
17      A.   Yes, I was.
18           MR. GUINEY:  Okay.  Kate, let's mark the
19      next exhibit.  This is 4120093.
20           MS. McGUIRE:  Loading that now.
21           (Exhibit 537 was received and marked
22           for identification on this date and is
23           attached hereto.)
24   BY MR. GUINEY:
25      Q.   Mr. Gray, I hope -- I hope this is both a

Page 236

1          I, RENEE HARRIS, a Certified Shorthand

2    Reporter of the State of California, a Certified

3    Court Reporter for the State of New Jersey, and a

4    Registered Professional Reporter, do hereby

5    certify:

6          That prior to being examined, the witness

7    named in the foregoing deposition was by me duly

8    sworn to testify to tell the truth, the whole

9    truth, and nothing but the truth;

10     That the said deposition was by me recorded

11   stenographically;

12     And the foregoing pages constitute a full,

13   true, complete and correct record of the testimony

14   given by the said witness;

15          That I am a disinterested person, not

16   being in any way interested in the outcome of said

17   action, or connected with, nor related to any of

18   the parties in said action, or to their respective

19   counsel, in any manner whatsoever.

20

21

22   _____

23   Renee Harris, CSR, CCR, RPR

     CA CSR No. 14168,

24   NJ CRR No. 30XI00241200; RPR

25

# EXHIBIT 11
# SUBMITTED
# UNDER SEAL

THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
  jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

VERONICA S. LEWIS (Texas Bar No. 24000092;
appearance *pro hac vice*)
  vlewis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile:  214.571.2900

CYNTHIA E. RICHMAN (D.C. Bar No.
492089; *pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

ETHAN D. DETTMER, SBN 196046
  edettmer@gibsondunn.com
ELI M. LAZARUS, SBN 284082
  elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | CASE NO. 4:11-cv-06714-YGR<br><br>**DEFENDANT APPLE INC.'S RESPONSES AND OBJECTIONS TO DEVELOPER PLAINTIFFS' FIRST SET OF INTERROGATORIES**<br><br>Hon. Yvonne Gonzales Rogers |

PROPOUNDING PARTY:    Developer Plaintiffs Donald R. Cameron, et al.

RESPONDING PARTY:    Defendant Apple Inc.

SET NO.:        One

Interrogatories, Apple will construe these terms in accordance with the requirements of the Federal Rules, the Local Rules, and all applicable rules and court orders.

2.     Apple objects to the definitions of "YOU" and "YOUR" on the grounds that they are vague, ambiguous, overly broad, and unduly burdensome to the extent the terms are meant to include "the responding DEFENDANT, its predecessors, successors, subsidiaries, departments, divisions, joint ventures and/or affiliates, including, without limitation, any organization or entity which the responding DEFENDANT manages or controls, together with all present and former directors, officers, employees, agents, representatives, or any persons acting or purporting to act on behalf of the responding DEFENDANT," to the extent that Plaintiffs purport to use these terms to impose obligations that go beyond the requirements of the Federal Rules and Local Rules.  Apple further objects to the definitions of "YOU" and "YOUR" to the extent they purport to demand information or documents subject to the attorney-client privilege, the work product doctrine, or any other privilege or protection.  In responding to the Interrogatories, Apple will construe these terms to mean Apple Inc., and limit its responses accordingly.

### OBJECTIONS TO INSTRUCTIONS

1.     Apple objects to Instruction No. 6, which states that "Answers or information responsive to these interrogatories should not be withheld on the basis that they or it (purportedly) RELATE(S) TO foreign storefronts of YOUR App Store," to the extent this Instruction suggests the Interrogatories seek documents and information related to consumers located outside of the United States or their transactions, or transactions, conduct, or activity taking place outside of the United States or involving trade or commerce with foreign nations, because such an Instruction it is overly broad, unduly burdensome, not relevant to the claims or defenses in this action, or otherwise outside the proper scope of discovery in accordance with the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a.

### SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1:

YOU admit in YOUR ANSWER that YOU "charge[] developers a 30% commission on paid applications, specific in-app purchases, and initial-year subscriptions sold through the App Store.  The commission on subscriptions drops to 15% after one year." ANSWER ¶ 3.  Other than the "commission

on subscriptions drops to 15% after one year" exception already admitted in YOUR ANSWER, please

describe every instance where YOU did not charge a U.S. iOS developer a 30% commission, including

after any discounts, promotions, or rebates, with a description that should include but not be limited to

when that instance applied and to which developer entity or entities it applied.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 1:**

Apple restates and incorporates its Preliminary Statement, General Objections, Objections to

Definitions, and Objections to Instructions as though fully set forth in this Response.  Apple further

objects to this Interrogatory on the following grounds:

Apple objects to this Interrogatory because it is overbroad, unduly burdensome, and imposes a

burden on Apple disproportionate to the needs of this case, including because it requests a description

of "every instance where YOU did not charge a U.S. iOS developer a 30% commission, including after

any discounts, promotions, or rebates, with a description that should include but not be limited to when

that instance applied and to which developer entity or entities it applied."  Apple further objects to this

Interrogatory because it is impermissibly vague and ambiguous, including as to the undefined terms

"exception," "discounts," "promotions," and "rebates," which prevents Apple from responding in any

meaningful way and without accepting Plaintiffs' improper characterizations.  Apple further objects to

this Interrogatory on the grounds that it mischaracterizes Apple's Answer, including by suggesting that

