Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
Theodore Wojcik (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com
tedw@hbsslaw.com

Shana E. Scarlett (SBN 217895)
Benjamin J. Siegel (SBN 256260)
Ben M. Harrington (SBN 313877)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com
bens@hbsslaw.com
benh@hbsslaw.com

*Interim Lead Class Counsel*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DONALD R. CAMERON, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>APPLE INC.,<br><br>                    Defendant. | Case No. 4:19-cv-03074-YGR<br><br>**DEVELOPER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND RESPONSE TO OBJECTORS**<br><br>Date:     June 7, 2022<br>Time:     2:00 p.m.<br>Judge:    Hon. Yvonne Gonzalez Rogers<br>Location: Courtroom 1- 4th Floor |

1

## NOTICE OF MOTION AND MOTION

2       PLEASE TAKE NOTICE that on June 7, 2022, at 2:00 p.m. or as soon thereafter as the

3   matter may be heard by the Honorable Yvonne Gonzalez Rogers of the United States District Court

4   for the Northern District of California, located in Courtroom 1, at 1301 Clay Street, Oakland, CA

5   94612, Developer Plaintiffs will and hereby do move the Court, pursuant to Rule 23 of the Federal

6   Rules of Civil Procedure, for an order:

7           (1)     Granting final approval of the proposed class action settlement with Apple Inc.; and

8           (2)     Certifying the proposed Settlement Class.

9       This motion is based on this notice of motion and motion, the accompanying memorandum of

10  points and authorities, the declarations in support of the motion, argument by counsel at the hearing

11  before this Court, such oral and documentary evidence as may be presented at the hearing of this

12  motion, and all papers and records on file in this matter.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

<u>Page</u>

I.      PRELIMINARY STATEMENT ............................................................................1

II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .................................2

III.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 .......................................4

IV.     THE APPROVED NOTICE PROGRAM WAS ADEQUATE AND SATISFIED DUE
        PROCESS........................................................................................................4

        A.      The Robust Notice Program Implemented by the Administrator Satisfies Rule 23....5

        B.      The Results of the Ongoing Claims Process Further Supports That Settlement Class
                Members Have Been Provided With Adequate Notice ................................................9

V.      THE OBJECTIONS ARE WITHOUT MERIT .................................................................11

        A.      Apple's Critique of Plaintiffs' Fee Request is Without Merit.................................11

        B.      Mr. Wytyshyn's Objection Provides No Basis to Deny Final Approval ..................16

VI.     CONCLUSION ...............................................................................................17

**TABLE OF AUTHORITIES**

Page(s)

FEDERAL CASES

*Amin v Mercedes Benz USA, LLC*,
    2020 WL 5510730 (N.D. Ga. Sept. 11, 2020) ........................................................... 10

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) .................................................................. 8, 9, 10

*In re BioScrip, Inc. Sec. Litig.*,
    273 F. Supp. 3d 474 (S.D.N.Y. 2017) ........................................................................ 15

*Ching v. Siemens Indus., Inc.*,
    2014 WL 2926210 (N.D. Cal. June 27, 2014) .......................................................... 14

*Churchill Village LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................................ 2, 3

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................................... 2

*de Mira v. Heartland Emp't Serv., LLC*,
    2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) ......................................................... 12

*In re Domestic Airline Travel Antitrust Litig.*,
    322 F. Supp. 3d 64 (D.D.C. 2018) .............................................................................. 8

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ................................................................................ 15

*Hamilton v. SunTrust Mortg. Inc.*,
    2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) ........................................................... 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................... 2, 4

*Keil v. Lopez*,
    862 F.3d 685 (8th Cir. 2017) ..................................................................................... 9

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................... 2, 3

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 2008) .................................................................................. 16

*Moore v. Verizon Commc'n Inc.*,
    2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ........................................................... 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)................................................................3

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
  2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ...........................................14

*Norcia v. Samsung Telecomms. Am., LLC*,
  2021 WL 3053018 (N.D. Cal. July 20, 2021) ............................................9

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)...............................................2, 9, 12, 13

*Perdue v. Kenny A. ex. Rel. Winn*,
  559 U.S. 542 (2010) ................................................................................15

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007)...................................................10

*Perez v. Rash Curtis & Assocs*,
  2020 WL 1904533 (N.D. Cal. Apr. 17, 2020)..........................................15

*Pollard v. Remington Arms Co., LLC*,
  896 F.3d 900 (8th Cir. 2018) ..................................................................10

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .............................................................12, 13

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) .....................................................................9

*In re TD Ameritrade Account Holder Litig.*,
  2011 WL 4079226 (N.D. Cal. Sept. 13, 2011).........................................16

*Taylor v. Shutterfly, Inc.*,
  2021 WL 5810294 (N.D. Cal. Dec. 7 2021) .............................................9

*Touhey v. United States*,
  2011 WL 3179036 (C.D. Cal. July 25, 2011) ...........................................9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod.
  Liab. Litig.*,
  2013 WL 12327929 (C.D. Cal. July 24, 2013) ........................................12

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)......................................................12, 13, 15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994)....................................................................14

*Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*,
   758 F.2d 86 (3d Cir. 1985) ...................................................................................................10

**FEDERAL RULES**

Fed. R. Civ. P. 23 ...................................................................................................*passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  PRELIMINARY STATEMENT

