UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DONALD R. CAMERON, a California resident; PURE SWEAT BASKETBALL, INC., an Illinois corporation; and BARRY SERMONS, a Georgia resident, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No.  4:19-cv-03074-YGR<br><br>**DECLARATION OF STEVEN PLATT OF ANGEION GROUP REGARDING NOTICE DISSEMINATION AND ADMINISTRATION** |

I, Steven Platt, declare under penalty of perjury as follows:

1.      I am a project manager at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"), located at 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. I am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently thereto.

2.      Angeion was retained by the Parties and appointed by this Court to serve as Settlement Administrator and to, among other tasks, provide notice to potential Settlement Class Members; respond to Settlement Class Member inquiries; receive and process Claim Forms; review and determine if submitted claims are valid; distribute settlement award payments and perform other duties as specified in the Stipulation of Settlement ("Settlement Agreement") and by the directives of the Court, including but not limited to the Court's *Order Granting Preliminary Approval of Class Action Settlement and Setting Deadlines for Notice, Objection, Exclusion, and Final Fairness Hearing* entered on November 16, 2021 (Dkt. No. 453) (the "Preliminary Approval Order").

3.      The purpose of this declaration is to provide the Court with an update on the work performed by Angeion related to the implementation of the Notice Plan and administrative tasks following the Court's Preliminary Approval Order.

## OVERVIEW OF THE NOTICE PROGRAM

4.      The initial Notice Plan provided for individual direct notice to all reasonably identifiable Settlement Class Members via email and mail, combined the creation of a dedicated website and toll-free telephone line where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement.  The Settlement Agreement entered on August 24, 2021 (Dkt. No. 453, Ex. A) stipulated that the Parties may jointly agree to provide additional notice to the members of the Settlement Class. During the course of Notice Plan implementation, the Parties jointly agreed to additional forms of Notice including: two transmissions of an email reminder notice, distribution of supplemental postcard notice, targeted social media ads, and an outbound calling campaign to members of the Settlement Class.

## CAFA NOTICE

5.      On August 27, 2021, Plaintiffs filed the *Developer Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with Apple Inc*., (Dkt. No. 396) with the United States District Court for the Northern District of California, seeking preliminary approval of the Proposed Settlement.  The motion included a copy of the Settlement Agreement, which triggered the notice provisions of 28 U.S.C. § 1715.

6.      Seven days later, on September 3, Angeion served notice of the Proposed Settlement on the attorneys general of all U.S. states and territories, as well as the Attorney General of the United States, pursuant to 28 U.S.C. § 1715(b), via U.S. mail and FedEx ("CAFA Notices").  Attached hereto as **Exhibit A** is a true and accurate copy of the CAFA Notice.

## THE CLASS MEMBER LIST

7.      Beginning on September 18, 2021, Angeion began consulting with the Defendant regarding the compilation of the Class Member List, aggregation of Class Member payment transaction data and the calculation for Net Proceeds and estimated Potential Minimum Payments. Throughout this process Angeion received sample data files, compiled the data and tested technical methodologies for data applications. These data applications (a) compiled the Class Member mailing list, (b) aggregated Class Member transactional purchase data, (c) calculated Net Proceeds, (d) aggregated Net Proceeds to determine eligibility of each Class Member based on the aggregated Net Proceeds of all associated application developer accounts claimed for Net Proceeds in Calendar Years 2015 through 2021, and (e) and aggregated Net Proceeds to calculate estimated Potential Minimum Payments for all eligible associated application developer accounts claimed.

8.      In summary, after receipt of the final data and completing the various data applications, the Class List comprised of 67,440 application developer accounts. There were 24 Class Members for whom Angeion had both a foreign and domestic address, which caused the Class Member mailing list to be comprised of 67,848 records. The Class Member emailing list comprised of 62,237 Class Member names and email addresses.

9.      Pursuant to the terms of the Settlement Agreement and Release, the Small Developer Assistance Fund will be distributed to all Settlement Class Members who submit timely and valid claim forms. Each such U.S. developer is entitled to an estimated potential minimum payment of $250.00. U.S. developers may qualify for a higher payment based on their total proceeds during the relevant period from June 4, 2015 through December 31, 2020.  *See* Dkt. No. 453 at 5-6; Settlement Agreement at § 6.

**SETTLEMENT WEBSITE**

10.     On January 13, 2022, Angeion established the following website devoted to this settlement: www.SmallAppDeveloperAssistance.com. The settlement website contains general information about the Settlement, court documents, an online claim submission portal, a downloadable Claim Form, a downloadable, searchable Long-Form Notice, a list of frequently asked questions and answers, important dates and deadlines pertinent to this Settlement and the functionality to estimate each potential Settlement Class Members' estimate Minimum Potential Payment. Settlement Class Members can send an email to a dedicated email address, info@SmallAppDeveloperAssistance.com, with questions pertaining to the Settlement.

11.     As of April 28, 2022, the Settlement Website has received 92,575 page views from 47,563 users.

**TOLL-FREE HOTLINE**

12.     On January 13, 2021, Angeion established the following toll-free hotline dedicated to this case:  1-833-920-3778.  The toll-free hotline utilizes an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and inform Settlement Class Members of important dates and deadlines pertaining to the Settlement. The toll-free hotline is accessible 24 hours a day, 7 days a week.  Settlement Class Members also have the ability to leave a message requesting a Claim Form and/or Long Form Notice via the toll-free hotline. As of April 28, 2022, the toll-free hotline has received 233 calls, totaling 1,008 minutes.

1

2                                   **DIRECT EMAIL SUMMARY NOTICE**

3      13.    Angeion designed the email notice to avoid many common "red flags" that might otherwise

4      cause a potential Settlement Class Member's spam filter to block or identify the email notice as spam.

5      For instance, Angeion does not include attachments to the email notice because attachments are often

6      interpreted by various Internet Service Providers ("ISP") as spam.   Rather, in accordance with

7      industry best practices, Angeion includes a link to all operative documents so that Settlement Class

8      Members can easily access this information.

9      14.    Angeion employed additional methods to help ensure that as many Settlement Class

10     Members as possible receive notice via email. Specifically, prior to distributing email notice,

11     Angeion utilized an email updating process to help ensure the accuracy of recipient email addresses.

12     Angeion also reviewed email addresses for mis-transcribed characters and performs other hygiene,

13     as appropriate.

14     15.    Angeion accounted for the reality that some emails will inevitably fail to be delivered during

15     the initial delivery attempt.  Therefore, after the initial noticing campaign is complete, Angeion, after

16     an approximate 24-72-hour rest period, which allows any temporary block at the ISP level to expire,

17     causes a second round of email noticing to continue to any email addresses that were previously

18     identified as soft bounces and not delivered.  In our experience, this minimizes emails that may have

19     erroneously failed to deliver due to sensitive servers and optimizes delivery.

20     16.    On January 14, 2022, Angeion caused the dissemination of the Summary Email Notice

21     ("Email Notice") to the 62,237 email addresses included on the Class List. The Email Notice was

22     successfully delivered to 58,820 email addresses, with 820 hard bounces and 2,597 soft bounces.

23     17.    A hard bounce is a permanent deliverability problem, meaning the email cannot be

24     delivered.  A soft bounce is a temporary deliverability problem, meaning the recipient's email

25     address is valid but it is returned when it reached the recipient's inbox, either because the inbox is

26     full, because the server was down, because the email was too large, or because the email was blocked

27     by the recipient's email provider.

28

18.     Starting on January 18, 2022, Angeion caused the Email Notice to be re-transmitted via email to the 2,597 email addresses for which the initial dissemination resulted in a soft bounce. This second attempt at disseminating the Email Notice via email was successfully delivered to 241 email addresses, with zero hard bounces and 2,356 soft bounces.

19.     In summary, of the 62,237 email addresses contained in the Class Member List, 59,061 (94.9%) were successfully delivered and 3,176 (5.1%) were not successfully delivered. A copy of the Class Summary Email Notice is attached hereto as **Exhibit B**.