Apple makes "admi[ssions]" in its Answer regarding  purported "exception[s]" to commissions charged

to "U.S. iOS developer[s]."   Apple further objects to this Interrogatory because it is compound as it

contains numerous discrete subparts that introduce separate and distinct lines of inquiry that are not

logically and factually subsumed within and necessarily related to the primary question.  *See Hasan v.*

*Johnson*, 2012 WL 569370, at *5 (E.D. Cal. Feb. 21, 2012); *Superior Commc'ns v. Earhugger, Inc.*,

257 F.R.D. 215, 217–18 (C.D. Cal. 2009).

Subject to, limited by, and without waiving its objections, Apple responds as follows:

Pursuant to Rule 33(d), Apple refers Plaintiffs to APL_APPSTORE_10334265, Apple's

production of data reflecting all transactions made through the App Store's U.S. storefront on

iPhones, iPads, and iPod Touch devices from the inception of the App Store through September 30,

8

DEFENDANT APPLE INC.'S RESPONSES AND OBJECTIONS TO
DEVELOPER PLAINTIFFS' FIRST SET OF INTERROGATORIES – CASE NO. 4:11-cv-06714-YGR

2019, including billing and royalty amounts that reflect the commission rates charged on each such transaction.

For over 80% of apps available on the App Store, Apple provides its services to developers at no cost beyond a nominal $99 annual fee for membership in the Apple Developer Program. Therefore, if a developer chooses not to charge for its app, or if it monetizes its app through advertising or the sale of merchandise or services outside of the App Store, that developer pays Apple nothing other than the nominal annual fee. Apple charges developers a 30% commission on paid applications, specific in-app purchases, and initial-year subscriptions sold through the App Store, although the commission on subscriptions drops to 15% after one year.

Apple also has several programs through which participating developers can qualify for reduced commissions. Apple has offered a reduced 15% commission to premium subscription video entertainment providers through the Video Partner Program and its precursor agreements. Additional information regarding Apple's Video Partner Program is available at https://developer.apple.com/programs/video-partner/. Apple also recently launched the App Store Small Business Program, through which existing developers who made up to 1 million USD in proceeds in 2020 for all their apps, as well as developers new to the App Store, can qualify for a reduced commission rate of 15% on paid apps and in-app purchases. Additional information regarding Apple's Small Business Program is available at https://developer.apple.com/app-store/small-business-program/.

**INTERROGATORY NO. 2:**

Please state Apple's revenue and costs (both direct and allocated) from Apple Search Ads[1] for each Fiscal Month from FY2008 to FY2020 (OR for each Fiscal Quarter if Fiscal Month information is unavailable, or for each Fiscal Year if Fiscal Quarter information is also unavailable).

---

[1]  *See* https://searchads.apple.com/ (last accessed Dec. 24, 2020).

Wright & Miller, Fed. Prac. & Proc. § 2174 (3d ed.) (emphasis added); *see also* Fed. R. Civ. P. 33(b)(1)(B).    Parties are "not required to conduct extensive research in order to answer an interrogatory," *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013), and "interrogatories that require a party to undertake extensive investigations, research, or compilations or evaluations of data for the opposing party"—as this Interrogatory undoubtedly does—"are in many circumstances," as here, "improper."  Wright & Miller, *supra*, § 2174.  Apple further objects to this Interrogatory because it is impermissibly vague and ambiguous, including as to the following undefined terms or phrases: "weighted average cost of capital (WACC)."

Subject to, limited by, and without waiving its objections, Apple responds as follows:

Apple does not, in the ordinary course of its business, maintain data related to the "weighted average cost of capital (WACC) RELATING TO [the] App Store."

DATED: February 4, 2021                    GIBSON, DUNN & CRUTCHER LLP

By:  _____*/s/ Cynthia E. Richman*_____
Cynthia E. Richman

*Attorney for Defendant Apple Inc.*

1

## CERTIFICATE OF SERVICE

2    I, Betty X. Yang, hereby certify that I am a citizen of the United States, over the age of eighteen,

3   and not a party to this action.  I hereby certify that on February 4, 2021, I delivered the foregoing

4   **DEFENDANT APPLE INC.'S RESPONSES AND OBJECTIONS TO DEVELOPER**

5   **PLAINTIFFS' FIRST SET OF INTERROGATORIES**, via electronic mail, pursuant to an

6   agreement among the parties for electronic service, to the following counsel in this action and the

7   related actions:

8

9      STEVE W. BERMAN
       steve@hbsslaw.com

10     ROBERT F. LOPEZ
       robl@hbsslaw.com

11     SHANA E. SCARLETT
       shanas@hbsslaw.com

12     BENJAMIN J. SIEGEL
       bens@hbsslaw.com

13     **HAGENS BERMAN SOBOL SHAPIRO
       LLP**

14
       *Interim Class Counsel for the Developer
15     Plaintiffs*

16     MARK C. RIFKIN
       rifkin@whafh.com

17     RACHELE R. BYRD
       byrd@whafh.com

18     MATTHEW M. GUINEY
       guiney@whafh.com

19     BRITTANY N. DEJONG
       dejong@whafh.com

20     **WOLF HALDENSTEIN ADLER
       FREEMAN & HERZ LLP**

21
       *Interim Class Counsel for the Consumer
22     Plaintiffs*

PAUL R. RIEHLE
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE &
REATH LLP**

CHRISTINE A. VARNEY
cvarney@cravath.com
KATHERINE B. FORREST
kforrest@cravarth.com
GARY A. BORNSTEIN
gbornstein@cravarth.com
YONATAN EVEN
yeven@cravath.com
LAUREN A. MOSKOWITZ
lmoskowitz@cravath.com
M. BRENT BYARS
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**

*Counsel to Epic Games, Inc.*

23    I declare under penalty of perjury under the laws of the United States of America that the

24   foregoing is true and correct.  Executed this 4th day of February, 2021, at San Francisco, California.