In November 2021, this Court preliminarily approved the settlement reached with Apple Inc.[1] ECF No. 453. The Court designated Donald Cameron and Pure Sweat Basketball, Inc. as Class Representatives for the Settlement Class, and designated Hagens Berman Sobol Shapiro LLP as Class Counsel for the Settlement Class. *Id*. The Court also approved the form and content of the proposed notice forms, which have now been provided to members of the Settlement Class as directed. Plaintiffs respectfully request that the Court now grant final approval to the settlement with Apple because it secures an outstanding recovery for the Settlement Class: a $100 million non-reversionary cash fund and valuable structural relief that will enable developers to better create, distribute, and monetize their apps. As part of the structural relief, Apple agreed to relax its anti-steering rules, acknowledged that this litigation was a driver behind its Small Business Program (SBP), and agreed to maintain a commission rate of no greater than 15% for U.S. developers who are enrolled participants in the SBP, pursuant to the terms and conditions of the SBP and subject to program participation requirements, for at least another three years, among other reforms.

The events since preliminary approval have only confirmed that the settlement is an excellent result. The parties have implemented a notice program that provided direct notice to class members by email, postcard, and telephone. In addition to this extensive direct notice effort, the Settlement Administrator, Angeion, engaged in a robust publication notice campaign that included targeted advertising on Facebook, Instagram, and LinkedIn. Thus far, Angeion has received 8,162 claims for 6,761 unique eligible application developer accounts. The administrator has also sent reminder notices to potential class members, twice by email and once by postcard, to encourage claim filing through the deadline of May 20, 2022. The reaction to the settlement has been overwhelmingly positive, with only *one* objection and *thirteen* opt-out requests. The sole objection does not impugn the settlement—it suggests additional reforms that Apple could make, but it does not criticize the significant monetary and structural relief obtained by the settlement. Apple also has submitted a

---

[1] All defined terms have the same meaning as in Developer Plaintiffs' Motion for Preliminary Approval (ECF No. 396, "Preliminary Approval Motion") and the Court's Order granting preliminary approval (ECF No. 453, "Preliminary Approval Order") unless otherwise noted.

response to Plaintiffs' Fee Motion, which raises only misguided criticisms of Class Counsel's reasonable fee request.

Developer Plaintiffs respectfully request that the Court certify the proposed Settlement Class, grant final approval to the settlement, and overrule the lone objection.

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The law favors the settlement of class action lawsuits. *See, e.g., Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).[2] And "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [s]he is exposed to the litigants, and their strategies, positions and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

To grant final approval, Rule 23(e) requires the district court to determine whether the proposed settlement is "fair, reasonable, and adequate." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). Plaintiffs' Preliminary Approval Motion, which this Court granted (ECF No. 453), addressed the traditional factors courts consider in making this determination, the Rule 23(e)(2) factors added in 2018, and the factors listed in the Northern District of California's Procedural Guidance for Class Action Settlements. Because the relevant facts have largely not changed since the Preliminary Approval Motion, Plaintiffs will not burden the Court with a repetitive discussion, and respectfully refer to the Court to that pleading. *See* ECF No. 396 at 11-23. This submission instead addresses the execution of the notice plan and the only factor that could not be assessed at preliminary approval—the reaction of the class. It also provides additional information about the annual transparency report, one aspect of the structural relief provided by the settlement.

In approving class action settlements, courts often gauge the reaction of the class by looking at the number of objections and opt-outs as compared to the overall size of the class. *See, e.g., In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."); *see*

---

[2] *See also Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).

1    *also Churchill Village*, 361 F.3d at 577 (affirming settlement where 45 of approximately 90,000

2    class members objected).

3            Here, the class list compiled by the settlement administrator includes 67,440 application

4    developer accounts associated with 62,237 class member names and emails. *See* Declaration of

5    Steven Platt of Angeion Group Regarding Notice Dissemination and Administration ("Platt Decl.")

6    ¶ 8, concurrently submitted herewith. After an extensive notice campaign (*see infra*, Part IV), only

7    ***thirteen*** class members have opted out and just ***one*** class member objected. *See id.*, ¶¶ 42-43. As

8    discussed in Part VI below, the one class member objection is from Steven Wytyshyn. Mr. Wytyshyn

9    provides criticisms of the App Store and discusses changes that he would like to see, but he does not

10   assert that the considerable monetary relief and structural changes obtained by the settlement are not

11   valuable, or that the settlement is not fair, reasonable, and adequate. The lack of objection to the

12   settlement supports its approval. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

13   523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action

14   settlement raises a strong presumption that the terms of a proposed class settlement action are

15   favorable to the class members."); *see also In re LinkedIn User Privacy Litig.*, 309 F.R.D. at 589,

16   *supra*.

17           At the preliminary approval hearing, this Court directed the parties to develop, before final

18   approval, further details about the content of the annual transparency report that is part of the

19   structural relief obtained by the settlement. *See* Hrg. Tr., *Cameron v. Apple Inc.*, Case No. 19-cv-

20   03074-YGR (N.D. Cal.), Nov. 2, 2021, at 6:20-7:10; *see also* ECF No. 453 at 5 (in preliminary

21   approval order, discussing transparency report described in § 5.1.6 of Settlement Agreement as one

22   of the "structural benefits [that] are valuable to the settlement class"). Apple has shared with

23   Plaintiffs that the transparency report will include at least the following metrics:

24           • **With regard to apps**—the number of app submissions reviewed, the number of apps

25               rejected (with criteria specified such as performance, legal, design, business, safety, or

26               other), and the number of apps removed from the App Store.