## DIRECT MAIL SUMMARY NOTICE

20.     On January 14, 2022, Angeion caused the Summary Postcard Notice ("Postcard Notice") to be mailed to all 67,484 Class Member addresses included on the Class List, via United States Postal Service ("USPS") first-class mail, postage prepaid.  Attached hereto as **Exhibit C** is a copy of the Postcard Notice.

21.     As of April 28, 2022, the USPS has returned 15,448 of the Postcard Notices initially mailed as undeliverable. Postcard Notices returned as undeliverable by the USPS without a forwarding address were processed through address verification searches and re-mailed to the updated addresses located through this process. Postcard Notices returned as undeliverable by the USPS with a forwarding address were re-mailed to the forwarding address identified by the USPS. As a result of the above-described efforts, a total of 12,429 Notices have been re-mailed.

22.     As of April 28, 2022, the USPS has returned 1,663 re-mailed Postcard Notices as undeliverable.

23.     In summary, the direct mailing efforts described in paragraphs 17-20, resulted in a presumed Postcard Notice delivery rate of 93.1%.

## REMINDER EMAIL SUMMARY NOTICE

24.     On February 18, 2022, the Defendant provided Angeion with supplemental email and telephone contact information for 202,549 account holders, administrators, application managers,

developers and finance managers for the 67,440 eligible application developer accounts. Angeion analyzed the email addresses contained in the supplemental contact data and prior to distributing email notice, Angeion utilized an email updating process to help ensure the accuracy of recipient email addresses. Angeion also reviewed email addresses for mis-transcribed characters and performs other hygiene, as appropriate.

25.     Angeion determined that there were 140,915 valid email addresses contained in the Class Member List data and supplement contact data for application developer accounts that had not submitted a claim as of February 27, 2022.

26.     On February 28, 2022, at the direction of the Parties, Angeion commenced the dissemination of the Reminder Summary Email Notice ("Reminder Email Notice") to the 140,915 valid email addresses included in the Class Member List and supplemental contact data, that had not filed a Claim Form. The Email Notice was successfully delivered to 134,955 email addresses, with 2,150 hard bounces and 3,810 soft bounces.

27.     On March 14, 2022, Angeion caused the Email Notice to be re-transmitted via email to the 2,150 email addresses for which the initial dissemination resulted in a soft bounce. This second attempt at disseminating the Email Notice via email was successfully delivered to 1,277 email addresses, with 21 hard bounces and 2,512 soft bounces.

28.     In summary, of the 140,915 valid email addresses contained in the Class Member List and supplemental contact data pertaining to application developer accounts for which Angeion had not received a claim form from, as of February 27, 2022, and that Angeion transmitted a Reminder Email Notice, 136,232 (96.7%) were successfully delivered and 4,683 (3.3%) were not successfully delivered. The Reminder Summary Email Notice is attached hereto as **Exhibit D**.

## **PRESS RELEASE**

29.     On March 7, 2022, Angeion caused the publication of a press release via Business Wire. Attached hereto as **Exhibit E**, is a copy of the press release.

**APPLICATION DEVELOPER OUTREACH**

30.    The supplemental data provided to Angeion on February 18, 2022, contained 57,190 telephone numbers belonging to account holders, administrators, application managers, developers and finance managers for the 67,440 eligible application developer accounts.

31.    On March 10, 2022, Angeion commenced an outbound calling campaign to the 57,190 telephone numbers contained in the supplemental data, pertaining to application developer accounts for which Angeion had not received a claim form. The purpose of these calls was to deliver a message directly to the individuals included on the application developer accounts as points of contact making sure the potential claimants were aware of the settlement, its benefits, and their options, while also offering to respond to any unanswered questions.

32.    As of April 27, 2022, Angeion attempted 30,746 telephone calls to the account holders, administrators, application managers, developers and finance managers associated with eligible application developer accounts. Of these 30,746 attempted telephone calls, Angeion successfully delivered the message to 15,177 points of contact listed on application developer accounts. Angeion will continue these efforts through the claim filing period.

**TARGETED SOCIAL MEDIA CAMPAIGN**

33.    On April 6, 2022, at the direction of the Parties, Angeion commenced a targeted social media campaign utilizing Facebook, Instagram and LinkedIn, to provide further notification to Class Members that had not filed a Claim Form of their eligibility.  Angeion purchased social media advertising placement impressions ("ads") intended to notify Class Members of their potential eligibility and direct them to the settlement website for more information and to file a Claim Form.

34.    As of April 28, 2022, Angeion has placed 91,852 ads for a frequency of three ads placed per Class Member social media account.  At the completion of the social media campaign, Angeion's 91,852 ad placements resulted in 846 click-throughs to the settlement website. Attached hereto as **Exhibit F**, are copies of the social media ads.

1

2
## SECOND REMINDER EMAIL SUMMARY NOTICE

3   35.    On April 19, 2022, at the direction of the Parties, Angeion commenced the dissemination of

4   the Second Reminder Summary Email Notice ("Second Reminder Email Notice") to 133,547 valid

5   email addresses included in the Class Member List and supplemental contact data, that were not

6   associated with an Application Developer Account from which Angeion had received a Claim Form.

7   The Email Notice was successfully delivered to 127,382 email addresses, with 2,901 hard bounces

8   and 3,264 soft bounces.

9

10
## REMINDER DIRECT MAIL SUMMARY NOTICE

11  36.    On April 22, 2022, Angeion caused the Summary Postcard Notice ("Postcard Notice") to be

12  mailed to 61,584 Class Member addresses included on the Class List, via USPS first-class mail,

13  postage prepaid.

14

15
## CLAIM FORM SUBMISSIONS

16  37.    The deadline for Settlement Class Members to submit a Claim Form is May 20, 2022.  As of

17  April 28, 2022, Angeion has received 8,162 Claim Form submissions for a total of 8,928 application

18  developer accounts. Of these 8,162 Claim Form submissions, 6,459 (79%) claims were submitted

19  for at least one eligible Application Developer Account and are approved, 734 (9%) claims were

20  submitted including no eligible Application Developer Account and are not approved, and 969 (12%)

21  are under review.

22  38.    Of the 8,162 Claim Forms submitted, Angeion has received 215 Claim Forms including more

23  than one eligible Application Developer Account and in total, 6,761 unique eligible Application

24  Developer Accounts have been claimed. These 6,761 unique eligible Application Developer

25  Accounts represent 10.03% in numerosity among all eligible Application Developer Accounts and

26  21.60% of the total aggregated Settlement Class Net Proceeds for the relevant period.

27

28

39.     The table below illustrates the percentages of unique eligible Application Developer Accounts claimed, relative to eligible Application Developer Accounts within the settlement payment tiers.

| Total U.S. App Store Proceeds (6/4/15-12/31/20) | Percentage of Accounts Claimed |
|---|---|
| $100 or less | 6.05% |
| $100.01 - $1,000 | 10.18% |
| $1,000.01 - $5,000 | 13.90% |
| $5,000.01 - $10,000 | 17.89% |
| $10,000.01 - $50,000 | 20.73% |
| $50,000.01 - $100,000 | 22.19% |
| $100,000.01 - $250,000 | 23.35% |
| $250,000.01 - $500,000 | 26.74% |
| $500,000.01 - $1,000,000 | 21.85% |
| Over $1,000,000 | 22.00% |
| **Total** | **10.03%** |

40.     The table below illustrates the percentages of net proceeds of unique eligible Application Developer Accounts claimed, relative to the settlement payment tiers.

| Total U.S. App Store Proceeds (6/4/15-12/31/20) | Percentage of Net Proceeds Claimed |
|---|---|
| $100 or less | 6.97% |
| $100.01 - $1,000 | 10.76% |
| $1,000.01 - $5,000 | 14.31% |
| $5,000.01 - $10,000 | 17.84% |
| $10,000.01 - $50,000 | 20.89% |
| $50,000.01 - $100,000 | 22.04% |
| $100,000.01 - $250,000 | 23.80% |
| $250,000.01 - $500,000 | 26.66% |
| $500,000.01 - $1,000,000 | 21.82% |
| Over $1,000,000 | 19.69% |
| **Total** | **21.60%** |

DECLARATION OF STEVEN PLATT                                                                9

41.     Angeion is actively receiving Claim Form submissions. For the time period of April 1, 2022 through and including April 28, 2022, Angeion has received 1,837 Claim Form submissions, averaging 66 per day.