25                                                        /s/ *Betty X. Yang*

26                                                        _____
                                                         Betty X. Yang

27

28

1    I, Mark Rollins, declare:

2    I am employed as a Finance Manager at Apple Inc. ("Apple").  I am authorized to make this

3    verification on Apple's behalf.  I am familiar with the contents of Defendant Apple Inc.'s Responses

4    and Objections to Developer Plaintiffs' First Set of Interrogatories, specifically Apple's Responses to

5    Interrogatory Nos. 4 and 10.  I further declare that the facts set forth in Apple's Responses to

6    Interrogatory Nos. 4 and 10 are true and correct to the best of my information and belief, based on my

7    review of documents, records, and information possessed by or known to Apple and its officers or

8    employees, and on that basis I allege them to be true.

9    I declare under penalty of perjury under the laws of the United States and the State of

10    California that the foregoing is true and correct, and that I executed this Verification on January 21,

11    2021 at Santa Clara, California.

12

13

14                                                              Mark Rollins

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5          I, Carson Oliver, declare:

6          I am employed as Director of Business Management for the App Store at Apple Inc.

7    ("Apple").  I am authorized to make this verification on Apple's behalf.  I am familiar with the

8    contents of Defendant Apple Inc.'s Responses and Objections to Developer Plaintiffs' First Set of

9    Interrogatories, specifically Apple's Response to Interrogatory No. 1.  I further declare that the facts

10   set forth in Apple's Response to Interrogatory No. 1 are true and correct to the best of my information

11   and belief, based on my review of documents, records, and information possessed by or known to

12   Apple and its officers or employees, and on that basis I allege them to be true.

13          I declare under penalty of perjury under the laws of the United States and the State of

14   California that the foregoing is true and correct, and that I executed this Verification on February

15   ___3___, 2021 at _____San Francisco_____, California.

16

17                                                        _____

18                                                              Carson Oliver

19

20

21

22

23

24

25

26

27

28

---

EXHIBIT 12
SUBMITTED
UNDER SEAL

PLAINTIFF
U.S. District Court - NDCAL
4:20-cv-05640-YGR-TSH
Epic Games, Inc. v. Apple Inc.
Ex.No. __PX-2385__
Date Entered _____
By _____

| | |
|---|---|
| **Subject:** | Profitability - Follow ups |
| **From:** | "Saori Casey" ███████ |
| **Received(Date):** | Tue, 01 Oct 2019 15:20:05 +0000 |
| **To:** | "Tim Cook" ███████, "Luca Maestri" ███████ |
| **Cc:** | "Ai Ling Loo" ███████,"Kevan Parekh" ███████ "Larry McDevitt" ███████ |
| **Attachment:** | PastedGraphic-10.pdf |
| **Attachment:** | PastedGraphic-11.pdf |
| **Attachment:** | PastedGraphic-8.tiff |
| **Attachment:** | Aug'19 LRF Profitability (Tim 9-25 mtg).pdf |
| **Date:** | Tue, 01 Oct 2019 15:20:05 +0000 |

Hi Tim, Luca,

Please find below the 3 follow-up items from the Profitability meeting.

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████

████████████████████████████████

████████████████████████████████

Any other questions, please let us know.

1)

2)

3)

Full deck from the meeting:

Hi Tim, Luca,

Please find below the 3 follow-up items from the Profitability meeting.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Any other questions, please let us know.

1)

_____

2)

_____

3)

_____

Full deck from the meeting:

_____

PX-2385.2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926408



PX-2385.3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08928409



PX-2385.4

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926410



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# Products & Services Profitability

Based on Aug'19 LRF

Corporate FP&A
September 2019

Apple Confidential — For Internal Use Only

PX-2385.6

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926412

# FY'20 Profitability Summary -Aug'19 LRF



Apple Confidential — Need to Know

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926413

## FY20 Products & Services Summary



Apple Confidential — For Internal Use Only
PX-2385.8   3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
APL-EG_08926414

# FY20 Categories with Negative OM



Apple Confidential — For Internal Use Only

PX-2385.9   4

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926415

## Categories with Negative OM (Trended)



Apple Confidential — For Internal Use Only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926416