27           • **With regard to developers**—the number of developer accounts deactivated (i.e.,

28               terminated).

- **With regard to customers**—the number of customer accounts deactivated, the dollar value of fraudulent transactions halted, the number of visitors to the App Store per week on a global basis, the number of downloads and redownloads per week on a global basis, and the number of automatic and manual updates per week on a global basis.

- **With regard to search**—the number of customer accounts that search per week on a global basis and the number of apps appearing in the top 10 results in at least 1,000 searches in a week on a global basis.[3]

Plaintiffs believe including these metrics in the transparency report will provide important information to developers and is an additional indication of the valuable structural relief provided by the settlement.

### III.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

For final approval of a class action settlement, the proposed settlement class also must satisfy the Rule 23(a) requirements referred to as numerosity, commonality, typicality, and adequacy of representation. Additionally, the proposed class must meet one of the Rule 23(b) requirements. *See Hanlon*, 150 F.3d at1019-1022. Plaintiffs seek certification of the proposed settlement class pursuant to Rule 23(b)(3). In the Preliminary Approval Motion, Plaintiffs discussed at length why the Settlement Class should be certified. *See* ECF No. 396 at 23-26. Because the facts relevant to certification have not changed, and no class member has objected to certification of the proposed Settlement Class, Plaintiffs do not repeat that discussion here.

### IV.   THE APPROVED NOTICE PROGRAM WAS ADEQUATE
### AND SATISFIED DUE PROCESS

A court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For a proposed Rule 23(b)(3) Settlement Class, the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be

---

[3] *See* Declaration of Steve W. Berman in Support of Developer Plaintiffs' Motion for Final Approval of Settlement and Response to Objectors ("Berman Decl.") ¶ 2, filed concurrently herewith.

1  identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The 2018 Amendments to Rule 23

2  explain that "notice may be by one or more of the following: United States mail, electronic means, or

3  other appropriate means." Fed R. Civ. P. 23(c)(2)(B).[4]

4  **A.      The Robust Notice Program Implemented by the Administrator Satisfies Rule 23**

5          The multifaceted notice process undertaken by the Administrator meets these requirements.

6  As detailed in the initial Notice Plan approved by the Court, the Administrator provided individual

7  direct notice to all reasonably identifiable Settlement Class Members via email *and* mail. The

8  Administrator also created a dedicated settlement website where Settlement Class Members can

9  make claims using an easy-to-follow online form, download claim forms, and learn more about their

10  rights and options pursuant to the terms of the Settlement. The Administrator also provided a toll-

11  free telephone number where Settlement Class Members can obtain information about the settlement

12  and ask questions. *See* Platt Decl. ¶¶ 4-23. Pursuant to agreement of the parties, additional notice was

13  provided to members of the Settlement Class to maximize the likelihood that class members had

14  every opportunity to review and comment on the settlement, as well as to make claims. That

15  additional noticed included the sending of two email reminder notices, a reminder postcard notice, an

16  outbound calling campaign directed to members of the Settlement Class, and targeted social media

17  advertisements. *Id.* ¶¶ 24-36.

18          The notice process began with the collection of a large amount of data from Apple, and the

19  cleaning and organizing of that data by the Administrator into a usable database. In total, the

20  resulting class list comprised 67,440 unique application developer accounts for potentially eligible

21  class members. *Id.* ¶¶ 7-9.

22          Using this information and engaging in various techniques to ensure address accuracy and

23  maximize email delivery (e.g., avoiding spam filters), on January 14, 2022, Angeion sent the

24  Summary Email Notice to the 62,237 email addresses included on the class list. The email notice was

25

26

27  ───────────────

28          [4] *See also* Fed. R. Civ. P. 23, Notes of Advisory Comm., Subdivision (c)(2) (2018) (discussing technological changes that may provide opportunities for better notice).

successfully delivered to 58,820 email addresses, with 820 hard bounces and 2,597 soft bounces.[5]
Starting on January 18, 2022, Angeion re-sent the email notice to the 2,597 email addresses for
which the initial dissemination resulted in a soft bounce. After this was complete, of the 62,237
email addresses contained in the class member list, 59,061 (94.9%) were successfully delivered. *Id.*
¶¶ 13-19. The Summary Email Notice, approved by this Court, provided, *inter alia*, concise
information about the settlement, a claimant ID number and confirmation code, and a link to the
website where class members can fill out a claim form digitally or download a claim form to be
mailed to the administrator. *Id.* ¶ 19, Ex. B.

The same day Angeion sent the direct email notice, January 14, Angeion also mailed the
Summary Postcard Notice to all 67,484 mailing addresses on the class list. As of April 28, 2022,
only 15,448 had been returned as undeliverable. After using a combination of forwarding addresses
and addresses discovered via address verification searches, 12,429 of the Postcard Notices were
remailed. As a result, the direct mailing resulted in a delivery rate of 93.1%. *Id.* ¶¶ 20-23. Like the
email notice, the Summary Postcard Notice, approved by this Court, provided, *inter alia*, concise
information about the settlement and a link to the website where the potential class members could
fill out a claim form digitally or download a claim form to be mailed to the administrator. *Id.* ¶ 20,
Ex. C.