## REQUESTS FOR EXCLUSION

42.     The deadline to request exclusion from the settlement was March 21, 2022. As of April 28, 2022, Angeion had received 73 requests for exclusion from individuals or entities. Of these requests for exclusion, 13 are valid exclusion requests from different individuals or entities for *eligible* Application Developer Accounts (i.e., from Settlement Class Members) and the remainder are from individuals or entities for *ineligible* Application Developer Accounts and are thus invalid. The 13 valid exclusion requests represent 0.020% in numerosity among all eligible Application Developer Accounts and .195% of the total aggregated Settlement Class Net Proceeds for the relevant period. Attached hereto as **Exhibit G**, is a list of the valid exclusion requests.

## OBJECTIONS TO THE SETTLEMENT

43.     The deadline to submit Objections to the settlement was March 21, 2022. As of April 28, 2022, Angeion has received one objection to the settlement from an application developer included on the Class Member List. Attached hereto as **Exhibit H,** is a copy of the Objection.


I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 29, 2022

*Steven Platt*
STEVEN PLATT

---

DECLARATION OF STEVEN PLATT                                                          10

# EXHIBIT A

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Cynthia Richman
Direct: +1 202.955.8234
Fax: +1 202.530.9691
CRichman@gibsondunn.com

September 3, 2021

[Recipient Name and Address]

Re:     Notice of Class Action Settlement Under 28 U.S.C. § 1715
         *Cameron v. Apple Inc.*, No. 19-cv-03074-YGR (N.D. Cal.)

Dear _____:

I write on behalf of Apple Inc. ("Apple"), the defendant in the above-referenced matter pending in the United States District Court for the Northern District of California before the Honorable Yvonne Gonzalez Rogers.  In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, Apple hereby serves you with notice that a proposed settlement of this action has been filed with the Court.  A copy of this Notice is being provided concurrently to the Attorney General of the United States and the Attorneys General of every State, the District of Columbia, Puerto Rico, and every U.S. territory.

The nationwide class action lawsuit asserts claims alleging that Apple engaged in anticompetitive practices related to its App Store.  Apple strongly disputes those claims, but it has agreed to settle this lawsuit to avoid the expenses, uncertainties, distractions, and other risks inherent in further litigation.  The proposed settlement class consists of approximately 67,000 iOS developers earning more than $0 but less than $1 million from transactions annually in the App Store.

**Notice and Enclosed Copies of Settlement Materials**

As required by 28 U.S.C. § 1715(b)(1)–(4), I have enclosed a CD containing the following materials relating to the proposed settlement:

1. Copies of Plaintiffs' original complaint and their operative amended complaint, including exhibits thereto;

2. The Stipulation of Settlement, filed August 26, 2021;

3. Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, filed August 26, 2021;

4. The proposed order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, filed August 26, 2021;

**GIBSON DUNN**

September 3, 2021
Page 2

5. The proposed Class Notice, Email Notice, Postcard Notice, and Claim Form, filed August 26, 2021; and

6. Apple's Statement in Support of Motion for Preliminary Approval of Settlement, filed August 26, 2021.

Any materials relating to the proposed settlement filed after service of this Notice can be found by visiting the "CM/ECF" online docket for the above-captioned case at https://ecf.cand.uscourts.gov/cgi-bin/login.pl.  These materials will also be available from the settlement website at https://smallappdeveloperassistance.com, which will be updated after the Court grants preliminary approval, and to which class members will be directed to obtain updated information regarding the settlement.

**Hearing Date**

Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement on August 26, 2021 and have noticed this Motion for a hearing on October 12, 2021, at 2:00 p.m. Pacific. If the Court reschedules this date, you may find this information by visiting the "CM/ECF" online docket for the above-captioned case at https://ecf.cand.uscourts.gov/cgi-bin/login.pl.

**Other Agreements**

Pursuant to 28 U.S.C. § 1715(b)(5), there is no "settlement or other agreement contemporaneously made between class counsel and counsel for" Apple, other than the Settlement Agreement and all attachments thereto.

**Geographic Distribution of the Class**

Pursuant to 28 U.S.C. § 1715(b)(7)(A), it is not feasible for Apple to provide the names of the settlement class members residing in each State.

Pursuant to 28 U.S.C. § 1715(b)(7)(B), the enclosed CD contains a chart, based on the most current information available to Apple at this time, showing the estimated number of class members in each State.  The Court has not yet approved the proposed settlement, and, as a result, there has been no final calculation of the allocation for each class member.  In the absence of such an estimate, this chart provides the estimated number and percentage of class members residing in each State.  Depending on the allocation approved by the Court, the proportionate share of the settlement fund that the class members in each State will receive could be higher or lower than the estimated percentage of class members residing in that State.

**GIBSON DUNN**

September 3, 2021
Page 3

**Written Judicial Opinions**

Pursuant to 28 U.S.C. § 1715(b)(8), there are no written judicial opinions relating to the proposed notice to the class, the preliminary or final approval of the settlement, or the other matters discussed in 28 U.S.C. § 1715(b)(3)–(6).  The enclosed CD contains a copy of the proposed preliminary approval order.

Please do not hesitate to contact me with any questions you may have regarding these materials.

Cynthia Richman

# EXHIBIT B

From:  Settlement Administrator <<email address>>

Subject:  Class Action Notice: Cameron et al. v. Apple Inc.

**CLAIM ID NUMBER:** <<Claimant ID Number>>

**CONFIRMATION CODE:** <<Confirmation Code>>

## LEGAL NOTICE

*A court authorized this notice.  This is not a solicitation.*

**If you are a U.S. app developer that has earned not more than $1,000,000 per year selling apps and digital content on Apple Inc.'s U.S. iOS App Store in any year you had a developer account since June 2015, you could be entitled to benefits under a class action settlement.**

**WHAT IS THIS NOTICE ABOUT?**

In a consolidated class action lawsuit pending against Apple, Plaintiffs claimed that Apple monopolized (or attempted to monopolize) an alleged iOS app and in-app product distribution services market in violation of U.S. antitrust and California unfair competition laws.  Apple denies all allegations and is entering into this settlement to avoid burdensome and costly litigation and to provide additional assistance to the small app developer community.  The Settlement is ***not*** an admission of wrongdoing by Apple.  This notice summarizes your legal rights. You should visit the settlement website www.smallappdeveloperassistance.com to obtain more detailed information about the proposed settlement and your rights.  You also can contact the settlement administrator by mail, email or by calling toll-free:

Cameron v. Apple Inc.
c/o Settlement Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103
Email:  info@smallappdeveloperassistance.com
Toll-Free: (833) 920-3778

**AM I A CLASS MEMBER?**

You are a "Settlement Class Member" if you are or were a U.S. developer of any Apple iOS application or in-app product (including subscriptions) that:

(1) Was sold for a non-zero price;

(2) Was sold via Apple's iOS App Store between 2015 and 2021; and

(3) Earned, together with any other iOS applications or in-app products (including subscriptions) sold through all of your associated developer accounts, proceeds equal to or less than $1,000,000.00 through the App Store U.S. storefront in every calendar year from 2015 to 2021 in which you had a developer account.

For class definition purposes, the 2015 calendar year consists of June 4, 2015 through December 31, 2015. The 2021 calendar year consists of January 1, 2021 through April 26, 2021.

To claim a settlement benefit, you must submit a claim form on or before <u>May 20, 2022</u> at www.smallappdeveloperassistance.com, or, after downloading a claim form available on this website, returning it by mail to the address on the claim form, so that it is <u>received by May 20, 2022</u>.