## FY20 Product Summary



Apple Confidential — For Internal Use Only

PX-2385.11    6

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926417

## FY20 Services Summary



Apple Confidential — For Internal Use Only

PX-2385.12   7

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926418

## Profitability Summary - Aug'19 LRF



Corporate FP&A

PX-2385.13

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926419

# Operating Margin Change FY20 - Aug'19 LRF



Apple Confidential — Need to Know

PX-2385.14

9

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926420

# FY20 Profitability Metrics - Services-Aug'19 LRF



Corporate FP&/

Apple Confidential — Need to Know

PX-2385.15    10

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926421

## Contribution to Growth (FY20)



Corporate FP&A

Apple Confidential — Need to Know

11

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926422

## Product Profitability



PX-2385.17

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    APL-EG_08926423

## Services Profitability - Existing Services



Apple Confidential — Need to Know
PX-2385.18
13

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
APL-EG_08926424

# Services Profitability - Existing Services



Apple Confidential — Need to Know

PX-2385.19

14

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926425

## Services Profitability - New Services



Apple Confidential — Need to Know

PX-2385.20

15

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08928426

# Retail Profitability



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926427

# Geo Profitability



Apple Confidential — Need to Know

PX-2385.22

17

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

APL-EG_08926428

# Geo Profitability



Corporate FP&I

Apple Confidential — Need to Know

PX-2385.23     18

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926429

# FY'20 Opex Product Allocation



Apple Confidential — Need to Know

PX-2385.24

19

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926430

# FY'20 Opex Channel Allocation



Corporate FP&A

Apple Confidential — Need to Know

PX-2385.25

20

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926431

Appendix

PX-2385.26

21

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926432

# Contribution to Growth



Apple Confidential — Need to Know

PX-2385.27

22

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_08926433

# EXHIBIT 13
# SUBMITTED
# UNDER SEAL


PLAINTIFF
U.S. District Court - NDCAL
4:20-cv-05640-YGR-TSH
Epic Games, Inc. v. Apple Inc.
Ex. No. ___PX-2392___
Date Entered _____
By _____

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



# FY19/20 Profitability

Profitability Benchmarking

09/25/19

APL-EG_10015274

PX-2392.1

# Operating Margin Benchmarking

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_ 10015275

PX-2392.2

Apple Confidential — Need to Know

# Operating Margin Benchmarking

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_ 10015276

PX-2392.3

Corporate FP&A

3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Appendix:

## Operating Margin v Rev Growth Comparison
## P&L Metrics Comparison

APL-EG_10015277

PX-2392.4

4

# Operating Margin Benchmarking

Apple Confidential — Need to Know

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_10015278

PX-2392.5

5

# Operating Margin Benchmarking

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Apple Confidential — Need to Know

APL-EG_1001527 9

PX-2392.6

FY20 P&L Benchmarking

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_ 10015280

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_ 10015281

FY20 P&L Benchmarking

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_ 10015282

PX-2392.9

FY20 P&L Benchmarking

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_ 1001 5283

PX-2392.10

Apple Confidential — Need to Know

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



PX-2392.11

APL-EG_10015284

# EXHIBIT 14
# SUBMITTED
# UNDER SEAL

| | |
|---|---|
| **Subject:** | Services valuation |
| **From:** | "Luca Maestri" ████████████ |
| **Received(Date):** | Tue, 02 Aug 2016 15:08:35 +0000 |
| **To:** | "Tim Cook" ████████████ |
| **Attachment:** | Services Valuation.pdf |
| **Date:** | Tue, 02 Aug 2016 15:08:35 +0000 |

Tim,

As I mentioned briefly the other day, Alliance Bernstein has done some interesting work to model our Services business, and assign value to its different elements based on competitive benchmarks.

We have taken that analytical framework and used our forecast estimates for FY17 to derive a more accurate valuation - - see below.

Depending on multiples, the Services business on a standalone basis could be worth $35-41/share in FY17, an increase of $9-11 over FY16 given expected growth.

As we go through our Plan reviews and allocate resources, it is worth noting the relative size of the various Services lines. For instance, because of its very limited profitability, the music business is not likely to move the needle for us (other than the ecosystem benefits on device sales). On the other hand, the App Store and licensing are the true drivers of value.

Let me know if you want to discuss further.

Luca

APL-EG_05547702

# EXHIBIT 15
# SUBMITTED
# UNDER SEAL



Hi Tim. Hi Luca. We're excited to share our plans for the App Store for the coming year.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187823



We'll start with a review of FY20.
Then we'll walk you through our focus areas for next year.
Then Financials, and end with Resources.

But before we dive into the #s, I wanted to take a moment to recognize the unique and challenging times we've all been living through these past several months.  <CLICK>

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



It has been an extraordinary year, with a pandemic impacting nearly every corner of the globe, and more recently, the protests for racial equality here in the U.S. and around the world. More than ever, the App Store has become a place where people go to find tools and resources to help them better navigate the world around them.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



For COVID-19, we have published more than 100 stories and collections around the world, about everything from how to live, work, and learn from home, to staying mentally and physically fit, how to stay connected with loved ones, and much more.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187826



In June, following the tragic murder of George Floyd, we partnered with Lisa and our PR and Inclusion & Diversity teams to create stories and collections to help customers stand up to racism, learn from history, and we continued to shine a light on the important work of underrepresented Black developers.

For these reasons and much more, I have never been more proud of the work we're doing.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187827



Tim, three years ago with the App Store's major redesign in iOS 11, you challenged us to create a new App Store that could be a dynamic, personalized and engaging destination, and we're more inspired than ever to serve our customers in ways that we believe can truly enrich their lives.

This year has been transformative for our App Store business, and in fact, more people than ever are visiting the store...

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187828



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187829



**Visitors**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187830



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187831

**Transacting Accounts**





HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187833

**Paying Accounts**



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187834



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Billings**



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187836



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187837



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187839



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187840



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

FY20 Review

# Games & subscriptions FY20 forecast



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187842



FY20 Review
# Billings by storefront
FY20 forecast

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187843

FY20 Review

## Payments & Commerce highlights



APL-APPSTORE_10187844

FY20 Review

# International highlights: South Korea



FY20 Review

## International highlights: Saudi Arabia



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187846

**Payments & Commerce highlights**



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187847



Most recently, we had a phenomenal WWDC20, an all-virtual experience where we were able to engage with more developers than ever before.  In fact...