As noted above, the Email Notices and Postcard Notices both contained links to the
settlement website, located at www.SmallAppDeveloperAssistance.com. The settlement website was
established on January 13, 2022 (the day before the notices were emailed/mailed). The website
contains an online claim submission portal and a downloadable claim form. It also has the
functionality to estimate each Settlement Class Member's minimum potential payment. *Id.* ¶¶ 10-11.
In addition, the website contains general information about the Settlement, court documents, a
downloadable and searchable Long-Form Notice, a list of frequently asked questions and answers,

---

[5] A hard bounce is a permanent deliverability problem, meaning the email cannot be delivered. A soft bounce is a temporary deliverability problem, meaning the recipient's email address is valid but it is returned when it reached the recipient's inbox, either because the inbox is full, because the server was down, because the email was too large, or because the email was blocked by the recipient's email provider. Platt Decl. ¶ 17.

important dates and deadlines, and an email address where Settlement Class Member can email questions pertaining to the settlement. *Id*. On January 13, Angeion also established a toll-free hotline to provide information and answer questions. *Id*. ¶ 12.

Angeion has continued to directly contact Settlement Class Members to provide information about the settlement and to encourage claim filing. On February 18, 2022, Apple provided Angeion with supplemental email and telephone contact information for 202,549 account holders, administrators, application managers, developers and finance managers for the 67,440 eligible application developer accounts. On February 28, 2022, at the direction of the Plaintiffs and Apple, Angeion began disseminating a Reminder Summary Email Notice to the 140,915 valid email addresses included in the class member list and supplemental contact data that had not filed a claim form. After re-transmitting certain emails that had a soft bounce-back, of the 140,915 email addresses pertaining to application developer accounts for which Angeion had not received a claim form, 136,232 (96.7%) had Reminder Email Notices successfully delivered to them. *Id*. ¶¶ 24-28. The Reminder Email Notices again provided potential class members with information about how to file a claim, a link to the website, and pertinent dates, among other things. *Id*. ¶ 28, Ex. D. On April 19, 2022, Angeion send a *second reminder* email notice to 133,547 unique email accounts associated with an Application Developer Account that had not yet submitted a claim. *Id*. ¶ 35.

Then, on April 22, 2022, Angeion began mailing Postcard Reminder Notices. Angeion sent notices to the 61,584 addresses for application developer accounts that had not filed claims or opt out requests as of that date. *Id*. ¶ 36.

On March 10, 2022, based on the 57,190 telephone numbers Apple provided belonging to account holders, administrators, application managers, developers and finance managers for the 67,440 eligible application developer account, Angeion also began an outbound calling campaign to account holders that had not yet made claims. This was another means of directly noticing the class and encouraging claims. On the calls, Angeion sought to make sure potential claimants knew how to make a claim, were aware of the benefits of making a claim, and offered to answer any questions. As of April 27, 2022, Angeion had made 30,746 telephone calls to account holders, administrators, application managers, developers and finance managers associated with eligible application

1   developer accounts. Of these telephone calls, Angeion successfully delivered the message to 15,177

2   points of contact listed on application developer accounts. *Id.* ¶¶ 31-32.

3          Angeion supplemented the direct written notice campaign with a robust publication notice

4   effort. On April 6, 2022, Angeion began a targeted social media campaign utilizing Facebook,

5   Instagram, and LinkedIn, to provide further notice to class members that had not yet filed a claim.

6   The ads notified class members of their potential eligibility and directed them to the settlement

7   website for more information about how to file a claim. As of April 28, Angeion had placed 91,852

8   ads for a frequency of three ads placed per class member social media account. Angeion's 91,852 ad

9   placements have resulted in 846 click-throughs to the settlement website. *See id.* ¶¶ 33-34, Ex. F

10  (copies of social media ads).

11         Apple also posted a message to its developer news website on April 25, 2022, directing

12  developers to the settlement website. *See* Small developer assistance submission requests due by

13  May 20, available at https://developer.apple.com/news/?id=r24k5i3m.

14         This extensive and multifaceted direct and publication notice campaign more than complied

15  with Due Process and Rule 23 by providing notice to potential settlement class members "in a

16  reasonable manner to all class members who would be bound by the proposal," including individual

17  notice to all members who could be identified through reasonable effort. *See* Fed. R. Civ. P.

18  23(c)(2)(B), (e)(1)(B); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 329 (N.D.

19  Cal. 2018) ("[N]either Rule 23 nor the Due Process Clause requires actual notice to each individual

20  class member. . . . The notice must be the best practicable, reasonably calculated, under all the

21  circumstances, to apprise interested parties of the pendency of the action and afford them an

22  opportunity to present their objections." (internal quotation marks and citations omitted)); *In re*

23  *Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 68 (D.D.C. 2018) ("The Due Process

24  Clause also gives unnamed class members the right to notice of a class action settlement but does not

25  require actual notice to all class members who may be bound by the litigation. . . . Notice need only

26  be reasonably calculated to reach the class in order to satisfy due process." (citing *Fidel v. Farley*,

27  534 F.3d 508, 513-14 (6th Cir. 2008)).