**WHAT BENEFIT CAN I GET FROM THE SETTLEMENT?**
Under the settlement, Apple has agreed to, among other things, (1) maintain a commission rate of no greater than 15% for U.S. developers who are enrolled in Apple's Small Business Program, subject to program participation requirements; (2) permit U.S. developers to communicate with their customers via email and other communication services outside their iOS app about purchasing methods other than in-app purchase; and (3) expand the choice of price points for subscriptions, in-app purchases, and paid downloads (by December 31, 2022). Apple will also pay $100,000,000 into a fund for developers (the "Small Developer Assistance Fund"). Apple will provide a cash payment from the Small Developer Assistance Fund to each eligible Settlement Class Member who submits a timely and valid claim form. Each eligible Settlement Class Member with a valid claim will be entitled to a <u>minimum</u> payment of between $250 and $30,000, depending on the U.S. developer's App Store proceeds. You can visit the settlement website www.smallappdeveloperassistance.com to determine the minimum payment for which you may be eligible. <u>Please note that the actual cash payment may be more depending on the total number of approved claims and other factors.</u>

**HOW CAN I EXCLUDE MYSELF FROM THE CLASS?**
If you don't want to make a claim and you don't want to be legally bound by the settlement, your request to be excluded must be <u>received</u> by March 21, 2022, or you will not be able to sue, or continue to sue, Apple over the conduct at issue in this case. Refer to the settlement website www.smallappdeveloperassistance.com and the detailed <u>Class Notice</u> for information and instructions on how to exclude yourself.

**HOW CAN I OBJECT?**
If you want to remain a Settlement Class Member, but you want to object to the settlement and/or to class counsel's request for attorneys' fees and expenses, your objection must be <u>received by March 21, 2022</u>. Refer to the settlement website and the detailed Class Notice for information and instructions on how to object. The Court will consider objections at a final hearing in this case (*Cameron, et al. v. Apple Inc.*, Case No. 4:19-cv-03074-YGR) on June 7, 2022 at 2 P.M. at the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 1, 1301 Clay Street, Oakland, CA 94612, to consider whether to approve (1) the settlement; (2) class counsel's request for attorneys' fees and expenses; and (3) named plaintiff service awards of up to $5,000. You may appear at the final hearing, but you don't need to. The date of the final hearing may change without further notice and may be confirmed on the Court's Public Access to Court Electronic Records (PACER) site, for a fee, at https://ecf.cand.uscourts.gov. Information about the final hearing will also be posted on the settlement website.

**WHERE CAN I GET MORE INFORMATION?**

Please visit the settlement website at www.smallappdeveloperassistance.com, or call toll free (833) 920-3778 to obtain more complete information about the proposed settlement and your rights.  You may also write to class counsel at: Hagens Berman Sobol Shapiro, LLP, 1301 Second Ave., Suite 2000, Seattle, WA 98101 or email Info.smallappdeveloperassistance@hbsslaw.com.

Unsubscribe

# EXHIBIT C

DD — Angeion — Title: Apple Cameron — 11-23-21 — Proof #3

**If you are a U.S. app developer that has earned not more than $1,000,000 per year selling apps and digital content on Apple Inc.'s U.S. iOS App Store in any year you had a developer account since June 2015, you could be entitled to benefits under a class action settlement.**

For more information on the proposed settlement, to file a claim or objection, or to exclude yourself, visit the settlement website or contact the Claims Administrator or Class Counsel.

**Do not contact the Court for information about the settlement.**

**www.SmallAppDeveloperAssistance.com**

Cameron v. Apple Inc.
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

PRESORTED
FIRST CLASS MAIL
US POSTAGE PAID
MAG

**Electronic Service Requested**



NUMERIC EQUIVALENT

Postal Service: Please do not mark barcode

Claim ID: «Claim ID»
Confirmation Code: «Confirmation Code»

‹‹First Name››‹‹Last Name››
‹‹Address1››
‹‹Address2››
‹‹City››, ‹‹State›› ‹‹Zip››
«CountryCd»

DD — Angeion — Title: Apple Cameron — 11-23-21 — Proof #3

PLEASE RETAIN THIS POSTCARD FOR YOUR RECORDS
## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

In a consolidated class action lawsuit pending against Apple, Plaintiffs claimed that Apple monopolized (or attempted to monopolize) an alleged iOS app and in-app product distribution services market in violation of U.S. antitrust and California unfair competition laws. Apple denies all allegations and is entering into this settlement to avoid burdensome and costly litigation and to provide additional assistance to the small app developer community. The settlement is *not* an admission of wrongdoing by Apple. This notice summarizes your legal rights. You should visit the settlement website to obtain more detailed information about the proposed settlement. You also may write to the claims administrator at the address on the reverse side, or call toll free at (833) 920-3778.

**Am I a Class Member?** Yes, if you are a current or former U.S. developer of any Apple iOS application or in-app product (including subscriptions) that (a) was sold for a non-zero price; (b) was sold via Apple's iOS App Store between 2015 and 2021; and (c) earned, together with any other iOS applications or in-app products (including subscriptions) sold through all of your associated developer accounts, proceeds equal to or less than $1,000,000 through the App Store U.S. storefront in every calendar year in which you had a developer account from 2015 to 2021. For these purposes, the 2015 calendar year is June 4, 2015 through December 31, 2015; the 2021 calendar year is January 1, 2021 through April 26, 2021. To claim a settlement benefit, you must submit a claim form at www.smallappdeveloperassistance.com, or by mail at the address on the claim form, so that it is **received by May 20, 2022**.

**What benefit can I get from the settlement?** Under the settlement, Apple has agreed to, among other things, (1) maintain a commission rate of no greater than 15% for U.S. developers who are enrolled in Apple's Small Business Program, subject to program participation requirements; (2) permit U.S. developers to communicate with their customers via email and other communication services outside their iOS app about purchasing methods other than in-app purchase; and (3) expand the choice of price points for subscriptions, in-app purchases, and paid downloads. Apple will also pay $100,000,000 into a fund for developers (the "Small Developer Assistance Fund"). Apple will provide a cash payment from the Small Developer Assistance Fund to each eligible class member who submits a timely and valid claim form. Each eligible class member with a valid claim will be entitled to a minimum payment of between $250 and $30,000, depending on the U.S. developer's App Store proceeds. You can visit the settlement website to determine the minimum payment for which you may be eligible. Please note that the actual cash payment may be more depending on the total number of approved claims and other factors.

**How can I exclude myself from the class?** If you don't want to make a claim and you don't want to be legally bound by the settlement, your request to be excluded must be **received by March 21, 2022**, or you will not be able to sue, or continue to sue, Apple over the conduct at issue in this case. Refer to the settlement website and the detailed Class Notice for information and instructions on how to exclude yourself.

**How can I object?** If you want to stay in the settlement class, but want to object to the settlement and/or to class counsel's request for attorneys' fees and expenses, your objection must be **received by March 21, 2022**. Refer to the settlement website and the detailed Class Notice for information and instructions on how to object. The Court will consider objections at a final hearing in this case (*Cameron, et al. v. Apple Inc.*, Case No. 4:19-cv-03074-YGR) on **June 7, 2022 at 2 P.M**. at the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 1, 1301 Clay Street, Oakland, CA 94612, to consider whether to approve (1) the settlement; (2) class counsel's request for attorneys' fees and expenses; and (3) named plaintiff service awards of up to $5,000. You may appear at the final hearing, but you don't need to. The date of the final hearing may change without further notice and may be confirmed on the Court's website, for a fee, at https://ecf.cand.uscourts.gov. Information about the final hearing will also be posted on the settlement website.

**Where can I get more information?** Please visit the settlement website at www.SmallAppDeveloperAssistance.com or call toll free at (833) 920-3778 to obtain more complete information about the proposed settlement and your rights. You may also email class counsel at: Info.smallappdeveloperassistance@hbsslaw.com.

**www.SmallAppDeveloperAssistance.com**

# EXHIBIT D

From:  Settlement Administrator <<email address>>

Subject:  REMINDER Class Action Notice: Cameron et al. v. Apple Inc.