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



...The App Store team had 500 1-1 lab sessions with developers from all around the world, helping them with business and marketing guidance.  The feedback we received was overwhelmingly positive.  We learned a lot at WWDC this year, and we'll walk you through some exciting new plans that we have, based on these learnings, to better serve our developers in FY21.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



In April, we had our biggest expansion in 8 years by adding support for 20 new countries, bringing us to 175 total.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187851



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187852

**FY20 Scorecard**



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187854



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187855



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187856



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187857



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187858



FY21 Focus Areas | Customers | Personalization

**Personalization performance**

APL-APPSTORE_10187859

FY21 Focus Areas | Customers | Personalization

# FY21 Personalization priorities



APL-APPSTORE_10187860



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187861



To grow this momentum, first, we want the App Store to be THE best way to discover great games.

Second, the most popular games in the world support multiplayer and social. We think there's a great opportunity to improve the way our customers play games together with Game Center. <CLICK>

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187863



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187865



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187866



FY21 Focus Areas | Customers | In-App Events

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187867



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187868



FPO

FY21 Focus Areas  |  Customers  |  In-App Events

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187874





HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187875



FY21 Focus Areas | Developers | Build and Distribute

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187876



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187877





HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187879

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187880



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187881



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187882



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187883

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187884



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187885



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187886



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187887



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187888



FY21 Focus Areas | Developers | Developer engagement

## Developer support and programs

APL-APPSTORE_10187889

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187890



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187891



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187892



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187893



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187894



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187895



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187896



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187898

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187899



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187900



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187901

FY21 Focus Areas | Customers | Search

# Search performance

FY20 Q1-Q3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187902

FY21 Focus Areas | Customers | Search

# FY21 Search priorities

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_1018790



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187904



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187905

Growth | Local Payment Expansion

## Local Payment Expansion

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187906



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187907



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187908



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



FY21 Focus Areas | Growth | Marketing

**Value of redownloads**

APL-APPSTORE_10187911



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187912



FY21 Focus Areas  |  Growth  |  Marketing

**Advertising performance**

FY20 projected

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187913



FY21 Focus Areas | Growth | Marketing

APL-APPSTORE_10187914



FY21 Focus Areas | Growth | Marketing

**FY20 results: Email**
(Estimated)



FY21 Focus Areas  |  Growth  |  Marketing

**Email performance**
FY20 projected

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187916



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187917



FY21 Focus Areas | Growth | Marketing

## Driving additional growth

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187918



FY21 Focus Areas | Growth | Marketing

APL-APPSTORE_10187919



FY21 Focus Areas | Growth | Marketing

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187920



FY21 Focus Areas | Growth | Marketing

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Case 4:19-cv-03074-YGR   Document 459-5   Filed 12/20/21   Page 196 of 289



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187922



ANN: Since the beginning the App Store has been a safe & trusted place for customers to discover apps, and we also invest a lot in maintaining the integrity of our marketplace for developers.

Apple is building its muscle in Trust & Safety across services, led by Mike Abbott's team, and we are a big beneficiary of these efforts.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187924





HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187925





APL-APPSTORE_10187926



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187927

**Roadmap priorities options**



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187928



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187930



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187931



Financials |

## App Store quarterly billings

APL-APPSTORE_10187932



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187933



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187934



Financials |

## App Store weekly billings

FY20F    FY19

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187935



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187936



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187937



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187938



==============

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187939

Financials

# App Store billings



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187940

Financials

# App Store billings



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187941



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187942



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187943

Financials
**App Store billings** | US



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187944

Financials

**App Store billings** | China



APL-APPSTORE_10187945



Financials

**App Store billings** | Japan

APL-APPSTORE_10187946



Financials
**App Store billings** | constant currency

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187947



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187948



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187949



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187950



Financials

## Opportunity sizing



Financials
## Opportunity sizing

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187952



Financials
## Opportunity sizing

APL-APPSTORE_10187953



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187954



Financials

## Opportunity sizing

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187955



Opportunity Sizing

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187956





HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187958

Financials | Billings

# Paying Accounts & ABPPU | US



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187959



Financials | Billings

**Paying Accounts & ABPPU | China**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Financials | Billings

## Paying Accounts & ABPPU | Japan



APL-APPSTORE_10187961



Financials | Billings

**3P Subscriptions by Category** | WW

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187962

Financials | Billings

# WW 3P Subscriptions | "Other" Category



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187963



Financials | Billings

## 3P Subscriptions by Category | US

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187964



Financials | Billings

**3P Subscriptions by Category** | China

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187965



Financials | Billings

**3P Subscriptions by Category** | Japan

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187966



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187967

Financials | Billings

**3P Subscriptions** | Mix of Total App Store



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187968



APL-APPSTORE_10187969



Resources

## Total headcount

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187970



Resources
**Total headcount**

APL-APPSTORE_10187971

Resources

## Total headcount



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187973

Resources
**Total headcount**



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Resources

## Total headcount



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187976



Resources

## Total headcount

**Flat resources**





HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187979

Resources

## App Store headcount (Fischer)



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187980



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Resources

## FY21 headcount requests (Bailey)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187982



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Resources

**FY21 headcount requests (Fischer)**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187984



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187985

Resources

# FY21 headcount requests (Abbott)



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187986



Resources

## FY21 headcount requests (Schusser)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187987



APL-APPSTORE_10187988



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187989



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187990

Resources

# FY21 headcount requests (Stauffer)



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187991



Resources
## Total headcount

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187992



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187993



APL-APPSTORE_10187994



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-APPSTORE_10187995

# EXHIBIT 17
# SUBMITTED
# UNDER SEAL

Page 1

1        ** HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY **

2             ** PURSUANT TO PROTECTIVE ORDER **

3               UNITED STATES DISTRICT COURT

4        FOR THE NORTHERN DISTRICT OF CALIFORNIA

5                    OAKLAND DIVISION

6

7     _____

                                      )

8                                     )

      IN RE APPLE iPHONE TRUST        ) CIVIL ACTION NO.