28

1

2

**B.      The Results of the Ongoing Claims Process Further Supports That Settlement Class Members Have Been Provided With Adequate Notice**

        As of this date, Angeion has received 8,162 Claim Form submissions for 6,761 unique eligible application developer accounts. *See* Platt Decl. ¶¶ 38-39. Assuming conservatively that each of the potentially eligible 67,440 application developer accounts represents a single developer (in fact, some developers are associated with multiple accounts[6]), this means that 10.03% of the estimated number of Settlement Class Members have made claims. And the Net Proceeds represented by these accounts is equivalent to 21.6% of the total Aggregated Net Proceeds from all eligible developer accounts during the relevant period from June 4, 2015 through December 31, 2020. *See id.* ¶¶ 38, 40.

        These percentages compare favorably to other class action settlements, including ones approved in this District. For example, in the *Anthem Data Breach Litigation*, Judge Koh approved a settlement class action where only 1.8% of settlement class members made claims. *See* 327 F.R.D at 329; *see also, e.g.*, *Online DVD*, 779 F.3d at 941, 944-45 (Ninth Circuit affirming final approval of settlement where less than 4% of class members who were sent notice made claims and noting that "settlements have been approved where less than five percent of class members file claims"); *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (affirming final approval of settlement with claims rate of 3%); *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that claims rates in class settlements "rarely exceed seven percent, even with the most extensive notice campaigns"); *Taylor v. Shutterfly, Inc.*, 2021 WL 5810294, at *7 (N.D. Cal. Dec. 7 2021) (granting final approval to settlement where 2.4% of class members—2,425 out of 98,000— submitted valid claims); *Norcia v. Samsung Telecomms. Am., LLC*, 2021 WL 3053018, at *3 (N.D. Cal. July 20, 2021) (granting final approval where claims rate was 2.035% (7,468 claims received from approximately 367,00 class members), which the court held was on par with similar cases); *Touhey v. United States*, 2011 WL 3179036, at *7-*8 (C.D. Cal. July 25, 2011) (finding a 2% (38

---

        [6] Apple does not have data definitively linking individual developer accounts to developers. However, we know from the administration process that at least 215 developers have made claims to multiple accounts. Platt Decl., ¶ 38.

claims made out of 1,875 notices mailed) response rate acceptable); *Moore v. Verizon Commc'n Inc.*, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with a 3% claims rate—250,236 submitted valid claims out of 8,089,893 potential class members).[7]

The 10.03% claims rate here substantially exceeds these thresholds. It is important to emphasize, moreover, that the class members making claims are responsible for 21.6% of the total Aggregated Net Proceeds during the relevant period. *See id.* ¶¶ 37-40. Put differently, class members representing more than one-fifth of net proceeds have submitted claims. Because the ultimate goal of claims administration is to deliver funds to eligible claimants, the 21.6% figure further demonstrates the success of the notice and claims process.

In any event, although the claims rate is important, the relevant question under Rule 23 and Due Process is whether the notice provided is directed in a reasonable manner to reach class members and is the best notice practicable under the circumstances. *See Anthem Data Breach*, 327 F.R.D. at 329 (approving notice program that yielded 1.8% claims rate because "the Court is convinced that the notice program provided the best notice that is practicable under the circumstances and complied with due process").[8]

That being said, the parties recognize that getting settlement funds into the hands of class members is of the utmost importance, which is why they worked with the administrator to implement a multitude of means to encourage and facilitate claims filing (including sending three sets of direct

---

[7] *See also, e.g., Amin v Mercedes Benz USA, LLC*, 2020 WL 5510730, at *1, *3 (N.D. Ga. Sept. 11, 2020) (granting final approval of settlement with 0.63% claims rate); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3 million-member settlement class when less than 119,000—approximately 1.2%—filed claims).

[8] *See also Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 906–07 (8th Cir. 2018) (affirming approval of notice plan because "many class members received notice, but opted not to participate for any number of reasons"); *Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 92-93 (3d Cir. 1985) (holding that where defendant engaged in customary and court approved notice procedure, the response rate was not determinative of the adequacy of the class notice); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *5 (S.D. Fla. Oct. 24, 2014) ("a low claims rate at this stage does not compel the conclusion that the settlement is not 'fair, reasonable, and adequate.' ...[because] ... [t]he question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided").

1    email notice and two sets of direct postcard notice to class members, plus outgoing direct telephone

2    calls). The administrator also engaged in a social media notice campaign employing ads targeted at

3    potential class members. Importantly, Settlement Class Members may submit claims until May 20,

4    2022. Thus, the number of claimants is likely to increase over the next month. That is particularly

5    likely in this case because of recent efforts that include the reminder email and reminder postcard

6    notices, plus the telephonic direct notice effort, as well as the ongoing social media campaign. These

7    efforts continue to bear fruit. Between April 1 and 28, 2022, Angeion received 1,837 claim form

8    submissions, for an average of 66 per day. *See* Platt Decl., ¶ 41. Plaintiffs will update the Court about

9    the number of claims at the final approval hearing, scheduled for June 7, 2022.