**CLAIM ID NUMBER:** <<Claimant ID Number>>

**CONFIRMATION CODE:** <<Confirmation Code>>


## LEGAL NOTICE

*A court authorized this notice.  This is not a solicitation.*

**If you are a U.S. app developer that has earned not more than $1,000,000 per year selling apps and digital content on Apple Inc.'s U.S. iOS App Store in any year you had a developer account since June 2015, you could be entitled to benefits under a class action settlement.**

**WHAT IS THIS NOTICE ABOUT?**
In a consolidated class action lawsuit pending against Apple, Plaintiffs claimed that Apple monopolized (or attempted to monopolize) an alleged iOS app and in-app product distribution services market in violation of U.S. antitrust and California unfair competition laws.  Apple denies all allegations and is entering into this settlement to avoid burdensome and costly litigation and to provide additional assistance to the small app developer community.  The Settlement is ***not*** an admission of wrongdoing by Apple.  This notice summarizes your legal rights. You should visit the settlement website www.smallappdeveloperassistance.com to obtain more detailed information about the proposed settlement and your rights.  You also can contact the settlement administrator by mail, email or by calling toll-free:

Cameron v. Apple Inc.
c/o Settlement Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103
Email:  info@smallappdeveloperassistance.com
Toll-Free: (833) 920-3778

**AM I A CLASS MEMBER?**
You are a "Settlement Class Member" if you are or were a U.S. developer of any Apple iOS application or in-app product (including subscriptions) that:

(1) Was sold for a non-zero price;
(2) Was sold via Apple's iOS App Store between 2015 and 2021; and
(3) Earned, together with any other iOS applications or in-app products (including subscriptions) sold through all of your associated developer accounts, proceeds equal to or less than $1,000,000.00 through the App Store U.S. storefront in every calendar year from 2015 to 2021 in which you had a developer account.

For class definition purposes, the 2015 calendar year consists of June 4, 2015 through December 31, 2015. The 2021 calendar year consists of January 1, 2021 through April 26, 2021.

To claim a settlement benefit, you must submit a claim form on or before May 20, 2022 at www.smallappdeveloperassistance.com, or, after downloading a claim form available on this website, returning it by mail to the address on the claim form, so that it is received by May 20, 2022.

**WHAT BENEFIT CAN I GET FROM THE SETTLEMENT?**
Under the settlement, Apple has agreed to, among other things, (1) maintain a commission rate of no greater than 15% for U.S. developers who are enrolled in Apple's Small Business Program, subject to program participation requirements; (2) permit U.S. developers to communicate with their customers via email and other communication services outside their iOS app about purchasing methods other than in-app purchase; and (3) expand the choice of price points for subscriptions, in-app purchases, and paid downloads (by December 31, 2022). Apple will also pay $100,000,000 into a fund for developers (the "Small Developer Assistance Fund"). Apple will provide a cash payment from the Small Developer Assistance Fund to each eligible Settlement Class Member who submits a timely and valid claim form. Each eligible Settlement Class Member with a valid claim will be entitled to a minimum payment of between $250 and $30,000, depending on the U.S. developer's App Store proceeds. You can visit the settlement website www.smallappdeveloperassistance.com to determine the minimum payment for which you may be eligible. Please note that the actual cash payment may be more depending on the total number of approved claims and other factors.

**HOW CAN I EXCLUDE MYSELF FROM THE CLASS?**
If you don't want to make a claim and you don't want to be legally bound by the settlement, your request to be excluded must be received by March 21, 2022, or you will not be able to sue, or continue to sue, Apple over the conduct at issue in this case. Refer to the settlement website www.smallappdeveloperassistance.com and the detailed Class Notice for information and instructions on how to exclude yourself.

**HOW CAN I OBJECT?**
If you want to remain a Settlement Class Member, but you want to object to the settlement and/or to class counsel's request for attorneys' fees and expenses, your objection must be received by March 21, 2022. Refer to the settlement website and the detailed Class Notice for information and instructions on how to object. The Court will consider objections at a final hearing in this case (*Cameron, et al. v. Apple Inc.*, Case No. 4:19-cv-03074-YGR) on June 7, 2022 at 2 P.M. at the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 1, 1301 Clay Street, Oakland, CA 94612, to consider whether to approve (1) the settlement; (2) class counsel's request for attorneys' fees and expenses; and (3) named plaintiff service awards of up to $5,000. You may appear at the final hearing, but you don't need to. The date of the final hearing may change without further notice and may be confirmed on the Court's Public Access to Court Electronic Records (PACER) site, for a fee, at https://ecf.cand.uscourts.gov. Information about the final hearing will also be posted on the settlement website.

**WHERE CAN I GET MORE INFORMATION?**

Please visit the settlement website at www.smallappdeveloperassistance.com, or call toll free (833) 920-3778 to obtain more complete information about the proposed settlement and your rights.  You may also write to class counsel at: Hagens Berman Sobol Shapiro, LLP, 1301 Second Ave., Suite 2000, Seattle, WA 98101 or email Info.smallappdeveloperassistance@hbsslaw.com.

Unsubscribe

# EXHIBIT E

# Claim Administrator Angeion Group Reminds Small iOS App Developers of Impending Claim Deadline

PHILADELPHIA--(BUSINESS WIRE)-- Angeion Group today reminds small developers of Apple iOS applications sold in Apple's U.S. App Store that the deadline to file your claim under a class action settlement with Apple is May 20, 2022. Eligible small developers on iOS can get a minimum cash payment of $250 to $30,000 from the $100 million settlement fund with no strings attached.

There are approximately 67,000 potential members of the settlement class. The lawyers representing the class of small developers and Apple have asked Angeion Group to encourage all eligible developers to submit claims. Any leftover funds from the settlement fund will be distributed to developers that have submitted eligible claims or to a charity.

Claims may be filed at the settlement website www.smallappdeveloperassistance.com

**You may be included in this settlement and entitled to receive a payment if you are or were a U.S. developer of any Apple iOS application or in-app product (including subscriptions) that:**

- Was sold for a non-zero price

- Was sold via Apple's iOS App Store between 2015 and 2021, and

- Earned, together with any other iOS applications or in-app products (including subscriptions) sold through all of your associated developer accounts, proceeds equal to or less than $1,000,000.00 through the App Store U.S. storefront in every calendar year from June 4, 2015 to April 26, 2021 in which you had a developer account.

**What does the settlement provide?**

In light of the contributions made by small developers to the app economy, Apple has established a $100 million fund as part of this settlement (the "Small Developer Assistance Fund"). After deducting any Court-approved attorneys' fees and expenses, service awards, and the costs of settlement notice and administration, the net Small Developer Assistance Fund will be made available to Settlement Class Members who submit timely and valid claims.

As part of the settlement, Apple has also agreed to a number of additional commitments for three years, including:

- Maintaining a commission rate of no greater than 15% for U.S. developers who are enrolled participants in the Small Business Program, subject to program participation requirements.

- Permitting U.S. developers to communicate with their customers via email and other means outside their apps about purchasing methods other than in-app purchase;

- Expanding the choice of App Store price points; and

- Publishing an annual App Store transparency report with data on App Review, search, security, and more.

**How much will my payment be?**

The Small Developer Assistance Fund will be distributed to all Settlement Class Members who submit timely and valid claim forms. Each such U.S. developer will be entitled to a minimum payment of $250.00. U.S. developers may qualify for a higher payment based on their total proceeds during the relevant period (from June 4, 2015 to December 31, 2020).

| Total U.S. App Store Proceeds (during relevant time period) | Potential Minimum Payment |
| --- | --- |
| $100 or less | $250 |
| $100.01 - $1,000 | $500 |
| $1,000.01 - $5,000 | $1,000 |
| $5,000.01 - $10,000 | $1,500 |
| $10,000.01 - $50,000 | $2,000 |
| $50,000.01 - $100,000 | $3,500 |
| $100,000.01 - $250,000 | $5,000 |
| $250,000.01 - $500,000 | $10,000 |
| $500,000.01 - $1,000,000 | $20,000 |
| Over $1,000,000 | $30,000 |

These minimum payments are subject to change based on the total number of approved claims, among other factors. Settlement Class Members may visit www.smallappdeveloperassistance.com for their specific estimated payment amounts from the settlement.