9     LITIGATION                      ) 4:11-cv-06715YGR

                                      )

10    _____)

11

12

13

14               REMOTE PROCEEDINGS OF

15         VIDEOTAPED DEPOSITION OF EDDY CUE

16            MONDAY, FEBRUARY 8, 2021

17

18

19

20

21

22

23    JOB NO. NY 4449723

24    REPORTED BY:  REAGAN EVANS, RPR, RMR, CRR, CCRR,

25               CLR, CRC, CA CSR NO. 8176

Page 215

1    are -- there are different classes of programs that

2    have a different commission structure, but all of

3    those that are like, we do strive to do that.

4    BY MR. HARRINGTON:

5         Q    So with respect to any of the programs that

6    have different commission structures, those programs

7    are open to any developer that fits the criteria for

8    the program; correct?

9              MS. DEARBORN:   Form.

10             THE WITNESS:   Yeah, I believe so.

11   BY MR. HARRINGTON:

12        Q    Apple doesn't make gatekeeping

13   determinations on who can and cannot participate.

14             So if a developer satisfies the criteria

15   for the program, the developer participates; right?

16             MS. DEARBORN:   Form.

17             THE WITNESS:   I think, in general, you can

18   say yes to that.   Yes.

19   BY MR. HARRINGTON:

20        Q    Are there exceptions?

21        A    I don't know.   I, again, at a high level,

22   the answer is yes.   I don't know of a specific -- I

23   don't -- there may be a specific reason a developer

24   doesn't qualify, but, in general, no.   And we try to

25   treat them all the same.

Page 231

1    the App Store.  So it doesn't make sense for us to

2    try to treat them individually different in any way.

3    BY MR. HARRINGTON:

4         Q    Got you.

5              But why would treating developers

6    differently discourage developers from participating

7    in the store?

8              MS. DEARBORN:  Objection to form.

9              THE WITNESS:  Because, in my opinion,

10   nobody likes to be treated worse than somebody else.

11   They like to be treated similarly to others.

12             And so we wanted an App Store that people

13   felt like -- this really started at the very

14   beginning with we wanted a developer who was small

15   and just getting into developing, for example,

16   didn't have a big company, to be able to join the

17   App Store and get all the perks that the App Store

18   had.  It wasn't built just for the big guys.

19             And so we wanted that capability from

20   day 1.  So we always strived to make it so that a

21   small developer was paying the same thing, for

22   example, as a large developer.

23   BY MR. HARRINGTON:

24        Q    Thank you.

25             Let me change topics a bit -- well, it's on

Page 239

1    of this year; correct?

2         A    Of last year.

3         Q    I'm sorry.   2020.

4         A    Counsel had corrected me before on dates.

5    2020.

6         Q    We've gotten that straightened out --

7    sorted out already.   All right.

8              So we've talked about the Apple

9    subscription program, the video partner program, and

10   the small business program.   Are there any other

11   programs offered by Apple that you're aware of that

12   offer developers a commission of anything other than

13   30 percent?

14        A    Other than the ones you just attested to?

15        Q    Other than those, yeah.

16        A    No.   I don't believe I'm aware of anything.

17        Q    Are you aware of any individually

18   negotiated agreements in which an iOS app developer

19   has been offered a commission that is less than

20   30 percent?

21        A    Again, I'm not aware of anything that I can

22   recall.

23        Q    Do you think if such agreements had been

24   reached, you would be aware of them, given your role

25   at Apple?

Page 342

```
1    STATE OF CALIFORNIA    )

2    COUNTY OF LOS ANGELES )    ss.

3

4        I, Reagan Evans, RPR, RMR, CRR, CCRR, CLR, CRC,

5    CSR No. 8176, in and for the State of California, do

6    hereby certify:

7        That prior to being examined, the witness named

8    in the foregoing deposition was by me duly sworn to

9    testify to the truth, the whole truth, and nothing

10   but the truth;

11       That said remote deposition was taken down by me

12   in shorthand at the time and place therein named and

13   thereafter reduced to typewriting under my

14   direction, and the same is a true, correct, and

15   complete transcript of said proceedings;

16       That if the foregoing pertains to the original

17   transcript of a deposition in a federal case, before

18   completion of the proceedings, review of the

19   transcript {XX} was { } was not required.

20       I further certify that I am not interested in

21   the event of the action.

22       Witness my hand this 9th day of February, 2021.

23

24   _____

                        Certified Shorthand Reporter

25                      for the State of California
```

# EXHIBIT 18
# SUBMITTED
# UNDER SEAL

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 1

1        ** HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY **

2                   UNITED STATES DISTRICT COURT

3               FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                        OAKLAND DIVISION

5

6        _____

                                          )

7                                         )

         IN RE APPLE iPHONE TRUST         ) CIVIL ACTION NO.