10                                    **V.       THE OBJECTIONS ARE WITHOUT MERIT**

11        In this Part, Plaintiffs discuss Apple's Response to Developer Plaintiffs' Motion for

12    Attorneys' Fees, Reimbursement of Expenses, and Service Awards ("Response"). *See* ECF No. 467.

13    Plaintiffs also address the lone objection to the settlement, submitted by Steven Wytyshyn. *See* ECF

14    No. 469. Neither provides any basis to deny Plaintiffs' requested relief.

15    **A.    Apple's Critique of Plaintiffs' Fee Request is Without Merit**

16        In its Response, Apple "takes no issue with the expenses or service awards sought by

17    Plaintiffs . . . ." ECF No. 467 at 1. Apple contends that Plaintiffs' request for $27 million in

18    attorneys' fees "is high by the standards applied in this Circuit and District," but it "ultimately does

19    not oppose the fee request," merely "noting that the Court has discretion to award a different amount

20    as appropriate." *Id.* Plaintiffs agree that this Court has discretion in awarding fees, but disagree with

21    Apple that the fee request is high, and respectfully submit that their fee request should be granted in

22    full, for the reasons explained in the Fee Motion (ECF No. 465 at 9-23) and summarized below.

23        When the value of $100 million Small Developer Assistance Fund ("SDAF") is combined

24    with certain portions of the structural relief that can be reasonably be valued at $35.44 million, the

25    resulting common fund totals $135.44 million. The $27 million fee award requested is 19.9% of that

26    total, a percentage award that is well below the Ninth Circuit benchmark percentage of 25%. *See*

27    ECF No. 465 at 11-12. Apple agrees that the structural relief in the settlement is incredibly valuable

28    (ECF No. 467 at 1-2) and does not argue that a 19.9% fee award is unreasonable; rather, it contends

that Professor Economides's valuation of (a portion of) the nonmonetary relief is "not definitive." ECF No. 467 at 2. Pursuant to Ninth Circuit law, however, to determine the total value of the common fund for the purpose of the percentage-of-the-fund analysis, nonmonetary relief should be included where, as here, it can be reasonably ascertained and valued. *See id.* (citing *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003)). And district courts have included the value of such relief where an expert submits a report that provides a reasonable valuation of the nonmonetary relief. *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2013 WL 12327929, at *29 & n.7 (C.D. Cal. July 24, 2013). In this case, Professor Economides used Apple's transactional data and reasonable projections based on that data to value one portion of the nonmonetary relief, and conservatively Plaintiffs attribute 20% ($35.44 million) of the total value of that relief ($177.2 million) to the litigation and settlement. *See* ECF No. 465 at 8-9, 12 (discussing Economides's report). Plaintiffs submit that this $35.44 million should be counted as part of the common fund.

Even if that nonmonetary relief is not counted as part of the quantifiable common fund, however, Plaintiffs' fee request would be reasonable. In that case, Plaintiffs' fee request for $27 million would equal 27% of the $100 million SDAF. While Apple does not "oppose" the fee request, it suggests that Ninth Circuit's 25-percent "benchmark" (25% of the SDAF alone) should be the amount awarded. ECF No. 467 at 1, 3-4. But the Ninth Circuit has established the benchmark of 25 percent to be used as a "helpful '*starting point*'" for analysis,[9] with courts in this district recognizing that "in most common fund cases, the award exceeds the benchmark." *de Mira v. Heartland Emp't Serv., LLC*, 2014 WL 1026282, at *1 (N.D. Cal. Mar. 13, 2014) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008)). At bottom, the Ninth Circuit asks district courts to "reach[] a reasonable percentage" after "consider[ing] all the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Notably, in a recent case in this District, Judge Orrick rejected Apple's objections to a fee award above the 25% benchmark, stating at an

---

[9] *Online DVD*, 779 F.3d at 949, 955 (emphasis added).

April 27, 2022 final fairness hearing that the court would award fees equivalent to 28.3% of the settlement fund (3.5 times class counsel's lodestar), which the court ordered on April 29, 2022.[10]

To highlight one particularly relevant factor supporting a fee award in this case above the 25% benchmark, even if not counted as part of the quantifiable common fund, Ninth Circuit law is clear that the value of nonmonetary relief should be considered as a "'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees, rather than as part of the fund itself." *Staton*, 327 F.3d at 974. Indeed, the Ninth Circuit has held that "whether counsel's performance 'generated benefits beyond the cash settlement fund'" is an independent factor "courts may consider in assessing a request for attorneys' fees that was calculated using the percentage-of-recovery method." *Online DVD*, 779 F.3d at 954-55 (quoting *Vizcaino*, 290 F.3d at 1049). Courts in the Ninth Circuit, for this reason, have cited non-monetary relief obtained as a factor supporting an upward departure from the 25-percent benchmark.[11] The exceptional economic and practical benefits conferred by this settlement's structural relief elements alone provide a strong basis for a slight upward departure on the benchmark fee percentage to 27 percent. Indeed, Apple in its Response highlights these "structural changes that will benefit all developers worldwide for at least three years after final approval." ECF No. 467 at 1. And in briefing before Judge Orrick in a different case where Apple unsuccessfully argued for limiting class counsel's fee award to 25 percent, Apple conceded that decisions that have justified an upward departure on the benchmark based on settlement benefits generated beyond the cash fund, have done so where "non-

---

[10] *See* Berman Decl., Ex. A (hearing transcript) at 2-3; *see also* Order Granting Final Approval of Settlement; Awarding Attorney's Fees, Costs, and Service Awards, *Maldonado v. Apple Inc.*, No. 3:16-cv-04067-WHO (N.D. Cal. Apr. 29, 2022), ECF No. 340 at 2; Defendants' [Apple] Response to Plaintiffs' Motion for Attorneys Fees, Expenses, and Service Awards ("Apple Maldonado Response"), *Maldonado v. Apple Inc.*, No. 3:16-cv-04067-WHO (N.D. Cal. Feb. 11, 2022), ECF No. 333 at 2-4 (arguing that class counsel should be awarded no more than the 25% benchmark).