**How do I get a payment?**

You must submit a timely and properly completed Claim Form no later than May 20, 2022. You may request a claim form or submit one online at www.smallappdeveloperassistance.com.

**When and where will the court consider the proposed settlement?**

The Court will hold a final approval hearing at 2 P.M. on June 7, 2022, at the United States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check the website at www.smallappdeveloperassistance.com to confirm the details.

At this hearing the Court will consider whether to approve the settlement, Class Counsel's request for attorneys' fees and expenses, and the service awards to the named Plaintiffs. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the settlement. The Court's decision may be appealed.

**How do I get more information?**

For more information, including the full Notice, Claim Form, and Settlement Agreement go to www.smallappdeveloperassistance.com, contact the Settlement Administrator at 1-833-920-3778, or email your questions to info@smallappdeveloperassistance.com.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS. All questions regarding the Settlement or claims process should be directed to the Settlement Administrator.

## Contacts

**Media:**

Angeion Group

Steven Weisbrot

Chief Executive Officer

(215) 563-4116

Source: Angeion Group



# EXHIBIT F









# EXHIBIT G

## VALID EXCLUSION REQUESTS

| COUNT | NAME |
|---|---|
| 1 | Pleco Inc. |
| 2 | Christian Classics Ethereal Library |
| 3 | Millennium Products, Inc. |
| 4 | Eric Lombardo |
| 5 | Gooseworks Media LLC |
| 6 | Ebranta Technologies Inc |
| 7 | DEVONtechnologies, LLC |
| 8 | Michael Hominick |
| 9 | CoverMe Communications, Inc. |
| 10 | Justin Andrews |
| 11 | Ryan Steder |
| 12 | Nike, Inc. |
| 13 | KPAW |

# EXHIBIT H

March 21, 2022

RE: Cameron et al. v. Apple Inc., Case No. 4:19-cv-03074-YGR

Clerk of Court
United States District Court
Northern District of California
1301 Clay Street
Oakland, CA 94612

**F I L E D**

MAR 25 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

I, Steven Wytyshyn, a U.S. iOS App Developer, Founder & CEO of Cosmosent Labs, Inc., a California C Corp, Object to the Settlement (& ask the Court to deny approval of the Settlement) for the following reasons:

**1.)** It does NOT prevent Apple from continuing to "intentionally" suppress Third-Party App Innovation !

I intend to prove to the Court that Apple has "intentionally" suppressed third-party App Innovation, kept App Store consumers from at-least one type of credible & viable Camera App Experience, & that they would NOT have been able to get away with it if they did NOT have a Monopoly.

Three key points:

**i.)** Apple has NO "App Discovery" competition.

Apple uses the the Today tab of its App Store App, which has NO third-party competition, to Fully Control the Narrative in its "curated" iOS App Store.

Russian State TV is a good analogy !

**ii.)** Apple has full control of the In App Ratings Dialog, & provides NO transparency of its use to App Developers.

Apple decides whether to present the In App Ratings Dialog OR NOT, when requested by an app to do so.

NOT Rocket Science, an app's Ratings & Reviews are key to its success in the App Store.

**iii.)** For some UN-known reason, the Original Settlement Agreement did NOT address either issue !

The problem is best illustrated by example:

In late-2013, Apple acquired the popular SnappyCam Burst Photo Camera App, & then did nothing with the Technology OR the Application, & was subsequently Leapfrogged in both by others, including (my) Photosets, yet to date, Apple has never once, to my knoweldge, recommended OR promoted a single third-party Burst Photo Camera App.

Photosets made its debut in Apple's "curated" iOS App Store in June 2015, & has been a rare, true Flagship-caliber Burst Photo Camera App since the release of the 2016 iPhone 7+.

It has been Approved by App Review more than 300 times (i.e., more than 300 Approved App Updates).

As such, Apple is well-aware of its Features & Capabilities.

It is very-likely the most-Advanced & Highest-Performance Camera App in the history of smartphones.

Yet, has received NO love from Apple in their "curated" iOS App Store.

Why ?

Simply put, Photosets is what SnappyCam could have become !

And Apple doesn't want that getting out !

But there are other possible (additional) reasons as well, which I've detailed below.

BIG picture perspective, because Apple has NO "App Discovery" competition they are able to Fully Control the Narrative & suppress whichever Apps & App Categories (& types of Apps) they choose (& get away with it).

Until such time that third-party "App Discovery" competition "goes live," I believe the Court should consider forcing Apple to Disable the Today tab of their App Store App !

This should have been included in the Original Settlement Agreement !

See below for the details of my Proposal for a Pro Sports-style "App Discovery" Competitve Landscape.

It solves the problem in an innovative way.

**2.)** It does NOT prevent Apple from continuing to swamp the Today tab of their App Store App with Game Apps, & now ALSO Apple Arcade Apps !

Paraphrasing court documents in Apple's battle with Epic, 70% of Apple's App Store Revenue comes from Game Apps.

Apps for Little Kids & Streaming Media "sub" Apps account for another 20% OR so, leaving ONLY 10% for everything else.

For some UN-known reason, the Original Settlement Agreement did NOT address this issue at ALL !

Apple needs a mechanism in-place (i.e., New Law) that Forces them to try to at-least somewhat even-out the Numbers.

The problem is very easily fixed.

I am proposing New Law that would require Apple to disclose per-Category Revenue Numbers for the iOS App Store here in the States.

And, require them to do so at the end of each work week.

Also, that the per-week per-Category Reports should include what percentage was generated by the Top 10 Apps in each category.

And, what percentage of apps in each category generated NO revenue.

So, three columns of data per Category, reported by Apple every week.

NOT Rocket Science, forcing Apple to become Transparent with the per-Category Revenue Numbers would force them to try to "somewhat even-out" the Numbers.

And that, could enable the NON-Game App portion of the App Store to (finally) blossom !

For starters, I recommend the Court consider forcing Apple to add "Settings filters," that would enable App Store consumers to filter-off Game Apps, Apple Arcade Apps, Apps for Little Kids, & Streaming Media "sub" apps, in the Today tab of their App Store App.

ALL this should have been included in the Original Settlement Agreement !

**3.)** It does NOT provide a mechanism in-which an App Developer gets Public Credit for, is sufficiently compensated for, & isn't financially harmed by, Discovering a (Performance-crippling) Apple Hardware Bug.

This is important because under the current structure, Apple uses Bug Discovery as a Reason to "intentionally" suppress an App & App Category.

And, I have a Prime Example of this, which I refer to as Phil's Bug, after Phil Schiller, the guy who runs Apple's "curated" iOS App Store.

On Friday, October 26, 2018, Apple released the iPhone XR.

I received my XR on that day.

The next day I began testing Photosets on my new XR, at which point, I immediately realized something was horribly wrong !

The app kept immediately crashing when transitioning into the app's Camera, which it had never done before.

After just a few hours of testing, this ex-Chip Verification Engineer realized I had discovered a Performance-crippling Hardware Bug in Apple's A12 chip.

Specifically, in this chip's Performance Controller.

I immediately put the word out to the General Public & to Apple.

A few days later, on Tuesday, November 1st, 2018, Apple announced that they would NO longer report iPhone Unit Sales.

As a reminder, OR for those who are UN-aware, Photosets wasn't my only app in the App Store at that time.

I had a second app, called Timmy, a per-Qtr, per-Device iPhone Unit Sales Estimator App.

It is the only such app on the planet.

I mention Timmy, which Apple abruptly pulled without Warning from its iOS App Store the day BEFORE its BIG iPhone event in Sept of 2019, because I believe the connection between the two could be an additional Reason for Apple NOT ONLY "intentionally" suppressing Photosets, but ALSO the entire Burst Photo Camera App category.