8        LITIGATION                       ) 4:11-cv-06715YGR

                                          )

9        _____)

10

11

12

13                   REMOTE PROCEEDINGS OF

14          VIDEOTAPED DEPOSITION OF CARSON OLIVER

15                VOLUME I, PAGES 1 - 255

16               TUESDAY, JANUARY 26, 2021

17

18

19

20

21

22

23      JOB NO. NY 4427922

24      REPORTED BY:  REAGAN EVANS, RPR, RMR, CRR, CCRR,

25                    CLR, CRC, CA CSR NO. 8176

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 96

1    the store unless there is a specific designation to

2    a newer set of apps on the store, as is part of the

3    Reader Rule.

4            So my reading of it is that the

5    Multi-Platform Rule applies to all apps that are not

6    affected by the Reader Rule.

7        Q   And so we started talking about these two

8    components, I think, because these are examples of

9    where the commission to Apple is zero even though

10   digital goods are consumed within the app.

11           Is that a fair summary of what these two

12   roles are talking about or as you brought them up?

13           MR. LO:  Compound.

14           THE WITNESS:  Correct.

15           MR. LO:  Vague.

16   BY MS. MOSKOWITZ:

17       Q   All right.

18           So other than subscriptions, the small

19   business program, the video partner program, or

20   content that is not subject to commission under the

21   Reader Rule or the Multi-Platform Rule, are there

22   other deviations from the 30 percent for digital

23   goods on an iPhone app?

24       A   Not to my knowledge, no.

25       Q   To your knowledge, other than

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 97

1  categorically, are there individual apps or

2  individual developers who at any point have

3  negotiated for a deviation from a 30 percent for

4  digital goods or services?

5       A    No, not to my knowledge.

6       Q    Let's talk just about physical goods for a

7  second.

8            So for physical goods, Apple does not

9  receive or charge a commission for physical goods

10 that are purchased through an iPhone app or an iOS

11 app; is that right?

12      A    Can you state that one more time.

13      Q    What is Apple's commission on physical

14 goods or services purchased through an Apple iOS

15 app?

16      A    Apple takes no commission on the sale of

17 physical goods and services through an iOS app.

18      Q    Are there any exceptions to that?

19      A    No, not that I'm aware of.

20      Q    Have you been in discussions with

21 developers over the course of your time in your

22 various roles about seeking a modification to the

23 30 percent commission?

24      A    For the sale of digital goods and services?

25      Q    Yes.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 254

1   STATE OF CALIFORNIA   )

2   COUNTY OF LOS ANGELES )    ss.

3

4       I, Reagan Evans, RPR, RMR, CRR, CCRR, CLR, CRC,

5   CSR No. 8176, in and for the State of California, do

6   hereby certify:

7       That prior to being examined, the witness named

8   in the foregoing deposition was by me duly sworn to

9   testify to the truth, the whole truth, and nothing

10  but the truth;

11      That said remote deposition was taken down by me

12  in shorthand at the time and place therein named and

13  thereafter reduced to typewriting under my

14  direction, and the same is a true, correct, and

15  complete transcript of said proceedings;

16      That if the foregoing pertains to the original

17  transcript of a deposition in a federal case, before

18  completion of the proceedings, review of the

19  transcript {xx} was { } was not required.

20      I further certify that I am not interested in

21  the event of the action.

22      Witness my hand this 27th day of January, 2021.

23

24  _____

    Certified Shorthand Reporter

25  for the State of California

# EXHIBIT 19
# SUBMITTED
# UNDER SEAL

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                   OAKLAND DIVISION
 4   IN RE APPLE iPHONE ANTITRUST  )
     LITIGATION                    )
 5                                 )
                                   )
 6                                 )
     DONALD R. CAMERON, et al.,    )
 7                                 )
              Plaintiffs,          )
 8                                 )
          v.                       ) Case No.
 9                                 ) 4:11-cv- 06715-YGR
     APPLE, INC.,                  )
10                                 )
              Defendant.           )
11                                 )
                                   )
12                                 )
     Plaintiff, Counter-defendant, )
13                                 )
          v.                       )
14                                 )
     APPLE, INC.,                  )
15                                 )
     Defendant, Counterclaimant.   )
16                                 )
17
                 *** HIGHLY CONFIDENTIAL***
18
                 *** ATTORNEYS' EYES ONLY ***
19
20              REMOTE VIDEO RECORDED
21           VIDEOCONFERENCE DEPOSITION OF
22                  SHAAN PRUDEN
23
     DATE TAKEN:  FEBRUARY 11, 2021
24   REPORTED BY:  RENEE HARRIS, CSR, CCR, RPR
     JOB NO. 4458388
25   PAGES:  1 - 305
```