[11] *See, e.g.*, *Vizcaino*, 290 F.3d at 1049 (awarding counsel 28% of the cash settlement fund and explaining: "During the litigation, Microsoft agreed to hire roughly 3000 class members as regular employees and to change its personnel classification practices . . . ."); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (awarding counsel 28% and discussing that "[t]he settlement agreement also provides the equitable relief that Trader Joe's will stop using the disputed labels.").

1  monetary relief was expressly included as part of the parties' settlement agreement."[12] That is

2  exactly the situation here.

3       In fact, all of the factors considered by district courts in the Ninth Circuit to determine the

4  percentage of the fund to award to Class Counsel support Plaintiffs' fee request, whether that is

5  considered 19.9% or 27% of the common fund. These factors are discussed at length in Plaintiffs'

6  Fee Motion. *See* ECF No. 465 at 12-19. To highlight a few factors justifying an upwards departure

7  from the benchmark, Class Counsel achieved exceptional results for the Settlement Class and

8  generated substantial benefits beyond the cash settlement fund in an incredibly complex and risky

9  case, where Class Counsel, litigating on a purely contingency basis, invested substantial resources

10  and could have recovered nothing. It is also well established that attorneys who take on the risk of a

11  contingency case should be compensated for the risk they assume.[13] Moreover, Class Counsel's

12  skillful handling of the case—including Plaintiffs' motion for class certification supported by three

13  outstanding expert reports—no doubt contributed to Apple agreeing to the settlement. Finally, while

14  Apple critiques Plaintiffs' fee request as "high," the case law and empirical studies show that

15  whether the Court holds that the percentage of fees sought from the common fund is 19.9 or 27

16

17

18      [12] *See* Apple Maldonado Response at 2 (citing cases).

19      [13] *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *see

20  also, e.g.*, *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014)
   ("Courts have long recognized that the public interest is served by rewarding attorneys who assume
   representation on a contingent basis with an enhanced fee to compensate them for the risk that they

21  might be paid nothing at all for their work."). As the *NCAA* court recently explained,

22      In short, contingent fees are good for clients and the public alike. In
   exchange for increased predictability, decreased bean counting, and

23      unlimited protection against downside risks—including the risk of a zero[]
   dollar recovery—a client agrees to pay its attorneys an enhanced fee if and

24      only if the client recovers. And because contingent fees are almost always
   determined as a percentage of the client's recovery, such fees are necessarily

25      aligned with and proportional to the results achieved for that client—in
   short, the client only pays for what it gets. Lest contingent fees disappear

26      altogether, the law must recognize both sides of the bargain—namely, a
   significant upside fee for successful contingent representations.

27  *In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *4

28  (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (citation omitted).

percent, both fall well within the market rate for class counsel in complex antitrust class actions. *See* ECF No. 465 at 17-18 (citing cases and empirical studies).

Finally, contrary to Apple's argument, the lodestar cross-check confirms the reasonableness of Plaintiffs' fee request. Apple criticizes Plaintiffs' fee request because it would result in 2.47 multiplier. To begin with, in the Ninth Circuit, "the primary basis of the fee award remains the percentage method," with the lodestar used "merely [as] a crosscheck on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050 & n.5; *accord Perez v. Rash Curtis & Assocs*, 2020 WL 1904533, at *15 (N.D. Cal. Apr. 17, 2020) (Gonzalez Rogers, J.) (quoting *Vizcaino*, 290 F.3d at 1050). Moreover, in this case, the applicable *Kerr* reasonableness factors indicate that a positive fee multiplier is justified. *See* ECF No. 465 at 20-23 (discussing factors such as the amount involved and the results for the class, the novelty and difficulty of the issues involved, the skill required to perform the legal services properly, and the experience, reputation, and ability of class counsel). Moreover, in their Fee Motion, Plaintiffs cite case law and empirical studies showing that Class Counsel's requested lodestar multiplier of 2.47 is well within the range of multipliers approved in this district and affirmed by the Ninth Circuit, as well as in decisions across the country. *Id.* at 21-22. And as explained above, in a recent case, over Apple's objections, Judge Orrick stated at an April 27, 2022 hearing that he would award class counsel fees equivalent to a 3.5 multiplier of their lodestar.[14]

In arguing against Class Counsel's request for a multiplier, Apple cites to the Supreme Court's statement in the 2010 *Perdue* decision that a lodestar enhancement may only be awarded in "'rare' and 'exceptional' circumstances.'" ECF No. 467 at 4 (citing *Perdue v. Kenny A. ex. Rel. Winn*, 559 U.S. 542, 543 (2010)). But decisions since *Perdue* have been clear that it does not apply to common fund cases. *See, e.g.*, *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 480-90 (S.D.N.Y. 2017) ("the *Perdue* presumption against a lodestar enhancement does not apply" in cases like this, "when a court awards fees from a common fund created after a settlement"); *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1279 (11th Cir. 2021) ("Nothing in *Perdue* considered the appropriate method for calculating attorney's fees in a common fund case.