And here, simply because Photosets is Best-in-Class.


Subsequent testing of Photosets on the iPhone X revealed a similar situation to the XR.

The BIG picture, if Apple had recommended Photosets even as late as early-2017, the A11/A12 Performance Controller Chip Bug would very-likely have NEVER happened !

For those who don't know, Apple fixed the bug in the A13, making the 7+ & the A13 & newer iPhones the ONLY true High-Performance iPhones !

Those in the middle have what I refer to as the "Phil Schiller Chip Bug" !

And very specifically, if Photosets hadn't (simply) been an UN-Discovered Gem App in early 2017, Apple's R&D very-likely would have used it to stress test their A11 design !

And in the process of doing so, would have discovered what I ultimately discovered the first day I tested my iPhone XR !


Also, & very specifically here, the Chip Bug made it through two generations of Apple's A-series processors.

Note that I did NOT buy any of the 2017 iPhones.

I kept my 2016 iPhone 7+ for an additional year.

I had NO reason to believe that a Performance-Crippling Chip Bug was even a remote possibility !


**Need Proof ?**

Apple had been touting fancier & fancier Performance Controller designs in their A-series processors, starting with the A11, & then at the A13, NO mention of it at all.

Anybody can do a Google search & confirm this.

**So What Happened ?**

They forgot to test a particular case.

One in which an app uses the CPU's NEON vector processing cores.

**Was it a Corner Case ?**

NOT to me, it's at the very core of Photosets' Camera Capture Pipeline !

**How did you deal with it ?**

I was forced to throttle-down the Capture Performance of A11 & A12-based iPhones & iPads.

NO changes were necessary for A10 & earlier A-series processors, OR for A13 & later A-series processors.

Just for the A11 & A12.

When Apple released the A14, I removed the Governor that had been throttling A11 & A12 processors.

**Why did you do that ?**

I (naturally) assumed that Apple would Fix the Issue in subsequent revs of the A11 & A12.

And by then, I figured they had plenty of time to do so.

**Is there ANY way to test whether the Fix is In ?**

Absolutely, using Photosets, simply see if the app crashes immediately when you transition into the app's Camera.

If it does on an A11 OR A12 device, you don't have the Fix.

**Has ANY other App Dev Discovered the Problem ?**

NOT to my knowledge.

**How do you explain that ?**

ONLY Burst Photo Camera Apps that have the same, OR similar, Camera Capture Pipeline as Photosets would encounter it.

Clearly there are NONE !

**Last but NOT least, did Apple ever compensate Cosmosent Labs, Inc. in ANY way ?**

Nope !

In fact, just the opposite.

I believe they used it as a Reason to NOT ONLY suppress Photosets, but ALL Burst Photo Camera Apps, since Photosets is Best-in-Class.

—

My Proposal for a Pro Sports-style "App Discovery" Competitive Landscape:

The BIG Picture, the Top NON-Game App Developers, both Independent & Small Company, would make the exact same as the Top Pro Sports Athletes here in the States.

And, just like in Pro Sports, there would naturally be a trickle-down affect.

The key to making it work is "App Discovery" competition, & a mechansim in which third-party "App Discovery" App Stores are financially compensated for their success.

E.g., they get 1/3 of Apple's take.

And, very specifically, would be Required to use a good portion of that to recruit (& subsequently promote) specific Apps for inclusion in their "App Discovery" App Store.

For starters, I believe there should be FIVE third-party "App Discovery" App Stores here in the States.

Im my opinion, that's the MIN necessary for a true competitive landscape.

And specifically, it's for NON-Game Apps ONLY, & each App can be offered ONLY in one third-party "App Discovery" App Store at a time, with changes made ONLY on the 1st & 15th of each month.

Think of it as short-term contracts.

And BTW, the current benchmark is Aaron Rodgers' latest extension, which gets him $50M USD per year !

Also BTW, NO reason third-party "App Discovery" App Stores couldn't be structured as Public Utilities.

In fact, that's probably the preferred approach.

As a Public Utility, their Profits could be Restricted, by Law, & divided-up on a per-State basis, to Roads, Bridges, K-12 Education, & Social Services.

In addition to the much needed "App Discovery" competition, that would be a HUGE improvement on the Status Quo !

Now let's take this a step further, & say that App Developers can decide, on a per-App basis, to include their App(s) ONLY in third-party "App Discovery" App Stores.

That, in my opinion, could become The Catalyst for a "Renaissance in App Discovery," similar to what occurred in the App Store its first few years !

Mainstream Discovery of just one UN-Discovered Gem App (in a third-party App Store) is ALL that's needed to loosen Apple's Complete & Total Stranglehold on "App Discovery" !

---

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 21st day of March 2022, at San Diego, California.

Steven Wytyshyn

Steven Wytyshyn
514 Girard Ave
Suite 1179
La Jolla, CA 92037

Clerk of Court
United States District Court
Northern District of California
1301 Clay Street
Oakland, CA 94612



SAN DIEGO CA 920

21 MAR 2022 PM 5  L

March 21, 2022

RE: Cameron et al. v. Apple Inc., Case No. 4:19-cv-03074-YGR

Clerk of Court
United States District Court
Northern District of California
1301 Clay Street
Oakland, CA 94612



**F I L E D**

MAR 25 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

I, Steven Wytyshyn, a U.S. iOS App Developer, Founder & CEO of Cosmosent Labs, Inc., a California C Corp, Object to the Settlement (& ask the Court to deny approval of the Settlement) for the following reasons:



**1.)** It does NOT prevent Apple from continuing to "intentionally" suppress Third-Party App Innovation !

I intend to prove to the Court that Apple has "intentionally" suppressed third-party App Innovation, kept App Store consumers from at-least one type of credible & viable Camera App Experience, & that they would NOT have been able to get away with it if they did NOT have a Monopoly.

Three key points:

**i.)** Apple has NO "App Discovery" competition.

Apple uses the the Today tab of its App Store App, which has NO third-party competition, to Fully Control the Narrative in its "curated" iOS App Store.

Russian State TV is a good analogy !

**ii.)** Apple has full control of the In App Ratings Dialog, & provides NO transparency of its use to App Developers.

Apple decides whether to present the In App Ratings Dialog OR NOT, when requested by an app to do so.

NOT Rocket Science, an app's Ratings & Reviews are key to its success in the App Store.

**iii.)** For some UN-known reason, the Original Settlement Agreement did NOT address either issue !


The problem is best illustrated by example:

In late-2013, Apple acquired the popular SnappyCam Burst Photo Camera App, & then did nothing with the Technology OR the Application, & was subsequently Leapfrogged in both by others, including (my) Photosets, yet to date, Apple has never once, to my knoweldge, recommended OR promoted a single third-party Burst Photo Camera App.

Photosets made its debut in Apple's "curated" iOS App Store in June 2015, & has been a rare, true Flagship-caliber Burst Photo Camera App since the release of the 2016 iPhone 7+.

It has been Approved by App Review more than 300 times (i.e., more than 300 Approved App Updates).

As such, Apple is well-aware of its Features & Capabilities.

It is very-likely the most-Advanced & Highest-Performance Camera App in the history of smartphones.

Yet, has received NO love from Apple in their "curated" iOS App Store.

Why ?

Simply put, Photosets is what SnappyCam could have become !

And Apple doesn't want that getting out !

But there are other possible (additional) reasons as well, which I've detailed below.

BIG picture perspective, because Apple has NO "App Discovery" competition they are able to Fully Control the Narrative & suppress whichever Apps & App Categories (& types of Apps) they choose (& get away with it).

Until such time that third-party "App Discovery" competition "goes live," I believe the Court should consider forcing Apple to Disable the Today tab of their App Store App !

This should have been included in the Original Settlement Agreement !

See below for the details of my Proposal for a Pro Sports-style "App Discovery" Competitve Landscape.

It solves the problem in an innovative way.