```
                                          Page 92
```

1   anything?

2        A.   They have other -- they have other ways

3   to get support.   Like Apple Care, we talked about,

4   or the developer forums where they support each

5   other and our engineers answer questions there, as

6   well.

7        Q.   As a general matter, is it your opinion

8   that Apple provides the same level and quality of

9   distribution services to all app developers?

10            MR. SRINIVASAN:   Objection.   Form.

11            THE WITNESS:   Yes, it's our goal to treat

12       all developers the same.

13            MR. LONDON:   I'm going ask that Tab A be

14       put up on the screen.   Tab A was previously

15       marked as Plaintiff's Exhibit 51.

16            (Exhibit 51 previously marked

17            was introduced hereto.)

18   BY MR. LONDON:

19        Q.   Let me know when you've had a chance to

20   review that document.

21        A.   I don't see an additional document yet.

22            MS. AVERY:   It's loading now.

23            THE WITNESS:   Thank you.   There we go.

24       Is it 0051?

25            MS. AVERY:   Yes.

Page 305

1          I, RENEE HARRIS, a Certified Shorthand

2    Reporter of the State of California, a Certified

3    Court Reporter for the State of New Jersey, and a

4    Registered Professional Reporter, do hereby

5    certify:

6          That prior to being examined, the witness

7    named in the foregoing deposition was by me duly

8    sworn to testify to tell the truth, the whole

9    truth, and nothing but the truth;

10     That the said deposition was by me recorded

11   stenographically;

12     And the foregoing pages constitute a full,

13   true, complete and correct record of the testimony

14   given by the said witness;

15          That I am a disinterested person, not

16   being in any way interested in the outcome of said

17   action, or connected with, nor related to any of

18   the parties in said action, or to their respective

19   counsel, in any manner whatsoever.

20

21

22   _____

23   Renee Harris, CSR, CCR, RPR

     CA CSR No. 14168,

24   NJ CRR No. 30XI00241200; RPR

25

# EXHIBIT 20 SUBMITTED UNDER SEAL

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC., | Case No. 4:20-CV-05640-YGR |
| Plaintiff, | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| vs. | |
| APPLE INC., | |
| Defendant. | |

**REBUTTAL EXPERT REPORT OF RICHARD SCHMALENSEE, PH.D.**

**March 15, 2021**

this requirement.[491]  Clearly, if Apple truly had monopoly power as Professor Evans claims, Apple would have had no reason to make that exception.

182. Given that different types of developers and apps are subject to different commission rates, Professor Evans appears to suggest that this shows that Apple does not need a 30 percent commission rate to be profitable.[492]  This suggestion seems unrelated to any of the allegations in Epic's complaint.  Moreover, as an economic matter, it is unclear why Professor Evans focuses on only one element of Apple's pricing policy.  Like any profitable business, Apple could, of course, alter its pricing structure, including iPhone, iPad, and App Store prices, in a variety of ways.  If it were forced to change any element of that structure, it would likely find it optimal to change other elements in response.  The fact that Apple has chosen to adopt a relatively complicated pricing structure, which involves different commission rates for different sorts of App Store and in-app transactions, proves literally nothing.

183. Lastly, Professor Evans notes that Apple generally does not grant discounts to large developers, and he contends that this is evidence of market power.[493]  This is a curious argument: granting bulk discounts to large buyers is second-degree price discrimination, by definition an exercise of market power.[494]  Moreover, bulk discounts would advantage large developers in competition with their smaller rivals.  Accordingly, not granting bulk discounts can hardly be construed as demonstrating the existence of important market power.  Professor Evans goes on to argue that large developers have sometimes been able to force "concessions" from Apple.[495]  He neglects to mention that all of the "concessions" he discusses were made available to all similarly situated developers or, in the case of the

---

[491]  Evans Opening Report, at ¶¶ 768 and 771.

[492]  Evans Opening Report, at ¶¶ 597.

[493]  Evans Opening Report, at ¶ 426.

[494]  Varian, Hal R., *Microeconomic Analysis*, W. W. Norton & Company, 1992, Third Edition, at p. 242 ("Second-degree price discrimination occurs when prices differ depending on the number of units of the good bought, but not across consumers."); Mankiw, Gregory N., *Principles of Economics*, Cengage Learning, 2011, Sixth Edition, at p. 314 ("For a firm to price discriminate, it must have some market power.").

[495]  Evans Opening Report, at ¶¶ 427-430.

Small Business Program, only to *small* developers.  Apple has indeed listened to the largest developers, but it has not given them special deals.

### b)   Implications for Assessing Structural Evidence

184. Market share calculations can also provide insight regarding market power.  Once a market is defined as described in **Section IV.D.1**, and once a suitable measure of output is available, one can calculate the market shares of market participants.

185. Just as summarizing the pricing policy of a two-sided transaction platform poses challenges, the difficulty of producing a summary measure of output poses challenges for the calculation of market shares.  Often it is prudent to calculate market share using different metrics to provide a careful assessment of the structural evidence of market power.  One could theoretically use the number of transactions as a metric to measure shares, which would have the benefit of capturing free downloads.  But doing so has a number of drawbacks.  First, some apps and in-app purchases are more valuable than others.  Second, in-app purchases of digital content can be made in varying increments.  As an illustration, if one user were to purchase 5,000 V-Bucks in five 1,000 V-Buck increments on iOS, while another user were to purchase the same total amount in a single purchase on the Xbox, market shares using number of transactions based on these purchases alone would incorrectly inflate iOS's share of V-Bucks purchases.  Third, I understand that data on the number of transactions is not available for all market participants.

186. Some economists would, in any event, be inclined to use the dollar value of transactions facilitated by competing platforms, as was done in Amex,[496] but this approach is not without drawbacks either if many products sold through the platform are sold below marginal cost (or are free).  This is the case of the App Store, where 84 percent of apps

---

[496]   *See* Decision, *United States of America, et al. v. American Express et al.*, No. 10-CV-4496, United States District Court for the Eastern District of New York, February 19, 2015, available at https://www.justice.gov/file/485746/download, at p. 67 ("Today, American Express is the second largest GPCC card network when measured by charge volume. As of 2013, Amex accounted for 26.4% of general purpose credit and charge card purchase volume in the United States.").  *See also* Opinion, *Ohio et al. v. American Express Co. et al.*, No. 16-1454, Supreme Court of the United States, June 25, 2018, available at https://www.supremecourt.gov/opinions/17pdf/16-1454_5h26.pdf, at p. 13 ("Tellingly, credit cards determine their market share by measuring the volume of transactions they have sold.").

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Respectfully submitted,

Richard Schmalensee, Ph.D.                    March 15, 2021

                                              Date