---

[14] *See* Berman Decl., Ex. A at 3.

1    The percentage method therefore remains the proper method to apply when awarding attorney's fees

2    in common fund settlement cases.").[15]

3    **B.    Mr. Wytyshyn's Objection Provides No Basis to Deny Final Approval**

4          The objection of Mr. Wytyshyn—the lone objection to the settlement—provides no basis to

5    deny final approval. In his objection, Mr. Wytyshyn criticizes certain aspects of the App Store and

6    suggests improvement, and he complains that the settlement agreement does not address these issues.

7    *See* ECF No. 469. Specifically, Mr. Wytyshyn objects on the basis that the settlement does not

8    account for potential suppression of developer innovation and asks the Court to order Apple to

9    disable the "Today" tab in the App Store. Mr. Wytyshyn proposes a "New Law" requiring Apple to

10   disclose per-category U.S. revenue numbers for the App Store and requests that Apple provide a

11   system of "Public Credit" for discovery of bugs in Apple products and refrain from alleged

12   "financial harm" when a developer discovers a bug. *Id.* at 1-3. Mr. Wytyshyn suggests that the App

13   Store become a public utility with a "Pro Sports-style 'App Discovery' Competitive Landscape" with

14   the current benchmark of football player Aaron Rodgers' latest contract extension. *Id.* at 5.

15         Plaintiffs take no position on whether his criticisms or suggestions are good or bad. However,

16   what is relevant is that Mr. Wytyshyn does not criticize the substantial monetary relief and structural

17   reforms obtained by the settlement, nor does he argument that the settlement is not fair, reasonable,

18   and adequate. As several courts have held, settlements are inherently a compromise, and merely

19   because other relief might have been beneficial, does not mean that the settlement is not fair,

20   reasonable, or adequate. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 2008)

21   (noting that fairness of a proposed settlement "is not to be judged against a hypothetical or

22   speculative measure of what might have been achieved by the negotiators"); *In re TD Ameritrade*

23   *Account Holder Litig.*, 2011 WL 4079226, at *9 (N.D. Cal. Sept. 13, 2011) ("The fundamental flaw

24   in Mr. Elvey's argument is that it ignores that the Settlement is a *compromise*, which balances the

25

26         [15] Because Class Counsel have now addressed the only response to Developer Plaintiffs' Motion
     for Attorneys' Fees, Reimbursement of Expenses, and Service Awards (ECF No. 465), that motion is
27   now ripe for adjudication, and Plaintiffs respectfully request that it be granted. *See* ECF. No. 465-8,
     [Proposed] Order Granting Developer Plaintiffs' Motion for Attorneys' Fees, Reimbursement of
28   Expenses, and Service Awards.

possible recovery against the risks inherent in litigating further. The possibility that the Settlement does not provide for a payout to every conceivable accountholder who in some way may have been affected by the data breach does not establish that the Settlement is unfair or unreasonable."). For all the reasons stated in Plaintiffs' Preliminary Approval Motion and herein, Plaintiffs respectfully submit that, in fact, the settlement is an excellent outcome for the class.

## VI.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court: (1) certify the proposed Settlement Class; (2) grant final approval of the proposed class action settlement with Apple; and (3) grant the attorneys' fees, expenses, and services awards requested in Plaintiffs' Fee Motion (ECF No. 465).

DATED this 29th day of April, 2022

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By    */s/ Steve W. Berman*
    STEVE W. BERMAN (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
Theodore Wojcik (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com
tedw@hbsslaw.com

Shana E. Scarlett (SBN 217895)
Benjamin J. Siegel (SBN 260260)
Ben M. Harrington (SBN 313877)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com
bens@hbsslaw.com
benh@hbsslaw.com

*Interim Lead Class Counsel*

Joseph M. Vanek (*pro hac vice*)
Eamon P. Kelly (*pro hac vice*)
Alberto Rodriguez (*pro hac vice*)
SPERLING & SLATER, P.C.
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Telephone: (312) 676-5845
Facsimile:  (312) 641-6492
jvanek@sperling-law.com
ekelly@sperling-law.com
arodriguez@sperling-law.com

R. Alexander Saveri (SBN 173102)
Cadio Zirpoli (SBN 179108)
Travis L. Manfredi (SBN 281779)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile:  (415) 217-6813
rick@saveri.com
cadio@saveri.com
travis@saveri.com

Kimberly A. Justice
Jonathan M. Jagher (*pro hac vice*)
FREED KANNER LONDON & MILLEN LLC
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
Facsimile:  (224) 632-4521
kjustice@fklmlaw.com
jjagher@fklmlaw.com

Douglas A. Millen (*pro hac vice*)
Brian M. Hogan (*pro hac vice*)
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, #130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile:  (224) 632-4521
dmillen@fklmlaw.com
bhogan@fklmlaw.com

*Plaintiffs' Executive Committee*