**2.)** It does NOT prevent Apple from continuing to swamp the Today tab of their App Store App with Game Apps, & now ALSO Apple Arcade Apps !

Paraphrasing court documents in Apple's battle with Epic, 70% of Apple's App Store Revenue comes from Game Apps.

Apps for Little Kids & Streaming Media "sub" Apps account for another 20% OR so, leaving ONLY 10% for everything else.

For some UN-known reason, the Original Settlement Agreement did NOT address this issue at ALL !

Apple needs a mechanism in-place (i.e., New Law) that Forces them to try to at-least somewhat even-out the Numbers.

The problem is very easily fixed.

I am proposing New Law that would require Apple to disclose per-Category Revenue Numbers for the iOS App Store here in the States.

And, require them to do so at the end of each work week.

Also, that the per-week per-Category Reports should include what percentage was generated by the Top 10 Apps in each category.

And, what percentage of apps in each category generated NO revenue.

So, three columns of data per Category, reported by Apple every week.

NOT Rocket Science, forcing Apple to become Transparent with the per-Category Revenue Numbers would force them to try to "somewhat even-out" the Numbers.

And that, could enable the NON-Game App portion of the App Store to (finally) blossom !

For starters, I recommend the Court consider forcing Apple to add "Settings filters," that would enable App Store consumers to filter-off Game Apps, Apple Arcade Apps, Apps for Little Kids, & Streaming Media "sub" apps, in the Today tab of their App Store App.

ALL this should have been included in the Original Settlement Agreement !

**3.)** It does NOT provide a mechanism in-which an App Developer gets Public Credit for, is sufficiently compensated for, & isn't financially harmed by, Discovering a (Performance-crippling) Apple Hardware Bug.

This is important because under the current structure, Apple uses Bug Discovery as a Reason to "intentionally" suppress an App & App Category.

And, I have a Prime Example of this, which I refer to as Phil's Bug, after Phil Schiller, the guy who runs Apple's "curated" iOS App Store.

On Friday, October 26, 2018, Apple released the iPhone XR.

I received my XR on that day.

The next day I began testing Photosets on my new XR, at which point, I immediately realized something was horribly wrong !

The app kept immediately crashing when transitioning into the app's Camera, which it had never done before.

After just a few hours of testing, this ex-Chip Verification Engineer realized I had discovered a Performance-crippling Hardware Bug in Apple's A12 chip.

Specifically, in this chip's Performance Controller.

I immediately put the word out to the General Public & to Apple.

A few days later, on Tuesday, November 1st, 2018, Apple announced that they would NO longer report iPhone Unit Sales.

As a reminder, OR for those who are UN-aware, Photosets wasn't my only app in the App Store at that time.

I had a second app, called Timmy, a per-Qtr, per-Device iPhone Unit Sales Estimator App.

It is the only such app on the planet.

I mention Timmy, which Apple abruptly pulled without Warning from its iOS App Store the day BEFORE its BIG iPhone event in Sept of 2019, because I believe the connection between the two could be an additional Reason for Apple NOT ONLY "intentionally" suppressing Photosets, but ALSO the entire Burst Photo Camera App category.

And here, simply because Photosets is Best-in-Class.


Subsequent testing of Photosets on the iPhone X revealed a similar situation to the XR.

The BIG picture, if Apple had recommended Photosets even as late as early-2017, the A11/A12 Performance Controller Chip Bug would very-likely have NEVER happened !

For those who don't know, Apple fixed the bug in the A13, making the 7+ & the A13 & newer iPhones the ONLY true High-Performance iPhones !

Those in the middle have what I refer to as the "Phil Schiller Chip Bug" !

And very specifically, if Photosets hadn't (simply) been an UN-Discovered Gem App in early 2017, Apple's R&D very-likely would have used it to stress test their A11 design !

And in the process of doing so, would have discovered what I ultimately discovered the first day I tested my iPhone XR !


Also, & very specifically here, the Chip Bug made it through two generations of Apple's A-series processors.

Note that I did NOT buy any of the 2017 iPhones.

I kept my 2016 iPhone 7+ for an additional year.

I had NO reason to believe that a Performance-Crippling Chip Bug was even a remote possibility !


### Need Proof ?

Apple had been touting fancier & fancier Performance Controller designs in their A-series processors, starting with the A11, & then at the A13, NO mention of it at all.

Anybody can do a Google search & confirm this.

### So What Happened ?

They forgot to test a particular case.

One in which an app uses the CPU's NEON vector processing cores.

### Was it a Corner Case ?

NOT to me, it's at the very core of Photosets' Camera Capture Pipeline !

**How did you deal with it ?**

I was forced to throttle-down the Capture Performance of A11 & A12-based iPhones & iPads.

NO changes were necessary for A10 & earlier A-series processors, OR for A13 & later A-series processors.

Just for the A11 & A12.

When Apple released the A14, I removed the Governor that had been throttling A11 & A12 processors.

**Why did you do that ?**

I (naturally) assumed that Apple would Fix the Issue in subsequent revs of the A11 & A12.

And by then, I figured they had plenty of time to do so.

**Is there ANY way to test whether the Fix is In ?**

Absolutely, using Photosets, simply see if the app crashes immediately when you transition into the app's Camera.

If it does on an A11 OR A12 device, you don't have the Fix.

**Has ANY other App Dev Discovered the Problem ?**

NOT to my knowledge.

**How do you explain that ?**

ONLY Burst Photo Camera Apps that have the same, OR similar, Camera Capture Pipeline as Photosets would encounter it.

Clearly there are NONE !

**Last but NOT least, did Apple ever compensate Cosmosent Labs, Inc. in ANY way ?**

Nope !

In fact, just the opposite.

I believe they used it as a Reason to NOT ONLY suppress Photosets, but ALL Burst Photo Camera Apps, since Photosets is Best-in-Class.

---

My Proposal for a Pro Sports-style "App Discovery" Competitive Landscape:

The BIG Picture, the Top NON-Game App Developers, both Independent & Small Company, would make the exact same as the Top Pro Sports Athletes here in the States.

And, just like in Pro Sports, there would naturally be a trickle-down affect.

The key to making it work is "App Discovery" competition, & a mechansim in which third-party "App Discovery" App Stores are financially compensated for their success.

E.g., they get 1/3 of Apple's take.

And, very specifically, would be Required to use a good portion of that to recruit (& subsequently promote) specific Apps for inclusion in their "App Discovery" App Store.

For starters, I believe there should be FIVE third-party "App Discovery" App Stores here in the States.

Im my opinion, that's the MIN necessary for a true competitive landscape.

And specifically, it's for NON-Game Apps ONLY, & each App can be offered ONLY in one third-party "App Discovery" App Store at a time, with changes made ONLY on the 1st & 15th of each month.

Think of it as short-term contracts.

And BTW, the current benchmark is Aaron Rodgers' latest extension, which gets him $50M USD per year !

Also BTW, NO reason third-party "App Discovery" App Stores couldn't be structured as Public Utilities.

In fact, that's probably the preferred approach.

As a Public Utility, their Profits could be Restricted, by Law, & divided-up on a per-State basis, to Roads, Bridges, K-12 Education, & Social Services.

In addition to the much needed "App Discovery" competition, that would be a HUGE improvement on the Status Quo !

Now let's take this a step further, & say that App Developers can decide, on a per-App basis, to include their App(s) ONLY in third-party "App Discovery" App Stores.

That, in my opinion, could become The Catalyst for a "Renaissance in App Discovery," similar to what occurred in the App Store its first few years !

Mainstream Discovery of just one UN-Discovered Gem App (in a third-party App Store) is ALL that's needed to loosen Apple's Complete & Total Stranglehold on "App Discovery" !

---

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 21st day of March 2022, at San Diego, California.

Steven Wytyshyn

Steven Wytyshyn
514 Girard Ave
Suite 1179
La Jolla, CA 92037

Clerk of Court
United States District Court
Northern District of California
1301 Clay Street
Oakland, CA 94612



SAN DIEGO CA 920

21 MAR 2022 PM 3 L